1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# NOTE: CHANGES MADE BY THE COURT

> The Court has changed the date of the hearing and, accordingly, the dates on which briefing is due.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE
COMMISSION,

              Plaintiff,

              v.

QYK BRANDS LLC d/b/a Glowyy,

DRJSNATURAL LLC,

RAKESH TAMMABATTULA,
individually and as an officer of
QYK BRANDS LLC, and

JACQUELINE THAO NGUYEN,
individually and as an officer of
QYK BRANDS LLC and
DRJSNATURAL LLC,

              Defendants.

) Case No. 8:20-cv-01431-JLS-KES
)
)
)
) STIPULATED TEMPORARY
) RESTRAINING ORDER AND
) ORDER TO SHOW CAUSE WHY A
) PRELIMINARY INJUNCTION
) SHOULD NOT ISSUE
)
)
)
)
)
)
)
)
)
)
)
)

Plaintiff, the Federal Trade Commission ("FTC"), has filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the FTC's Trade Regulation Rule Concerning the Sale of Mail, Internet, or Telephone Order Merchandise ("MITOR" or the "Rule"), 16 C.F.R. Part 435, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §45 (a) and 52, and in violation of MITOR, 16 C.F.R. Part 435 (Docket No. 1). Plaintiff has moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining order, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants Rakesh Tammabattula, Jacqueline Thao Nguyen, QYK Brands LLC, and Dr. J's Natural LLC. (Docket No. 6).

Plaintiff and Rakesh Tammabattula, individually and on behalf of QYK Brands LLC d/b/a Glowyy and Jacqueline Thao Nguyen, individually and on behalf of DRJSNATURAL LLC (collectively, "Defendants") have agreed and stipulated to the entry of this Stipulated Order for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue. The Court, having considered the Complaint, the Motion for a Temporary Restraining Order, declarations, exhibits, and the memorandum of points and authorities filed in support thereof, and being otherwise advised, finds and orders as follows:

## FINDINGS OF FACT

A.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.     The Complaint alleges that in numerous instances, Defendants took advantage of consumers' fear of Coronavirus Disease 2019 (COVID-19) by advertising the availability and quick delivery of hand sanitizer, while knowing they could not meet those promises.  While advertising that they had hand sanitizer in stock and ready to Ship, Defendants QYK Brands LLC, Rakesh Tammabattula, and Jacqueline Thao Nguyen (the "QYK Defendants") failed to deliver on time (if at all), failed to notify consumers of delayed Shipments, failed to offer the cancellations and Refunds required by MITOR, and failed to honor requests for Refunds so consumers could buy these products elsewhere.  Specifically, the FTC alleges the QYK Defendants violated MITOR when they:

1.     Represented that they would Ship orders within specified timeframes when they did not have a reasonable basis to expect to Ship goods within the timeframes promised.

2.     Failed to offer consumers the opportunity to consent to a delay in Shipping or cancel their order and receive a Prompt Refund;

3.     Failed to cancel orders and provide consumers a Prompt Refund when orders were not Shipped in time or consumers did not consent to a delay in Shipping;

4.     Failed to deem orders cancelled or provide a Prompt Refund when requested by consumers;

C.     The Complaint alleges that, in addition, the QYK Defendants made deceptive claims when they:

1.     Misrepresented they would Ship goods the same day they were purchased or within seven (7) days;

2.     Misrepresented that they had goods in stock and ready to Ship; and

3.     Misrepresented that they would deliver the goods the consumers ordered.

-3-

D.     Finally, the Complaint alleges that Defendants Jacqueline Thao Nguyen and Dr. J's Natural LLC (the "Dr. J's Natural Defendants") made deceptive COVID-19 claims in connection with the advertising and sale of their product Basic Immune IGG.  Specifically, the Dr. J's Natural Defendants misrepresented that Basic Immune IGG:

1.     can effectively treat, prevent the transmission of, or reduce the risk of contracting COVID-19;

2.     is clinically proven and FDA-approved to effectively treat, prevent the transmission of, or reduce the risk of contracting COVID-19.

E.     The FTC alleges there is good cause to believe that the QYK Defendants have engaged in, and are likely to engage in, acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and MITOR, 16 C.F.R. § 435.2(a), (b), and (c).  In addition, the FTC alleges there is good cause to believe that the Dr. J's Natural Defendants have engaged in, and are likely to engage in, acts or practices that violate Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

F.     The FTC asserts there is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act and MITOR unless Defendants are restrained and enjoined by order of this Court.

