KATHERINE E. JOHNSON, *admitted pro hac vice*
kjohnson3@ftc.gov
KRISTY M. TILLMAN, *admitted pro hac vice*
ktillman@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue NW, CC-9528
Washington, DC 20580
(202) 326-2185 (Johnson); (202) 326-3025 (Tillman)

Local Counsel
DELILAH VINZON
Cal. Bar No. 222681; dvinzon@ftc.gov
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300; Fax: (310) 824-4380

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>QYK BRANDS LLC d/b/a Glowyy,<br><br>et al.,<br><br>Defendants. | **Case No.** 8:20-cv-01431-PSG-(KESx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS**<br><br>**Hearing Date: December 3, 2021**<br>**Time: 1:30 p.m.** |

## TABLE OF CONTENTS

I. INTRODUCTION ....................1

II. ARGUMENT ....................2

A. THE FAC MEETS THE PLEADING STANDARDS OF BOTH RULE 8 AND RULE 9 ....................2

1. Rule 9(b) Does Not Apply in the Present Case. ....................2

2. Even if the higher standard did apply, the FAC more than meets it. ....................3

a. Plaintiff has alleged sufficient facts in support of its MITOR Claims. ....................4

b. The FTC alleges sufficient facts to state a claim for relief relating to Plaintiff's FTC Act Claims. ....................6

c. The FAC Sufficiently Pleads Common Enterprise Liability ....................9

B. THE DEFENDANTS ARGUMENTS FOR DISMISSAL UNDER RULE 12(b)(6) ARE EQUALLY INFIRM. ....................12

1. AMG is Inapposite Because the FAC States a Claim for Injunctive Relief Under Section 13(b) ....................13

2. Section 19 of the FTC Act Provides for Monetary Relief in this Matter. ....................14

3. Because MITOR is a Trade Regulation Rule, the FTC Can Seek Monetary Relief for Violations of the Rule. ....................15

4. The FAC Sufficiently Alleges the Individual Defendants had the Knowledge Required by the Law....................16

III. CONCLUSION....................19

# TABLE OF AUTHORITIES

**Cases**

*Am. Home Servicing Ctr. LLC*, No. 818CV00597JLSKES, 2019 WL 7171733, at *9 (C.D. Cal. Dec. 5, 2019) ........10

*AMG Capital Mgt., LLC v. FTC*, 141 S. Ct. 1341 (2021) ........ 1, 13, 16,

*CFPB v. Prime Mktg. Holdings LLC*, No. CV 16-07111-BRO (JEMx), 2017 WL 2772313 at *13 (C.D. Cal. Jan. 19, 2017) ........7

*DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ........13

*FTC v. Adept Mgmt. Inc.*, No. 1:16-CV-720, 2016 WL 6542837 at *2 (D. Ore. Nov. 3, 2016) ........ 9, 10

*FTC v. AFD Advisors, LLC*, No. 13, CV 6420, 2014 WL 274097, at * 2 (N.D. Ill. Jan 24, 2015) ........2

*FTC v. Alliance Doc. Prep.*, 296 F. Supp. 3d 1197, 1203 (C.D. Cal 2017) ........10

*FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1078 (N.D. Cal 2018) . 3, 7, 8

*FTC v. American Future Sys. Inc.*, No. 20-2266, 2021 WL 3185777, *1 (E.D. Pa. July 26, 2021) ........14

*FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989) ........17

*FTC v. Apex Capital Group*, 2019 WL 9077469 (C.D. Cal. Sept. 16, 2019) ........13

*FTC v. Cantkier*, 767 F. Supp.2d 147, 157 (D.D.C. 2011) ........3

*FTC v. Cardiff*, 2020 WL 6540509, at *13 (C.D. Cal. Oct. 9, 2020) ........................ 9

*FTC v. Credit Bur. Cen.*, 937 F.3d 764, 773 (7th Cir. 2019) ................................. 15

*FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) ........................ 7

*FTC v. DeVry Education Group, Inc.*, CV-16-00579, 2016 WL 6821112, at *3 (C.D. Cal. May 9, 2016) ........................................................................ 3

*FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 8 (1st Cir. 2010) ........................... 6

*FTC v. Discountmetalbrokers, Inc.*, No. 2:16-cv-2112-ODW, 2017 WL 4442998, at *4 (C.D. Cal. Oct. 4, 2017) ........................................................... 4, 5, 17

*FTC v. Figgie Int'l Inc.*, 994 F.2d 595, 605-6 (9th Cir. 1993) ................................. 7

*FTC v. Freecom Comms. Inc.*, 401 F.3d 1192, 1204 n.7 (10th Cir. 2005) ............... 2

*FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001) ........................................................ 6

*FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1218 (D. Nev. 2011) ........... 12

*FTC v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1287 (N.D. Ga. 2018) ........................................................................................... 2

*FTC v. Ivy Capital Inc.*, No. 2:11-CV-283, 2011 WL 2118626 at *4 (D. Nev. May 25, 2011) ............................................................................................ 9, 18

*FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1066-67 (C.D. Cal. 2012) ............................................................................................ 6, 18

*FTC v. Johnson*, No. 2:10-cv-02203-MMD, 2013 WL 2450359, at * 5 (D. Nev. June 6, 2013) ............................................................................................ 11

*FTC v. Kitco of Nevada, Inc.*, 612 F.Supp. 1282, 1292 (D.Minn. 1985) ................17

