Scott Wellman, SBN: 82897
**WELLMAN & WARREN LLP**
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
Tel: (949) 580-3737
Fax: (949) 580-3738
swellman@w-wlaw.com
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br>v.<br><br>QYK BRANDS LLC d/b/a Glowyy; et al,<br><br>Defendants | Case No. 8:20-cv-01431-PSG-KES<br><br>**DEFENDANT'S REPLY TO MOTION TO DISMISS DKT NO. 90**<br><br>Judge: Hon. Philip S. Gutierrez<br>Date: December 3, 2021<br>Time: 1:30 p.m.<br><br>Discovery Cutoff: December 1, 2021<br>Pretrial Conference: March 4, 2022 at 10:30 a.m.<br>Trial Date: None Scheduled/TBD |

**The Heightened Pleading Standard of Rule 9(b) Applies**

The FTC asserts that the heightened pleading standards of Rule 9(b) do not apply to this case. The FTC only authority for its assertion are cases from other circuits. In a footnote, however, the FTC acknowledges that the one case from this circuit that

took up the issue, *F.T.C. v. Lights of American, Inc.*, 760 F.Supp.2d 848 (C.D. Cal., 2910), held that government actions under the FTC Act are, indeed, subject to the Rule 9(b) standards. The FTC then summarily dismisses this authority as being "incorrect." (OPP P. 2/24-28; FN 4).

In *Lights of America,* the court acknowledged that the issue of whether the heightened pleading standards applied to FTC claims under the FTC Act is an "*Issue of First Impression in the Ninth Circuit." Id.* at 851 (*emphasis in original)*. The court then conducted a detail analysis of why under Ninth Circuit precedent the Rule 9(b) standards applied. In doing this, the court rejected the cases cited by the FTC from other circuits (e.g. *FTC v. Freecom Commins, Inc*., 401 F.3d 1192 (10th Cir. 2005) - *See OPP p.2/11-12).* The court then went on to state that in the Ninth Circuit, Rule 9(b) applies either when a complaint specifically alleges fraud or when the claim 'sounds in fraud.' *Lights of America, supra,* at 852 *citing Davis v. Chase Bank U.S. A., N.A.,* 650 F.Supp.2d 1073, 1089-90 (C.D.Cal.2009). "A claim 'sound[s] in fraud' where the plaintiff 'alleges[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [the] claim. In that event,…the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Lights of America, supra,* at 852. Because the FTC alleged that the defendants in *Lights of America* made "representations that were 'false or not substantiated,'" "[t]he gravamen of these allegations is that the [defendants engaged in a unified course of fraudulent conduct]. The FTC's omission of the "magic word"—fraud'' from its

Complaint does not detract from the apparently fraudulent nature of the allegations." *Id at853.* ¶

The court further reasoned that the "[w]hile the elements of causes of action for violation of the FTC Act and negligent misrepresentation are not identical, they are analogous," and the Ninth Circuit applies the Rule 9(b) standards to negligent misrepresentation claims. *Id.* at 853. Therefore, it follows that the same pleading standard should be applied to claims under the FTC Act.

Finally, the court found "even more instructive" that the Ninth Circuit requires the Rule 9(b) standards for complaints brought under other consumer protection statutes having similar language to the FTC Act such as the California Consumers Legal Remedies Act and the Unfair Competition Law. *Id* at 854 *citing Kerns v. Ford Motor co.,* 567 F.3d 1120, 1125 (9th Cir. 2009).

Here, the FAC alleges at least ten different times that the Defendants course of conduct was "deceptive," (FAC ¶¶ 13, 50, 73, 75,79, 82, 85), or that the Defendants' made false, misleading or unsubstantiated representations (FAC ¶¶ 31, 75, 79). In short, the FAC alleges that the Defendants entire course of conduct was based on deceptive and false representations either with respect to shipping claims or the effects of the Basic IGG supplement. In other words, the FAC's claims all "sound in fraud," *Lights of America, supra,* at 852, so that the heightened pleading of standards of Rule 9(b) apply.

