1  Scott Wellman, SBN: 82897
   Chris Wellman SBN: 304700
2  **WELLMAN & WARREN LLP**
   24411 Ridge Route, Suite 200
3  Laguna Hills, CA 92653
   Tel:  (949) 580-3737
4  Fax: (949) 580-3738
5  swellman@w-wlaw.com
   cwellman@w-wlaw.com
6
7  Attorneys for Defendants

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

11 FEDERAL TRADE COMMISSION,          Case No. 8:20-cv-01431-PSG-KES

12          Plaintiff,                **NOTICE OF MOTION AND**
                                      **MOTION FOR PARTIAL**
13 v.                                 **SUMMARY JUDGMENT;**
                                      **MEMORANDUM OF POINTS**
14 QYK BRANDS LLC d/b/a Glowyy; et al, **AND AUTHORITIES**

15                                    **FILED CONCURRENTLY:**
          Defendants                  **(1) EXHIBITS IN SUPPORT OF**
16                                    **MOTION; (2) STATEMENT OF**
                                      **UNCONTROVERTED FACTS**
17                                    **AND CONCLUSIONS OF LAW**
                                      **PURSUANT TO L.R. 56-1**
18
19
20
21                                    **Magistrate:  Hon. Karen E. Scott**
                                      **Hearing Date: April 8, 2022**
22                                    **Time: 1:30p.m.**
                                      **Courtroom: 6A**
23
24                                    Discovery Cutoff:  December 1, 2021
                                      Pretrial Conference:  March 4, 2022 at
25                                    10:30 a.m.
                                      Trial Date:  None Scheduled/TBD
26
27
28

                            -1-
                 **NOTICE OF MOTION AND MOTION**

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 8, 2022 or as soon thereafter as the matter may be heard in the above-entitled action before the Honorable Philip S. Gutierrez, United States Chief District Court Judge, at the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Courtroom 6A, 6th Floor, Los Angeles, California 90012-4565, Defendants, QYK BRANDS LLC d/b/a Glowyy, DRJSNATURAL LLC, RAKESH TAMMABATTULA, JACQUELINE THAO NGUYEN, EASII, INC., and THEO PHARMACEUTICALS (hereinafter "Defendants") hereby moves the Court to rule on this Motion for Summary Adjudication pursuant to Federal Rule of Civil Procedure 56, L.R. 56-1, and the Court's Standing Civil Order, and requests an order, as filed concurrently herewith and proposed hereto, finding:

1. The monetary relief, if any, that may be recovered by the FTC for any violation of MITOR is limited to "consumer redress" pursuant to §19(b) of the FTC Act.

2. Consumer redress depends on the harm or damage suffered by a consumer as a result of a delay in shipment.

3. As the plaintiff, the FTC bears the burden of showing the harm or damage suffered by the consumer from a delay in shipment.

4.  The damages or harm to a consumer, if any, from a delay in shipment must be proven by the FTC on a case-by-case basis.  A blanket calculation of damage equal to the defendant's net revenue without proper proof is inappropriate.

5.  Disgorgement is an equitable remedy not available under §19(b). Even if it were available, it would be measured by QYK's net profits from the sale of the hand sanitizer and not its net revenue from such sales.

There are no genuine disputes of material facts, therefore, good cause exists for the Court to grant this Motion.

Defendants made a good faith effort to resolve this matter without Court intervention pursuant to Local Rule 7-3. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 24, 2022, with additional meetings on February 8, 2022 and February 11, 2022 concerning related matters.

This Motion is based on this Notice of Motion and Motion, the Statement of Uncontroverted Facts, Declarations and supporting evidence, any supplemental memoranda that may be filed in connection with the Motion, the pleadings and papers on file in this action, and on such oral argument and other matters as the Court may properly consider at the hearing of this Motion.

DATED: February 16, 2022                    **WELLMAN & WARREN**

                            By:      _/s/ Scott Wellman_
                                     SCOTT WELLMAN
                                     Attorneys for Defendants

-3-
**NOTICE OF MOTION AND MOTION**

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

II.     DISCUSSION ......................................................................................... 2

        A. Section 13(b) No Longer Allows for Monetary Relief, so the Court Must

Determine the Measure of Damages under Section 19(b) ............................... 2

        B. FTC v. NOLAND ........................................................................... 5

        C. Even if Disgorgement Were Allowed as the Proper Relief it Would be

Measured by QYK's Net Profits and Not its Net Revenue ............................ 10

        D. FTC v. Figge's Suggested Method of Redress Can also be Used Here .... 11

III.    CONCLUSION ....................................................................................... 13

**NOTICE OF MOTION AND MOTION**

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

*AMG Capital Management, LLC v. Federal Trade Commission* 141 S.Ct. 1341 (2021)............................................................................ 2,11

*FTC v. Electronic Payment Solutions of America,* 482 F.Supp.3d 921 (2020, USDC Ariz.) ............................................................................ 11

*FTC v. Figgie Int'l, Inc.,* 994 F.2d 595, 606–08 (9th Cir.1993) .........................4,7,10,11,12

*FTC v. Noland* 2021 WL 5493443 (2021, USDC Ariz.) ................................. 2, 5,6,7,8,9,10

*FTC v. Silueta Distributors, Inc.* 1995 WL 215313 (1995, N.D. Ca.) ................ 3,5

*FTC v. Washington Data Resources*  856 F.Supp.2d 1247, 1280 (2012, USDC MD Florida) ............................................................................ 2, 4

*Juliano v. Health Maintenance Organization of New Jersey, Inc.* 221 F.3d 279,286 (2nd Cir. 2000) ............................................................................ 1

*Liu v. S.E.C.* 140 S. Ct. 1936 (2020) ............................................................................ 10,11

*SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 102 (2nd Cir. 1978)............................................................................ 4

*Silueta Distributors, Inc.* 1995 WL 215313, 6 ............................................................................ 3,4

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-2-

## Statutes

15 U.S.C. §53(b) (Section 13(b)) ……………………………………………….. 2,11

15 U.S.C. §57b(b) (Section 19(b)) ……………………………...… 1,2,3,4,5,10,11,12,13

**NOTICE OF MOTION AND MOTION**

# I. INTRODUCTION

This motion seeks a ruling on the proper measure of damages assuming that the Federal Trade Commission ("FTC") is able to show liability under the Mailing, Internet, Telephone Order Rule ("MITOR"). Such a ruling is permissible in the context of a Rule 56 motion. *Juliano v. Health Maintenance Organization of New Jersey, Inc.* 221 F.3d 279, 286 (2nd Cir. 2000) ["Whether the court chose the correct method of calculating damages is a question of law"].   This ruling is necessary because of a fundamental difference in the parties' belief of the correct measure of damages.  The FTC believes that the correct measure of damages is the defendant's "net revenue" (i.e. how much defendant received). On the other hand, QYK believes that the correct measure are the damages, if any, suffered by the consumer as a result of the MITOR violation (i.e. the damages arising from the delay in shipment).  Moreover, taking away the defendant's net revenue is a form of disgorgement which is impermissible under the current state of the law and would constitute a form of punitive damages which is expressly prohibited. QYK's position is based on recent cases involving FTC enforcement actions, including a recent case specifically addressing the proper measure of the damages in a MITOR case, which is exactly what we have here.

