KATHERINE E. JOHNSON, *admitted pro hac vice*
kjohnson3@ftc.gov
CHRISTOPHER ERICKSON, *admitted pro hac vice*
cerickson@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue NW, CC-9528
Washington, DC  20580
(202) 326-2185 (Johnson); -3671 (Erickson)

Local Counsel
DELILAH VINZON
Cal. Bar No. 222681; dvinzon@ftc.gov
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300; Fax: (310) 824-4380

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 8:20-cv-01431-PSG-KES |
| Plaintiff, | **FTC'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| QYK BRANDS LLC d/b/a Glowyy, et al. | |
| Defendants. | *FILED CONCURRENTLY: Supplemental Declaration of Connor Geiran; Supplemental Declaration of Katherine Johnson; Declaration of Hal Stephens; Genuine Disputed Issues; Additional Statement of Undisputed Facts* |
| | Hearing Date: April 8, 2022 at 1:30p.m. |
| | Courtroom: 6A |
| | Pretrial Conference: May 13, 2022 at 2:30p.m. |
| | Trial Date: May 19, 2022 at 9:00a.m. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Table of Contents**

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION .................................................................................1

LEGAL STANDARD.............................................................................2

ARGUMENT .......................................................................................3

I.   DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS MATTER OF LAW ON THE ISSUE OF MONETARY RELIEF. ..................................................3

A.  Defendants Concede MITOR Liability. ..........................................3

B.  There is No Dispute Section 19 Grants Authority for the Monetary Relief in the Amount the FTC Seeks. .......................................................5

C.  Defendants Have Not Met Their Burden to Show Lack of Any Evidence to Support the FTC's Requested Relief. ....................................................7

D.  Neither *Figgie* Nor *Noland* Compel a Different Result. ...................13

E.  At Most Defendants Argue for a Triable Issue of Fact. ...................19

CONCLUSION ....................................................................................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003) ..............4

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970)...........................2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)................................2, 5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ....................................2

*Cliffdale Associates*, 103 F.T.C. 110, 165 (1984)......................................9

*Cyberspace.Com*, 453 F.3d 1196, 1201 (9th Cir. 2006)................................9

*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) ..............12

*Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136
(9th Cir. 2001)...................................................................4

*FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218, 223 (S.D.N.Y. 2002) ............6

*FTC v. Acquinity Interactive, LLC*, No. 14-60166-CIV, 2021 WL 3603594, at *7
(S.D. Fla. Aug. 13, 2021), reconsideration denied, No. 14-60166-CIV, 2021 WL
4840585 (S.D. Fla. Sept. 29, 2021) .................................................7

*FTC v. Bronson Partners, LLC*, 654 F.3d 359 (2d Cir. 2011) ...........................9, 15

*FTC v. Bronson Partners, LLC*, 674 F.Supp.2d 373, 384 (D. Conn. 2009), *aff'd*,
654 F.3d 359 (2d Cir. 2011)........................................................8, 9

*FTC v. Cardiff*, No. EDCV182104DMGPLAX, 2021 WL 3616071, at *2 (C.D.
Cal. June 29, 2021) ...............................................................6

*FTC v. Figgie Int'l*, 994 F.2d 595 (9th Cir. 1993)........................................ passim

*FTC v. Gill*, 265 F.3d 944, 958 (9th Cir. 2001).........................................10

*FTC v. Inc.21.com Corp.*, 475 Fed. App'x 106, 110 (9th Cir. 2012)....................10

*FTC v. John Beck Amazing Profits*, 888 F. Supp. 2d 1006, 1018 (C.D. Cal. 2012) .7

*FTC v. Kuykendall*, 371 F.3d 745, 766-67 (10th Cir. 2004)...............................9, 15

*FTC v. Mortgage Relief Advocates LLC*, Case No. CV-14-5434-MWF(AGRx), 2015 WL 11257575, at *9 (C.D. Cal. July 1, 2015)..........................................8, 9

*FTC v. Nat'l Bus. Consultants, Inc.*, 781 F. Supp. 1136, 1143 (E.D. La. 1991).......6

*FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2020 WL 4530459, at *4 (D. Ariz. Aug. 6, 2020) ....................................................................................................7

*FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 5493443, at *4-5 (D. Ariz. Nov. 23, 2021) ...................................................................... 1, 14, 15, 17

*FTC v. Rensin*, 687 F. App'x 3, 5 (2d Cir. 2017) ....................................................8

*Liu v. SEC*, 140 S. Ct. 1936 (2020).........................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ........3

*Nissan Fire & Marine Ins. Co. v. Fritz Companies*, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) ..........................................................................................................2

*Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).........................2

*United States v. MyLife.com, Inc.*, No. CV 20-6692JFW(PDX), 2021 WL 4891776, at *13 (C.D. Cal. Oct. 19, 2021) ...................................................................6

*Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997) ...............................................................................................................3

**Statutes**

15 U.S.C. § 57b ("Section 19").................................................................. passim

15 U.S.C. § 57b(b) ................................................................................................6

**Other Authorities**

40 Fed. Reg. 51582, 51597 (1975) .......................................................................11

40 Fed. Reg. at 51582 n.12 ...................................................................................12

40 Fed. Reg. at 51589 ...........................................................................................11

40 Fed. Reg. at 51590 ...........................................................................................16

40 Fed. Reg. at 51592 ...........................................................................................11

iv

**Rules**

Fed. R. Civ. P. 56(a)............................................................................................2

Fed. R. Civ. P. 56(c)(2)......................................................................................10

Mail, Internet, and Telephone Order Rule ("MITOR"), 16 C.F.R. Part 435.......1, 19

MITOR, § 435.2(a) .........................................................................................7, 15

MITOR, § 435.2(a)(1)..........................................................................................3

MITOR, § 435.2(b) ..................................................................................3, 10, 15

MITOR, § 435.2(c) .................................................................................10, 11, 15

MITOR, § 435.2(c)(1) ...................................................................................10, 16

MITOR, § 435.2(c)(5)..........................................................................................10

**INTRODUCTION**

Defendants' summary judgment motion ("Motion") is a feeble attempt to escape paying redress for liability they do not and cannot seriously contest. Rather than challenge any of the four counts alleged against them, instead they try to challenge the Court's ability to enter the full amount of the FTC's requested monetary judgment based on misguided readings of the law.