G.     This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); Federal Rule of Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651.

H.     No security is required of any agency of the United States for issuance of a temporary restraining order.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.    "**Clearly and Conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.    In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.    A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.    An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.    In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.    The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.    The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.    The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

B.      "**Corporate Defendant(s)**" means QYK Brands LLC d/b/a Glowyy and Dr. J's Natural LLC and each of their subsidiaries, affiliates, successors, and assigns.

C.      "**Covered Dietary Supplement**" means any Dietary Supplement, Food, or Drug, including Basic Immune IGG.

D.      "**Covered PPE Product**" means any product intended to detect, treat, prevent, mitigate, or cure any disease, including but not limited to sanitizer, sanitizer dispensers, thermometers, medicine, medication, and any personal protective equipment ("PPE") such as facemasks, face shields, gloves, goggles, gowns, clothing or other garments, equipment, or devices designed or advertised to protect against infection, transmission, or contagion of any disease.

E.      "**Defendants**" means Corporate Defendants, Rakesh Tammabattula and Jacqueline Thao Nguyen, individually, collectively, or in any combination.

F.      "**Dietary Supplement**" means:  (1) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (2) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

G.      "**Document**" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of

Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate Document within the meaning of the term.

H.     "**Drug**" means:  (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

I.     "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients) in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the Covered Dietary Supplement; provided that the Covered Dietary Supplement may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

J.    "**Food**" means:  (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

K.    "**Individual Defendants**" means Rakesh Tammabattula and Jacqueline Thao Nguyen.

L.    "**Prompt**" in the context of a Refund, means a Refund sent by any means at least as fast and reliable as first class mail within 7 days of the date on which the buyer's right to refund vests under the provisions of this Court Order. Provided, however, that where Defendant cannot provide a Refund by the same method payment was tendered, Prompt Refund means a Refund sent in the form of cash, check, or money order, by any means at least as fast and reliable as first class mail, within 7 days of the date on which Defendant discovers Defendant cannot provide a Refund by the same method as payment was tendered.

M.    "**Receipt of a Properly Completed Order**" means, where the buyer tenders full or partial payment in the proper amount in the form of cash, check, or money order; authorization from the buyer to charge an existing charge account; or other payment methods, the time at which Defendant receives both said payment and an order from the buyer containing all of the information needed by Defendant to process and Ship the order.

N.    "**Refund**" means:

1.    Where the buyer tendered full payment for the unshipped merchandise in the form of cash, check, or money order, a return of the amount tendered in the form of cash, check, or money order sent to the buyer;

2.    Where there is a credit sale:

i.    And Defendant is a creditor, a copy of a credit memorandum or the like or an account statement sent to the buyer

-8-

reflecting the removal or absence of any remaining charge incurred as a result of the sale from the buyer's account;

ii.	And a third party is the creditor, an appropriate credit memorandum or the like sent to the third party creditor which will remove the charge from the buyer's account and a copy of the credit memorandum or the like sent to the buyer that includes the date that Defendant sent the credit memorandum or the like to the third party creditor and the amount of the charge to be removed, or a statement from Defendant acknowledging the cancellation of the order and representing that it has not taken any action regarding the order which will result in a charge to the buyer's account with the third party;

iii.	And the buyer tendered partial payment for the unshipped merchandise in the form of cash, check, or money order, a return of the amount tendered in the form of cash, check, or money order sent to the buyer.

3.	Where the buyer tendered payment for the unshipped merchandise by any means other than those enumerated in (1) or (2) of this definition:

i.	Instructions sent to the entity that transferred payment to Defendant instructing that entity to return to the buyer the amount tendered in the form tendered and a statement sent to the buyer setting forth the instructions sent to the entity including the date of the instructions and the amount to be returned to the buyer;

ii.	A return of the amount tendered in the form of cash, check, or money order sent to the buyer; or

iii.	A statement from Defendant sent to the buyer acknowledging the cancellation of the order and representing that

-9-

Defendant has not taken any action regarding the order which will access any of the buyer's funds.

O.     "**Ship**", or any variation thereof, including Shipment or Shipping means the act by which the merchandise is physically placed in the possession of the carrier.