*FTC v. Lights of Am., Inc.*, SACV10–01333 JVS, 2013 WL 5230681, at *41 (C.D. Cal. Sept. 17, 2013) ........................................6

*FTC v. Lights of America*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) ....................2

*FTC v. Lunada Biomedical, Inc.*, 15-CV-3380, 2016 WL 4698938 at *4 (C.D. Cal. Feb. 23, 2016) ........................................3, 8

*FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 314-315 (S.D.N.Y. 2008) ........................................ 3, 17

*FTC v. Nat'l Urological Group*, 645 F. Supp. 2d 1167, 1207 (N.D. Ga. 2008) .....18

*FTC v. Neora LLC*, No 3:20-cv-01979, 2021 WL 3398153, 4 (N.D. Tex. Aug. 2, 2021) ........................................13

*FTC v. Network Servs.*, 617 F. 3d 1127, 1142 (9th Cir. 2010).................................9

*FTC v. Noland*, 2021 WL 4318466, *5 (D. Ariz. Sept. 23, 2021) ..........................15

*FTC v. OMICS Grp. Inc.*, 302 F. Supp. 3d 1184, 1195 (D. Nev. 2017)..................10

*FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997)......17

*FTC v. Simple Health Plans LLC*, 2021 WL 4050819, *3 (S.D. Fla. Sept. 5, 2021) ........................................15

*FTC v. Southwest Sunsites, Inc.*, 105 F.T.C. 7 (1985).............................................7

*FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) .............................................6

*FTC v. Sterling Precious Metals*, No. 12-80597-CIV, 2013 WL 595713, at *3 (S.D. Fla. Feb. 15, 2013) ....................2

*FTC v. Wellness Support Network, Inc.*, No. C–10–04879 JCS, 2011 WL 4026867, at *4 (N.D. Cal. Sept. 2, 2011) ....................19

*In re Cliffdale Assocs.*, 103 F.T.C. 110, 165 (1984)....................7

*In re Rensin*, 597 B.R. 177, 182, 186 (Bankr. S.D. Fla 2018)....................17

*International Diamond*, 1983-2 Trad Cas. (CCH) at 69,707, 1983 WL 1911 (N.D. Cal. 1983) ....................17

*Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) ....................10

*Kowalsky v. Hewlett-Packard Co.*, No. 10–CV–02176–LHK, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011) ....................19

*Moore v. Kayport Package Exp. Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ............3, 9

*FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095–96 (9th Cir. 1994) ....................6,7

*U.S. v. Gaubert* 499 U.S. 315, 327 (1991)....................5, 9

*U.S. v. MyLife.com*, 499 F.Supp.3d 757, 761 (C.D. Cal. 2020) .................... 3, 8, 9

*United States v. JS&A Group, Inc.*, 547 F. Supp. 20, 23 (N.D. Ill. 1982)....................16

*United States v. UnitedHealthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) ..8

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)....................3

**Statutes**


Section 12 of the FTC Act, 12 U.S.C. § 52 ........................................................6

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) ..................................................13

Section 19 of the FTC Act ........................................................................ 11, 15

Section 19(a)(1), 15 U.S.C. § 57b(a)(1) ........................................................ 15, 17

Section 19(a)(2), 15 U.S.C. § 57b(a)(2) .................................................... 12, 14, 17

Section 19(b) of the FTC Act, 15 U.S.C. §57b(b) ................................................15

Section 5 of the FTC Act, 15 U.S.C. § 45(a) ............................................... 4, 6, 7


**Other Authorities**


*Federal Trade Commission: Part 435—Mail Order Merchandise: Promulgation of Trade Regulation Rule*, 40 FedReg 49492-94 (Oct. 2, 1975) .............................16

*Federal Trade Commission: Part 435—Mail Order Merchandise: Promulgation of Trade Regulation Rule: Correction*, 40 FR 51582-597 (Nov. 5, 1975)..............16


**Rules**


Fed R. Civ. P. 9(b) ........................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)..........................................................................12

Fed. R. Civ. P. 12(f)...............................................................................13

Fed. R. Civ. P. 8(a)..................................................................................2

MITOR, 16 CFR Part 435........................................................................ *passim*

## I. INTRODUCTION

The Defendants[1] cheated consumers during the height of the pandemic in order to "make a buck" by claiming they had hand sanitizer in stock and ready to ship, violating the Mail Internet Telephone Order Rule ("MITOR", 16 CFR Part 435) and the FTC Act. They went even further by claiming that their dietary supplement Basic Immune IGG (intended for gut health) could prevent COVID-19.[2] Now the Defendants seek to evade the harm caused by their egregious conduct by making spurious arguments that the FTC's First Amended Complaint (FAC) should be dismissed. The Court should reject their arguments. First, Defendants claim the FTC is required to meet a heightened pleading standard, asserting that the FTC's factual allegations fail to allege fraud with particularity. Even if this standard were applicable, which it is not, the FAC meets it. Second, Defendants claim the FAC should be dismissed because monetary relief is unavailable following *AMG Capital Mgt., LLC v. FTC*, 141 S. Ct. 1341 (2021). Defendants, however, are wrong. Defendants ignore completely the FTC's request for a permanent injunction, but more importantly, the law still provides for monetary relief in this matter, as explained below, and *AMG* did nothing to abrogate it. Accordingly, Defendants' motion must be denied.