**Plaintiff has Failed to Allege Sufficient Facts in Support of its MITOR Claims.**

Rule 9 requires allegations to "set forth more than the neutral facts necessary to identify the transaction." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Allegations of fraud or mistake must include "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

In its motion, Defendants have discussed in some detail the failure of the FTC to properly plead its claims, and these will not be repeated here. However, a few points merit emphasis.

Plaintiff contends that "QYK clearly and conspicuously promised consumers their products would ship the same day consumers ordered them." (OPP 4/23-24). However, the allegations in the FAC lack specificity and fall far short of the heightened pleading standard in Rule 9(b). Paragraph 23 and 24 of the FAC makes general allegations that Defendants advertised "In Stock" and "Ships Today" through Google ad words and Instagram keyword searches. (FAC ¶¶ 23-24). These allegations fail to specify when and how long these advertisements were up, when they were taken down, and which consumers allegedly saw them.

Next, Paragraph 25 of the FAC identifies a screenshot of a Google ad but still fails to specify how long the advertisement ran. (FAC ¶ 25). Paragraph 26 can be disregarded as a conclusory statement that the advertisements were false without

providing any factual support. (FAC ¶ 25). Paragraph 27 claims that a consumer made a purchase based on the March 12 advertisement. (FAC ¶ 27). However, this allegation once again fails to state who made the purchase and is insufficient to even "identify the transaction." *Kearns v. Ford Motor Co.*, 567 F.3d at 1124.

Similarly, paragraph 35 states in conclusory terms that "[i]n numerous instances, the Defendants did not ship one or more pieces or ordered merchandise…within the timeframes represented…." This fails to identify any of the alleged "numerous instances," or the "timeframes" associated with each instance. Defendants are left with no idea as to which transactions the Plaintiff is referring to.

Plaintiff also contends that QYK later advertised a 7-day shipping window. (Opp. At Page 4:25 and 5:1). However, their citation to the FAC at paragraph 29 and 30 once again lacks specificity because the allegations do not specify who the consumer was that was promised a shipment time, how long the processing time claim was on the website, or if any person purchased in reliance on the ad.

In paragraph 37, the Plaintiff alleges in conclusionary terms that "[n]umerous consumers complained to QYK about shipping delays…." Not one of these "numerous consumers" is identified, nor are the dates of alleged complaints provided, nor do we know if the alleged delay falls outside of the MITOR parameters.

Since the Plaintiff fails to identify who the consumers are, there are no clear MITOR violations alleged. For example, Plaintiff alleges that a customer placed an order on April 5, 2020 and their order did not ship until May 5, 2020. (FAC ¶¶ 32-33).

However, these allegations are not a violation of MITOR because Plaintiff did not allege any advertised shipping time from April 5, 2020. In fact, Plaintiff never actually alleges a single instance of a MITOR violation that actually identifies the customer and the advertisement relied upon by that customer.

Plaintiff also fails to allege that QYK lacked a reasonable basis to expect orders would ship within the advertised times. Plaintiff cites to public statements by Nguyen and Tammabattula on April 2, 3, and 9. (FAC ¶¶ 45-49). However, these statements about shipping delays do not correspond to when the alleged shipping time claims were made. (FAC ¶¶ 25, 29). Accordingly, Plaintiff has failed to allege that QYK lacked a reasonable basis for their shipping time claims because QYK likely did when the alleged shipping time claims were made.

The motion to dismissed based on failure to properly plead the claims should be granted.

**Even if the Court Accepts the FTC's Distinction Between Secs. 19(a)(1) and 19(a)(2) of the Act, the Court Must Still Rule that no Monetary Relief is Available on Counts II, III, IV.**

In its motion, Defendants assert that pursuant to the Supreme Court's recent ruling in *AMG Captial Mgt, LLC v. FTC* 141 S.Ct. 1341 (2021), Plaintiff is not entitled to any monetary relief. This is because the Supreme Court ruled that monetary relief is (1) not available under Section 13 of the FTC Act; and (2) is only available under

Section 19 of the FTC Act if the FTC first obtains a cease-and-desist order pursuant to a full administrative proceeding. (Mot at 6-7).