Even if the Court believes what QYK received from the sales is a proper measure of consumer redress, then under another recent U.S. Supreme Court holding, the proper measure would be the net profits of QYK, not its net revenue.

-1-
**NOTICE OF MOTION AND MOTION**

## II. DISCUSSION

**A. Section 13(b) No Longer Allows for Monetary Relief, so the Court Must Determine the Measure of Damages under Section 19(b).**

The discussion starts with the recent U.S. Supreme Court's decision in *AMG Capital Management, LLC v. Federal Trade Commission* 141 S.Ct. 1341 (2021), which held that Section 13(b) of the FTC Act (15 U.S.C. § 53(b)) "does not authorize the Commission to seek, or a court to award, equitable monetary relief such as restitution or disgorgement" *Id.* at 1343 (Syllabus). Instead, Section 13(b) only allows for non-monetary relief such as injunctive relief. If the FTC seeks monetary relief, it must do so under Section 19(b) of the Act (15 U.S.C. §57b(b)). This point is undisputed and has been conceded by the FTC. Therefore, the question becomes: what is the proper measure of damages under Section 19(b)?

In determining the proper measure of damages under Section 19(b) the courts have recognized that §19(b) "comes with certain important limitations that are absent in §13(b)." *Id.* at 1349. Its goal is to determine the amount of money that is "necessary to redress consumer injury." *FTC v. Noland* 2021 WL 5493443 (2021, USDC Ariz.); see also *FTC v. Washington Data Resources* 856 F.Supp.2d 1247, 1280 (2012, USDC MD Florida) [§19(b) allows "such relief as the court finds necessary to redress injury to consumers ... resulting from the rule violation or the unfair or deceptive act or

practice, as the case may be."]. Moreover, Section 19(b) specifically prohibits the "imposition of any exemplary or punitive damages." As one court put it:

> "Concerned solely with the plaintiff's injury, Section 19(b) confers no authority to award monetary relief that exceeds redress to consumers." *Washington Data Resources* 856 F.Supp.2d at 1280.

As also stated by the court in *FTC v. Silueta Distributors, Inc.* 1995 WL 215313 (1995, N.D. Ca.):

> "The court in an action [granting relief under Section 19(b)] shall have jurisdiction to grant such relief as the court finds *necessary to redress injury to consumers* or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice, as the case may be. Such relief may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation or the unfair or deceptive act or practice, as the case may be; *except that nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages.*

15 U.S.C. § 57b(b) (emphasis added). As found by the Ninth Circuit in *Figgie,* the above-emphasized portions of Section 19(b) indicate that (1) Congress intended to limit the remedies available under Section 19(b) to those that provide redress to consumers, and (2) any monetary remedy authorized

under Section 19(b) that accomplishes more than redress acts as prohibitive punitive damages. 994 F.2d at 607." *Silueta Distributors, Inc.* 1995 WL 215313, 6.

By seeking QYK's net revenue (i.e. gross sales less refunds), the FTC is seeking disgorgement without proving the damages, if any, suffered by a consumer who received a shipment late.  This is because the purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his ill-gotten gain. *SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 102 (2nd Cir. 1978). However, the FTC is seeking to take away the amount received by QYK without any proof that that the consumer was injured by a delay in shipment or the amount of that injury. This simplistic, blanket approach exceeds any actual consumer redress and amounts to exemplary and punitive damages which is prohibited by §19(b).  This is impermissible under §19(b).

In finding that "Section 19(b) prohibits disgorgement in excess of consumer redress," the court in *FTC v. Washington Data Resources*  856 F.Supp.2d 1247, 1281 (2012, USDC MD Florida)  cited the following from the Ninth Circuit's holding in *FTC v. Figgie Int'l, Inc.,* 994 F.2d 595, 606–08 (9th Cir.1993):

"'[T]he statute authorizes only "redress ... to consumers,' and 'specifically prohibits the imposition of exemplary or punitive damages.' 15 U.S.C. § 57b(b). If disgorgement of Figgie's receipts would exceed redress to consumers, then in

the circumstances of this case requiring Figgie to pay the Commission the excess would be for purposes of punishing Figgie, not making redress to the consumers... Thus, Section 19(b) prohibits disgorgement in excess of consumer redress."

See also *FTC v. Silueta Distributors, Inc.* 1995 WL 215313, *6 (1995, N.D. Ca.) ["In *Figgie,* the Ninth Circuit reversed the district courts' disgorgement remedy under Section 19(b) because it found that disgorgement, which went beyond providing redress to consumers, was not authorized under Section 19(b)."]

**B. FTC v. Noland**

*FTC v. Noland* 2021 WL 5493443 (2021, USDC Ariz.) is strikingly similar to this case, and a copy of the court's opinion is attached to the motion for the Court's convenience.  As in this case, *Noland* concerned a violation of MITOR.[1] The court granted the FTC's summary adjudication on liability but denied it on its request for monetary relief.  As in this case, the FTC argued that consumers redress equaled defendant's full sales irrespective of any injury to the consumer. The court rejected this, as there was no evidence that this was the actual damage suffered by consumers:

---

[1] Defendant is unaware of any published case dealing with the MITOR statute except for *Noland*. Indeed, it does not even appear the FTC has cited a single case dealing with MITOR except for *Noland* in their summary judgment motion.