Defendants' Motion fails for two reasons. First, Defendants argue that the FTC's request for monetary relief (equivalent to Defendants' net revenues) is "disgorgement" and thus improper. Alternatively, they argue if disgorgement is proper, it should be measured by net profits. These arguments are a classic "red herring." The parties agree: Section 19 of the FTC Act[1] determines the proper measure of monetary relief here. Section 19 permits the FTC to seek full refunds for all harmed consumers where a rule respecting unfair or deceptive acts or practices—here, MITOR[2]—has been violated. Defendants' description of such a remedy as "disgorgement" contradicts the plain language of the statute; and therefore, is entirely specious.

Second, Defendants argue, as a matter of law, that two cases, *Figgie*[3] and *Noland*,[4] preclude the FTC's requested monetary relief, instead requiring that the FTC prove damages on an individual-by-individual basis. Defendants, however, ignore *Figgie's* express holding: the FTC does not have to prove individual reliance to prove consumer injury—only widely disseminated material misrepresentations. The FTC's evidence easily satisfies this requirement. The *Noland* decision likewise ignores *Figgie's* unambiguous holding (and the express

---

[1] 15 U.S.C. § 57b ("Section 19").

[2] Mail, Internet, and Telephone Order Rule ("MITOR"), 16 C.F.R. Part 435.

[3] *FTC v. Figgie Int'l*, 994 F.2d 595 (9th Cir. 1993).

[4] *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 5493443, at *4-5 (D. Ariz. Nov. 23, 2021).

1  language of MITOR commanding refunds).  Moreover, that case was decided
2  under markedly different facts rendering its analysis inapposite.  Thus, Defendants'
3  summary judgment motion is meritless.

4  ## **LEGAL STANDARD**

5  Summary judgment is only appropriate where "there is no genuine dispute as
   to any material fact and the movant is entitled to judgment as a matter of law."
6
7  Fed. R. Civ. P. 56(a).  A factual issue is "genuine" where there is sufficient
8  evidence that a reasonable trier of fact could resolve the issue in the nonmovant's
9  favor, and an issue is "material" when its resolution might affect the outcome of
10  the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
11  (1986).

12  As the moving party, Defendants bear the initial burden of informing the
13  court the basis for their motion and identifying those portions of the pleadings and
14  discovery responses which demonstrate the absence of a genuine issue of material
15  fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Because the
16  nonmoving party, the FTC, will have the burden of proof at trial, Defendants can
17  meet their initial burden of production by demonstrating there is an absence of
18  evidence to support the FTC's case.  *See id.* at 325.  Or it can produce evidence
19  negating an essential element of the FTC's claim.  *Adickes v. S.H. Kress & Co.*,
20  398 U.S. 144, 158–60 (1970); *Nissan Fire & Marine Ins. Co. v. Fritz Companies*,
21  Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  If a moving party (here, Defendants)
22  fails to carry its initial burden, the nonmoving party (FTC) has no obligation to
23  produce anything, even if the nonmoving party would have the ultimate burden of
24  persuasion at trial.  *Nissan* 210 F.3d at 1102.  If the movant meets its burden (by
25  introducing some evidence negating an essential element of the claim), the
26  nonmovant must produce enough evidence to show a genuine dispute.  *Id.*; *see also*
27  *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).  When

28

deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997).

Applying this standard, Defendants' Motion must fail. First, Defendants wrongly attempt to recharacterize the FTC's alleged harm as "disgorgement" rather than challenge the factual bases of consumer harm. Second, Defendants failed to meet their burden to show an absence of evidence to support the FTC's case (and do not even attempt to introduce evidence negating an element of the FTC's claim for monetary relief). Third, had Defendants met their burden by introducing some evidence negating the FTC's claim for monetary relief (which they did not), the FTC has already introduced sufficient evidence to show there is at least a genuine dispute of material fact for trial. In fact, the FTC's evidence indisputably shows it is entitled to its requested monetary judgment as a matter of law.

## **ARGUMENT**

### I.   **DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS MATTER OF LAW ON THE ISSUE OF MONETARY RELIEF.**

#### A.   **Defendants Concede MITOR Liability.**

MITOR makes it unlawful to disseminate shipping time claims without a reasonable basis, and for a seller to fail to give their purchasers notice of delays before the shipment date passes and offer immediate cancellation and a refund. MITOR, § 435.2(a)(1); § 435.2(b). Defendants concede they violated both provisions.[5]

---

[5] The FTC offers the evidence submitted with its Summary Judgment Motion (ECF Nos. 135, 168, "FTC SJ Motion") in support of this opposition to Defendants'