## ORDER

## I.   INJUNCTION CONCERNING MAIL, INTERNET, OR TELEPHONE MERCHANDISE ORDERS

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Covered PPE Product or Covered Dietary Supplement, by mail, via the internet, or by telephone, are temporarily restrained and enjoined from:

A.     Representing that they will Ship purchased goods within the time stated in the solicitation, including the same day, when they do not have a reasonable basis to expect to Ship the goods within the time stated;

B.     Failing to Ship orders to consumers either within the time stated in the solicitation, or within thirty (30) days of full or partial payment if no time is stated;

C.     Failing to Clearly and Conspicuously offer consumers the opportunity to consent to a delay in Shipping or to cancel their order and receive a Prompt Refund if Defendants cannot Ship an order within the time promised, or thirty days, whichever is shorter;

D.     Failing to cancel orders or provide consumers a Prompt Refund when their orders will not Ship on time, and for which the consumer did not consent to a delayed Shipment date; and

E.     Failing to deem orders cancelled or provide a Prompt Refund when Defendants receive cancellation and Refund requests from consumers pursuant to any option under MITOR;

F.     Failing to provide revised Shipping dates, unless at the time any such revised Shipping date is provided, Defendants have a reasonable basis for making such representations regarding the definite revised Shipping date; and

G.     Failing to inform buyers that Defendants are unable to make any representation regarding the length of any delay unless Defendants have a reasonable basis for so informing the buyer and Defendants inform the buyer of the reasons for the delay.

## II.     PROHIBITION AGAINST MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, their agents, employees and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, or sale of any Covered PPE Product, are temporarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

A.     Defendants will Ship goods the same day they are purchased, or will Ship goods within seven (7) days;

B.     Defendants have goods in stock and ready to Ship;

C.     Defendants will deliver the goods consumers order;

D.     Any other fact material to consumers concerning any Covered PPE Product, such as:  the total costs; any material restrictions, limitations, or

conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

### III.  PROHIBITED REPRESENTATIONS:  REGARDING HEALTH-RELATED CLAIMS REQUIRING HUMAN CLINICAL SUBSTANTIATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Dietary Supplement, are temporarily restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation that such product:

A.     is FDA-approved to effectively treat, prevent transmission of, or reduce the risk of contracting COVID-19 unless the representation is true and non-misleading;

B.     can effectively treat, prevent transmission of, or reduce risk of contracting COVID-19; or

C.     cures, mitigates, or treats any disease,

unless the representation in B or C is true and non-misleading, and, at the time such representation is made, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence must consist of human clinical testing of the Covered Dietary Supplement, or of an

Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Such testing must be:  (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and Documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## IV.   PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Dietary Supplement, are temporarily restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation, other than representations covered under the Section of this Order entitled Prohibited Representations:  Regarding Health-Related Claims Requiring Human Clinical Testing For Substantiation, about the health benefits, performance, efficacy, safety, or side effects of any Covered Dietary Supplement, unless the representation is non-misleading, and, at the time of making such representation,

they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Dietary Supplement, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and Documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## V.   PROHIBITED MISREPRESENTATIONS:  TESTS, STUDIES, OR OTHER RESEARCH

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Dietary Supplement are temporarily restrained and enjoined from misrepresenting,

in any manner, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

    A.    That any Covered Dietary Supplement is clinically proven to effectively treat, prevent the transmission of, or reduce the risk of contracting COVID-19;

    B.    That the performance or benefits of any Covered Dietary Supplement are scientifically or clinically proven or otherwise established; or

    C.    The existence, contents, validity, results, conclusions, or interpretations of any test, study, or other research.

## VI.    FDA-APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Defendants, Defendants' officers, agents, employees, and attorneys, or all other persons in active concert or participation with any of them from:

    A.    For any Drug, making a representation that is approved in labeling for such Drug under any tentative final or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

    B.    For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## VII.  PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.      Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B.      Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## VIII.  PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants must secure and preserve all underlying or supporting data and Documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A.      All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such Documents reviewed by the test sponsor or any other person not employed by the research entity;

B.      All Documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.     Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source Documents for such data; any data dictionaries; and any case report forms;

D.     All Documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.     All Documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers. *Provided, however,* that the preceding preservation requirement shall not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by:  (l) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other Person or entity in active concert or participation with any Defendant; (4) any Person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.  These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Defendants' size and complexity, the nature and scope of the