---

[1] The Corporate Defendants are QYK Brands LLC d/b/a/ Glowyy ("QYK") and DrJsNatural LLC ("Dr. J's Natural"), EASII, Inc. ("EASII") and Theo Pharmaceuticals. The individual defendants are Rakesh Tammabattula ("Tammabattula") and Jacqueline T. Nguyen ("Dr. J").

[2] Coronavirus disease (COVID-19) is an infectious disease caused by the SARS-CoV-2 virus (Severe Acute Respiratory Syndrome Coronavirus-2). *See* https://www.who.int/health-topics/coronavirus#tab=tab_1 (last visited Nov. 12, 2021).

## II. ARGUMENT

### A. THE FAC MEETS THE PLEADING STANDARDS OF BOTH RULE 8 AND RULE 9.

#### 1. Rule 9(b) Does Not Apply in the Present Case.

Defendants wrongly assert that Fed R. Civ. P. 9(b)'s heightened pleading standard applies in this case.[3] (Mot. at 4.) Rule 9(b) states "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). As the Tenth Circuit has stated, Rule 9(b) should not apply to FTC actions because they are "not . . . designed to remedy a singular harm, but [are] a government action brought to deter deceptive acts and practices aimed at the public and to obtain redress on behalf of a large class of third-party consumers who purchased defendants' products and services over an extended period of time." *FTC v. Freecom Comms. Inc.*, 401 F.3d 1192, 1204 n.7 (10th Cir. 2005).[4] Indeed, the majority of courts have found that FTC Act claims are governed by the general notice pleading standard of Fed. R. Civ. P. 8(a). *Id.*; *FTC v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1287 (N.D. Ga. 2018) ("This Court joins those courts holding that Rule 9(b) does not apply to FTC action under 15 U.S.C. §45(a)."); *FTC v. AFD Advisors, LLC*, No. 13, CV 6420, 2014 WL 274097, at * 2 (N.D. Ill. Jan 24, 2015); *FTC v. Sterling Precious Metals*, No. 12-80597-CIV,

---

[3] One of the many flaws in Defendants' Motion is that it fails to allege to which allegations Rule 9(b) applies. By definition, Rule 9(b) applies only to allegations of fraud or mistake. Fed. R. Civ. P. 9(b).

[4] The Ninth Circuit has not addressed the question of whether government actions under the FTC Act are thus subject to Rule 9(b). Defendants cite *FTC v. Lights of America*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010), which did address this issue holding that Rule 9 applies. However, that decision is both incorrect for the reasons detailed above and is not controlling.

2013 WL 595713, at *3 (S.D. Fla. Feb. 15, 2013); *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 314-315 (S.D.N.Y. 2008).

Moreover, the FAC's MITOR claims do not even allege deceptive, much less fraudulent conduct, only that Defendants failed to comply with the requirements of MITOR as set forth below. Accordingly, Rule 8(a) applies to those allegations. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).").

**2. Even if the higher standard did apply, the FAC more than meets it.**

Even if Rule 9 did apply, which it does not, the Commission's FAC meets the requirements of the Rule. In deciding 9(b) motions to dismiss where it applies, courts consider the purpose of Rule, specifically to ensure defendants have adequate notice of the charges against them to prepare a defense. *FTC v. Lunada Biomedical, Inc.*, 15-CV-3380, 2016 WL 4698938 at *4 (C.D. Cal. Feb. 23, 2016) (quoting *FTC v. Cantkier*, 767 F. Supp.2d 147, 157 (D.D.C. 2011)); *see also U.S. v. MyLife.com*, 499 F.Supp.3d 757, 761 (C.D. Cal. 2020) ("A 'pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.'") (quoting *Moore v. Kayport Package Exp. Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). [5]

---

[5] Many courts resolved the question of whether 9(b) or 8(a) applies by testing the sufficiency of the allegations against 9(b) and finding that they met them without actually finding that the standard applies. *See, e.g.*, *MyLife.com*, 499 F.Supp.3d at 761; *FTC v. American Financial Benefits Center*, 324 F. Supp. 3d 1067 (N.D. Cal. 2018); *Lunada Biomedical, Inc.*, 2016 WL 4698938, at * 3; *FTC v. DeVry Education Group, Inc.*, CV-16-00579, 2016 WL 6821112, at *3 (C.D. Cal. May 9, 2016).

The FAC pleads more than sufficient facts to give notice of the charges to Defendants. First, the FAC alleges sufficient facts in support of its MITOR claims. In addition, the FAC allges sufficient facts to show that Defendants violated Section 5 of the FTC Act by making deceptive shipping time claims, and violated Sections 5 and 12 of the FTC Act by making deceptive claims that Basic Immune IGG could treat, prevent, or reduce the risk of transmission of COVID-19. Finally, the FAC pleads sufficient facts to show that Defendants operated as a common enterprise.

**a. Plaintiff has alleged sufficient facts in support of its MITOR Claims.**

The FAC sets forth specific facts relating to the Defendants' actions that violated MITOR. A seller violates Section 435.2(a) if it "solicit[s] any order for the sale of merchandise" without a reasonable basis "to expect that it will be able to ship" the ordered merchandise in the time clearly and conspicuously stated in its ads, or if none, within 30 days. MITOR § 435(a)(1); *FTC v. Discountmetalbrokers, Inc.*, No. 2:16-cv-2112-ODW, 2017 WL 4442998, at *4 (C.D. Cal. Oct. 4, 2017). MITOR defines "shipment" as the time in which the ordered merchandise is placed in the possession of the carrier. MITOR § 435.1(e). Furthermore, when a seller is unable to comply with the shipping requirements of MITOR, it must offer the buyer an opportunity to either receive a refund or consent to further delay. 16 C.F.R. § 435.2(b)(1); *Discountmetalbrokers*, 2017 WL 4442998, at *4.

The FAC alleges that Defendants failed to comply with §§ 435(a)(1) and (b)(1). QYK clearly and conspicuously promised consumers their products would ship the same day consumers ordered them (FAC ¶¶23-27), or in some instances,

within 7 days. (*Id.* ¶¶ 29-30.) But QYK did not meet either of those times, taking more than a month in many instances, if it delivered the merchandise at all. (*Id.* ¶¶ 28, 31-34.) Moreover, Tammabattula's and Dr. J's numerous public statements explaining that they could not meet their own deadlines clearly demonstrate that QYK lacked a reasonable basis to expect orders would ship within the shipping times it claimed. (*Id.* ¶¶ 45-50.)

Additionally, after it failed to deliver on time, QYK did not offer consumers an opportunity to either receive a refund or consent to a further delay. (FAC ¶¶ 37-39.) Under MITOR, when a seller is unable to ship within the time promised, the seller must offer the buyer (without demand) an option to either cancel the order and receive a prompt refund or consent to the delay. 16 C.F.R. §435.2(b)(1). If the seller fails to offer the buyer the opportunity to consent or cancel, the seller must automatically cancel the order and provide a prompt refund. 16 C.F.R. § 435.2(c)(5). MITOR also requires sellers to honor the buyer's refund demand if made prior to shipment. 16 C.F.R. § 435.2(c)(1). The FAC alleges that Tammabattula and Dr. J made public statements that they could not meet their promised ship times. (FAC ¶¶ 45-50.) But, those statements offered buyers neither a cancellation and prompt refund nor consent to the delay, and certainly not the option of either. (*Id.*; ¶¶ 37-38.) Not only did QYK fail to give prompt refunds to consumers who were entitled to them, it actually refused to provide refunds on numerous occasions despite many consumers demanding their money back. (FAC ¶¶ 39-44.) These factual allegations, taken as true, clearly state a claim for relief under MITOR. *See DiscountmetalBrokers, Inc.*, 2017 WL 4442998, at *4.

Defendants argue that their "processing time claims" are not shipping time claims. (Mot. at 9.) At the pleading stage, however, the court must accept the allegations as true, *U.S. v. Gaubert* 499 U.S. 315, 327 (1991); and Defendants do

not deny the FAC alleges their Google Ad Words campaign stated "In Stock & Ships Today." (Mot. at 8 citing FAC ¶ 25.)

**b. The FTC alleges sufficient facts to state a claim for relief relating to Plaintiff's FTC Act Claims.**

Counts II through IV of the FAC allege violations of Section 5 of the FTC Act.[6] Section 5 prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). In order to establish a deceptive act or practice, the FTC must allege: (1) a representation, omission, or practice that, (2) is material, and (3) is likely to mislead consumers acting reasonably under the circumstances. *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (quoting *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001)).

A representation is likely to mislead consumers if (1) the express or implied message conveyed is false, or (2) the maker of the representation lacked a reasonable basis for asserting that the message was true. *FTC v. Lights of Am., Inc.*, SACV10–01333 JVS, 2013 WL 5230681, at *41 (C.D. Cal. Sept. 17, 2013) (holding defendants liable for claims made without adequate substantiation); *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1066-67 (C.D. Cal. 2012) (the FTC may establish that it is likely to mislead by demonstrating that the representation was false). "Where the maker lacks adequate substantiation evidence, the maker necessarily lacks any reasonable basis for its claims." *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 8 (1st Cir. 2010).

A representation, omission, or practice is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or

---

[6] Counts III and IV also allege violations of Section 12 of the FTC Act. Section 12 "prohibits the dissemination of 'any false advertisement' in order to induce the purchase of 'food drugs, devices, or cosmetics 15 U.S.C. s. 52(a)(2).'" *FTC v. Pantron I. Corp.*, 33 F.3d 1088, 1093 (9th Cir. 1994).

conduct regarding, a product." *In re Cliffdale Assocs.*, 103 F.T.C. 110, 165 (1984), 1984 WL 565319, at *37; *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006). If consumers are likely to have chosen differently but for the deception, then a misrepresentation is material. *FTC v. Southwest Sunsites, Inc.*, 105 F.T.C. 7 (1985), 1985 WL 668880, at *109 (FTC 1985), *aff'd* 785 F.2d 1431 (9th Cir. 1986). Express claims and deliberately made implied claims are presumed to be material, as are claims that go to the central characteristics of a product or service. *Pantron I Corp.*, 33 F.3d at 1088, 1095–96 (9th Cir. 1994). Consumer reliance is presumed if defendants made material misrepresentations that were widely disseminated, and consumers purchased the defendant's product. *FTC v. Figgie Int'l Inc.*, 994 F.2d 595, 605-6 (9th Cir. 1993).

**i. The FAC Alleged that Defendants' Shipping Time Claims Violate the FTC Act.**

The FAC alleges Defendants violated Section 5 by misrepresenting (1) its shipping times (FAC ¶¶ 23-33); (2) that it had hand sanitizer in stock and ready to ship (FAC ¶¶ 23-26); and (3) that it would ship the goods that consumers ordered (*id.* ¶¶ 23, 25, 27, 32-33). Defendants' claims that they had product "in stock" that would "ship today" or at times, within seven days, however, were false as demonstrated by numerous consumer complaints (FAC ¶¶ 27-28, 32-34, 37, 44) and Tammabattula's and Dr. J's own admissions. (*Id.* ¶¶ 45-50.)

Defendants' assertion that "a few unverified consumer complaints is not sufficient facts to support the merits of the FTC claims" (Mot. at 3) misses the mark. "The FTC is not required to allege 'the specific representations' made to each individual consumer . . . . [S]uch a requirement would likely prove fatal to large-scale consumer protection actions." *FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1078 (N.D. Cal 2018) (quoting *CFPB v. Prime Mktg. Holdings LLC*, No. CV 16-07111-BRO (JEMx), 2017 WL 2772313 at *13 (C.D. Cal. Jan.

19, 2017)). Rule 9(b) "does not require absolute particularity or a recital of the evidence. [A] complaint need not allege 'a precise time frame,' describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *MyLife.com*, 499 F.Supp.3d at 761 (quoting *United States v. UnitedHealthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016)). It is sufficient that the FTC has "provided several examples of allegedly fraudulent statements." *Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d at 1078.

**ii. The FAC Alleges Defendants' COVID-19 Claims Violate Sections 5 and 12 of the FTC Act.**

In paragraphs 51 through 65, the FAC sets forth specific allegations that show Dr. J's Natural and Dr. J misrepresented that a dietary supplement, Basic Immune IGG, can effectively treat, prevent transmission of, or reduce the risk of contracting COVID-19. In contrast to Defendants' assertions, the allegations are specific as to who made the statements (FAC ¶ 57), when they were made (*id.* ¶¶ 55, 57-58; ¶ 62-63), how they were disseminated (*id.* ¶¶ 57-58; 60-63), and how they were false (*id.* ¶ 64-65).

The FAC therefore more than satisfies the requirements of Rule 9(b) in alleging facts supporting its claims that the Defendants made deceptive claims and false establishment claims regarding Basic Immune IGG in violation of the FTC Act. *Lunada Biomedical, Inc.*, 2016 WL 469898, at *5 (holding the complaint satisfied Rule 9(b) and survived the defendants motion to dismiss because it identified when and how the alleged misrepresentations were made).

Defendants finally assert the FAC fails to meet Rule 9(b)'s heightened pleading standards because the FTC failed to include the entire transcript of Nguyen's statements or the qualifications of the translator. (Mot. at 10.) Defendants cite no cases or other authority that would require either a full transcript or qualifications to be included in a complaint. Moreover, the facts as

alleged are presumed to be true at this stage in the litigation. *U.S. v. Gaubert* 499 U.S. at 327.

### c. The FAC Sufficiently Pleads Common Enterprise Liability

Finally, the FAC more than sufficiently pleads that Defendants acted as a common enterprise.[7] Defendants' arguments that the FAC fails to allege sufficient facts regarding each Defendant's role (Mot. at 13) have no merit. Contrary to Defendants' assertions, the FAC pleads specific facts relating to each Defendant. Moreover, as set forth below, when a common enterprise is alleged, allegations regarding the specific conduct of each of the corporate defendants are not required, and each defendant is liable for the scheme as a whole.

Interrelated companies are a common enterprise when they "exhibit either vertical or horizontal commonality," which makes the entities jointly and severally liable for the "common revenue generated in the course of th[e] scheme." *FTC v. Network Servs.*, 617 F. 3d 1127, 1142 (9th Cir. 2010). Factors that show commonality include common ownership and control, the pooling of resources and staff, and joint participation of the entities in the business venture. *See, e.g.*, *id.* at 1142; *FTC v. Cardiff*, 2020 WL 6540509, at *13 (C.D. Cal. Oct. 9, 2020) (where

---

[7] It is unclear from Defendants' Motion whether they assert the common enterprise allegations are subject to the pleading requirements of Rule 9(b). As with the other allegations, Plaintiff asserts that whatever the pleading standard, the FAC meets it. Moreover, even where some district courts in the Ninth Circuit apply the Rule 9(b) standard in FTC cases, they relax 9(b)'s particularity requirements for allegations about the roles each defendant played. This is especially true when a common enterprise is pleaded. *MyLife.com*, 499 F. Supp. 3d at 761; *FTC v. Ivy Capital Inc.*, No. 2:11-CV-283, 2011 WL 2118626 at *4 (D. Nev. May 25, 2011); *FTC v. Adept Mgmt. Inc.*, No. 1:16-CV-720, 2016 WL 6542837 at *2 (D. Ore. Nov. 3, 2016) (citing *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989)).

there is strongly "interdependent economic interests or the pooling of assets and revenues," common enterprise exists); *FTC v. Alliance Doc. Prep.*, 296 F. Supp. 3d 1197, 1203 (C.D. Cal 2017) (same).

The FTC's complaint alleges the Defendants QYK, Dr. J's Natural, Theo Pharmacy, and EASII (the "Corporate Defendants") were all owned and operated by Rakesh Tammabattula, Dr. Jacqueline Nguyen, or both. (FAC ¶¶ 10-11.) The FAC further alleges that the Corporate Defendants share employees (*id.* ¶ 15), office space and mailing addresses (*id.* ¶ 16), and conducted business through interrelated companies (*id.* ¶ 17). Finally, the FAC alleges that the Defendants commingle funds, have moved hundreds of thousands of dollars among the three corporate accounts, and distributed significant amounts to Tammabattula and Dr. J's joint personal account and Tammabattula's credit card. (FAC ¶ 18.) Each of these allegations states specific facts that the Defendants can either admit or deny; none constitutes the sort of "ultimate facts, such as conspiracy, [or] legal conclusions" that a court could disregard on a motion to dismiss. *Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).

Thus, taking the FTC's factual allegations as true, the FTC's FAC more than establishes that the QYK, EASII, DJN, Theo Pharmacy, Tammabattula, and Dr. J were part of a common enterprise. *Am. Home Servicing Ctr. LLC*, No. 818CV00597JLSKES, 2019 WL 7171733, at *9 (C.D. Cal. Dec. 5, 2019); *FTC v. Adept Management*, 2016 WL 6542837 at *2 ("The complaint sufficiently alleges a common enterprise by articulating control by 10 individual defendants of the 25 corporate defendants . . . intermingling and sharing of officers and employees . . . and sharing of office space and business locations.").

As a result of pleading common enterprise, the FAC is not required to contain detailed factual allegations as to each Corporate Defendants' role. *Am. Fin. Benefits Center*, 324 F. Supp. 3d at 1079 (citing *FTC v. OMICS Grp. Inc.*, 302

F. Supp. 3d 1184, 1195 (D. Nev. 2017) ("Under the common enterprise theory, Defendants' contention that the Complaint fails for not particularizing allegations to each Corporate Defendant is misplaced, as each are liable for the scheme as a whole.")); *FTC v. Johnson*, No. 2:10-cv-02203-MMD, 2013 WL 2450359, at * 5 (D. Nev. June 6, 2013) ("That the FTC does not allege with particularity the actual involvement of each shell entity in the common enterprise is not fatal."). Even if the Court did not relax the 9(b) standard – though it should – the FAC's allegations sets forth with specificity the Defendants' acts as set forth above.

Defendants assert that the FTC "improperly assumes that just because Tammabattula and Nguyen are married that they should be subject to common enterprise liability."[8] (Mot. at 12.) This gross mischaracterization of the pleadings simply ignores the actual language of the FAC. Finally, Defendants argue that the FTC failed to allege a lack of corporate formality or documentation of arms-length transactions. However, even if true, this is does not mean there was no common enterprise. The courts consider several factors, none of which is dispositive to the issue of whether common enterprise exists. *See, e.g.*, *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1218 (D. Nev. 2011), *aff'd in part, vacated in part*, 763 F.3d 1094 (9th Cir. 2014) ("the common enterprise is not an alter-ego analysis. The entities formally may be separate corporations, but operate as a common enterprise.").

**B. THE DEFENDANTS ARGUMENTS FOR DISMISSAL UNDER RULE 12(b)(6) ARE EQUALLY INFIRM.**

Without citing to any Rule, Defendants appear to argue that Rule 12(b)(6) demands this case be dismissed because: (1) pursuant to the AMG decision, the FTC is not entitled to monetary relief under Section 13(b) of the FTC Act; (2) the FTC is not entitled to monetary relief under Section 19(a)(2) of the FTC Act because it has not engaged in the required administrative process; (3) the FTC is not entitled to monetary relief under MITOR because it is an interpretive rule; and (4) the FTC incorrectly pleads the standard for individual monetary liability. As

---

[8] Defendants' attempt to minimize the extensive connections among themselves by arguing that the FTC "alleges that Tammabattula and Nguyen live together and have a joint bank account." (Mot. at 12). They fail to respond to the allegations that QYK, EASII, and Theo Pharmacy all used Tammabattula and Nguyen's home address as their mailing address, that EASII paid for the Glowyy.com domain name and shipments of PPE, and that Theo Pharmacy paid the rent for other Corporate Defendants. (FAC ¶ 16-18).

detailed below, each of these arguments is based on a misstatement of the law or facts.[9]

**1. AMG is Inapposite Because the FAC States a Claim for Injunctive Relief Under Section 13(b).**

Defendants first assert that the complaint must be dismissed pursuant to the Supreme Court's recent *AMG* decision because the FTC is not entitled to monetary relief under Section 13(b) of the FTC Act. Defendants simply misstate the decision. In *AMG*, the U.S. Supreme Court found Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) did not authorize retrospective monetary relief. *AMG Capital Mgt.*, 141 S. Ct. at 1352. In light of that decision, the FTC is not seeking monetary relief under Section 13(b).[10]

However, the FAC also seeks injunctive relief pursuant to Section 13(b), which tellingly the Defendants completely fail to address. Far from requiring dismissal of such a request, *AMG* explicitly confirms "the Commission may use § 13(b) to obtain injunctive relief." *Id.* at 1149; *see also FTC v. Neora LLC*, No

---

[9] Defendants also argue that if the Court grants their motion, Plaintiff should not be allowed to re-plead because doing so would be futile. (Mot. at 13). Such an argument is directly contradicted by the Ninth Circuit's liberal policy favoring amendments, and leave to amend should be freely granted. *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *FTC v. Apex Capital Group*, 2019 WL 9077469 (C.D. Cal. Sept. 16, 2019).

[10] Defendants' motion to dismiss the FAC on these grounds is more analogous to a motion to strike under Rule 12(f). It is unnecessary to strike a subparagraph of the FAC when the FTC has acknowledged that it is no longer seeking monetary relief requested in that subparagraph, and there is no prejudice to Defendants, but the FTC respectfully defers to the Court's judgment.

3:20-cv-01979, 2021 WL 3398153, 4 (N.D. Tex Aug. 2, 2021); *FTC v. American Future Sys. Inc.*, No. 20-2266, 2021 WL 3185777, *1 (E.D. Pa. July 26, 2021).

**2. Section 19 of the FTC Act Provides for Monetary Relief in this Matter.**

Defendants further argue the FTC is not entitled to monetary relief under Section 19 of the FTC Act because it has not engaged in the administrative process required by Section 19(a)(2).[11] Specifically, Defendants contend the FTC has failed to first obtain the cease and desist order required by Section 19(a)(2) of the FTC Act before proceeding in federal court. The FTC, however, is not suing under Section 19(a)(2), but as the FAC clearly states, under Section 19(a)(1), which contains no such requirement.[12]

Section 19(a)(1) of the FTC Act provides:

> If any person. . . violates any rule under this subchapter respecting unfair or deceptive acts or practices (other than an interpretive rule, or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of Section 45(a) of this title), then the Commission may

---

[11] Notably, Defendants do not distinguish between Sections 19(a)(1) and (a)(2), but Plaintiff has attempted to parse their arguments in the most logical way.

[12] Defendants also assert the Supreme Court held that under Section 19, monetary relief is "only available in cases where the FTC began an administrative action under § 5 of the FTC Act and obtained a cease and desist order." (Mot. At 6, citing *AMG*, 141 S. Ct. at 1349). The Court, however, qualified its statement to show that it was only focused on one part of Section 19: "*As relevant here*, § 19 applies only where the Commission begins its §5 process within three years of the underlying violation and seeks monetary relief within one year of any resulting final cease and desist order." *Id.* at 1349 (citing 15.U.S.C. §57b(d)) (emphasis added). A matter brought under Section 19(a)(1) was simply not an issue before the Court.

> commence a civil action against such person, partnership, or corporation for relief under subsection (b) in a United States district court.

15 U.S.C. § 57b(a)(1). Section 19(b) of the FTC Act, 15 U.S.C. §57b(b), goes on to state that a federal court "shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers . . . resulting from the rule violation." This relief "may include, but shall not be limited to, rescission or reformation of contracts, the refund or return of property, the payment of damages, and public notification respecting the rule violation." *Id.*

Thus, Section 19(a)(1) provides both the means of bringing this action and the monetary relief sought. *FTC v. Simple Health Plans LLC*, 2021 WL 4050819, *3 (S.D. Fla. Sept. 5, 2021) ("Based on the plain language of § 19(a)(1), the Commission may proceed directly to court when a person violates certain rules without first conducting an administrative proceeding."); *see also FTC v. Noland*, 2021 WL 4318466, *5 (D. Ariz. Sept. 23, 2021) (FTC need not show violations of a cease and desist order when proceeding under Section 19 for rule violations, therefore, in an action based on a rule violation, "§ 19 authorizes courts to grant relief to redress consumer injury."); *FTC v. Credit Bur. Cen.*, 937 F.3d 764, 773 (7th Cir. 2019) ("[W]hen someone engages in conduct prohibited by a rule, the FTCA authorizes 'such relief as the court finds necessary . . . , [including] *the refund of money or return of property*.' § 57b(b).").

### 3. Because MITOR is a Trade Regulation Rule, the FTC Can Seek Monetary Relief for Violations of the Rule.

Without support, Defendants next assert that MITOR does not provide monetary relief because it is an interpretive, rather than a trade regulation, rule. In fact, MITOR is a trade regulation rule, and thus, the FTC can obtain relief pursuant to Section 19(b) as described above. The original Mail Order Merchandise Rule (as it was then called) itself is prefaced by the language stating it is "promulgated

as a trade regulation rule" *Federal Trade Commission: Part 435—Mail Order Merchandise: Promulgation of* ***Trade Regulation Rule***, 40 FedReg 49492-94 (Oct. 2, 1975)(emphasis added).[13] Therefore, unsurprisingly the courts that have reviewed MITOR, have confirmed its status as a trade regulation rule. *United States v. JS&A Group, Inc.*, 547 F. Supp. 20, 23 (N.D. Ill. 1982), *aff'd*, 716 F.2d 451 (7th Cir. 1983); *see also United States v. Braswell*, 1981 U.S. Dist. LEXIS 15444, at *8 (N.D. Ga. 1981). Defendants cite no authority to the contrary, and cite nothing to support their assertion that MITOR is an interpretive rule.

**4. The FAC Sufficiently Alleges the Individual Defendants had the Knowledge Required by the Law.**

Finally, Defendants argue the FTC incorrectly pleads the standard for individual monetary liability. Again, Defendants get both the law and the facts wrong. Specifically, Defendants argue the FTC "fails to allege that the Defendants knew that their alleged conduct was dishonest or fraudulent" and assert that the FTC Act "applies only where 'a reasonable man would have known under the circumstances' that the conduct at issue was 'dishonest or fraudulent.'" (Mot. at 11) (citing *AMG Capital*, 141 S. Ct. at 1349).[14] Defendants obtain these standards from the language of Section 19(a)(2), codified at 15 U.S. C. § 57b(a)(2), which as explained above is not at issue in this case. *Supra* Section B.2.

Under Section 13(b), individual defendants are liable for injunctive relief where the FTC demonstrates that (1) the corporation committed misrepresentations

---

[13] A correction was issued shortly thereafter. *Federal Trade Commission: Part 435—Mail Order Merchandise: Promulgation of Trade Regulation Rule: Correction*, 40 FR 51582-597 (Nov. 5, 1975).

[14] Although Defendants' arguments are unclear, Plaintiff presumes that this portion of the motion relates to individual liability of Tammabattula and Dr. J.

or omissions upon which a person might reasonably rely, resulting in consumer injury, and (2) the individual defendant participated directly in the unlawful acts or practices or had authority to control them. *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989). Knowledge is simply not an element of individual liability in this context.

The knowledge requirement to hold an individual liable for monetary relief under Section 19(a)(1) is the same as any other FTC action proving deceptive or unfair acts (previously under 13(b)). Specifically that the FTC "establish that defendants had or should have had knowledge or awareness of the misrepresentations . . . but that knowledge requirement may be fulfilled by showing that the defendants had 'actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with intentional avoidance of the truth." *Amy Travel Serv.*, 875 F.2d at 574 (quoting *FTC v. Kitco of Nevada, Inc.*, 612 F.Supp. 1282, 1292 (D.Minn. 1985)). Further, the degree of participation in the business is probative of knowledge. *Id*. (citing *International Diamond*, 1983-2 Trad Cas. (CCH) at 69,707, 1983 WL 1911 (N.D. Cal. 1983)); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 321 (S.D.N.Y. 2008); *FTC v. Discountmetalbrokers Inc.*, 2017 U.S. Dist. LEXIS 221682 (C.D. Cal. Oct. 13, 2017) ; *cf. In re Rensin*, 597 B.R. 177, 182, 186 (Bankr. S.D. Fla 2018) (finding that defendant had knowledge where he had "direct oversight and regular operational involvement in every aspect of the business relevant" to the deceptive conduct). The fact that Section 19(a)(2) explicitly contains a different standard, which 19(a)(1) does not, makes this point clear.

The allegations in the FAC allege sufficient facts to demonstrate the Individual Defendants' knowledge. (FAC ¶¶ 45-50.) The FAC alleges that the

Corporate Defendants were controlled by Tammabattula, Dr. J or both. (FAC ¶¶10-11.) And further sets forth that they participated in the violations at issue. (FAC ¶¶ 45-50.) These allegations of their individual acts within closely-held companies they control is enough to state a claim that they had the requisite knowledge. *See e.g.*, *FTC v, John Beck Amazing Products, LLC*, 865 F.Supp. 2d. 1052, 1080 (C.D. Cal. 2012) (citing *FTC v. Nat'l Urological Group*, 645 F. Supp. 2d 1167, 1207 (N.D. Ga. 2008)). Indeed, the FTC need only assert a plausible claim that the individuals had knowledge. *Kowalsky v. Hewlett-Packard Co.*, No. 10–CV–02176–LHK, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011) ("the heightened pleading standards of Rule 9(b) do not apply to allegations of knowledge"); *see also Ivy Capital Inc.*, 2011 WL 2118626 at *4. Thus, taking all facts in the light most favorable to the FTC, as must be done at this stage in the proceeding, the FAC contains more than sufficient facts to establish the Individual Defendants Tammabattula and Dr. J had constructive, if not actual, knowledge of the shipping time claims and delays sufficient to establish individual monetary liability. (FAC ¶¶45-49.)

Although Defendants argue Tammabattula was attempting to "take all necessary steps to inform consumers once he realized the potential shortage of hand sanitizer" and that Dr. J was also acting to "ensure the public was accurately informed," (Mot. at 12), the FAC makes clear that during this same time period, Defendants were continuing to advertise that hand sanitizer would ship within seven days or less. (FAC ¶ 29-36.)[15] Here again, the facts alleged in the FAC are presumed to be true, and Defendants' allegations to the contrary outside the record

---

[15] That these statements are also violations of MITOR is telling. Those statements offered buyers neither a cancellation and prompt refund nor consent to the delay, and certainly not the option of either. This violates MITOR, 16 CFR 435.2(a)(1).

should be ignored. *See FTC v. Wellness Support Network, Inc.*, No. C–10–04879 JCS, 2011 WL 4026867, at *4 (fact questions are properly addressed at the summary judgment stage of the case and *not* on the pleadings) (emphasis in original). The allegations of the Individual Defendants'knowledge are more than sufficient to sustain the FAC.

## III. CONCLUSION

For the foregoing reasons, the FTC respectfully requests that this Court deny the Defendants' Motion.

Respectfully submitted,

Dated: November 12, 2021

/s/ Kristy M. Tillman
KATHERINE E. JOHNSON, *admitted pro hac vice*
KRISTY M. TILLMAN, *admitted pro hac vice*
Federal Trade Commission
600 Pennsylvania Avenue NW, CC-9528
Washington, DC 20580
(202) 326-2185; (Johnson)
kjohnson3@ftc.gov
(202) 326-3025; (Tillman)
ktillman@ftc.gov
**Attorneys for Plaintiff**
FEDERAL TRADE COMMISSION

## Certificate of Service

I certify that on November 12, 2021, I caused a true copy of the Plaintiff's Opposition to the Defendants' Consolidated Motion to Dismiss the FTC's Amended Complaint and [Proposed] Order to be served by the following means on the following persons:

By Notice of Electronic Filing via the Court's CM/ECF System, pursuant to Local Rule 5-3.2:

**Scott Wellman**
**SWellman@w-wlaw.com**
Attorney for Defendants

/s/ Kristy Tillman
Kristy Tillman