In response, the FTC makes a distinction between Section 19(a)(1) and Section 19(a)(2). According to the FTC, if a claim is brought under Section 19(a)(2) then (as required by *AMG Cap.Mgt.*) the FTC must first proceed administratively as a pre-requisite to obtaining monetary relief in court. However, if the claim is brought under Section 19(a)(2), no such requirement to first proceed administratively and obtain a cease-and-desist order is required. (OPP 14-15)

The difference between Section 19(a)(1) and 19(a)(2) is that Section 19(a)(1) is limited to claims relating to a violation of a trade *rule* whereas Section 19(a)(2) involves claims of unfair or deceptive acts or practices under Section 5 (i.e. 15 U.S.C.§ 45(a)) of the Act. The FTC then wrongly asserts that it "is not suing under Section 19(a)(2), but as the FAC clearly states, undersection 19(a)(1), which contains no such requirement [to first obtain the cease-and-desist order]." (OPP 14/9-11].

However, a review of the FAC shows that only one of the four counts involve a violation of a rule (Count 1-MITOR Violations; FAC 72,73). The remaining three counts do not involve violations of any trade rule. Rather, each of these remaining counts involve claims of direct violations of Section 5(a) of the FTC Act. Therefore, even if the FTC is right in its distinction between Section 19(a)(1) and 19(a)(2), Counts II, III, and IV cannot be brought under Section 19(a)(1) because they do not involve the violation of a trade rule. Since these claims can only be brought under 19(a)(2),

and since the required predicate of obtaining a cease-and-desist order pursuant to an administrative proceeding was not met, no monetary relief can be obtained for these remaining counts (Counts II, III, and IV). The Court should therefore strike any right to monetary relief from these three Counts.

**In *Amg. Capital Mgt*. the Supreme Court Made No Distinction Between Sec. 19(a)(1) and 19(a)(2) but Discussed Sec. 19 as a Whole.**

In holding that Sec. 13 of the FTC Act did not allow any monetary relief, the Supreme Court in *AMG Capital Mgt* went to some lengths to explain the difference between Sec. 13 and Sec. 19 as "the latter provision (§ 19) comes with certain important limitations that are absent in § 13." *AMG Capital Mgt,* 141 S.Ct. 1341, 1349 (2021). "It is highly unlikely that Congress would have enacted provisions expressly authorizing *conditioned* and *limited* monetary relief if the act, via § 13(b), had already implicitly allowed the Commission to obtain that same monetary relief and more without satisfying those conditions and limitations." (*Id. emphasis in original.*

The Supreme Court goes on to say, "The Commission may obtain monetary relief by first invoking its administrative procedure and then §19's redress provisions (which include limitations)." *Id.* Nowhere does the Supreme Court make a distinction between Sec. 19(a)(1) and 19(a)(2). Presumably, if the Supreme Court intended to make a distinction between the two, it would have done so. Instead, it simply discussed the important limitations contained in Sec. 19 including the requirement to first obtain a cease-and-desist order through a full administrative process. The Supreme Court

ended by commenting that the Commission is "free to ask Congress to grant it further remedial authority." *Id.* at 1351. However, as of now Congress has failed to do so.

As such, not only should the Court dismiss the FTC's monetary claims contained in Counts II, II and IV as discussed above, but also it should dismiss the monetary claim contained in Count I as well because the FTC failed to first seek a cease-and-desist order through the administrative process.

DATED: November 19, 2021

**WELLMAN & WARREN**

By: ___*/s/ Scott Wellman*_____________
Scott Wellman, Esq.
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify, under penalty of perjury, under the laws of the United States of America that on this date, I caused to be electronically filed the foregoing document, and this Certificate of ECF Filing & Service, with the Clerk of the Court using the CM/ECF system, who will send notification of such filing to the following party:

**Attorneys for Plaintiff and Defendants**

KATHERINE E. JOHNSON kjohnson3@ftc.gov;
KRISTY M. TILLMAN ktillman@ftc.gov;
DELILAH VINZON dvinzon@ftc.gov

Attorneys for Federal Trade Commission

DATED this 19th day of November 2021, at Laguna Hills, California.

*/s/ Kelsey Schafer* ___
Paralegal