**NOTICE OF MOTION AND MOTION**

"The problem with the FTC's damages methodology is that it goes beyond redressing injury to consumers and provides a potential windfall to consumers. Under the FTC's proposed approach, if a consumer ordered and paid for $5,000 of products from [the defendant], the shipping deadline expired without notification of the consumer's right to a refund, [the defendant] shipped the product the very next day after the deadline expired, and the consumer was satisfied with the products upon receipt and immediately consumed them, the consumer would nevertheless be entitle to a $5,000 damage award...It is difficult to see  how such an outcome could be viewed as 'necessary to redress injury' to the affected consumer... Put another way, there is simply no "proof of injury" in that scenario." *Id.* at *4

The court noted that "the FTC does not argue that [the defendant] *never* subsequently fulfilled these orders. Instead, the FTC's theory is that, at the moment any shipment became overdue (and [the defendant] failed to provide the notice of the buyer's right to seek a refund or consent to a shipping delay), the consumer immediately suffered harm equal to the purchase price of the unshipped product, irrespective of whether the consumer later received the product from [the defendant]." *Noland* 2021 WL 5493443 at *3 (emphasis in original).   The court rejected this position:

"The FTC is not entitled to summary judgment on its request for an award of
$630,377 in damages arising from the Merchandise Rule violations.  Although
the Court does not foreclose the possibility that consumers suffered some form
of cognizable harm from the violations, the all-or-nothing methodology
presented in the FTC's moving papers is flawed because it fails to account for
the inherent value of the product that consumers ultimately received, even if the
product was shipped late." *Id.* at *3.

In reaching its conclusion, the *Noland* court relied on *FTC v. Figgie Int'l, Inc.*,
994 F.3d 595, 605 (9th Cir. 1993) and found "that that there may be no redress without
proof of injury ... [a]nd the relief must be necessary to redress the injury." *Id. *4 citing
FTC v. Figge,* supra*, at 605.* In other words, the FTC must prove that consumers were:
(1) damaged because of any delay in shipment; and (2) quantify the amount of such
damage.

The FTC argument that it should be relieved of its burden of proof as the
plaintiff was also rejected by the court:

"As an initial matter, there is no merit to the FTC's contention that the Individual
Defendants 'must bear the burden of proving which late orders were eventually
sent.' (Doc. 365 at 12 n.7.) The FTC is the plaintiff in this action and has chosen
to affirmatively move for summary judgment on the issue of damages. '[W]hen
the moving party [at summary judgment] has the burden of proof on an issue,'

that party 'must affirmatively put forth evidence that would satisfy its proof burden at trial. If the moving party fails to identify and document facts that would support a finding for that party at trial, then the motion must fail.' *See* 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 56, at 162 (2021)." *Noland* 2021 WL 5493443

The court went on to say that it was the FTC's burden, as plaintiff to prove how each consumer was damaged:

"Moreover, even assuming (without deciding) that the FTC might be able to secure a full-purchase-price damage award under § 57b(b) on behalf of a particular consumer who was so dismayed by a shipping delay that he would have opted for a full refund had he been given proper notice of his refund rights under the Merchandise Rule, the FTC has made no effort to identify any such consumers in its motion. Instead, the FTC asks the Court to assume that every consumer who received a late shipment was dissatisfied and would have requested an immediate refund if aware that such refunds were available. This approach is improper—for each consumer on whose behalf a damage award is sought, the FTC must prove why that consumer was harmed and identify the amount of money that is 'necessary to redress' that consumer's injury. Although the Court doesn't discount the FTC's concerns about the burdensomeness of this approach, which the FTC believes would undermine its ability to pursue 'large

consumer redress actions' (Doc. 398 at 8 n.5), the Court is not at liberty to rewrite § 57b(b) based on such concerns. The bottom line is that the statute only authorizes damage awards as 'necessary to redress injury' and the FTC has not established that an award of $630,377 is necessary to redress the consumer injuries flowing from SBH's Merchandise Rule violations. 2021 WL 5493443 at 5.

The *Noland* court went on to state that, "[a]lthough it is possible such a consumer might suffer other forms of harm from a late shipment—such as lost resale opportunities or a decrease in the market price of the product between the anticipated and actual shipping dates—the FTC [must prove] such forms of harm. *Id.* at *4

Here, as in *Noland,* every consumer received the product (hand sanitizer) ordered. (USF 2).   Although, because of the unforeseen pandemic, some of the products were delivered later than desired—they were all delivered. Any consumer that asked for a refund received one. (USF 3).   There is no evidence of widespread dissatisfaction with the hand sanitizer or that it was not happily used. (USF 5). Everyone remembers the early months of the pandemic (March, April, May 2020) when the entire Global supply chain was destroyed, and the world's commerce, for a brief period of time, came to a screeching halt. This could not have been anticipated by any person and certainly was not anticipated by QYK.

As discussed in *Noland,* simply using the net revenue as the measure of damages ignores the inherent value of the product that was received, and most likely used:

> "[T]he fundamental problem with the FTC's damages methodology is that it fails to account for the inherent value of the products and services received by consumers, thereby creating a windfall." *Noland* 2021 WL 5493443 at 7.

Allowing damages in the full amount of the product's purchase price (i.e. revenue), while at the same time allowing the consumer to keep and use the products, is the very same "windfall" the courts in *Noland* and *Figgie* found to be improper. Such a remedy would be punitive and is expressly prohibited under §19(b).

The Court should rule that the correct measure of damages under §19(b) is limited to actual "consumer redress," that this consumer redress depends on the actual damages, if any, suffered by the consumers after taking into account the inherent value of the hand sanitizer which they all received,  that these damages must be proved on a case by case basis by the FTC, as it is the plaintiff in this action, and that a blanket finding of net revenue, without proper proof, as damages is not appropriate.

**C. Even if Disgorgement Were Allowed as the Proper Relief it Would be Measured by QYK's Net Profits and Not its Net Revenue.**

Even if the Court were to find that disgorgement of QYK's revenue was the proper measure of monetary relief under §19(b), disgorgement is not measured by the defendant's revenue, but instead by its net profits.  In *Liu v. S.E.C.* 140 S. Ct. 1936

-10-
**NOTICE OF MOTION AND MOTION**

(2020), another relatively recent U.S. Supreme Court case, the court held that disgorgement must be limited to the defendant's *net profits,* not its gross or net revenue.

The rule established by *Liu* has been followed by another district court in the Ninth Circuit in a FTC case. For instance, in *FTC v. Electronic Payment Solutions of America,* 482 F.Supp.3d 921 (2020, USDC Ariz.), the FTC asked for disgorgement under §13(b).[2] However, the court found that, in line with *SEC v. Liu,* disgorgement is limited to net profits in FTC enforcement actions. *Id.* at 929.

This is probably a moot issue, as the mandates of *AMG Capital* are clear that disgorgement is not proper under § 13(b). However, if the Court finds that the FTC is entitled to a disgorgement award under 19(b), such award must be limited to QYK's net profits, not its net revenue.

**D.  FTC v. Figge's Suggested Method of Redress Can also be Used Here.**

With the above legal principles in mind, *FTC v. Figgie Int'l, Inc.,* 994 F.2d 595, 606–08 (9th Cir.1993)  does present a methodology that may be applicable to fashioning a remedy in this matter. Instead of finding a specific sum of consumer redress, the court  in *Figgie* ordered the defendant to deposit into an escrow account an amount equal to the net profits it received from the sale of the products in question.

---

[2] This was before the U.S. Supreme Court decided the *AMG Capital* case where it held that no form of monetary relief is available under §13(b).

The FTC was then able to manage the account to provide refunds to consumers who purchased the products, did not want the product, and requested a refund. *Figgie* at 605. If refund requests exceeded the net profits made from the product sales, then the defendant was required to deposit additional funds to cover these refunds. If the refund requests were less than the escrow deposit (i.e. less than the net profits), then the balance was required to be returned to the defendant, as to keep it would amount to punitive damages, which is not allowed under §19(b). *Id.* at 607.  Of importance is that the consumers were *only* entitled to a refund if the consumer did not want or use the product and returned it for a refund:

> "Those consumers who decide, after advertising which corrects the deceptions by which Figgie sold them the heat detectors, that nevertheless the heat detectors serve their needs, may then make the informed choice to keep their heat detectors instead of returning them for refund." *Figgie* 994 F.2d at 606.

Such a methodology could be applied here as well. QYK could be ordered to place its net profits from the sales of the hand sanitizers that experienced a shipping delay into escrow. The FTC could manage this fund and inform the consumers involved that if they wish to return the hand sanitizer, they would receive a full refund. If the amount of refund returns exceeded the amount in the fund, then QYK would be required to make up the difference. If after a period of time (to be determined by the

-12-
**NOTICE OF MOTION AND MOTION**

1 | Court), the amount remaining in the fund exceeded the refund request, then the balance

2 | would be returned to QYK.

3

4 | ### III. CONCLUSION

5 | Based on the foregoing, the Court should grant QYK's motion for summary

6 | adjudication and find that disgorgement[3] is not an available remedy under Section

7

8 | 19(b). The Court should also order that any blanket determination of damages is

9 | improper such that the FTC must carry its burden of proof of showing actual harm

10 | (damage) from any shipment delays. Finally, the Court should also order that, in the

11

12 | event liability is established, that QYK should be ordered to deposit its net profits into

13 | an escrow account managed by the FTC to fund any refunds to consumers who were

14 | dissatisfied with the hand sanitizer and who returned the product back for the refund.

15

16 | If the account requires additional funding, QYK is ordered to meet those demands.

17 | However, any funds that remain in the account after a reasonable period determined

18 | by the Court, those funds should be returned to QYK.

19

20

21 | DATED: February 16, 2022          **WELLMAN & WARREN LLP**

22

23 | By:     _/s/ Scott Wellman_

24 | Scott Wellman
   | Attorneys for Defendants

25

26 | _____

27 | [3] Disgorgement, for purposes of this motion, is a demand for QYK's entire net revenue without proof of harm or damage to the consumer.

28 | -13-
   | **NOTICE OF MOTION AND MOTION**

1

**CERTIFICATE OF SERVICE**

2

I hereby certify, under penalty of perjury, under the laws of the United States of America

3

that on this date, I caused to be electronically filed the foregoing document, and this Certificate

4

of ECF Filing & Service, with the Clerk of the Court using the CM/ECF system, who will send

5

notification of such filing to the following party:

6

7

**Attorneys for Plaintiff and Defendants**

8

KATHERINE E. JOHNSON kjohnson3@ftc.gov;
KRISTY M. TILLMAN ktillman@ftc.gov;

9

DELILAH VINZON dvinzon@ftc.gov
CHRISTOPHER ERICKSON cerickson@ftc.gov

10

11

Attorneys for Federal Trade Commission

12

13

DATED this 16th day of February 2022, at  Laguna Hills, California.

14

*/s/ Kelsey Schafer____*
Paralegal

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

ATTACHMENT

FTC v. NOLAND

2021 WL 5493443 (2021, USDC Ariz.)

Wellman, Scott 2/16/2022
For Educational Use Only

**Federal Trade Commission v. Noland, Slip Copy (2021)**

2021 WL 5493443

2021 WL 5493443
Only the Westlaw citation is currently available.
United States District Court, D. Arizona.

FEDERAL TRADE COMMISSION, Plaintiff,

v.

James D. NOLAND, Jr., et al., Defendants.

No. CV-20-00047-PHX-DWL

|

Signed 11/23/2021

**Attorneys and Law Firms**

Evan Michael Mendelson, Jonathan Wesley Ware, Federal Trade Commission, Washington, DC, for Plaintiff.

Daniel Baca Mestaz, Williams Mestaz LLP, David Lawrence Abney, Ahwatukee Legal Office PC, Phoenix, AZ, Daryl M. Williams, John Michael Arriola, Williams Commercial Law Group LLP, Scottsdale, AZ, Jonathan Lance Slotter, Pro Hac Vice, Stephen R. Cochell, Cochell Law Firm PC, Houston, TX, Maurice Robert Mitts, Pro Hac Vice, Mitts Law LLC, Philadelphia, PA, for Defendants James D. Noland, Jr., Lina Noland, Scott A. Harris, Thomas G. Sacca.

Daryl M. Williams, Williams Mestaz LLP, Kimberly Irene Friday, Osborn Maledon PA, Phoenix, AZ, Jonathan Lance Slotter, Pro Hac Vice, Cochell Law Firm PC, Houston, TX, for Defendant Success By Media Holdings Incorporated.

Daryl M. Williams, Williams Commercial Law Group LLP, Scottsdale, AZ, Jonathan Lance Slotter, Pro Hac Vice, Cochell Law Firm PC, Houston, TX, Kimberly Irene Friday, Osborn Maledon PA, Phoenix, AZ, for Defendant Success By Media LLC.

Jonathan Lance Slotter, Pro Hac Vice, Cochell Law Firm PC, Houston, TX, Warren John Stapleton, Osborn Maledon PA, Phoenix, AZ, for Defendant Enhanced Capital Funding.

Jonathan Lance Slotter, Pro Hac Vice, Cochell Law Firm PC, Houston, TX, Maurice Robert Mitts, Pro Hac Vice,

Mitts Law LLC, Philadelphia, PA, for Defendant Carol Magda.

**ORDER**

"Dominic W. Lanza, United States District Judge

**\*1** On September 9, 2021, the Court issued an order granting the FTC's motion for summary judgment as to liability against the Individual Defendants. (Doc. 406.) As relevant here, this order concluded that the Individual Defendants were liable for violating the FTC's Merchandise Rule and Cooling-Off Rule and should be held jointly and severally liable for any monetary award arising from those Rule violations. (*Id.* at 48-54.)

Now pending before the Court is the FTC's motion for summary judgment as to monetary remedies. (Doc. 365.) The FTC seeks the entry of judgment against the Individual Defendants in the amount of $1,156,865.50, composed of $630,377 in damages arising from Merchandise Rule violations and $526,488.50 in damages arising from Cooling-Off Rule violations. (*Id.*) The motion is fully briefed (Docs. 392, 398) and neither side requested oral argument. For the following reasons, the motion is denied.

**DISCUSSION**

I. <u>Legal Standard</u>

"The court shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC,* 771 F.3d 1119, 1125 (9th Cir. 2014). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the

**Wellman, Scott 2/16/2022**
**For Educational Use Only**

**Federal Trade Commission v. Noland, Slip Copy (2021)**

2021 WL 5493443

nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors*, 771 F.3d at 1125 (internal quotation marks omitted).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If ... [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* There is no issue for trial unless enough evidence favors the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). At the same time, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254. Thus, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Id.* at 255.

II. <u>Merchandise Rule</u>

A. **Background**

**\*2** The relevant text of the Merchandise Rule, 16 C.F.R. § 435.2, provides that it is a violation of the FTC Act:

(b)(1) Where a seller is unable to ship merchandise within [the time clearly and conspicuously stated in the solicitation or within 30 days if no time is clearly and conspicuously stated], to fail to offer to the buyer, clearly and conspicuously and without prior demand, an option either to consent to a delay in shipping or to cancel the buyer's order and receive a prompt refund. Said offer shall be made within a reasonable time after the seller first becomes aware of its inability to ship within the applicable time set forth in paragraph (a)(1) of this section, but in no event later than said applicable time.

\* \* \*

(c) To fail to deem an order cancelled and to make a prompt refund to the buyer whenever:

(1) The seller receives, prior to the time of shipment, notification from the buyer cancelling the order pursuant to any option, renewed option or continuing option under this part;

(2) The seller has, pursuant to paragraph (b)(1)(iii) of this section, provided the buyer with a definite revised shipping date which is more than thirty (30) days later than the applicable time set forth in paragraph (a)(1) of this section or has notified the buyer that it is unable to make any representation regarding the length of the delay and the seller:

(i) Has not shipped the merchandise within thirty (30) days of the applicable time set forth in paragraph (a)(1) of this section, and

(ii) Has not received the buyer's express consent to said shipping delay within said thirty (30) days;

Wellman, Scott 2/16/2022
For Educational Use Only

Federal Trade Commission v. Noland, Slip Copy (2021)

2021 WL 5493443

(3) The seller is unable to ship within the applicable time set forth in paragraph (b)(2) of this section, and has not received, within the said applicable time, the buyer's consent to any further delay;

(4) The seller has notified the buyer of its inability to make shipment and has indicated its decision not to ship the merchandise;

(5) The seller fails to offer the option prescribed in paragraph (b)(1) of this section and has not shipped the merchandise within the applicable time set forth in paragraph (a)(1) of this section.

(*Id.*)

In the summary judgment order on liability, the Court concluded that the FTC's proffered evidence—which was largely undisputed—established that the Individual Defendants had violated the Merchandise Rule in the course of their operation of Success By Health ("SBH"). (Doc. 406 at 48-51.) Not only did the Individual Defendants admit in their answer that Merchandise Rule violations occurred, but the undisputed evidence submitted by the FTC showed that consumers experienced extensive shipping delays related to certain SBH products and that SBH adhered to an explicit no-refunds policy. (*Id.*) Although unresolved issues remained as to the extent of the Merchandise Rule violations and the harm, if any, associated with those violations, the Court stated that "[t]he scope of the violations is better taken up in the Remedies MSJ." (*Id.* at 51.)

B. **The Parties' Arguments**
The FTC argues the Individual Defendants should be held liable for $630,377 in damages based on two sets of Merchandise Rule violations. (Doc. 365 at 1.) First, the FTC presents evidence that SBH sold a large number of "Founder Packs" during its early stages but did not timely ship all of these orders due to production and shipping backlogs and did not offer a refund after the shipments became overdue. (*Id.* at 2.) The FTC argues that, as of March 13, 2018, SBH "still owed approximately 200 Founder Pack purchasers $370,130 in products" and that all of the unfulfilled orders on this date

were at least six weeks old. (*Id.* 2.) Notably, the FTC does not argue that SBH *never* subsequently fulfilled these orders. Instead, the FTC's theory is that, at the moment any shipment became overdue (and SBH failed to provide notice of the buyer's right to seek a refund or consent to a shipping delay), the consumer immediately suffered harm equal to the purchase price of the unshipped product, irrespective of whether the consumer later received the product from SBH. (*Id.* at 11-12.) Although the FTC acknowledges the novelty of its argument—it is "unaware of any court having addressed the proper monetary remedy for a ... standalone Merchandise Rule violation" (*Id.* at 11 n.6)—it attempts to justify its methodology as follows:

> **\*3** Defendants, presumably, will argue that consumers were not harmed because they eventually received the products. As a threshold matter, that is wrong. In many cases, consumers never received their orders. In any event, the Rule does not permit Defendants to choose their own remedy. By law, consumers' orders were cancelled when Defendants failed to offer them the opportunity to consent to or cancel a delayed shipment. 16 C.F.R. § 435.2(c)(5). The fact that Defendants nevertheless chose to send the products makes those products unordered merchandise, which consumers by law may treat as a gift, and for which they have no obligation to return. *See* 39 U.S.C. § 3009 ("Any merchandise mailed in violation of subsection (a) of this section [without authorization] ... may be treated as a gift by the recipient, who shall have the right to retain, use, discard, or dispose of it in any manner he sees fit without any obligation whatsoever to the sender.")

(*Id.* at 12.) At a minimum, the FTC argues that "if Defendants intend to argue that consumers who eventually received their orders are not entitled to refunds, they must bear the burden of proving which late orders were eventually sent" and that such an approach is "particularly [appropriate] here, given Defendants' poor shipping records." (*Id.* at 12 n.7.) The second set of Merchandise Rule violations proffered by the FTC involve shipping delays associated with certain products—the FTC presents evidence that SBH did not timely ship $51,337 of orders for hot cocoa, $27,643 of orders for Rooibos tea, $61,815 of orders for chai tea, $47,955 of orders for an anti-aging "time capsule" product,

Wellman, Scott 2/16/2022
For Educational Use Only

**Federal Trade Commission v. Noland, Slip Copy (2021)**

2021 WL 5493443

and $71,497 of orders for a particular product containing CBD. (*Id.* at 2-4.) Once again, the FTC does not argue that all of these orders never shipped—it simply contends they were "missing *or* late." (*Id.* at 4, emphasis added.)

The Individual Defendants oppose the FTC's motion in general and the FTC's Merchandise Rule arguments in particular. (Doc. 392.) As an initial matter, the Individual Defendants emphasize that the FTC "concede[s] that no court has applied the approach it advocates for here." (*Id.* at 1.) On the merits, the Individual Defendants dispute whether any Merchandise Rule violations occurred (*id.* at 2-3); argue that the FTC's damages methodology is flawed because it "fails to account for the value of the product affiliates received" (*id.* at 3); assert that all customers ultimately received either the products they ordered or a refund (*id.* at 4-5); argue they cannot be held jointly and severally liable for any damage award resulting from a Rule violation (*id.* at 6-7); and contend the unclean hands doctrine bars the FTC from seeking a monetary award in this case (*id.* at 7-8).

In reply, the FTC begins by reiterating why the Individual Defendants should be held liable for violating the Merchandise Rule and why the Individual Defendants' arguments to the contrary are legally and factually unsupported. (Doc. 398 at 1-5.) On the issue of damages, the FTC concedes that "it is impossible to tell from Defendants' records whether and why they actually shipped orders" but argues that "[e]ven if Defendants had eventually fulfilled all orders, that would not limit their liability" because "[a]ny products Defendants sent after [the required shipping] date were unordered merchandise that consumers may treat as a gift." (*Id.* at 5-6.) Next, the FTC discusses several individual product orders and explains why, even if these orders were eventually delivered, the damages calculation should not change. (*Id.* at 6-8.) Finally, the FTC suggests in a footnote that the Court should adopt its damages methodology because "[r]equiring more would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of the FTC Act." (*Id.* at 8 n.5, citation and internal quotation marks omitted.)

**C. Analysis**

The FTC is not entitled to summary judgment on its request for an award of $630,377 in damages arising from the Merchandise Rule violations. Although the Court does not foreclose the possibility that consumers suffered some form of cognizable harm from the violations, the all-or-nothing methodology presented in the FTC's motion papers is flawed because it fails to account for the inherent value of the product that consumers ultimately received, even if the product was shipped late.

**\*4** The starting point for the analysis is the statute giving rise to the FTC's claim for Merchandise Rule-related damages. Under 15 U.S.C. § 57b(b), district courts "have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from [a] rule violation.... Such relief may include ... the payment of damages ... except that nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages." In the Court's view, the key phrase is "necessary to redress injury to consumers." As the Ninth Circuit has recognized, "[i]t follows" from this statutory language "that there may be no redress without proof of injury ... [a]nd the relief must be necessary to redress the injury." *FTC v. Figgie Int'l, Inc.*, 994 F.3d 595, 605 (9th Cir. 1993).

The problem with the FTC's damages methodology is that it goes beyond redressing injury to consumers and provides a potential windfall to consumers. Under the FTC's proposed approach, if a consumer ordered and paid for $5,000 of products from SBH, the shipping deadline expired without notification of the consumer's right to a refund, SBH shipped the products the very next day after the deadline expired, and the consumer was satisfied with the products upon receipt and immediately consumed them, the consumer would nevertheless be entitled to a $5,000 damage award under § 57b(b), with the Individual Defendants held jointly and severally liable. It is difficult to see how such an outcome could be viewed as "necessary to redress injury" to the affected consumer. *Cf. In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 143 (3d Cir. 2019) ("Equity abhors a windfall.") (quotation omitted). Put another way, there is

Wellman, Scott 2/16/2022
For Educational Use Only

**Federal Trade Commission v. Noland, Slip Copy (2021)**

2021 WL 5493443

simply no "proof of injury" in that scenario. *Figgie Int'l*, 994 F.2d at 605.

The FTC's arguments to the contrary are unavailing. As an initial matter, there is no merit to the FTC's contention that the Individual Defendants "must bear the burden of proving which late orders were eventually sent." (Doc. 365 at 12 n.7.) The FTC is the plaintiff in this action and has chosen to affirmatively move for summary judgment on the issue of damages. "[W]hen the moving party [at summary judgment] has the burden of proof on an issue," that party "must affirmatively put forth evidence that would satisfy its proof burden at trial. If the moving party fails to identify and document facts that would support a finding for that party at trial, then the motion must fail." *See* 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 56, at 162 (2021). Thus, any uncertainty over whether SBH eventually shipped some of the orders on which the FTC's damages calculation is based—and the FTC concedes in its reply that "it is impossible to tell from Defendants' records whether and why they actually shipped orders" (Doc. 398 at 5)—must be resolved against the FTC.[1]

The presence of this uncertainty means that the FTC's motion for summary judgment must be denied. Even assuming, as the FTC argues, that a late shipment is legally considered "cancelled" under 16 C.F.R. § 435.2(c)(5) and/or "a gift" under 39 U.S.C. § 3009(b), it doesn't follow that the value of the late-shipped product must be disregarded for purposes of deciding how large of a damage award (if any) is necessary to redress the consumer's injury. As discussed above, granting a full refund to a satisfied consumer who received a one-day-late shipment would result in a windfall and thus go beyond § 57b(b)'s narrow focus on redressing injury. Although it is possible such a consumer might suffer other forms of harm from a late shipment—such as lost resale opportunities or a decrease in the market price of the product between the anticipated and actual shipping dates—the FTC has made no effort to prove the existence of such forms of harm.

**\*5** Moreover, even assuming (without deciding) that the FTC might be able to secure a full-purchase-price damage award under § 57b(b) on behalf of a particular consumer who was

so dismayed by a shipping delay that he would have opted for a full refund had he been given proper notice of his refund rights under the Merchandise Rule, the FTC has made no effort to identify any such consumers in its motion. Instead, the FTC asks the Court to assume that every consumer who received a late shipment was dissatisfied and would have requested an immediate refund if aware that such refunds were available. This approach is improper—for each consumer on whose behalf a damage award is sought, the FTC must prove why that consumer was harmed and identify the amount of money that is "necessary to redress" that consumer's injury. Although the Court doesn't discount the FTC's concerns about the burdensomeness of this approach, which the FTC believes would undermine its ability to pursue "large consumer redress actions" (Doc. 398 at 8 n.5), the Court is not at liberty to rewrite § 57b(b) based on such concerns. The bottom line is that the statute only authorizes damage awards as "necessary to redress injury" and the FTC has not established that an award of $630,377 is necessary to redress the consumer injuries flowing from SBH's Merchandise Rule violations.[2]

## III. Cooling-Off Rule

### A. Background

The Cooling-Off Rule, codified at 16 C.F.R. § 429.1, gives consumers the right to cancel, within three business days, any purchase of at least $130 in goods or services that occurs at a location other than the merchant's place of business. *Id.* §§ 429.0(a), 429.1(g). The Rule also requires the seller to provide written or oral notice of this right and to provide a form "Notice of Cancellation" that the buyer can use to cancel the sale. *Id.* § 429.1(a)-(b), (e). As with the Merchandise Rule, a violation of the Cooling-Off Rule constitutes a violation of § 5(a) of the FTC Act. 15 U.S.C. § 57a(d)(3).

In their response to the FTC's motion for summary judgment on liability, the Individual Defendants admitted "to not providing a three-day right of [rescission] for categories of sales falling within the definition of the cooling off rule" and only "dispute[d] whether any harm was caused." (Doc. 348

Wellman, Scott 2/16/2022
For Educational Use Only

**Federal Trade Commission v. Noland, Slip Copy (2021)**

2021 WL 5493443

at 4 n.2.) Accordingly, the Court granted the FTC's motion for summary judgment on liability and clarified that "[t]he parties' dispute about the extent of harm caused by these violations will be addressed when the Court resolves the Remedies MSJ." (Doc. 406 at 51-52.)

### B. The Parties' Arguments

The FTC argues the Individual Defendants should be held liable for $526,488.50 in damages based on violations of the Cooling-Off Rule. (Doc. 365 at 7-10, 13-17.) The FTC's methodology in reaching this figure is simple—the FTC presents evidence that SBH made a total of $526,488.50 "in nonrefundable ticket and product sales" via a series of " 'training' events ... [at which the Individual] Defendants created a frenzied atmosphere, featuring chanting, dancing, crying, and affiliates standing at their chairs shouting at each other" and argues that, because SBH did not comply with the Cooling-Off Rule when making these sales, the entire sum constitutes recoverable damages under § 57b(b). (*Id.*) According to the FTC, the Individual "Defendants bear the burden of proving consumers would *not* have exercised their refund rights, even if fully informed of Defendants' deceptive claims," and "[b]ecause they cannot meet that burden, they are required to provide full refunds to consumers in all transactions that violated the Rule." (*Id.* at 13.) In support of this burden-shifting approach, the FTC cites the Ninth Circuit's decision in *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993), as well as decisions from other courts. (*Id.* at 14-15.)

The Individual Defendants disagree, arguing that "there is a factual issue whether there is any harm to be remediated because of the failure to give notice of a three-day right to rescind" because "fashioning a remedy for particular violations is a heavily factual inquiry. Was a particular customer harmed? Does the FTC's shutdown of the business, thus preventing it from hosting paid-for events qualify as harm due to the lack of notice? The FTC simply has not established that any consumers would have, but for lack of ... notice, elected to return their order within three days, another factual inquiry." (Doc. 392 at 5-6.) The Individual Defendants also note that, "[t]o date, the receiver has

received *de minimus* [sic] refund requests for products that could not be sold." (*Id.* at 6.) Finally, the Individual Defendants argue that "[t]he FTC has not presented any evidence that any affiliate whose order fell within the scope of 16 CFR § [4]29.1 ceased making orders from the company, nor is there any plausible basis (a factual issue) to argue that any affiliate would have timely returned the order if they had been aware of their ability to do so. Indeed, by contrast, more than 1,000 affiliates of Success By Health have attempted to intervene to prevent or undo the destructive consequences of the FTC's overreaching ... that has harmed affiliates." (*Id.*)

*6 In reply, the FTC argues that, because the Individual Defendants did "not address the burden-shifting framework" discussed in the FTC's motion, the Individual Defendants have "concede[d] that they bear the burden of proof." (Doc. 398 at 9.) As for the absence of refund requests since the receiver took over, the FTC argues it is irrelevant because SBH's assets were frozen as part of the TRO (and, thus, consumers had no incentive to make post-TRO refund requests). (*Id.* at 9-10.) Finally, as for the post-TRO intervention efforts of SBH affiliates, the FTC argues that such efforts have "nothing to do with whether buyers, fully informed of Defendants' various lies, would have exercised their rescission rights if given the chance." (*Id.* at 10.)

### C. Analysis

The FTC is not entitled to summary judgment on its request for an award of $526,488.50 in damages arising from the Cooling-Off Rule violations. The FTC has made no effort to prove that particular consumers would have exercised their refund rights under the Cooling-Off Rule—instead, the FTC seeks to flip the burden onto the Individual Defendants to identify consumers who wouldn't have exercised their refund rights. The Court declines to follow this approach because it is inconsistent with Rule 56 and goes beyond § 57b(b)'s narrow focus on providing damage awards "necessary to redress injury." Perhaps there are some consumers who would have exercised their refund rights under the Cooling-Off Rule after making purchases at SBH training events (and, thus, suffered some redressable injury from SBH's

Wellman, Scott 2/16/2022
For Educational Use Only

**Federal Trade Commission v. Noland, Slip Copy (2021)**

2021 WL 5493443

failure to comply with the Cooling-Off Rule), but it was the FTC's burden to identify them and it has failed to do so.

*Figgie* does not compel a different conclusion. There, the FTC sought an award of damages under § 57b(b) against a manufacturer of "heat detector" devices. 994 F.2d at 598-600. Although heat detectors were "considered efficacious" at the start of 1970s, their effectiveness was called into question by a series of studies in the mid-1970s, eventually prompting the National Fire Protection Association to eliminate the recommendation that heat detectors be installed alongside smoke detectors. *Id.* Despite these developments, the manufacturer in *Figgie* continued selling heat detectors during the 1980s and made misrepresentations about their utility and safety properties. *Id.* In response, the FTC sought a cease-and-desist order against the manufacturer, under the theory that the manufacturer's "representations were misleading and deceptive in the absence of an explanation of the limits of heat detectors and the comparative superiority of smoke detectors." *Id.* at 600. After prevailing in an administrative proceeding before an ALJ, persuading the Commission to uphold most of the ALJ's findings, and persuading the Fourth Circuit to affirm the Commission's cease-and-desist order, the FTC brought an action for consumer redress against the manufacturer under § 57b(b). *Id.* at 600-01. At summary judgment, the district court ordered the manufacturer to make a payment of $7.59 million, representing its net profits from the sale of heat detectors during the relevant time period, into an escrow fund against which consumers could make a claim for redress and further held that the manufacturer could potentially be held liable for up for $49.95 million— representing the gross revenue it earned from the sale of heat detectors during the relevant period—depending on how many consumers submitted claims. *Id.* at 605. The Ninth Circuit affirmed in relevant part, holding (among other things) that (1) the district court properly presumed the existence of consumer reliance on the manufacturer's false statements, and placed the burden on the manufacturer "to prove the absence of reliance," because "[a] presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the

defendant's product"; (2) each consumer was potentially entitled to damages equal to the full purchase price of the heat detector because the manufacturer was akin to a merchant who passes off rhinestones as diamonds, and "[c]ustomers who purchased rhinestones sold as diamonds should have the opportunity to get all of their money back" because "[t]he seller's misrepresentations tainted the customers' purchasing decisions" and "[t]he fraud in the selling, not the value of the thing sold, is what entitles consumers in this case to full refunds or to refunds for each detector that is not useful to them"; and (3) the district court's overall approach to damages "create[d] no windfall" because "[t]hose consumers who decide, after [reviewing] advertising which corrects the deceptions by which [the manufacturer] sold them heat detectors, that nevertheless the heat detectors serve their needs, may then make the informed choice to keep their heat detectors instead of returning them for refunds." *Id.* at 605-06.

**\*7** As this discussion shows, *Figgie* does not support the FTC's approach in this case for at least three reasons. First, the claim that gave rise to the monetary award in *Figgie* was that the manufacturer's marketing practices were unfair and deceptive because the manufacturer was making affirmative misrepresentations about the nature and quality of its product. *Id.* at 598 ("[The manufacturer] was ordered to cease and desist from the 'unfair or deceptive' practices it used to market its ... heat detectors."); *id.* at 600 ("The ALJ concluded that [the manufacturer's] representations were misleading and deceptive in the absence of an explanation of the limits of heat detectors and the comparative superiority of smoke detectors."). It was against this backdrop that the Ninth Circuit applied the "presumption of actual reliance" that arises in the context of "widely disseminated" "material misrepresentations." *Id.* at 605-06.[3] But here, the FTC's claim under the Cooling-Off Rule does not turn on the presence of material misrepresentations concerning the nature of the underlying product or service— rather, the Individual Defendants are charged with failing to comply with a rule requiring the disclosure of certain information related to refund rights. It is an open question whether the burden-flipping rule the Ninth Circuit applied in

Wellman, Scott 2/16/2022
For Educational Use Only

**Federal Trade Commission v. Noland, Slip Copy (2021)**

2021 WL 5493443

*Figgie* would be deemed applicable in this dissimilar context.[4]

Second, as discussed in relation to the Merchandise Rule, the fundamental problem with the FTC's damages methodology is that it fails to account for the inherent value of the products and services received by consumers, thereby creating a windfall. *Figgie*, if anything, amplifies this concern. There, although the district court "ordered that consumers be allowed to receive full refunds" because the product's "value ... was de minimis," the Ninth Circuit held that this particular conclusion was "error" "in light of the Commission's conclusive finding that heat detectors have some value." *Id.* at 606 (cleaned up). Nevertheless, the Ninth Circuit concluded the error was harmless because of the manner in which the district court structured the judgment, which "create[d] no windfall" because customers "may ... make the informed choice to keep their heat detectors instead of returning them for refunds." *Id.* In other words, the Ninth Circuit held in *Figgie* that the only way a consumer could receive a monetary award equal to the full purchase price of the heat detector was to return the product to the manufacturer. Here, the FTC has made no similar allowance—it seeks to secure a monetary award that would allow each consumer to recoup the full purchase price while retaining the underlying goods and services. This is the very windfall that *Figgie* took pains to avoid. *See also CFPB v. Nationwide Biweekly Admin., Inc.*, 2017 WL 3948396, *12 (N.D. Cal. 2017) (rejecting regulatory agency's damages methodology, where agency sought a refund of all setup fees paid by consumers with no offset for the value of the service provided, and emphasizing "that even in *Figgie*, the restitutionary award was structured in a way that those customers who elected to maintain the benefits of the products they had purchased (however minimal) would not receive the windfall of both a benefit and a refund"); *In re Sanctuary Belize Litig.*, 2019 WL 5267774, *3 n.4 (D. Md. 2019) (explaining that the FTC's restitution methodology would result not in a "windfall" to consumers because "consumers who are repaid the prices they paid for the lots would be obliged to relinquish the lots to defendants" and citing *Figgie* as a decision supporting this approach).

**\*8** The unusual structure of the judgment in *Figgie* provides a final, if related, reason why that case is distinguishable. There, the manufacturer's initial obligation was to remit only $7.59 million (its net profits), not $49.95 million (its gross proceeds), and additional liability was contingent on whether consumers subsequently "ma[d]e the informed choice" to "make a valid claim for ... redress." 994 F.2d at 606. *See also id.* at 601 ("The court ordered that [the manufacturer] pay $7.59 million into a fund which would refund the full purchase price of ... heat detectors to customers. If aggrieved customers claim less than that amount, the balance is to be used for 'indirect redress' in the form of corrective advertising or donations to non-profit fire safety organizations. If customers claim more, [the manufacturer] is to continue to add to the fund as necessary, to a maximum of $49.95 million."). Here, in contrast, the FTC is not seeking an initial monetary award limited to SBH's (or the Individual Defendants') net profits. Instead, the FTC seeks the immediate entry of judgment against the Individual Defendants for the full amount of the purchases potentially affected by the Cooling-Off Rule violations, irrespective of whether consumers desire or seek redress.

Accordingly, **IT IS ORDERED** that the FTC's motion for summary judgment on remedies (Doc. 365) is **denied**.

**All Citations**

Slip Copy, 2021 WL 5493443

---

Wellman, Scott 2/16/2022
For Educational Use Only

**Federal Trade Commission v. Noland, Slip Copy (2021)**

2021 WL 5493443

### Footnotes

1   The FTC's burden-flipping approach is also problematic because a receiver was appointed at the outset of this case, at the FTC's request, to assume control over SBH and related entities. Thus, the Individual Defendants no longer have first-hand access to SBH's shipping records.

2   Because summary judgment is being denied on this basis, the Court does not reach the Individual Defendants' other arguments.

3   Similarly, in *In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373 (D. Md. 2020), which is another case the FTC cites in support of its burden-flipping request (Doc. 365 at 15; Doc. 398 at 8), the claim giving rise to the monetary award was a claim based on material misrepresentations. *Id.* at 433-34.

4   Although the FTC argues the operative question is "whether buyers, *fully informed of Defendants' various lies*, would have exercised their rescission rights if given the chance" (Doc. 398 at 10, emphasis added), this jumbles together distinct inquiries. Under the Cooling-Off Rule, a consumer could have cancelled a covered purchase for any reason (or no reason at all). Thus, although some of the FTC's claims in this case turn on the presence of misrepresentations, the Cooling-Off Rule claim does not.

---

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.