3

Specifically, Defendants admit they disseminated the claim "In Stock & Ships Today" between March 4 and March 18, 2020.[6] Defendants further concede they lacked a reasonable basis to continue marketing hand sanitizer as "In Stock & Ships Today" after March 4, 2020, when they learned their first stock of hand sanitizer would not arrive because "the pandemic [] was just hitting the global supply line." ECF No. 169-2, Decl. of Rakesh Tammabattula ("RT Decl.") ¶¶ 4-5 ("One shipment of 10,000 bottles was scheduled to arrive at our office/warehouse on March 4, 2020 . . . . Instead, it arrived on March 9, 2020."). Further, as set forth in the FTC's SJ Motion, Defendants' Shopify records show consumers purchased at least 18,337 bottles of hand sanitizer between March 4 and March 9—over 15,000 more than Defendants admit to having in stock.[7] SUF ¶ 81. Defendants

---

Motion. Because these are essentially cross-motions for summary judgment on the issue of monetary relief, the Court must consider the factual evidence the FTC presented with its SJ Motion when considering this Motion, *i.e.*, the Court must consider the FTC's Statement of Undisputed Facts and supporting exhibits (ECF Nos. 137-167). *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (holding the district court erred in not considering the evidence plaintiffs submitted in support of their motion for summary judgment as evidence in opposition to defendants' motion for summary judgment). Further, because liability goes unaddressed in Defendants' Motion, the Court must draw all inferences in favor of finding MITOR violations from the facts set forth in the FTC's SJ Motion. *See Fair Hous. Council*, 249 F.3d at 1136 ("when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.' [] In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion.") (internal citations omitted); *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003) ("In ruling on crossmotions for summary judgment, we evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.").

[6] *See* ECF No. 136, FTC's Statement of Undisputed Facts in Support of Motion for Summary Judgment ("SUF") ¶¶ 59-65; 77; 123.

[7] Defendants assert they had 2,000 bottles of hand sanitizer before beginning their advertising campaigns. ECF No. 169-2, RT Decl. ¶ 4. Even if true, which it is not,

further admit that packages sat unshipped for days.  RT Decl. ¶ 10.  Faced with this uncertainty and the significant demand, Defendants did not stop or pause their claims but instead continued to disseminate their "In Stock & Ships Today" claim for weeks, until Google shut it down.[8]  Defendants further admit they sold hand sanitizer for a full week before notifying any customer of the delay, *see* RT Decl. ¶¶ 4-6, during which time those customers that purchased were promised same-day shipping, *supra* n.6.  Thus, there is no doubt Defendants violated MITOR.[9]

**B.    There is No Dispute Section 19 Grants Authority for the Monetary Relief in the Amount the FTC Seeks.**

Defendants assert, wholly without support, that the FTC is seeking disgorgement, rather than relief under Section 19.  Mot. at 4.  In fact, the FTC is unambiguously seeking relief under Section 19, which specifically permits the Court to award refunds as equitable monetary relief for Rule violations.[10]  15

---

*see* SUF ¶¶ 91-94, this assertion does not create a material dispute.  *Anderson*, 477 U.S. at 248 ("material" when its resolution might affect the outcome of the suit under governing law).  Even assuming they had 2,000 bottles at the outset, Defendants still lacked a reasonable basis to continue the campaign after March 4, 2020 because they knew their first stocks of hand sanitizer would not arrive on the 4th; they knew that obtaining additional hand sanitizer would be difficult; and they knew of the significant consumer demand.  *See supra* Sec. I.A; SUF ¶¶ 124-125; 316; 351; 366; 379-380; 418.  Indeed, even with the supposed 2,000 bottles, Defendants did not ship a single bottle "Today" during that initial campaign.  SUF ¶ 197.  Moreover, it does not affect the other alleged MITOR violations, *e.g.*, Defendants' failure to deem orders canceled after failing to timely ship or to provide Delay Option Notices.  FTC's SJ Mot. at 31-34.

[8] SUF ¶¶ 184 (Defendants never paused or stopped the Google AdWords' Campaign); ¶ 317 (Defendant Tammabattula never voluntarily stopped or paused his advertising campaign); ¶ 189 (Google suspended the Google AdWords account on or around March 18, 2020 for violating Google's advertising policies).

[9] Of course, these were not Defendants' only MITOR violations.  *See* FTC' SJ Mot. at 5-17.

[10] The violations of MITOR are actionable under Section 19(a)(1), and thus triggers the Court's authority to "grant such relief as the court finds necessary to

5

U.S.C. § 57b(b) (a court may "grant such relief as the court finds necessary to redress injury to consumers or other persons . . . resulting from a rule violation" including "the refund of money"); *see also FTC v. Cardiff*, No. EDCV182104DMGPLAX, 2021 WL 3616071, at *2 (C.D. Cal. June 29, 2021) (holding that Section 19 authorizes the FTC to seek equitable monetary relief such as the refund of money resulting from rule violations); *United States v. MyLife.com, Inc.*, No. CV 20-6692JFW(PDX), 2021 WL 4891776, at *13 (C.D. Cal. Oct. 19, 2021) (appropriate measure of consumer redress under Section 19 is net revenues attributable to the Rule violation); *FTC v. Nat'l Bus. Consultants, Inc.*, 781 F. Supp. 1136, 1143 (E.D. La. 1991) ("Generally, the amount of restitution in FTC consumer redress cases is the purchase price of the relevant product or business opportunity, less any refunds or money earned.") (citing cases); *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218, 223 (S.D.N.Y. 2002) (holding that fraud in the selling of the product entitles consumers to full refunds under Section 19 for violation of Telemarketing Sales Rule).  Under this authority, the FTC seeks $3,086,339.99 as monetary relief for the harm caused by Defendants' MITOR violations.  This amount represents all hand sanitizer and PPE sales to consumers, less refunds, during the relevant period.

Defendants do not challenge that Section 19 authorizes the specific relief the FTC seeks, *i.e.*, refunds.  Indeed, they agree that Section 19 is controlling.  Mot. at 2 ("If the FTC seeks monetary relief, it must do so under Section 19(b).").  Instead, they attempt to recharacterize the FTC's requested relief as "disgorgement."  However, refunds are not disgorgement.  "Disgorgement" is designed to deprive a wrongdoer of unjust enrichment, and includes all gains flowing from the deceptive activities.  *FTC v. John Beck Amazing Profits*, 888 F. Supp. 2d 1006, 1018 (C.D.

---

redress injury to consumers or other persons . . . resulting from a rule violation" including "the refund of money" under Section 19(b).  15 U.S.C. § 57b(b).

Cal. 2012).  However, "Section 19(b) does not limit its remedies to the amount of unjust enrichment."  *FTC v. Figgie Int'l. Inc.*, 994 F.2d 595, 606 (9th Cir. 1993).  Indeed, the Ninth Circuit in *Figgie* explained the proper measure of monetary relief under Section 19 is what is necessary to redress consumer injury.  *See id.* 606-607.  "Because Congress provided for 'redress,' Figgie's receipts and profits provide neither the top nor the bottom limit of the remedy."  *Id.* at 607.  Defendants' argument that the FTC seeks "disgorgement" has no foundation beyond their unsupported assertion.

Defendants seek to mischaracterize the remedy here only to invoke *Liu v. SEC*, 140 S. Ct. 1936 (2020) as a limiting principal.  If the FTC seeks disgorgement, they say, then *Liu* demands the remedy be limited to net profits, rather than net revenues.  Mot. at 10-11.  However, *Liu* is inapposite here, as Section 19 fully provides for the remedy the FTC seeks.  *Figgie*, 994 F. Supp. 2d. 606-608; *see also FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2020 WL 4530459, at *4 (D. Ariz. Aug. 6, 2020) ("improper to read *Liu* as necessarily curtailing the scope of the FTC's authority"); *FTC v. Acquinity Interactive, LLC*, No. 14-60166-CIV, 2021 WL 3603594, at *7 (S.D. Fla. Aug. 13, 2021), reconsideration denied, No. 14-60166-CIV, 2021 WL 4840585 (S.D. Fla. Sept. 29, 2021) (rejecting *Liu* as applicable to FTC cases).  Thus, refunds for consumer loss, not disgorgement, is the proper measure of harm.

## C.  Defendants Have Not Met Their Burden to Show Lack of Any Evidence to Support the FTC's Requested Relief.

The Defendants' motion is premised on a fallacy—that the FTC has failed to establish any facts showing consumers were injured by Defendants' shipment delays.  Mot. at 4, 10.  In reality, the facts support refunds for all previously unrefunded sales consistent with two legal bases under Section 19.  Under the first, the FTC seeks redress for the Defendants' violations of MITOR, § 435.2(a) for

disseminating deceptive shipment time claims without a reasonable basis.  For these violations, the FTC seeks the amount consumers spent on hand sanitizer and PPE they would not have spent absent Defendants' deception.  *See Figgie*, 994 F.2d at 606 ("the fraud is in the selling, not the value of the thing sold.").  As the Ninth Circuit explained, the defendant was required to pay "the amount spent by consumers" because "the seller's misrepresentations tainted the customers' purchasing decisions.  If they had been told the truth, perhaps they would not have bought" the product at all.  *Id.*  This reasoning is particularly strong here, where obtaining PPE immediately at the outset of the pandemic was paramount to consumers.  Had consumers known that Defendants' immediate shipping claims (which took advantage of these temporal concerns) were false, they likely would have looked elsewhere.  Under *Figgie*, once the Commission carries its burden to show that the misrepresentation was widely disseminated and consumers purchased the product, Section 19 provides that each individual consumer's purchasing decision is presumed tainted by Defendants' fraud.  *Figgie*, at 605-06 ("presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product . . . . Because Figgie has presented no evidence to rebut the presumption of reliance, injury to consumers has been established.") (internal citations omitted); *see also FTC v. Mortgage Relief Advocates LLC*, Case No. CV-14-5434-MWF(AGRx), 2015 WL 11257575, at *9 (C.D. Cal. July 1, 2015) ("A showing of individual reliance is not required for redress under Sections 13(b) and 19 of the FTC Act")).[11]  Here, the FTC clearly

---

[11] The burden then shifts to Defendants, "to rebut the determined baseline loss calculation, allowing them to 'put forth evidence showing that certain amounts should offset the sanctions assessed against them.'"  *FTC v. Rensin*, 687 F. App'x 3, 5 (2d Cir. 2017); *FTC v. Bronson Partners, LLC*, 674 F.Supp.2d 373, 384 (D. Conn. 2009), *aff'd*, 654 F.3d 359 (2d Cir. 2011); *see also Figgie*, 994 F. Supp. 2d

has established the predicate for the presumption of reliance by showing Defendants' admittedly baseless shipment time claims were widely disseminated (SUF ¶¶ 78, 195; *see also* ¶ 168, 171-178, 183-185-187, 263, 265); material[12] (SUF ¶¶ 382; *see also* Additional Statement of Undisputed Facts ["Addt'l SUF"] ¶¶ 448-450); and that consumers purchased Defendants' products[13] (SUF ¶¶ 79, 80, 81, 82, 90, 113, 117, 119, 200).

The burden thus shifts to Defendants to prove on an individual-by-individual basis any offset (*e.g.*, refund, satisfaction, or non-reliance). *See FTC v. Bronson Partners, LLC*, 654 F.3d 359, 369 (2d Cir. 2011) (defendant must demonstrate "that individual transactions were atypical and resulted in a lower-than-expected gain to the wrongdoer."); *FTC v. Kuykendall*, 371 F.3d 745, 766-67 (10th Cir. 2004) (en banc) ("The defendants may then put forth evidence showing offset is required because **certain consumers** . . . were satisfied with their purchases.") (emphasis added); *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 386 (D. Conn. 2009) (noting that, where presumption of reliance applies, evidence that "repeat customers did not rely on the deceptive advertising" would entitle

---

at 606 ("Some courts hold that at this point, the burden shifts to the defendant to prove the absence of reliance.").  Defendants introduced no evidence (with this Motion) that shows the presumption does not hold for each purchasing consumer.

[12] A representation is material "if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product."  *FTC v. Mortg. Relief Advocs. LLC*, No. CV145434MWFAGRX, 2015 WL 11257575, at *2 (C.D. Cal. July 1, 2015) (*quoting Cyberspace.Com*, 453 F.3d 1196, 1201 (9th Cir. 2006) (*quoting Cliffdale Associates*, 103 F.T.C. 110, 165 (1984)).

[13] The FTC introduced evidence in its SJ Motion that Defendants' net revenues (gross sales from the sale of hand sanitizer and PPE from March through August 2020 less refunds) was $3,086,238.99. SUF ¶¶ 279, 401 (DJN net revenues $406,333.30); ¶ 391 (Glowyy gross sales $2,933,691.11); ¶ 397 (Glowyy refunds $253,786.42); ¶¶ 398-399 (Glowyy net revenues $2,449,881.92); ¶ 400 (DJN total sales $439,657.95).

9

defendants to an "**offset** against the restitutionary baseline" for sales made to **those customers**) (emphasis added), *aff'd* 654 F.3d 359 (2d Cir. 2011).  Here, Defendants have presented no such evidence.  Thus, "injury to consumers has been established." *Figgie*, 994 F.2d at 606.  Consequently, drawing all inferences in the FTC's favor, or for that matter drawing all inferences in Defendants' favor, the FTC has demonstrated under Section 19 and *Figgie* there are not only sufficient facts to support its request for monetary relief in the full amount consumers paid for Defendants' products, but sufficient undisputed facts to enter judgment in the agency's favor.[14]

Defendants all also violated MITOR by failing to timely ship, give consumers the required clear and conspicuous Delay Option Notice, and then failed to deem the orders canceled and provide a prompt refund.  Sections 435.2(b) and (c).[15]  Specifically, MITOR, § 435.2(c)(5) makes it a deceptive act or practice to fail to "deem an order cancelled and to make a prompt refund" whenever the seller fails to offer the Delay Option Notice and has not shipped within the

---

[14] Defendants' unsupported, self-serving affidavit purporting to show that customers were satisfied with the product, DUF ¶ 5, does not rebut the FTC's presumption.  *FTC v. Gill*, 265 F.3d 944, 958 (9th Cir. 2001) (rejecting a defendant's claim that fees paid by consumers who have benefitted from the services should be excluded from restitution because there was "no authority" for such an argument)).  Even if the affidavit established the existence of some satisfied customers (it does not because it is inadmissible hearsay), Defendants must point to specific evidence identifying which customers were "satisfied" to meet their burden.  *See FTC v. Inc.21.com Corp.*, 475 Fed. App'x 106, 110 (9th Cir. 2012) (upholding harm calculation as reasonable approximation where defendants "offered no evidence to substantiate their claims that the FTC's approximations included consumers who received refunds or were satisfied with the defendants' products.").  Defendants offer no evidence, much less any that could be presented in admissible form.  Fed. R. Civ. P. 56(c)(2).
[15] Defendants also violated MITOR, § 435.2(c)(1) by refusing to honor consumers' requests to cancel prior to shipment.

10

represented shipment time.  Thus, in this circumstance, MITOR expressly triggers the consumers' right to a refund.  MITOR, § 435.2(c)(5).  Indeed, the MITOR rulemaking history makes clear that Section 435.2(c) "states with precision the times at which the buyer's right to a refund vests under the Rule."  40 Fed. Reg. 51582, 51597 (1975).  Consumers are harmed when a seller fails to notify its customer of a change in circumstance that fundamentally alters the contractual relationship.  The seller cannot rewrite the terms of the contract unilaterally by failing to give consumers the very information contract law demands.  Therefore, once the marketer fails to provide the option of cancellation the contract is undone. 40 Fed. Reg. at 51589.[16]  As the Commission stated, "[t]he Rule obviously cannot permit a seller who (1) fails to ship as required and (2) in addition violates the Rule's requirement of an offer to the buyer to cancel the order to retain any benefits of the transaction."  40 Fed. Reg. at 51592.

Thus, here every consumer who did not receive proper notice of their late shipments (including those that received nothing at all, or something materially different) was legally entitled to a refund.  By not giving these consumers the refund to which they were legally entitled, they were harmed in the amount of that withheld refund.[17]

---

[16] "Where the seller is not able to make shipment within the applicable time he is, in effect (1) rejecting the buyer's offer by making a counteroffer, (2) seeking to alter a contract, or (3) in breach of contract.  If a seller simply remains silent and ships the merchandise late or merely notifies the buyer of delay without offering the opportunity to cancel the order, both of which the Record demonstrates occur in substantial number of instances, the seller is attempting to impose upon the buyer a contract far different than the one the buyer thought he was entering into." 40 Fed. Reg. at 51589.

[17] Defendants appear to argue these consumers were not harmed because they may have eventually received their hand sanitizer.  Mot. at 9.  This interpretation of the law is incorrect.  First, the Commission was aware that sometimes consumers did receive products, albeit late, but made no exception to the right to refund.  *See,*

11

As detailed in the FTC's SJ Motion, based on these clear legal requirements essentially all revenues must be returned to consumers.  Specifically, 39,724 of the total 43,633 shipments were untimely, and none of these consumers received a notice of right to immediate cancellation and refund;[18] Defendants failed to ship 2,502 at all;[19] and for the remaining, the Defendants failed to maintain sufficient records demonstrating that these consumers received what they ordered (and thus there is no evidence MITOR's timely shipment requirements were fulfilled).[20] Either drawing all inferences in the FTC's here, or all inferences in the Defendants' favor on the Commission's Summary Judgment motion, the legally mandated measure of harm is the same—all sales, less those already refunded. Therefore, summary judgment in favor of Defendants is improper.  *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) ("Summary judgment is

---

*e.g.*, 40 Fed. Reg. at 51582 n.12 ("It is difficult to determine whether persons complaint of failure to deliver merchandise have experienced a total failure to deliver or are victims of unreasonably long delays who will ultimately receive their orders.").  Second, the harm is caused by a seller's failure to give a refund and cancel the order in compliance with the law.  The fact that Defendants sent hand sanitizer (or other PPE) anyway does not change this result.  Defendants are, in effect, forcing consumers to accept a different remedy (*e.g.*, specific performance) rather than the one to which consumers were legally entitled.  Defendants have no right to do so.  Further, there is significant evidence that consumers wanted the refund, not the hand sanitizer that Defendants sent late.  *See* Add'l SUF ¶ 448. These consumers clearly are still harmed.

[18] FTC's SJ Mot. at 12-13; 31-34.

[19] FTC's SJ Mot. at 12, n.70.  Although Defendants assert hand sanitizer "were all delivered" Mot. at 9 (not even the relevant standard), the FTC disputes that Defendants shipped hand sanitizer to every consumer that paid for it.  *See* SUF ¶¶ 392, 396.

[20] *See* FTC's SJ Mot. at 28 (discussing presumption); 31 (same); 32 (same); 34 (same); 35 (presumption for DJN); 40-42 (discussing harm analysis).  Defendants admit that there were late shipments and admit that their only Delay Option Notice did not go out until March 11, 2020, a week after they started making Ships Today claims.  ECF No. 169-2, RT Decl. ¶¶ 6, 13; SUF ¶¶ 59.

12

inappropriate if a rational trier of fact, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor.").

### D.    Neither *Figgie* Nor *Noland* Compel a Different Result.

Defendants argue, under *Figgie*, the Court *could* order Defendants to place their net profits in escrow and require consumers to return their hand sanitizer (or other PPE) to get their money back.  Mot. at 12.  Defendants' argument is insufficient to meet their burden on summary judgment.  To be entitled to judgment as a matter of law, the Court must determine that it cannot find for the FTC on the claim at issue.  As explained above, *Figgie* does not preclude, and in fact supports, the FTC's requested relief of full refunds without product returns. *Figgie* expressly recognized that a defendant could be held liable up to the full amount consumers paid for defendant's product.  *Id.* at 608.  Moreover, *Figgie* does not make the return of products mandatory.[21]  Nothing in the *Figgie* decision demands a finding that the FTC is not entitled to full amount of consumer loss.

Indeed, the remedy fashioned in *Figgie*, in which the court allowed the return of property for a refund, was premised on the record in that case.  The defendants sold their heat detectors "for cash to distributors, who apparently have the discretion to set their own mark-ups."  994 F.2d at 606.  An FTC employee declaration determined from 127 complaints that consumers paid an average of $170 per detector.  *Id.* at 608.  The identity of retail consumers and the amounts they paid was thus unknown.  The court therefore set a minimum and maximum amount that Figgie might be required to pay in redress, as well as a claims process

---

[21] The Court could just as easily enter judgment for the full amount of harm, allow the FTC to administer redress, and return any disclaimed funds at the end of the redress period.  *See Figgie*, 994 F.2d at 607 (redress includes "what it reasonably spends to find the purchasers of the heat detectors, advertise to them the availability of the money and the importance of using smoke rather than heat detectors at appropriate locations, and process their claims and reimburse them.").

13

to identify harmed consumers.  Here the consumers and the amounts they paid to Defendants is known.  Thus, even if a product return and floor/ceiling remedy makes sense in some cases, here it does not.

Defendants' *Noland* argument is equally unavailing.  Defendants rely on this single out-of-district case to argue consumers cannot be given full refunds, and instead, the FTC must prove damages on an individual-by-individual basis.  The *Noland* court denied summary judgment on liability, holding that where delay was minimal, consumers could potentially get a windfall by receiving both the product and the refund.  *FTC v. Noland*, 2021 WL 5493443, *4.  *Noland*'s analysis is simply wrong.  First, it directly contradicts *Figgie's* holding that the FTC is not required to prove injury of each individual to get refunds for them.[22]  *Figgie*, at 606-608.  Further, as explained above, the Rule itself expressly demands refunds where shipments have not been sent by the promised shipment date and the seller failed to give any notice of the delay before the shipment date.  The Defendants cannot re-write MITOR.

---

[22] The *Noland* court's criticism is that the FTC did not show the existence of harms beyond the late shipment.  *Noland*, 2021 WL 5493443, at *4 (FTC did not show other forms of harm "such as lost resale opportunities or a decrease in the market price of the product between the anticipated and actual shipping dates").  However, the only injury considered in *Figgie* was the money consumers spent on the heat detectors.  As the Ninth Circuit observes, the FTC "did not attempt to prove deaths or physical injuries resulting from the installation of Vanguard heat detectors rather than smoke detectors. The injury to consumers it sought to establish is the amount consumers spent on the heat detectors that would not have been spent absent Figgie's dishonest practices." *Figgie*, 994 F.2d at 606.  Thus, there is no support for the proposition that the FTC is required to show any harm beyond what consumers spent.  Nevertheless, even though the FTC is specifically not seeking damages, there is evidence that consumers did suffer additional harm beyond the money they spent on Defendants' late-shipped hand sanitizer. *See* Add'l SUF ¶¶ 449-450.

14

Moreover, *Noland* is completely distinguishable.  There, the FTC only

alleged violations after the contract was consummated (*i.e.*, that Defendants failed

to timely deliver goods) pursuant to MITOR, § 435.2(b) and (c).  Here, in contrast,

the FTC has alleged Defendants did not have a reasonable for their timing claims

in the first instance pursuant to MITOR, § 435.2(a).  This distinction is legally

relevant because the claim here invokes the legal presumption (*i.e.*, that the fraud is

in the selling) that all sales are tainted.  *Figgie*, 994 F.2d at 606.  Thus, the burden

shifts to Defendants to prove otherwise.  *See supra* at 9-10 (*citing Bronson*, 654

F.3d at 369 and *Kuykendall*, 371 F.3d at 766-67).  In *Noland*, the court found no

such presumption arose because the timing of the violation did not allow for the

presumption that shifted the burden.  *Noland*, 2021 WL 5493443, at * 7

(discussing *Figgie's* burden-shifting presumption in the context of the Cooling-Off

Rule, finding "here, the FTC's claim under the Cooling-Off Rule does not turn on

the presence of material misrepresentations concerning the nature of the underlying

product or service—rather, the Individual Defendants are charged with failing to

comply with a rule requiring the disclosure of certain information related to refund

rights").  Indeed, the *Noland* court specifically left open the possibility that such

burden-shifting could apply where the Rule violation claim arose from widely-

disseminated material misrepresentations (which were not at issue in *Noland*).  *See*

*id.*

However, even if *Noland* were not *per se* wrong, the evidence presented

here shows the potential "windfall" that troubled the *Noland* court does not exist

here.[23]  First, the delay was not minimal.  Time was a critical—indeed the most

---

[23] Defendants' argument also ignores that the alleged "windfall" was entirely
avoidable.  Defendants could have simply complied with the law and deemed the
orders cancelled and given refunds and not sent the hand sanitizer.  Instead,
Defendants admittedly sent hand sanitizer to consumers who *did not want it* and

15

critical—aspect of these sales.[24]   Consumers desperately sought hand sanitizer in the first months of the pandemic.[25]   Defendants failed to ship more than 30,000 of the 46,000 orders even within 10 days.[26]   Defendants also shipped more than 10,000 orders more than 30-days after consumers paid for their items.[27]   All the while they failed to notify consumers they were entitled to immediate cancellations and refunds as the law requires.[28]   Under these circumstances, such delays were significant and substantially effected the value of the hand sanitizer.[29]   This fact is obvious from consumer complaints:

- "I want a full refund. I am done, done, done with this order. This is beyond ridiculous . Cancel my order now I absolutely do not want it."… "Yes I absolutely want my money back. I have been getting the run around for way too long. You obviously don't have stock and an will not wait any longer. Cancel now."[30]

---

then demanded payment for it, in violation of the Unordered Merchandise Rule. 39 U.S.C. § 3009.

[24] SUF ¶¶ 379 (obtaining hand sanitizer quickly was paramount for many consumers); 380 (high demand made hand sanitizer difficult to find); 382 (consumers purchased solely because they thought hand sanitizer was in stock and would arrive in a few days); *see also* Supplemental Decl. of Connor Geiran ("Supp. Geiran Decl.") ¶ 11, Ex. 326-A (consumers seeking to prioritize shipment of hand sanitizer).

[25] SUF ¶ 52 (Defendants admit they offered hand sanitizer for sale to take advantage of high consumer demand).

[26] SUF ¶ 179.

[27] SUF ¶ 394.

[28] They also refused to honor consumers' requests for refunds prior to shipment, which sales should have been deemed canceled pursuant to MITOR, § 435.2(c)(1).

[29] The Commission's analysis under the initial Rule gives further support for the position that the longer the delay, the more buyers prefer to cancel.  40 Fed. Reg. at 51590.

[30] ECF No. 137-4, PX 1 at 838, Att. Z Page 182 (Defendants' Shopify Complaints) (typos are as they appear in original source).

16

- "Unfortunately I would like to cancel and get refunded because we can not wait another week + for sanitizer."[31]
- "As it sounds like you can not ship for awhile I want to cancel the order. I do not need the product any more. I was under the impression you were making it here. It has been longer then the 3 to 5 days you said shipping would be on your web site at the time. I do not want or need the product any more so please cancel and issue credit. If you refuse I guess it will be between you and the credit card company if you refuse to cancel the order and credit my credit card."[32]

Second, unlike *Noland*, where the court noted that the FTC did not identify consumers who were "so dismayed by a shipping delay that [they] would have opted for a full refund had [they] been given proper notice," 2021 WL 5493443, at *5, Defendants' customers clearly wanted refunds, which the law required Defendants to give, but they were refused.

- "I placed my order 21 days ago. It still has not shipped. I am canceling the order. Please confirm when you will be crediting my card, so that I do not have a need to initiate a dispute/charge back. . . . You charged me for something over three weeks ago that you have not shipped and will not cancel. I will have my bank issue a charge back to your company for goods you have billed, but never shipped. That's the last

---

[31] ECF No. 137-4, PX 1 at 849, Att. Z Page 193(Defendants' Shopify Complaints) (typos are as they appear in original source).

[32] ECF No. 137-3, PX 1 at 705, Att. Z Page 49 (Defendants' Shopify Complaints) (typos are as they appear in original source).

"option" and the one I will choose since you, customer service, failed to get the order shipped, or canceled."[33]

- "I really don't want to have to contact my bank and report this as a fraud transaction . However, that is exactly what this feels like. It has been two months. I received a 'pre shipment tracking' number the day after I placed the order. I began asking about movement on the order on April 20 and was told the surest date for shipment was April 24-27. It is now May 31 . There should be no question and I should not have to keep following up to see why I haven't been refunded. I first requested a refund on May 4. The second request was May 16. Third request was May 22. Fourth request was May 29. I don't see how it's relevant if it is in 'preshipment' a month AFTER I requested a REFUND and CANCELLATION."[34]

- "The problem is when I placed an order back on the 14th I paid extra for expedited shipping and your website said it was available and obviously you guys were sold out but had a false listing on the website and then you provided me with a supposed tracking number on 27 March but it still says it hasn't even arrived at the post office for processing and shipping. So my order is in limbo and I have no idea where it is and you can tell me where it is and on top of that you refuse to give me my money back thanks for the horrific service!!!!!!!!"[35]

---

[33] ECF No. 137-4, PX 1 at 827, Att. Z Page 171 (Defendants' Shopify Complaints) (typos are as they appear in original source).
[34] ECF No. 137-4, PX 1 at 860, Att. Z Page 204 (Defendants' Shopify Complaints) (typos are as they appear in original source).
[35] ECF No. 137-3, PX 1 at 702, Att. Z Page 46 (Defendants' Shopify Complaints) (typos are as they appear in original source).

18

- "I have never received a package from them. I have paid them money and I have nothing to show for it. I have tried relentlessly to communicate the company & they refuse to send me a refund. I have any and all documents, including all the emails and including copies of my bank info and the tracking number that shows it was not delivered. This was ordered in March and it is now August. I still have no package and no refund. I believe if they check their bank records the will see the reversal & based on the fact that by checking the tracking number you can see no package was delivered I should receive a refund."[36]

Thus, again, Defendants cannot meet their burden to show the Court could not find in the FTC's favor on the claim at issue, and Defendants' motion must fail.

## E.   At Most Defendants Argue for a Triable Issue of Fact.

Section 19 and MITOR clearly compel the conclusion that full refunds are not only authorized, but legally required.  Even if the Defendants were entitled to some offset for the value of the hand sanitizer for some consumers, *see* Mot. at 10, (though they have wholly failed to meet their burden here and have not submitted any evidence that any consumers thought it still had value to them) that would merely raise an issue of fact for trial.  Here, the FTC has introduced evidence that thousands of orders were not shipped;[37] that consumers considered the value of these late-delivered products zero;[38] that Defendants sent consumers merchandise

---

[36] ECF No. 137-3, PX 1 at 640, Att. Y Page 192 (BBB Complaints) (typos are as they appear in original source).

[37] SUF ¶ 392 (2,502 orders had no "Fulfilled_at" date or shipment date).

[38] SUF ¶ 382 (consumers ordered solely because they thought the products were in stock and would arrive within days); Add'l SUF ¶ 448 (consumers requested refunds because delay was too long); Supp. Geiran Decl. ¶ 11, Ex. 326-A (consumers asking for "prioritization" of hand sanitizer shipments, including willingness to switch brands or convert order for quicker shipment).

after they said they no longer wanted it;[39] and that Defendants failed to give consumers refunds.[40]  Thus, there is thus no triable issue of fact that affects the measure of monetary relief in this case and Defendants certainly are not entitled to judgment as a matter of law.

**<u>CONCLUSION</u>**

WHEREFORE, for all the foregoing reasons, the FTC respectfully requests the Court deny Defendants' motion for summary judgment and grant such other relief as it deems just and proper.

Respectfully submitted,

Dated:  March 18, 2022

/s/ Katherine Johnson
KATHERINE E. JOHNSON, *admitted pro hac vice*
CHRISTOPHER ERICKSON, *admiited phv*
Federal Trade Commission
600 Pennsylvania Avenue NW, CC-9528
Washington, DC  20580
(202) 326-2185; (Johnson)
kjohnson3@ftc.gov
(202) 326-3671 (Erickson)
cerickson@ftc.gov
**Attorneys for Plaintiff**
FEDERAL TRADE COMMISSION

---

[39] SUF ¶¶ 259; 261.
[40] SUF ¶¶ 231, 244, 246, 249, 251, 252, 253, 255, 257, 258, 276, 384-385, 443; Supp. Geiran Decl. ¶ 12, Exhibit 327-A.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Certificate of Service**

I certify that on March 18, 2022, I caused a true copy of the FTC's Opposition to Defendants Motion for Partial Summary Judgment to be served by the following means on the following persons:

By Notice of Electronic Filing via the Court's CM/ECF System, pursuant to Local Rule 5-3.2:

**Scott Wellman**
**SWellman@w-wlaw.com**
Attorney for Defendants

/s/ Katherine Johnson
Katherine Johnson

21