-17-

Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## IX.    DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiff with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## X.    EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED,** that Defendants must produce to Plaintiff within three (3) days of the issuance of this Order:  (1) as set forth in 16 C.F.R. §§ 435.2(a)(4) and 435.2(d), the records or other documentary evidence establishing Defendants' use of systems and procedures assuring compliance with MITOR, including records which assure the Shipment of merchandise in the ordinary course of business within the applicable time set forth in the Rule; and (2) Documents reflecting Defendants' substantiation for claims within the scope of those covered under Sections III-V of this Order concerning a Covered Dietary Supplement.  If Defendants do not have such records or other documentary evidence set forth in (1) or (2), they shall so state.

## XI.   SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order as well as the Motion for Temporary Restraining Order and all other pleadings, Documents, and exhibits filed contemporaneously with that Motion (other than the complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure.  For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XII.   CORRESPONDENCE AND SERVICE ON PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings or Documents not otherwise served through the Court's Case Management/Electronic Case Filing system on Plaintiff shall be sent via email to:

KATHERINE E. JOHNSON; kjohnson3@ftc.gov

KRISTY M. TILLMAN; ktillman@ftc.gov

With copies sent to:

KATHERINE E. JOHNSON
KRISTY M. TILLMAN
Federal Trade Commission
600 Pennsylvania Avenue NW, CC-9528
Washington, DC  20580
(202) 326-2185 (Johnson); kjohnson3@ftc.gov
(202) 326-3025 (Tillman); ktillman@ftc.gov

### XIII.  PRELIMINARY INJUNCTION HEARING

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 65(b), Defendants shall appear before this Court on September 4, 2020, at 10:30 a.m., to show cause, if there is any, why this Court should not enter a preliminary injunction, pending final ruling on the Complaint against Defendants, enjoining the violations of the law alleged in the Complaint and imposing such additional relief as may be appropriate.

### XIV.  BRIEFS AND AFFIDAVITS CONCERNING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that:

A.      Defendants shall file with the Court and serve on Plaintiff's counsel any answering pleadings, affidavits, motions, expert reports or declarations, or legal memoranda no later than fourteen (14) days prior to the order to show cause hearing scheduled pursuant to this Order.  Plaintiff may file responsive or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on counsel for Defendants no later than seven (7) days prior to the Order to Show Cause hearing.  Provided that such affidavits, pleadings, motions, expert reports, declarations, legal memoranda or oppositions must be served by personal or overnight delivery, facsimile or email, and be received by the other party or parties no later than 5:00 p.m. (P.T.) on the appropriate dates set forth in this Section.

B.      An evidentiary hearing on Plaintiff's request for a preliminary injunction is not necessary unless Defendants demonstrate that they have, and intend to introduce, evidence that raises a genuine and material factual issue.  The question of whether this Court should enter a preliminary injunction shall be resolved on the pleadings, declarations, exhibits, and memoranda filed by, and oral argument of, the parties.  Live testimony shall be heard only on further order of this Court.  Any motion to permit such testimony shall be filed with the Court and

served on counsel for the other parties at least ten (10) days prior to the preliminary injunction hearing in this matter.  Such motion shall set forth the name, address, and telephone number of each proposed witness, a detailed summary or affidavit revealing the substance of each proposed witness's expected testimony, and an explanation of why the taking of live testimony would be helpful to this Court. Any papers opposing a timely motion to present live testimony or to present live testimony in response to another party's timely motion to present live testimony shall be filed with this Court and served on the other parties at least seven (7) days prior to the order to show cause hearing.

Provided, however, that service shall be performed by personal or overnight delivery, facsimile or email, and Documents shall be delivered so that they shall be received by the other parties no later than 5:00 p.m. (P.T.) on the appropriate dates provided in this Section.

**XV.   DURATION OF THE ORDER**

**IT IS FURTHER ORDERED** that, because the Court's calendar cannot accommodate a hearing within fourteen (14) days, this Order shall expire on the day of the hearing on the Order to Show Cause why a preliminary injunction should not issue, September 4, 2020.  *Cf. Horn Abbot Ltd. v. Sarsaparilla Ltd.*, 601 F. Supp. 360, 370 n.12 (N.D. Ill. 1984); 11A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2953 (3d ed. 2002).

SO ORDERED, August 9, 2020

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE