Scott Wellman, SBN: 82897
Chris Wellman SBN: 304700
**WELLMAN & WARREN LLP**
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
Tel: (949) 580-3737
Fax: (949) 580-3738
swellman@w-wlaw.com
cwellman@w-wlaw.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>QYK BRANDS LLC d/b/a Glowyy; et al,<br><br>Defendants | Case No. 8:20-cv-01431-PSG-KES<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**<br><br>Magistrate: Hon. Karen E. Scott<br>Hearing Date: April 8, 2022<br>Time: 1:30p.m.<br>Courtroom: 6D<br><br>Discovery Cutoff: December 1, 2021<br>Pretrial Conference: March 4, 2022 at 10:30 a.m.<br>Trial Date: None Scheduled/TBD |

Pursuant to Central District of California Rule 56-1, Defendant's, respond to Plaintiff's motion of summary judgment referred to in the attached Notice, submits this "statement of Uncontroverted Facts and Conclusion of Law" and proposed judgment.

| Statement of Undisputed Fact ("SUF") | Supporting Evidence | DISPUTED/ UNDISPUTED |
|---|---|---|
| **INTRODUCTION** | | |
| 1. On March 11, 2020, the World Health Organization's Director-General declared that the disease caused by the novel coronavirus SARS-CoV-2 ("COVID-19") could be characterized as a pandemic ("COVID-19 Pandemic" or "Pandemic"). | PX 16, Declaration of Katherine Johnson ("Johnson Decl.") ¶ 4. | Undisputed |
| **I. THE DEFENDANTS** | | |
| 2. On August 4, 2020, the FTC filed this case against four Defendants: QYK Brands LLC, d/b/a Glowyy.com ("QYK"); Rakesh Tammabattula, QYK's Founder and Chief Executive Officer ("CEO"); DRJSNATURAL LLC, ("Dr. J's Natural" or "DJN"); and Jacqueline Nguyen, CEO of Dr. J's Natural and officer of QYK alleging that they violated Section 5(a) of the | PX 16, Att. A (Complaint, ECF No. 1). | Undisputed |

| | | |
|---|---|---|
| FTC Act, 15 U.S.C. § 45(a), and the FTC's Mail, Internet, or Telephone Order Merchandise Rule ("MITOR"), 16 C.F.R. Part 435. | | |
| 3. Plaintiff filed its First Amended Complaint on May 19, 2021 adding two corporate defendants, Theo Pharmaceuticals, Inc. and EASII, Inc., and alleging all corporate defendants operated as a common enterprise. | PX 16, Att. C (First Amended Complaint ["FAC"], ECF No. 73). | Undisputed |
| 4. **QYK Brands, LLC** d/b/a Glowyy is a California Limited Liability Company formed in 2017 with its principal place of business in Anaheim, California. | PX 16, Att. D (Ans. to FAC, ECF No. 129) ¶ 6. | Undisputed |
| 5. QYK transacts business within the district. | PX 16, Att. D, Ans. to FAC ¶ 6; PX 16, Att. E (Relevant Portions of Defendant QYK's Responses to FTC's Request for | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | Admissions ["QYKRFA Resp."]) No. 3. | |
| 6. QYK and DJN were located at 10517 Garden Grove Blvd, Garden Grove, CA until approximately May 2020. | PX 16, Att. O, 8/18/21 JN Dep. Tr. 36:1-13; PX 16, Att. O, 8/18/21 JN Dep. Tr. 38:9-13; PX 16, Att. G, (Relevant Portions of Jacqueline Nguyen's Responses to the FTC's RFAs, ["JN RFA Resp."]) No. 39. | Undisputed |
| 7. QYK moved to 3373 E. La Palma Blvd., Anaheim, CA in approximately May 2020. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 146:10-148:11. | Undisputed |
| 8. In approximately November 2020, QYK moved to 12101 Western Ave., Anaheim, CA. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 140:11-16. | Disputed, 8/16/21 RT Dep. Tr. 139:9-11 |
| 9. In approximately January 2021, DJN also moved to 12101 Western Ave., Anaheim, CA. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 140: 17-20. | Disputed, 8/16/21 RT Dep. Tr. 139:9-11, 140:17-20 ("Garden Grove, CA") |
| 10. Defendant Tammabattula and Dr. J, through the | PX 16, Att. D, Ans. to FAC. ¶ 20; | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| Corporate Defendants, own multiple brands and companies that sell skin care, health, beauty, personal care, and wellness products, including through its websites qyk.us, qyksonic.com, glowyy.com, and drjsnatural.com. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 152:25-153:2; PX 17, Stipulation of Facts as to Common Enterprise ("Stipulation"), ¶¶ 3-6. | |
| 11. During the relevant time, QYK did business through the website www.glowyy.com | PX 16, Att. D, Ans. to FAC ¶ 6; PX 16, Att. E, QYK RFA Resp. No. 4; PX 16, Att. K, 8/16/21 RT Dep. Tr. 152:25-153:2. | Undisputed |
| 12. Glowyy is an online storefront operating through the website glowyy.com, which offers various brands of beauty, skin, personal care, and PPE products. Glowyy launched in March 2020. | PX 16, Att. D, Ans. to FAC. ¶ 21; PX 16, Att. E, QYK RFA Resp. No. 5; PX 16, Att. K, 8/16/21 RT Dep. Tr. 104:8-105:8; 149:14-150:10. | Undisputed |
| 13. **Rakesh Tammabattula** is the CEO and founder of QYK and several other entities in the tech, beauty, wellness, and | PX 16, Att. D, Ans. to FAC ¶¶ 10, 14, 20; PX 17, Stipulation ¶¶ 3, 4. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| personal care industries, including the Theo Pharmacy online prescription fulfillment service. | | |
| 14. Mr. Tammabattula resides in the district. | PX 16, Att. D, Ans. to FAC ¶ 10;<br>PX 17, Stipulation ¶ 5. | Undisputed |
| 15. In connection with the matters alleged in the First Amended Complaint (ECF No. 73, "FAC"), Defendant Tammabattula transacts or has transacted business in this District and throughout the United States. | PX 16, Att. D, Ans. to FAC. ¶ 10;<br>PX 17, Stipulation ¶ 5. | Undisputed |
| 16. **Dr. J's Natural, LLC** is a California Limited Liability Company, headquartered in Garden Grove, CA, and formed in March 2020. | PX 16, Att. D, Ans. to FAC ¶ 7;<br>PX 16, Att. O, 8/18/21 JN Dep. Tr. 35:12-21. | Undisputed |
| 17. Dr. J's Natural or DJN sells products through its website, drjsnatural.com. | PX 16, Att. D, Ans. to FAC ¶ 20;<br>PX 16, Att. O, 8/18/21 JN Dep. Tr. 38:14-25. | Undisputed |
| 18. QYK promotes products | PX 16, Att. D, Ans. to | Undisputed |

| | | |
|---|---|---|
| from Dr. J's Natural through Glowyy. | FAC ¶¶ 20, 21;<br>PX 16, Att. E, QYK RFA Resp. No. 7. | |
| 19. **Jacqueline Thao Nguyen (aka Dr. J)** is a "clinical compounding pharmacist". | PX 16, Att. O, 8/18/21 JN Dep. Tr. 23:22-24:5; 25:21-26:4;<br>*See also* PX 1, Decl. of Lashanda Freeman ["Freeman Decl."], Att. J at 4:14-18. | Undisputed |
| 20. Defendant Jacqueline Nguyen works under the moniker "Dr. J." | PX 16, Att. D, Ans. to FAC ¶ 11;<br>PX 17, Stipulation, ¶ 6. | Undisputed |
| 21. On October 8, 2018 (effective November 7, 2018), the State of California Board of Pharmacy entered into a Stipulated Settlement and Disciplinary Order with Dr. J suspending her from practice as a pharmacist for three (3) years, and thereafter placing her on probation for an additional five (5) years. | PX 1, Freeman Decl., ¶ 80 and Att. Q;<br>PX 16, Att. P, 8/19/21 JN Dep. Tr. 42:24-43:12;<br>PX 16, Att. R2 (JN 30) at 3. | Undisputed |
| 22. As part of the Stipulation, | PX 1 ¶ 80, Att. Q. | Undisputed |

-7-

| | | |
|---|---|---|
| Dr. J admitted to the charges, which included "Unprofessional Conduct Involving Acts Involving Dishonesty, Fraud, or Deceit," "Unlawful Holding and Offering for Sale of Adulterated Dangerous Drugs," and "Excessive Furnishing of Controlled Substances," among others. | | |
| 23. Dr. J voluntarily suspended her license in approximately November 2019. | PX 16, Att. P, 8/19/21 JN Dep. Tr. 41:2-16; PX 16, Att. R2, JN 30. | Undisputed |
| 24. Dr. J sells health and wellness products, including hand sanitizer, under the brand name "Dr. J's Natural." | PX 1, Att. J (Your Order Updates for Dr. J's Natural Tr. 4:14-18); *id.*, Att. H (Covid Insight from a Doctor Tr. 4:23-24); *See also* PX 2, Decl. of Adam Rottner ("Rottner Decl."), Atts. N, O, P, Q, R. | Undisputed |
| 25. In connection with the | PX 16, Att. D, Ans. to | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| matters alleged in the FAC, Dr. J transacts or has transacted business in the District and throughout the United States. | FAC ¶ 11; PX 17, Stipulation ¶ 9. | |
| 26. Dr. J is an owner of QYK. | *See* PX 1 ¶ 27, Att. D; PX 16, Att. Q, 12/9/21 JN Dep. Tr. 34:10-17 | Undisputed |
| 27. Dr. J has also represented herself as a principal of the QYK. | PX 16, Att. Q, Tr. 219:14-21. | Undisputed |
| 28. Dr. J is CEO of Dr. J's Natural. | PX 16, Att. D, Ans. to FAC ¶ 11; PX 17, Stipulation ¶ 7. | Undisputed |
| 29. Jacqueline Nguyen controls Dr. J's Natural. | PX 16, Att. G, JN RFA Resp. No. 41; PX 17, Stipulation ¶ 8. | Undisputed |
| 30. Jacqueline Nguyen owns Dr. J's Natural. | PX 16, Att. G, JN RFA Resp. No. 42; PX 16, Att. O, 8/18/21 JN Dep. 32:7-10; PX 17, Stipulation ¶ 7. | Undisputed |
| 31. Jacqueline Nguyen is an | PX 16, Att. G, JN | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| officer of Dr. J's Natural. | RFA Resp. No. 43; PX 16, Att. O, 8/18/21 JN Dep. 32:4-6; PX 17, Stipulation ¶ 7 | |
| 32. Dr. J and Mr. Tammabattula are husband and wife and reside within the district. | PX 16, Att. D, Ans. to FAC ¶ 11; PX 16, Att. O, 8/18/21 JN Dep. 18:22-19:3; 19:14-16; PX 17, Stipulation ¶¶ 5, 6, 9. | Undisputed |
| 33. **Theo Pharmaceuticals, Inc.** is a California Corporation with its principal place of business at 10517 Garden Grove Blvd, Anaheim, California. | PX 16, Att. D, Ans to FAC ¶ 8; PX 17, Stipulation ¶¶ 1, 15. | Undisputed |
| 34. Theo Pharmacy was founded by Dr. J in 2014. | PX 16, Att. D, Ans. to FAC ¶ 11; PX 17, Stipulation ¶ 7; PX 16, Att. O, 8/18/21 JN Dep. Tr. 44:22-46:17. | Undisputed |
| 35. Corporate records for Theo Pharmacy show Defendant | PX 16, Att. D, Ans. to FAC ¶ 14; | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| Tammabattula as the owner and controlling officer. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 34:7-9. | |
| 36. Until on or around March 2020, Theo Pharmacy was an online pharmacy retailer. | PX 16, Att. K, 68:4-18. | Undisputed |
| 37. **EASII, Inc. ("EASII")** is a Delaware Corporation with its principal place of business Santa Ana, California. | PX 16, Att. D, Ans to FAC ¶ 9; PX 17, Stipulation ¶2. | Undisputed |
| 38. Rakesh Tammabattula is the CEO of EASII, Inc. | PX 16, Att. D, Ans. to FAC ¶ 10; PX 17, Stipulation ¶ 3. | Undisputed |
| 39. At all times material to the FAC, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. s. 44. | PX 16, Att. D, Ans. to FAC ¶ 12; PX 17, Stipulation ¶ 10 | Undisputed |
| **II.    THE    CORPORATE    DEFENDANTS    OPERATE AS A COMMON ENTERPRISE** | | |
| 40. Defendants Tammabattula and Dr. J operate QYK, DJN, Theo, and EASII ("Corporate Defendants") as a common | PX 16, Att. D, Ans. to FAC ¶ 13; PX 17, Stipulation ¶ 11. | Undisputed |

| | | |
|---|---|---|
| enterprise. | | |
| 41. Defendants admit and do not dispute that Defendants Tammabattula and Dr. J have conducted the business practices alleged in the FAC through interrelated companies that share common ownership, officers, employees, and office locations. | PX 16, Att. D, Ans. to FAC ¶¶ 6, 11, 13-14, 16-17; PX 17, Stipulation ¶¶ 12-16. | Undisputed |
| 42. Defendants agree, that because the Corporate Defendants have operated as a common enterprise, each is liable for the acts and practices alleged in the FAC. | PX 16, Att. D, Ans. to FAC ¶ 19; PX 17, Stipulation ¶ 17. | Undisputed as to the Corporate defendants only. |
| **III.    DEFENDANTS' DECEPTIVE BUSINESS PRACTICES** | | |
| 43. In November 2019, Defendants began developing www.glowyy.com ("Glowyy website"). | PX 16, Att. K, 8/16/21 RT Dep.; 41:19-42:15; 104:25-105:8. | Undisputed |
| 44. Defendants developed the Glowyy website using the Shopify e-commerce platform. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 153:3-154:1. | Undisputed |
| 45. Defendants explained that | PX 16, Att. K, | Undisputed |

| | | |
|---|---|---|
| "Shopify is a ready-made e-commerce platform or easy-to-use e-commerce platform, which allows us to sell any products on line pretty easily without much skills with the actual coding or involvement of the backing of the website, where they have the -- the -- the basic structure developed and the core engine for the e-commerce exists. And all you do is just change the layout of how we need our store to look, add our products to it, and we're pretty much ready to sell. We could connect the -- the payment -- payment or payment providers through that, and there's nothing much we would have to do." | 8/16/21 RT Dep. Tr. 153:14-154:1. | |
| 46. QYK used Shopify to manage shipping of hand sanitizer orders to customers placed through www.glowyy.com. | PX 16, Att. E, QYK RFA Resp. No. 73; PX 16, Att. U, 9/23/21 DP Tr. 75:12-16. | Undisputed |
| 47. When a customer placed an | PX 16, Att. E, QYK | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| order for hand sanitizer through the www.glowyy.com website, Shopify generated and transmitted a notification of the order to an authorized representative, employee, or contractor of the Company. | RFA Resp. Nos. 74. | |
| 48. An authorized representative, employee, or contractor of QYK would generate a pre-paid mailing label through Shopify to ship hand sanitizer to customers. | PX 16, Att. E, QYK RFA Resp. No. 75. | Undisputed |
| 49. Shopify maintains a database for the Company containing the following information for customer orders:<br><br>   a. Customer name<br>   b. Customer address<br>   c. Date the order was placed<br>   d. The ordered merchandise, including SKU<br>   e. The amount the customer paid for | PX 16, Att. E, QYK RFA Resp. No. 76. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| the ordered merchandise, including the postage costs, taxes, and price per item<br><br>f.  The fulfilled at date<br><br>g.  The mailing carrier, e.g. USPS or UPS, and method, e.g., overnight, or ground<br><br>h.  The "paid at date." | | |
| 50. Shopify creates a "fulfilled at" date for an order at the time QYK generates a mailing label. | PX 16, Att. E, QYK RFA Resp. No. 77; PX 16, Att. U, 9/23/21 DP Dep. Tr. 100:9-22. | Undisputed |
| 51. Defendants had initially started the Glowyy website to sell beauty products online. | PX 16, Att. K, 8/16/21 RT Dep. 121:7-9; 149:20-150: 4. | Disputed, It was initially started to sell personal care and skin care products. Dec. of Tammabattula at ¶ 3. |
| 52. At the beginning of the Pandemic, however, | PX 16, Att. K, 8/16/21 RT Dep. Tr. | Disputed, Defendants started advertising all |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| Defendants changed their plans in order to capitalize on consumers' high demand for hand sanitizer. | 149:20-150:10; PX 16, Att. D, Ans. to FAC ¶¶ 22-23. | products on the store and received orders for many products apart from sanitizers. Dec. of Tammabattula at ¶ 5 |
| 53. Beginning on or around March 4, 2020, Defendants began offering Dr. J's Natural (and other branded) hand sanitizer through the Glowyy website. | PX 16, Att. E, QYK RFA Resp. No. 5, 7; PX 16, Att. K, 8/16 21 RT Dep. Tr. 104:8-12 (hand sanitizer listed on Glowyy in early March). | Disputed, QYK RFA Resp. No. 5 states that Defendants began selling hand sanitizer through its website on March 3, 2020 |
| 54. Additionally, they sold other (in their own words) "Pandemic Products" and "Current Essentials", including facemasks, shields, surface wipes, disinfectants, and other Personal Protective Equipment ("PPE"). | PX 1 ¶¶ 16-20, Att. B; PX 16, Att. D, Ans. to FAC ¶ 21; *see also* PX 2, Att. N, Q (DJN COVID essentials). | Undisputed |
| 55. The Defendants marketed four sizes of Dr. J's Natural hand sanitizer: a 3.3 oz bottle for $5.99; a 4.0 oz bottle for $5.99; a 10 oz bottle for 9.99; and a 16 oz bottle for $12.99. | PX 16, Att. D, Ans. to FAC ¶ 21. | Undisputed |

| | | |
|---|---|---|
| 56. Defendants also sold 300ml/10 oz bottles of Siruni brand hand sanitizer through Glowyy that Defendants imported from China. | PX 16, Att. AA at 10, 15 (discussing imports and showing images of hand sanitizer); PX 1, Att. Z at 1, 3, 8, 25 (showing purchases of Siruni 300 ml hand sanitizer); *see also* PX 2, Att. AB. | Undisputed |
| 57. Defendants also sold Dr. J's Natural brand hand sanitizer and other PPE through the DJN website, drjsnatural.com. | PX 1, Att. E at 3 (early March DJN posts for hand sanitizer); PX 2, Atts. N-Q (July 2020 website captures); AB, AD, AE (showing DJN Facebook and Twitter posts early March for hand sanitizer); PX 16, Att. O, 8/18/21 JN Dep. Tr. 69:5-15 (started selling hand sanitizer in March). | Undisputed |
| **A. Defendants Aggressively Advertised Hand Sanitizer "In Stock & Ships** | | |

| | | |
|---|---|---|
| **Today" With Little Inventory.** | | |
| 58. To kick off sales of hand sanitizer, Defendants began an aggressive online marketing campaign. | PX 16, Att. F (Relevant Portions of Defendant Tammabattula's Responses to FTC's RFAs ["RT RFA Resp."] No. 3; PX 16, Att. L, 8/17/21 RT Dep. 24: 19-21. | Disputed. This language was contained only in the Google Ads which counted for only 11% of the sales. The language was accurate as it was based on existing inventory and the expected demand based on past experience. Dec. of Tammabattula at ¶¶ 10-11 |
| 59. On or around March 4, 2020, Defendants began advertising hand sanitizer "In Stock & Ships Today" through Google ("March 4 Google AdWords campaign"). | PX 16, Att. F, RT RFA Resp. Nos. 4-6, 8; PX 16, Att. E, QYK RFA Resp. Nos. 8-13 (admitting Google campaigns disseminated March 4-March 19, 2020 and contained the language "In Stock & Ships Today"); 8/17/21 RT Dep. Tr. | Disputed, Only 1 version of the Google Ad said "In stock & Ships today", this fact falsely implies that all advertisement sources advertised "In Stock & Ships Today." In fact, QYK used about 100 internet sources, and only1 variant of the Google ad contained this language. All |

| | | |
|---|---|---|
| | 24:19-21; 33:2-5 (RT chose language "In Stock & Ships Today"); 38:13-24 (stating that he started the Google campaign "the evening or March 3rd"); *see also* PX 16, Att. D, Ans. to FAC ¶ 23 (admitting disseminated ads that they had hand sanitizer "In Stock" and "Ships Today" in order to capitalize on consumer demand for hand sanitizer). | Google ads combined only accountable for about 11% of all sales. Dec. of Tammabattula at ¶¶ 10-11 |
| 60. Defendant Tammabattula initiated the March 4 Google AdWords campaign. | PX 16, Att. L, 8/17/21 RT Dep. 24:19-21; *See also* PX 16, Att. E, QYK RFA Resp. No. 18; PX 16, Att. F, RT RFA Resp. No. 3. | Undisputed |
| 61. Defendants began selling hand sanitizer through Glowyy on March 4, 2020. | PX 16, Att. E, QYK RFA Resp. No. No. 6 (admitting QYK had | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | not sold hand sanitizer prior to March 3, 2020); PX 16, Att. L, 8/17/21 RT Dep. Tr. 58:3-19. | |
| 62. The March 4 Google AdWords campaign displayed the following ad:  | PX 16, Att. D, Ans. to FAC ¶ 25; PX 16, Att. E, QYK RFA Resp. No. 14; PX 16, Att. F, RT RFA Resp. No. 8. | Disputed. Only 1 version of the Google Ad said, "In stock & Ships today", this fact falsely implies that all advertisement sources advertised "In Stock & Ships Today." In fact, Qyk used about 100 internet sources, and only 1 variant of the Google ad contained this language. All Google ads combined only accountable for about 11% of all sales. Dec. of Tammabattula at ¶¶ 10-12 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 63. The ad displaying "In Stock & Ships Today" appeared in response to keyword searches for, inter alia, "human coronavirus," "buy hand sanitizer" and "hand sanitizer in stock." | PX 16, Att. L, 8/17/21 RT Dep. Tr. 49:20-25; PX 16, Att. N3, RT-QYK 22; PX 16, Att. D, Ans. to FAC ¶ 24. | Undisputed |
| 64. The ad displaying "In Stock & Ships Today" appeared in response to a Google search on or about March 12, 2020.<br><br> | PX 16, Att. D, Ans. to FAC ¶ 25. | Undisputed |
| 65. Defendants admit "'Ships Today'" can be reasonably interpreted to mean that the product can be shipped the same day. | PX 16, Att. E, QYK RFA Resp. No. 22. | Disputed, Inaccurate, this is interpreted as the product being processed the same day. The cited RFA response makes no mention of how to interpret "Ships Today". QYK RFA Resp. No. 22; Dec. of Tammabattula at ¶ 10 |

| | | |
|---|---|---|
| 66. On March 4, 2020, Defendants simultaneously started several other online campaigns using tools provided by Shopify to advertise through Facebook and on Bing. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 110:7-10 (Facebook); 111:1-11; 138:8-22 (Bing). | Disputed, Inaccurate, Bing advertisement started on March 6. 12/7/21 RT Dep. Tr. 138:8-22. |
| 67. The Facebook advertising campaign included a retargeting campaign to show hand sanitizer ads to customers who had previously visited the Glowyy website. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 110:11-18. | Undisputed |
| 68. On March 6, 2020, Defendants also promoted the sale of hand sanitizer through non-traditional sales platforms such as Reddit via links to direct traffic to hand sanitizer on the Glowyy website. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 64:10-23; 75:14-76:6; PX 1, Att. AA. | Disputed. The Reddit post was disapproved so it never led to any traffic to the Glowyy website. Dec. of Tammabattula at ¶ 13 |
| 69. Defendant Tammabattula posted job listings on Upwork relating to Glowyy.com. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 64:10-23; PX 1, Att. AA | Undisputed |

| | | |
|---|---|---|
| 70. Defendant Tammabattula used Upwork to find freelance workers. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 48:16-24; PX1, Att. AA. | Undisputed |
| 71. On March 5, 2020, Defendant Tammabattula posted a job to hire a freelancer on Upwork to post links on Reddit. | PX 16, Att. M, 12/7/21 RT Dept. Tr. 64:10-23; PX 16, Att. N5, RT-QYK 48; PX 1, Att. AA. | Undisputed |
| 72. Defendant Tammabattula's job posting read: "Looking for someone with established Reddit accounts to share links to a website for Coronavirus Outbreak related products. Open to other channels as well. Need organic US traffic that converts." | PX 1, Att. AA at 12. | Undisputed |
| 73. On March 5, 2020, Tammabattula hired a freelancer, who then posted two links on Reddit to direct traffic to the Glowyy website. | PX 16, Att. M, 12/7/21 RT Dep. 65:22-66:9; 66:23-67:21; 67:18-21; *see also* PX 16, Att. N5, RT-QYK Ex. 48 at 6. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 74. One of the two links posted on Reddit falsely claimed that "he and his sister purchased hand sanitizer through Glowyy." | PX 16, Att. M, Tr. 71:3-15; PX 16, Att. N5, RT-QYK 48 at 6, 16-17. | Disputed, This misstates evidence, the actual quote is that he and his sister purchased "these products", it does not say hand sanitizer. 12//7/2021 RT Dep. Tr. 71:3-15 |
| 75. The Reddit post was removed at some point, and Defendant Tammabattula understood it was because commercial links are not allowed on Reddit. | PX 16, Att. M, 12/7/21 RT Dep. 69:24-70:21. | Disputed, Tammabattula understood the post was removed immediately and never approved. 12/7/21 RT Dep. Tr. 69:24-70:6 |
| 76. Around March 6, 2020, Defendants also promoted hand sanitizer through Instagram and Twitter. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 75:10-76:6 (Twitter); PX 2, Att. AB (Twitter); *see* PX 1, Att. E at 1-2 (Instagram); *see also* PX 16, Att. M, 12/7/21 RT Dep. Tr. 111:12-113:7 (discussing photos of hand sanitizer | Disputed, the cited deposition where there is discussion of photos on Instagram is actually a discussion about a Facebook campaign. 12/7/21 RT Dep. Tr. 111:12-113:7. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | appearing on Instagram feeds around March 5). | |
| 77. Defendants ran the March 4 Google AdWords' campaign until at least March 18, 2020. | PX 16, Att. L, 8/17/21 RT Dep. 38:13-24; 54:1-18; *see also* PX 16, Att. E, QYK RFA Resp. No. 22 (admitting that between March 4 through March 10, 2020 the company stated that hand sanitizer was "In Stock and Ships Today."). | Undisputed |
| 78. Google metrics show that the "In Stock & Ships Today" ad was viewed at least 395,865 times (Impr.), and there were at least 15,469 clicks on the link when served the ad with the extension "In Stock & Ships Today." | PX 16, Att. N2, RT-QYK 21 at 2-3. | Disputed, this metric is misleading and ignores the minor impact of an impression or click, these don't necessarily correspond to sales from the Ads. Dec. of Tammabattula at ¶ 11 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 79. Consumers purchased thousands of bottles of hand sanitizer within the first few days of Defendants' marketing campaign. | PX 16, Att. F, RT RFA Resp. No. 22; PX 9, Att. B at 39 (Consumer Ordered showing 18,337 orders between March 4 and March 9 2020). | Undisputed, Not all orders were from Google, only a very small portion came from "In Stock Ships Today" Ad. Dec. of Tammabattula at ¶ 11 |
| 80. Defendants sold, and consumers purchased, at least 147,953 bottles of hand sanitizer between March 4 and March 18, while the Google AdWords' campaign was running. | PX 9, Att. B at 39 (Consumer Ordered) (excluding bottles that lack ounce designation or line item name). | Undisputed, Not all orders were from Google, only a very small portion from "In Stock Ships Today" Ad. Dec. of Tammabattula at ¶¶ 10-12 |
| 81. Defendants sold, and consumers purchased at least 58,309 bottles between March 4 and March 11, 2020: 410, 2.7oz bottles; 8,701 3.3oz bottles; 6,415 8 oz bottles; and 42,783, 10 oz bottles. | PX 9, Att. B at 39 (Consumer Ordered) (excluding bottles that lack ounce designation or line item name). | Undisputed |
| 82. Between March 4 (the beginning of the campaign) and March 9 (when Defendants received their first | PX 16, Att. L, 8/17/21 RT Dep.69:9-13 ("inventory actually received" [between | Disputed, Defendants did have inventory during this period and this is misleading since |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| delivery of hand sanitizer), consumers paid Defendants for at least 18,337 bottles of hand sanitizer that Defendants did not have. | March 4 and March 9]); PX 9, Att. B; PX 10, Decl. of Molly Smith ("Smith Decl."), Att. A (inventory summary). | more orders of hand sanitizer were ordered and in transit at the time of sale. 8/17/21 RT Dep. 69:12-13; Dec. of Tammabattula at ¶¶ 6-9 |
| 83. Even after March 9, Defendants did not have enough hand sanitizer to fulfill those orders, having received only 1,384 bottles. | PX 10, Att. A. *See also* PX 9, Att. B at 50 (inventory analysis). | Disputed, this is inaccurate, several thousand bottles were expected and some did arrive. Dec. of Tammabattula at ¶¶ 9, 17-22 |
| 84. Of the 1,384 bottles received on March 9, 2020, 310 bottles arrived damaged and unusable. | PX 16, Att. T, 12/8/21 BT Dep. Tr. 50:12-21 (boxes came damaged); PX 16, Att. AH (Balaji WhatsApp FTC-QYK-0003254-55) ("Shipment arrived like this andi, all boxes torn and 310 pcs fell out, we got only 690 pcs here"); PX 16, Att. S, 8/20/21 39:18-24 ("andi" is a | Disputed. The bottles were not unusable they just needed extra work to clean before being shipped out. 12/8/21 BT Dep. Tr. 50:24-51:1 ("Q: Were you able to use the bottles that came from this packaging A: We were, yes.") |

| | sign of respect, like sir or madam). | |
|---|---|---|
| 85. During the entire period in which Defendants admit they disseminated the "In Stock & Ships Today" claim, *i.e.*, March 4-March 18, Defendants continued to sell hand sanitizer they did not have. | PX 9, Att. B at 1-38 (outstanding shipments to order estimates); PX 9 ¶ 51 (showing negative inventory for 2.7 oz through mid-April). | Disputed, product was ordered and in transit. Dec. of Tammabattula at ¶¶ 6-9, 14-25 |
| 86. For instance, Defendants did not receive any 8 oz hand sanitizer until at least March 19, 2020. | PX 10, Att. A. | Disputed, 8 oz hand sanitizer was ordered and expected to arrive much earlier. Dec. of Tammabattula at ¶¶ 6-9, 14-25 |
| 87. By March 19, however, consumers had paid for over 8,000 bottles of Dr. J's Natural Brand 8 oz hand sanitizer beginning as early as March 7, nearly two weeks before Defendants had any in stock. | PX 9, Att. B at 20 (8oz consumer ordered analysis vs inventory arrival). | Undisputed, Dr. J's Natural fulfilled these orders with larger sized bottles when 8oz was not available, thus providing consumers with more product free of additional charge. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 88. Defendants purchased 144, 80ml bottles of kids' hand sanitizer on March 4, 2020. | PX 16, Att. AA at 36 (WeChat FTC-QYK-002976). | Disputed, Defendants purchased more and Plaintiff's supporting evidence shows Defendants discussing purchase of 3,000 units. Dec. of Tammabattula at ¶¶ 6-9, 14-25 |
| 89. Defendants sold kids' hand sanitizer beginning on March 4, but none arrived until at least March 11. | PX 9, Att. B at 1 (showing purchases of 2.7 oz/80ml bottles beginning March 4, 2020); PX 10, Att. A (showing no 2.7 oz/80 ml bottles arriving until March 11). | Undisputed |
| 90. Even then, what arrived to Defendants on March 11 and March 19 was far less than what consumers had already paid for. | *Compare* PX 10, Att. A *with* PX 9, Att. B at 39 (consumer ordered); *see also* PX 9, Att. B at 56 (inventory estimation showing negative inventory, i.e., how many received versus sold, as of March 19, | Disputed, Defendants always kept getting new orders and we kept ordering more. Dec. of Tammabattula at ¶¶ 6-9, 14-25 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | 2020, as follows 2.7 oz, -160 bottles; 3.3 oz, -19,522 bottles; 8 oz, -3487 bottles, 10 oz bottles, -99,148 bottles). | |
| 91. Defendants had very little, if any, hand sanitizer that they could ship to customers until March 9, 2020. | PX 10, Att. A; *see also* PX 9, Att. B at 50 (inventory arrival); Att. B at 56 (negative 280 bottles as of March 31 for 2.7 oz; negative 31,640 bottles for 3.3 oz; negative 111,364 bottles for 10 oz). | Disputed, it is unclear what "very little" means. Defendant had 2,000 bottles in stock on March 3 and Fed Ex had confirmed a shipment of 10,000 bottles to arrive on March 3. However, this did not arrive until March 9 because of delays by Fed Ex. Dec. of Tammabattula at ¶¶ 6-9, 14-25 |
| 92. Defendants claim they purchased 2000 bottles of hand sanitizer on or around February 5, 2020 for a trade show in connection with efforts to promote the Dr. J's | PX 16, Att. L, 8/17/21 RT Dep. Tr. 39:21-40:6; PX 16, Att. S, 8/20/21 BT Dep. Tr. 42:12-24; 43:9-11; PX 16, Att. K, | Undisputed |

| | | |
|---|---|---|
| Natural brand at a white label expo in Las Vegas, taking place February 26, 2020. | 8/16/21 RT Dep. Tr. 151:11-152:1 (discussing the white label event and explaining that hand sanitizer was one of several products exhibited at the show). | |
| 93. Defendants claim they had an inventory of 2,000 units of hand sanitizer at the time it began the March 4 Google Ad campaign. | PX 16, Att. E, QYK RFA Resp. No. No. 46; PX 16, Att. F, RT RFA Resp. No. 18; PX 16, Att. L, 8/17/21 RT Dep. Tr. 38:25-39:23; 68:18-69:8. | Undisputed |
| 94. Records from FedEx show that Defendants placed an order on or around February 15, 2020, containing only six bottles of hand sanitizer—three, 50ml bottles and three, 100ml bottles, among a variety of "Ayurvedic" beauty products. | PX 13, Decl. of Melissa Gormly, Att. A at 1-3; PX 10 ¶ 13, and Att. A. | Disputed, Inaccurate, the shipping for sanitizers was always needed to be declared otherwise for acceptance for express courier. The supporting evidence is misleading by wrongly implying only 6 bottles were ordered at the time. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | Dec. of Tammabattula at ¶¶ 6-9, 14-25 |
|---|---|---|
| 95. Defendants received the February 15, 2020 order on February 21, 2020. | PX 13, Gormly Decl. , Att. C (Delivered to sheet); PX 10, Att. A (Shipments Delivered). | Undisputed |
| 96. QYK tracked hand sanitizer inventory by observing what stock it had in its warehouse. | PX 16, Att. E, QYK RFA Resp. No. 97; PX 16, Att. F, RT RFA Resp. 29. | Disputed, the inventory was based on orders placed. Plaintiff's cited RFA responses object to meaning of "observing what it had" Dec. of Tammabattula at ¶¶ 6-9, 14-22 |
| 97. QYK tracked hand sanitizer inventory using manual methods. | PX 16, Att. E, QYK RFA Resp. No. 96; PX 16, Att. F, RT RFA Resp. No. 28; PX 16, Att. L, 8/17/21 RT Dep. 71:7-17. | Undisputed |
| 98. QYK did not maintain records sufficient to track the shipping time for any hand sanitizer order between March 3, 2020 and August 4, 2020. | PX 16, Att. E, QYK RFA Resp. No. 84; PX 16, Att. L, 8/17/21 RT Dep. 74:24-75:1; 78:16-24. | Disputed. Shopify provided such records. QYK RFA 84 objects to phrase "sufficient to track" Dec. of Tammabattula at ¶ 13 |

| | | |
|---|---|---|
| 99. QYK did not use Shopify to track hand sanitizer inventory between March 3, 2020 and August 4, 2020. | PX 16, Att. E, QYK RFA Resp. No. 93; PX 16, Att. L, 8/17/21 RT Dep. 69:24-71:6; 71:7-17. | Disputed, inventory was partially tracked in Shopify, but, Shopify was not the only tracking system. RT Dep. 69:24-71:17 |
| 100. QYK does not use Shopify to track hand sanitizer inventory. | PX 16, Att. E, QYK RFA Resp. No. 94; PX 16, Att. L, 8/17/21 RT Dep. 69:24-71:6; 71:7-17. | Disputed, inventory was partially tracked in Shopify, but, Shopify was not the only tracking system. RT Dep. 69:24-71:17 |
| 101. Between March 3, 2020 and August 4, 2020, all of QYK's hand sanitizers inventory was located at and shipped from 10517 Garden Grove Blvd., Garden Grove, CA 92843. | PX 16, Att. E, QYK RFA Resp. No. 95. | Undisputed |
| 102. 80 ml is approximately equivalent to 2.7 ounces. | Johnson Decl. ¶ 47. | Undisputed |
| 103. Defendants purchased 80 ml bottles of hand sanitizer from China, and sold them as kids' hand sanitizer. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 92:21-93:4. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 104. 100 ml is approximately equivalent to 3.3 ounces. | PX 16, Att. L, 8/17/21 RT Dep. 92:18-20. | Undisputed |
| 105. Intentionally Omitted | Intentionally Omitted. | |
| 106. Defendants purchased 300ml sized bottles of hand sanitizer from China and sold it as 10 ounce. | PX 16, Att. S, 8/20/21 BT Dep. 57:19-23; PX 16, Att. L, 8/17/21 RT Dep. Tr. 92:14-17. | Undisputed |
| 107. 500 ml is approximately equivalent to 16 ounces. | Johnson Decl. ¶ 47. | Undisputed |
| 108. Defendants received no other shipments of hand sanitizer again until March 9, 2020. | PX 10, Att. A. | Undisputed |
| 109. Defendants' communications show they ordered some hand sanitizer on March 4, 2020, that was not scheduled to arrive for at least three days. | PX 16, Att. AA at 17-22. | Disputed, Arrival anticipated sooner from past business transactions. Dec. of Tammabattula at ¶¶ 9-10, 15-16 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 110. According to Defendants' WeChat conversations, they had only ordered 2016 bottles of 300ml; 1000 bottles of 100ml; and 144 bottles of 80ml hand sanitizer from China as of March 5, 2020. | PX 16, Att. AA at 27 (WeChat Transcript FTC-QYK0002967). | Disputed, the quantities were in the tens of thousands and were being shipped by Express. Dec. of Tammabattula at ¶ 14, 20 |
| 111. On March 9, Defendants received 1,000 bottles of 3.3 oz hand sanitizer, however 310 of these were unusable. Defendants also received 384 bottles of 10 oz hand sanitizer on March 9, 2020. | PX 10, Att. A; *see also* PX 9, Att. B at 50 (inventory arrival); PX 16, Att. AH at 2 (310 bottles unusable). | Disputed. The bottles weren't unusable they just needed extra cleaning before being shipped. 12/8/21 BT Dep. Tr. 50:24-51:1 ("Q: Were you able to use the bottles that came from this packaging A: We were, yes.") |
| 112. The March 9, 2020 delivery was the only hand sanitizer Defendants received from Syndy Pharma. | PX 10, Att. A; PX 16, Att. K, 8/16/21 RT Dep. Tr. 152:9-24. | Disputed, FTC's own data shows a shipment in February 2020 from Syndy Pharma. Dec. of Tammabattula at ¶¶ 7, 9 |
| 113. Between March 4 and March 9, Defendants sold 18,337 bottles of hand sanitizer. | PX 9, Att. B at 39 (Consumer Ordered). | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 114. Defendants admit they did not receive any hand sanitizer between March 4 and March 9, 2020. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 68:18-69:13. | Undisputed |
| 115. Defendants did not ship a single bottle of hand sanitizer before March 10, 2020. | PX 9, Att. B at 44 (customer shipments showing 0 shipments before March 10, 2020); PX 9 ¶ 50 (the March 7, 2020 "shipment" of hand sanitizer is based on a fulfilled_at date, not a FirstScanTimeStamp, i.e., Defendants merely printed a label on March 7). | Undisputed to the extent that this was not in Defendant's control |
| 116. Defendants received no significant inventory of additional shipments of hand sanitizer until March 16, 2020. | PX 10, Att. A; *see also* PX 9 Att. B at 50 (inventory arrival) (showing total inventory of 8,176 for all hand sanitizer received between March 4 and March 15). | Disputed, the term "significant" is vague and an opinion. Defendants received shipments of hand sanitizer on March 13, 2020. Dec. of Tammabattula at ¶¶ 9, 23-25 |

| | | |
|---|---|---|
| 117. Between March 4 and March 15, 2020, Defendants sold at least 118,208 total bottles of hand sanitizer. | PX 9, Att. B at 39 (consumer ordered) (excludes unclassified 0 oz bottles) | Undisputed |
| 118. Defendants did not receive any 8 oz hand sanitizer until at least March 19, 2020. | PX 10 ¶ 13, Att. A. | Undisputed |
| 119. Between March 4 and March 19, 2020, Defendants sold, and consumers purchased, 9,343 bottles of 8 oz hand sanitizer. | PX 9, Att. B at 39 (Consumer Ordered). | Undisputed |
| 120. Defendants represented on the website www.glowyy.com that hand sanitizer is "AVAILABLE to order UNLESS marked as 'Sold Out.'" | PX 16, Att. E, QYK RFA Resp. No. 69; PX 16, Att. F, RT RFA Resp. No. 23; PX 16, Att. K, 8/16/21 RT Dep.108: 6-22; PX 1, Att. B at 5. | Undisputed |
| 121. QYK did not always mark hand sanitizer as "Sold Out" even when there was no inventory at its fulfillment warehouse. | PX 16, Att. E, QYK RFA Resp. No. 70. | Disputed, this fact ignores sanitizer that was in transit to the warehouse and expected to arrive in time to timely fulfill |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | orders. Dec. of Tammabattula at ¶¶ 6-9, 14-25 |
|---|---|---|
| 122. Defendants had little inventory of hand sanitizer for much of March. | PX 10, Att. A; PX 9, Att. B at 50. | Disputed, "little inventory" is an opinion. This is misleading because Defendant's placed many orders and orders were either arriving or were expected to arrive that was more than sufficient to meet all orders. Dec. of Tammabattula at ¶¶ 6-9, 14-25 |
| 123. Defendants admit disseminating advertisements via a Google Ad campaign from March 4 to 19, 2020, which expressly stated that hand sanitizer was in stock. | PX 16, Att. E, QYK RFA Resp. No. 8-10, 13, 14-16; PX 16, Att. L, 8/17/21 RT Dep. Tr. 31:20-36:24; PX 16, Att. N2, RT-QYK 21; PX 16, Att. H, QYK ROG Resp. No. 18 ("The Google ad stating 'Ships Today' only remained up | Disputed, only one advertisement variant from Google Ad campaign stated in stock during this time period. Dec. of Tammabattula at ¶¶ 10-11 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | from March 3, 2021 [sic] to March 19, 2021 [sic] according to documents being produced along with this interrogatory."). | |
| 124. Defendants knew as early as March 4 they lacked sufficient inventory to fill orders. | PX 16, Att. L, 8/17/21 RT Dep.133:9-14; *See* PX 16, Att. S, 8/20/21 BT Dep. Tr. 49: 8-10 (admitting he understood by March 4, 2020 that there were orders that need to be fulfilled). | Disputed, Plaintiff's supporting evidence does not support their fact. Admitting to understanding the need for order fulfillment is very different from admitting to a lack of sufficient inventory. The inventory was confirmed to arrive by FedEx. The fact that FedEx was delayed was not expected. Dec. of Tammabattula at ¶¶ 14, 23 |
| 125. Defendants knew on or around March 4, 2020 that obtaining additional hand sanitizer would be difficult. | PX 16, Att. AA at 6 (3/3 chat: "shipping cost is high for this kind of item. It's heavy and belong to | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | sensitive item."); 13 (3/3 chat: "One week for sensitive items."); 52 (3/8 chat: "Most agents can not handle this sensitive item."); 4 (3/3 chat: "Many don't have stock or price is high."); 25 (3/5 chat: "Shipping prices is changing fast.  Because many flights cancelled."); 44 (3/6 chat: "So many flights cancelled, even DHL leading time will be longer next week. Like 5 to 7 days. Too many goods waiting in line, no flight to go."). | |
| 126. In early March 2020, India banned the export of hand sanitizer. | PX 16, Att. H at 1, 5, 18, 31, QYK ROG Amended Resp. No. 1 ("Some of these shipments were | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | withheld due to new, temporarily implemented emergency regulations preventing shipments from India."); PX 16, Att. L, 8/17/21 RT Dep. Tr. 114:2-10; 114:19-115:1 (indicating ban around March 12 and knowledge at that point) PX 16, Att. S, 8/20/21 BT Dep. Tr. 44:14-45:6 (stating that some packages were withheld from the Feb. 26th shipment of hand sanitizer from India, which never made it to the US); *id.* 78:25-79:14. | |
| 127. Defendants were unable to receive hand sanitizer from Syndy Pharma and Ayur, both in India. | PX 16, Att. S, 8/20/21 BT Tr. 61:2-62:4; 78:25-79:14. *See also* PX 16, Att. | Disputed, some product was received from Syndy & Ayur, but other shipments were |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

|  | L, 8/17/21 RT Dep. Tr. 116:12-117:1. | held by the Indian Government. Dec. of Tammabattula at ¶¶ 9, 20-22 |
|---|---|---|
| 128. Defendants sought to obtain additional hand sanitizer from other sources, including China. | PX 16, Att. S, 8/20/21 BT Dep. Tr. 63:14-18; 65:13-19; *see generally* PX 16, Att. AA (RT chat history in early March showing efforts to get hand sanitizer from China). | Undisputed |
| 129. Defendants ordered 1008, 300 ml bottles and 1000, 100 ml bottles from China on March 4, 2020. | PX 16, Att. AA at 17 (WeChat FTC-QYK-0002957) | Undisputed |
| 130. The orders from China were not shipped until March 7-8, 2020 and arrived on March 9 and March 10, 2020. | PX 10, Att. A. | Disputed, these orders were expected to be shipped out March 5. Dec. of Tammabattula at ¶ 14 |
| 131. Shipments of hand sanitizer and PPE from overseas were often delayed or detained in customs. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 114:2-10; 114:19-115-1; *See also* PX 16, Att. L, 8/17/21 RT Dep. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | Tr. 116:12-117:1; PX 10, Att. A (Shipments detained); PX 16, Att. AB (FDA Detention). | |
|---|---|---|
| 132. Many detained shipments were not released at all. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 114:2-10; 114:19-115-1. *See also* PX 16, Att. L, 8/17/21 RT Dep. Tr. 116:12-117:1; PX 10, Att. A (Shipments detained); PX 16, Att. AB (FDA Detention). | Undisputed |
| 133. Defendants tried to find domestic contract manufacturers as well. | PX 16, Att. S, 8/20/21 BT Dep. Tr. 79:16-24; 83:4-12. | Undisputed |
| 134. Defendants had difficulty sourcing bottles, pumps, and raw ingredients. | PX 16, Att. D, Ans. to FAC ¶ 46; PX 16, Att. G, JN RFA Resp. No. 68; PX 1 ¶¶ 46-48 and Att.s L, M, N, AD. | Undisputed |
| 135. Defendants had three domestic suppliers of hand sanitizer: Sainnocare Pharmaceuticals, Inc., IRIS Labs; and Medison Pharma. | PX 16, Att. S, 8/20/21 BT Dep. Tr. 51:17-52:1; 83:7-12; PX 16, Att. L, 8/17/21 RT Dep. Tr. 122:8- | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | 124:15. | |
| 136. Defendants found Sainnocare through Sydny Pharma, after hand sanitizer exports from India were (delayed) banned. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 167:13-168:1; PX 16, Att. S, 8/20/21 BT Tr. 48:7-21; 51:17-52:1. | Undisputed |
| 137. IRIS produced hand sanitizer in 275-gallon totes, which Defendants used to fill bottles at their Garden Grove warehouse. | PX 16, Att. S, 8/20/21 BT Dep. Tr. 85:18-20. | Undisputed |
| 138. Defendants found Medison through an intermediary, VFR Imports. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 122:19-123:10; PX 16, Att. S, 8/20/20 BT Dep. Tr. 89:1-11; PX 16, Att. N4, RT-QYK 40. | Undisputed |
| 139. Demaris Reyes works for VFR Imports. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 122:11-123:10; 123:24-124:1; PX 16, Att. N4, RT-QYK 40. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 140. Defendants received no hand sanitizer from domestic contract manufacturers until at least March 30, 2020. | PX 10, Attach. A. | Undisputed |
| 141. The hand sanitizer Defendants received from the domestic manufacturers was vastly less than what they had anticipated. | PX 10, Att. A; *see also* PX 16, Att. S, 8/20/21 BT Tr. 75:2-14. | Disputed, this is misleading because the supporting evidence only discusses one domestic manufacturer. |
| 142. Defendants claim they were supposed to receive a million bottles from Sainnocare, but received less than 10,000. | PX 16, Att. S, 8/20/21 BT Tr. 74:14-75:14. | Undisputed |
| 143. Defendants claim they received approximately 100,000 bottles from Medison, but their records show less than 20,000 bottles received. | PX 10, Att. A. | Disputed, Dec. of Tammabattula at ¶ 14 |
| 144. Defendants did not pay IRIS Labs for hand sanitizer until April 2020. | PX 1 ¶ 97 and Att. AC at 3. | Undisputed |
| 145. Defendants' records show five invoices for 275-gallon totes of hand sanitizer from IRIS Labs in April 2020. | PX 10 ¶ 12. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 146. One of these invoices was to fulfill a government contract and was shipped directly to Opa Locka, FL. | *See* PX 1, Att. AC at 3 (note: Alcohol 6050 GAL shipped to FL); PX 16, Att. AI. | Undisputed |
| 147. The bulk hand sanitizer supplied by IRIS Labs had a strong alcohol smell and could not be used without an additional step of adding perfume to "neutralize the smell." | PX 16, Att. S, 8/20/20 BT Dep. Tr. 94:13-23. | Disputed, this fact misstates testimony. Balaji said the sanitizer could be used. BT Dep. Tr. 94:13-23 |
| 148. Defendants never manufactured their own hand sanitizer on-site. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 125:24-126:4. | Undisputed |
| 149. Defendants failed to have sufficient inventory to fulfill orders through at least mid-April. | PX 9, Att. B at 56 (actual inventory as of April 15, 2020 was negative 328 bottles (2oz); negative 41,458 (3.3oz); and negative 110,995 (10oz)); *see also* PX 9 ¶ 51 (chart showing negative inventory); PX 16, Att. S, 8/20/21 BT Dep. Tr. 111:2-10 | Disputed, Defendants always had inventory. There were times when shipments did not arrive in time which provided challenges. But by early April the amount of inventory exceeded the number of orders and there was excess inventory. Dec. of Tammabattula at ¶¶ |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | (April 15, 2020 had "enough inventory."). | 6-9, 14-25 |
|---|---|---|
| **B. Defendants Continued to Claim Fast Shipping Throughout the Pandemic Despite Not Being Able to Timely Fulfill Orders.** | | |
| 150. Defendants admit they did not ship hand sanitizer orders between March 4 and March 11, 2020. | PX 16, Att. E, QYK RFA Resp. Nos. 36-43; 45 (admitting no order placed by a customer between March 3-10 went out the same day); 49 (admitting no orders for hand sanitizer shipped March 6-10, 2020); *see also* PX 16, Att. E, QYK RFA Resp. No.59 (admitting that no order placed on March 11 was even shipped within five days of when the order was placed); PX 9 ¶ 50 (earliest FirstScanTimeStamp | Disputed, Plaintiff uses erroneous logic in their supporting evidence because admitting to not shipping same day does not mean that it was not shipped the next day or any day thereafter. Further, they once again rely on the FirstScanTimeStamp date, which is invalid since delivery drivers would often pick up packages without scanning them. Dec. of Tammabattula at ¶ 34 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | date, i.e., shipment date, is March 11, 2020). | |
| 151. Defendants did not print any shipping labels, i.e., "fulfill" any orders until at least March 7, 2020. | PX 9 ¶ 50. | Undisputed |
| 152. Defendants admit that shipments [of hand sanitizer] went out late. | PX 16, Att. D, Ans. to FAC ¶35; PX 16, Att. U, 9/23/21 DP Dep. Tr. 168:4-14; 168:23-169:11 | Disputed, this implies that Defendants admit that all shipments went out late, when only some did. Indeed, the only ad that contained the "Ships today" language was one variant of the Google Ad campaign. The total Google Ad campaign only accounted for about 11% of all sales. Dec. of Tammabattula at ¶¶ 10-11 |
| 153. "Fulfilled_at" in Shopify means the date that Defendants purchased and printed a shipping label. | PX 16, Att. E, QYK RFA Resp. No.77-78; PX 16, Att. U, 9/23/21 DP Dep. Tr. 100:2-22. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 154. When a label was generated, Shopify automatically marked the order as fulfilled. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 100: 9-13. | Undisputed |
| 155. After a label was printed and was in the warehouse, a package was in pre-shipment. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 97:17-21. | Undisputed |
| 156. In communications to customers, Defendants blamed delays on the uncertain supply chain. | PX 1, Att. Z, at 7, 11, 15, 24, 27, 30, 39, 42, 46, 61, 67, 71, 75, 78, 84 | Undisputed |
| 157. In communications to customers, Defendants blamed delays on insufficient staff. | PX 1, Att. Z, at 15, 36, 46, 49, 61 | Undisputed |
| 158. In communications to customers, Defendants blamed delays on prioritizing sales to hospitals and charities. | PX 1, Att. Z at 92 | Disputed, Plaintiff's supporting evidence only indicates that they blamed one delay on this. This was because QYK believed that the hospital was in dire need of the product and shipped to it. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 159. In communications to customers, Defendants blamed delays on the sheer volume of orders. | PX 1, Att. Z at5, 24, 33, 36, 46 | Undisputed |
| 160. At times, QYK was waiting for shipments of bottles with hand sanitizer in them in order to ship out shipments to customers. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 167: 18-21; PX 1, Att. Z at 7, 11, 15, 24, 27, 30, 39, 42, 46, 61, 67, 71, 75, 78, 84, 87, 98, | Undisputed |
| 161. Defendants ordered bottles of hand sanitizer without labels (or with foreign labels that needed relabeling). | PX 16, Att. L, 8/17/21 RT 126:16-25; 127:22-128:5. | Undisputed |
| 162. Defendants did not have a labeling machine when the first unlabeled bottles arrived, and they labeled bottles by hand. | PX 16, Att. T, 12/8/21 BT Dep. Tr. 131:21-133:2; *see also* PX 16, Att. L, 8/17/21 RT Dep. Tr. 124:22-125:12; 8/17/21 RT Dep. Tr. 127:22-128:5. | Undisputed |
| 163. Defendants had never worked with their domestic suppliers prior to March 2020. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 128: 12-24; PX 16, Att. K,8/16/21 RT Dep. Tr. 167:13-168:1; PX | Disputed, Defendants have had previous transactions with Damaris and VFR. Dec. of Tammabattula at ¶ |

| | 16, Att. S, 8/20/21 BT Tr. 48:7-21 | 14 |
|---|---|---|
| 164. Defendants' domestic suppliers were untested vendors that ultimately proved unreliable. | *See e.g.*, PX 16, Att. S, 8/20/20 BT Dep. Tr. 94:13-23; 74:14-75:14. | Disputed, Plaintiff provides no evidence that they were untested vendors |
| 165. Dr. J did not develop the hand sanitizer formula. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 127:1-21; PX 16, Att. P, 8/19/21 JN Dep. Tr. 59:23-24; | Undisputed |
| 166. A facility needed to be registered with the FDA to produce or package hand sanitizer. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 81: 22-25. | Undisputed |
| 167. Prior to March 13, 2020, QYK was not filling individual bottles of hand sanitizer onsite for sale to retail customers. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 83:5-8. | Undisputed |
| 168. Defendants repeatedly modified the "processing times" on the Glowyy website. | PX 16, Att. H at 25-25, QYK ROG Resp. No. 17 (discussing various processing time claims on website); PX 16, Att. E, QYK RFA Resp. Nos. 58, 110, 111, | Undisputed |

112, 113, 114; *See also* PX 1, ¶¶ 17, 19-20, 57 (describing website captures), Att. B, at 5, 7, 9, 11 (containing "processing time" language, e.g., "Due to the overwhelming demand because of the outbreak we are experiencing long processing times. Please expect 5-7 days for the order to be processed. Customers selecting overnight shipping, please beware that we can ship overnight only when your order is ready to be processed, but the same day order is placed.").

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 169. Danielle Paulo conveyed the processing times to customers and the customer service team. | PX 16, Att. U, 9/23/21 DP. Dep. Tr. 184:20-25; PX 16, Att. M, 12/7/21 RT Dep. Tr. 215: 9-15. | Undisputed |
| 170. Defendant Tammabattula provided the processing time. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 105:20-22; 107:10-108:5; PX 16, Att. U, 9/23/21 DP Tr. 184:20-22; PX 16, Att. M, 12/7/21 RT Dep. Tr. 215: 9-15. | Undisputed |
| 171. Defendants admit they claimed hand sanitizer Ships 3 to 5 days from 3/11/20 to 3/18/20. | PX 16, Att. E, QYK RFA Resp. No. 58. | Undisputed |
| 172. Defendants claimed hand sanitizer Ships within 7 to 10 days from 3/19/20 to 3/30/20. | PX 16, Att. E, QYK RFA Resp. No.110. | Undisputed |
| 173. Defendants claimed hand sanitizer ships within 3 to 5 days on 4/1/20. | PX 16, Att. E, QYK RFA Resp. No.111. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 174. Defendants claimed hand sanitizer Ships within 5 to 7 days on 4/13/20; | PX 16, Att. E, QYK RFA Resp. No.112; *see also* PX 16, Att. E, QYK RFA Resp. No. 17.; PX 16, Att. K, 8/16/21 RT Dep. Tr. 107:10-108:5; and PX 1, Att. B at 5 | Undisputed |
| 175. Defendants claimed hand sanitizer Ships within 3 days on 4/19/20. | PX 16, Att. E, QYK RFA Resp. No.113; PX 1, Att. B at 7. | Undisputed |
| 176. Defendants claimed hand sanitizer Ships within 3 to 5 days from 5/1/20 to 5/7/20. | PX 16, Att. E, QYK RFA Resp. No.114. | Undisputed |
| 177. Defendants claimed hand sanitizer Ships within 3 to 7 days on 5/15/20. | PX 16, Att. E, QYK RFA Resp. No. 115; PX 1, Att. B at 11. | Undisputed |
| 178. Defendants admit that they never told consumers it would take more than 10 days to ship hand sanitizer. | PX 16, Att. E, QYK RFA Resp. No.116 | Disputed, this is misleading and ignores the times when Defendants made no shipping time claims. When no representation was made (which was the overwhelming |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | | amount of time), then 30 days is allowed under MITOR. |
| 179. The shipping time for more than 30,000 hand sanitizer orders placed during the period from March 3, 2020 through May 31, 2020 exceeded 10 days. | PX 16, Att. E, QYK RFA Resp. No.117; *see* PX 9, Att. A (Request 14 showing 31,567 orders that exceed 10 days to ship between March 4 and December 29, 2020; and Request 13, showing only 14 orders that exceeded 10 days between May 16 and December 29, 2020). | Undisputed |
| 180. Defendants' answer to the FAC admits that they claimed one day or seven days to ship, and admit they did not ship within one day or seven days. | PX 16, Att. D, Ans to FAC ¶ 77-78 ("Admit only to allegations contained in paragraph 78 as to 'failed to ship goods the same day they were purchased, or failed to ship goods within seven (7) | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | days.'"). | |
|---|---|---|
| 181. The Requests for Admissions defined Ship to mean the day or date You [QYK Brands] physically placed items in the possession of a mail carrier. | PX 16 ¶ 38. | Undisputed |
| 182. Defendants did not maintain records of the processing times placed on their website. | *See* PX 16 ¶ 51 (Defendants produced one processing time claim captured from the "Wayback Machine"); *see also* PX 16, Att. K, 8/16/21 RT Dep. Tr. 106:8-107:5. | Undisputed |
| 183. Defendants' processing time claims still conveyed fast shipment. | PX 16, Att. E, QYK RFA Resp. No. 113 (three); PX 16, Att. E, QYK RFA Resp. No.114 (three to five); PX 16, Att. E, QYK RFA Resp. No.115 (three to seven). | Disputed, "fast shipments" is an opinion. The processing times were based on either actual or expected inventory as well as the time it took for personnel to package and place the |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | packages in the bins for pick-up by the carrier. Dec. of Tammabattula at ¶ 10 |
|---|---|---|
| 184. Defendants never paused or stopped the March 3 Google ad campaign. | PX 16, Att. M, 8/17/21 RT Dep. Tr. 59:19-20. | Undisputed |
| 185. On May 18, 2020, Defendants disseminated the claim that "ALL ORDERS SHIP WITHIN 1-2 DAYS!!!!" | PX 2 ¶ 10.a., Att. AF at 1. | Undisputed |
| 186. On June 8, 2020, Defendants disseminated the claim that "ALL ORDERS SHIP WITHIN 1-2 DAYS!!!!"; | PX 2 ¶ 14.a., Att. A. | Undisputed |
| 187. Defendants concede that these "processing times" were intended to convey the amount of time it took to print the label and prepare the package for shipment, *i.e.*, the time to place an order into the hands of a mail carrier. | PX 16, Att. H at 34, QYK ROG Resp. No. 10 (defendants attempted to give accurate shipment times based on the amount of time it took to prepare package for shipment). | Undisputed |

| | | |
|---|---|---|
| 188. Google was the principal driver of customers to the Glowyy website. | *See* PX 16, Att. AJ at 9 (Shopify "Sales by Traffic Referrer" showing Google search as the second highest generator of orders). | Disputed, This is a blatantly inaccurate statement since barely 11% of total sales came from google. Dec. of Tammabattula at ¶¶ 10-13 |
| 189. Google suspended the Google AdWords account associated with rt@qyk.us on or around March 18, 2020 for violating Google's advertising policies. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 43:10-44:1; 54:1-10; PX 16, Att. N15, RT-QYK 62 (disapproving ads for violating "sensitive events" policy); PX 1, Att. X at 2 (Google sensitive events policy prevents "Ads that potentially profit from or exploit a sensitive event with significant social, cultural, or political impact"). | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 190. Defendants used rt@easii.com to set up a new Google AdWords' account. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 94:19-96:10. | Undisputed |
| 191. Defendants advertised "Ships Fast from CA Today" from the Google account associated with rt@easii.com on or around April 1, 2020. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 153:18-154:1 ("Q. It says: 'Hand sanitizer gel in stock. 75 percent alcohol-based formula. Ships fast from California today.' A. Yes. Q. So you agree that this is an ad that you ran through the rt@easii.com Google account for Glowyy hand sanitizer? Or for hand sanitizer that you're selling through Glowyy?" A. Yes."); 156:4-10 (ad started April 1, 2020). | Undisputed |

| | | |
|---|---|---|
| 192. Defendants continued the "Ships Fast from CA Today" Google AdWords campaign until approximately mid-May. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 159:25-160:3; 164:1-9. | Undisputed |
| 193. On or around May 18, 2020, Google suspended the Google AdWords' account associated with rt@easii.com. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 159:25-160:3; 164:1-9; *see also* PX 16, Att. N16, RT-QYK 65 (email from Google suspending merchant account dated May 18). | Undisputed. |
| 194. Google suspended the Defendants' Google AdWords account associated with rt@easii.com for violating Google's advertising policies. | PX 16, Att. N16, RT-QYK 65 (ads disapproved for sensitive events and Unacceptable Business Practice Policy); PX 1, Att. X at 2 (describing sensitive events ad policy); PX 16, N14 at 1, RT-QYK 61 (rt@easii.com account "violated the Unacceptable | Undisputed |

| | | |
|---|---|---|
| | Business Practices Policy"); *see* PX 1, Att. X at 1 (Google unacceptable business practices policy prohibits ads "Scamming users by concealing or misstating information about the advertiser's business, product, or service."). | |
| 195. Google metrics show that the "Ships Fast From CA Today" ad was viewed 105,236,963 times, and 199,538 clicks on the link when served the ad. | PX 16, Att. N14 at 4, RT-QYK 61. | Disputed, this is total impressions of all ads including display ads and ads that did not contain the ships today term. |
| 196. "Impressions" in Google means the number of times the ad would have appeared in response to a Google search. | PX 16, Att. L, RT Dep. Tr. 30:19-31:9. | Undisputed |
| 197. Defendants did not ship hand sanitizer "Today" between March 4-March 18, 2020. | PX 16, Att. E, QYK RFA Resp. Nos. 36-43; 45 (admitting no order placed by a customer between | Disputed, Defendants started shipping after March 11 once the orders began arriving to QYK. Dec. of |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | March 3-10 went out the same day); 49 (admitting no orders for hand sanitizer shipped March 6-10, 2020); *see also* QYK First RFA No. 59 (admitting that no order placed on March 11 was shipped within five days of when the order was placed); *see also* PX 9, Att. A (Violation Summary Request No. 21 showing 0 shipments out of 20,523 total orders). | Tammabattula at ¶¶ 23-25 |
|---|---|---|
| 198. Defendants did not ship hand sanitizer "Today" between April 1, 2020 and May 18, 2020 for 12,453 shipments out of a total of 12,976 orders placed and paid for. | PX 9, Att. A (Violation Summary, Request 23 showing 12,976 total orders, 517 shipments made for orders purchased within parameters, i.e., on time; 12,453 | Disputed. This implies all orders were from the Google ad while only about 11% of orders came from the Google ad containing "Today". Further, "Today" ad did not run for most of |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | orders complete violations). | period between April 1, 2020 and May 18, 2020. Dec. of Tammabattula at ¶¶ 10-12, 37 |
| 199. Over 93% of all orders placed in March and April were shipped to customers after the advertised shipment time. | *See* PX 9 ¶ 27, Table 3. | Disputed, Plaintiff's data is flawed because it assumes a 1-day shipping claim for all of April despite a lack of proof of this claim. |
| 200. There were 20,084 orders placed in March and 12,916 orders placed in April for a total of 42,000 orders placed in March and April 2020. | *See* PX 9, ¶ 27, Table 3. | Undisputed |
| 201. There were only 1,244 orders for hand sanitizer placed in May 2020. Of these, more than 40% were shipped after the claimed shipping times. | PX 9 ¶ 27, Table 3. | Disputed, In May, more than 97% of orders were timely shipped. Dec. of Tammabattula at ¶ 25, 27 |
| 202. In May 2020, Defendants were still shipping hand sanitizer and PPE orders placed in March and early April. | PX 9 ¶ 34 (3,754 orders with a "paid_at" date between March 1 and April 15, 2020 and | Disputed, Plaintiff's cherry pick instances that falsely implies that this was the norm. Further, relying on |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | FirstScanTimestamp between May 1-31); *see also* PX 1, Att. Z, at 101-105 (Order 17014, ordered March 14, 2020, shipped May 29, 2020); 106-110 (Order 19630, ordered March 15, 2020, shipped May 31, 2020). | FirstScanTimestamp is erroneous. Dec. of Tammabattula at ¶ 34. |
| **C. Defendants Further Deceived Consumers with False Revised Shipping Dates and Wrongfully Refused to Give Customers Refunds.** | | |
| 203. Defendants' fulfillment process began after "orders would be received through the Shopify system." | PX 16, Att. L, RT Dep. Tr. 79:22-80:25 (describing the fulfillment process). | Undisputed |
| 204. Defendants charged consumers' credit cards or PayPal accounts immediately after consumers placed their orders. | *See, e.g.*, PX 3 ¶ 3, PX 4 ¶ 4, PX 5 ¶ 4, PX 6 ¶ 5; PX 1, Att. Z at 42 ("I had placed an order #18053 on | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | March 14th and paid for it then with PayPal."); *see also* PX 16, Att. K, 8/16/21 RT Dep. Tr. 174:11-175:1. | |
| 205. Defendants then purchased a shipping label through Shopify. | PX 16, Att. E, QYK RFA Resp. No. No. 78; Att. H, QYK ROG Resp. No. 16 (describing the fulfillment process). | Undisputed |
| 206. Purchasing a shipping label generated an email sent to consumers telling them that the items was "on its way." | PX 16, Att. U, 9/23/21 DP Dep. Tr. 97:22-98:1-6 (once a label was printed on Shopify, it will automatically tell them their order has been shipped); *see also* PX 1, Att. Z at 81; PX 3 ¶ 4; PX 4 ¶ 5; PX 5 ¶ 5; PX 6 ¶ 6. | Undisputed |
| 207. QYK did not always ship ordered merchandise on the "fulfilled at" date, or the date the mailing label was created. | PX 16, Att. E, QYK RFA Resp. No. 79. | Undisputed, but only as to a few orders and only because the personnel who were working 16- |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | 18 hours days, could not box and label all of the orders at any given time. Dec. of Tammabattula at ¶ 30 |
|---|---|---|
| 208. Consumers understood this communication to mean that the order had been shipped. | PX 1 ¶ 61 ("They will generate a UPS label to make you think the order is in the mail but the reality is there is no package); *id.* ("supposedly shipped 10 days ago from California"); ¶ 71 ("I received and [sic] email on April 5, 2020 saying my order was on the way, with a USPS tracking. It said nothing about out of stock items or items on back order. I waited 5 days then checked to see the tracking progress and it showed it hadn't left the facility yet."); | Disputed, the email was automatically generated by the Shopify system. We had no control over this. It is unknown what consumers understood this to mean. Dec. of Tammabattula at ¶ 27 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

PX 1, Att. Z. at 7 ("please be up front and explain to me is why I've been told my Order is ready for pickup by UPS (supposedly has a label created for it on 3/10) but it has not been picked up by UPS."); *id.* at 11 ("Please don't lie and send me an email to says my order is on its way if you know it's not."); *id.* at 30 ("In received notice that the order referenced above had been shipped on Mar. 26. When checking the tracking number at USPS it says shipping label created, item on its way to USPS. Can you give me a status update?  Has this

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | order been lost somehow?") | |
| 209. Defendants knew that customers understood the email with the shipment status to mean that the package had shipped. | *See* PX 16, Att. F, RT RFA Resp. No. 52 (Tam. knew as early as March 26, 2020 that generating a mailing label sent a shipping confirmation to the customer); PX 16, Att. F, RT RFA Resp. No. 53 (Tam. knew that customers expressed confusion over receiving a shipping confirmation even though the tracking numbers indicated that ordered merchandise had not shipped); PX 16, Att. E, QYK RFA Resp. No. 120 (admitting that some customers were confused about | Disputed, the email was automatically generated by the Shopify system. We had no control over this. It is unknown what consumers understood this to mean. Dec. of Tammabattula at ¶ 27 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | the shipping confirmation); PX 16, Att. U, 9/23/21 DP Dep. Tr. 135:1-7 (Whenever customers received notification of processing or pre-shipment, customers would make the assumption that [the order] was already been out to ship). | |
| 210. Defendants sent one mass email to its customers through Sendinblue on March 11, 2020. | PX 16, Att. W at 1 (March 11 Delay Option Notice); Att. L, 8/17/21 RT Dep. Tr. 135:12-19, 136:1-9 ("From my memory, March 11th is the one activity notice we sent out en mass.") | Undisputed |
| 211. The contents of the March 11, 2020 email, produced by Defendants as FTC-QYK-0002663 are reproduced on page 1 of Johnson Decl. Att. | PX 16 ¶ 30, Att. W at 1. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| W, "March 11 Delay Option Notice." | | |
| 212. Defendants' mistakenly stated they sent the March 11 Delay Option Notice on March 13. | PX 16, Att. H, Relevant Portions of QYK's Responses to the FTC's Interrogatory Requests ("QYK ROG Resp.") No. 2; PX 16, Att. E, QYK RFA Resp. No. 50, *but see* PX 16, Att. W at 2 (showing only one campaign sent on March 11, 2020). | Undisputed |
| 213. Defendants did not identify the recipients of the March 11 Delay Option Notice. | PX 16, Att. W at 2-3 (Delay Option Notice) (only indicating email was sent, without identifying recipients) | Disputed, Recipients were identified. Recipient list was based on Shopify list and included all the consumers that had ordered on or before March 8, 2020. Dec. of Tammabattula at ¶ 38 |

| | | |
|---|---|---|
| 214. Defendants admit they did not notify customers through any other means. | *See* PX 16, Att. E, QYK RFA Resp. No. 57; *see also id.* at Nos. 54-55 (admitting it only sent to those with email accounts). | Disputed, Defendants also notified customers who contacted customer service. Dec. of Tammabattula at ¶¶ 35-36 |
| 215. Defendants admit they sent no notice of shipping delays to customer for hand sanitizer prior to the March 11 Delay Option Notice. | PX 16, Att. E, QYK RFA Resp. No. 51 | Disputed, Defendants sent emails through info@glowyy.com to customers who reached out.   RT   Depo. 8/16/2021 134:14-18 |
| 216. Customers who had not received their items when anticipated contacted Glowyy about the delays. | PX 4 ¶ 6;  PX 5 ¶ 6; PX 6 ¶ 7; PX 3 ¶ 5; PX 1 ¶¶ 55, 61, 69 | Undisputed |
| 217. Some of the customers who contacted the company about delays received no response. | PX   1   ¶   58   ("I immediately emailed Glowyy.com via their service email and received no response."),   ¶ 61 ("I've contacted Glowyy by phone and via e-mail within a few days of placing an order because it | Disputed, every customer was responded back to. Over 10,000 customer tickets were generated with our customer service platform called Gorgias, and all were answered through Gorgias.   Dec.   of Tammabattula at ¶ 35 |

| | | |
|---|---|---|
| | hadn't shipped as promised. Since I have received no response, I called my credit card company and reported them as fraud."); ¶ 66 (A review posted on June 24, 2020, stated, "Same as the others. No response to my multiple inquires when the item never shipped 5 weeks later."); PX 1 ¶ Y at 152 ("Reached out on 4/23 for an update with no response."); PX 3 ¶ 5; PX 4 ¶ 6; PX 5 ¶ 6; PX 6 ¶ 7. | |
| 218. Some of the customers who contacted the company about delays were told they would receive their orders soon (sometimes with a specific date range). | PX 1 ¶¶ 55, 61, 69; PX 3 ¶ 5; PX 4 ¶ 7; PX 6 ¶¶ 8-9; PX 16, Att. X. *See* PX16, Att. H, Relevant Portions of QYK's Responses to | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | the FTC's Interrogatory Requests ("QYK ROG Resp."); Second Amended Resp. No. 1 ("When shipments were not made within the advertised period, the responding team member would inform the customer of a tentative timeline"). | |
| 219. Some customers followed up with additional communications; Defendants provided revised shipping dates to these customers. | PX 16, Att. X. | Undisputed |
| 220. Defendants' revised shipping dates were false, and were revised multiple times before Defendants actually shipped the customers' orders. | PX 1, Att. Y at 27 (gave multiple revised shipping dates), 41 (provided misleading email exchanges), 57 (contacted company said a week, "it has been another 18 | Disputed. All revised shipping dates were based on inventory present, inventory in transit, and the amount of personnel able to fulfill the order. All was done in good faith based on daily |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | days"), 77 ("they keep telling me they are shipping it and they don't"), 101 ("It's been various excuses from the USPS being delayed to having too many orders but each time I'm assured my order is 'next to ship' for 3 weeks."), 127 (discussing multiple revised shipping dates); 190 ("company has lied and told me the product is shipping"); *see also* PX 16, Att. X at 7-13 (ticket_id 1487100); *see generally* PX 1, Att. P (TrustPilot Complaints), Att. Z (Shopify complaints), Att. Y (BBB Complaints). | meetings. There were probably some orders that did not meet the revised shipping claims as the pandemic was causing us continual delays by our carriers and causing us to revise our methods and predictions. Dec. of Tammabattula at ¶¶ 6, 10, 14 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 221. Even for those customers who did get a refund, many had to ask multiple times for a refund before the company would honor it. | *See generally* PX 1, Att. Y (BBB Complaints). | Disputed, only a few customers may have had to ask more than once. More than $266,000 in refunds were given, as we employed a very liberal refund policy. The only time a refund was held up is when the product was already in transit, and we needed to confirm a return prior to paying the refund. Dec. of Tammabattula at ¶¶ 32-33, 39-40 |
| 222. Johnson Decl., Att. X contains a typical exchange with a customer from the Gorgias database; the order for the customer in this exchange was not shipped until April 26, 2020, and he was not presented with an option to cancel according to the communication. | PX 16 ¶ 47, Att. X at 7-13 (ticket_id 1487100). | Disputed, FTC provides no evidence for their claim that this is a typical exchange or that this order was not shipped until April 26, 2020. Further, the option to cancel and receive a refund was never denied to this customer. |

| | | |
|---|---|---|
| 223. Gorgias is a third-party application that integrates with Shopify. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 154:18-25; PX 16, Att. U, 9/23/21 DP Dep. 154:18-24; 81:7-22. | Undisputed |
| 224. Gorgias is the customer resource management ("CRM") database that Defendants' maintained to track communications with customers and potential customers. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 76:14-25; Att. K, 8/16/21 RT Dep. Tr. 124:14-24; 155:15-156:10; 76:14-77-:1; PX 16, Att. E, QYK RFA Resp. Nos. 136-139; PX 16, Att. H, QYK ROG Second Amended Resp. No. 3 ("QYK's employees handled customer service interactions using the Gorgias software.") | Undisputed |
| 225. Defendants relied on content of the Gorgias CRM database, and the contents of the database were maintained in the ordinary course of | PX 16, Att. E at 66, QYK RFA Amended Resp. No. 141-144 (authenticating copy of Gorgias database | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| business, and records were created at or near the time of the transaction. | communications produced by Gorgias); PX 16, Att. E, QYK RFA Resp. No. 147-148 (admitting the Company authorized customer representatives to access database to communicate with customers); PX 16, Att. U, 9/23/21 DP Dep. Tr. 80:6-82:14. | |
| 226. The Gorgias records showed information like how many times a customer called and how long a customer call lasted. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 81: 7-22. | Undisputed |
| 227. The Gorgias records showed notes from customer service. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 80:3-5; 81:7-22. | Undisputed |
| 228. The Gorgias records contained the contents of the chats and customer service inquiries. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 80:6-12. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 229. Glowyy customer representatives told dozens, if not more, of customers that their orders would be shipped with the "next batch" of orders around April 13, 2020, now that the Defendants "finally secured a cargo plane with the necessities to fulfill all our delayed orders. | PX 1, Att. Z at 5, 11, 27, 30, 33, 36, 39, 42, 53, 61, 67, 71, 75, 78, 81, 84, 87, 92, 193, 199; *see also* PX 16, Att. X at 16-38. | Undisputed |
| 230. Defendants never secured a private air cargo plane. | PX 16, Att. S, 8/20/21 BT Dep. Tr. 98:18-101:8; 117:1-9. | Disputed, payment of more than $300,000 was made for the charter plane and it was secured by Defendants despite ultimately not shipping sanitizer. BT Dep. Tr. 100:11-101:8 |
| 231. Defendants specifically instructed customer representatives to avoid refunds and offer revised shipping dates, substitutions, and refunds of shipping charges instead. | PX 16, Att. N1 at 237-238, RT-QYK 16 (Skype Archive 4/16/2020 11:56 AM); *see also id.* at 247-248 (Skype Archive 4/10/2020 at 12:31 PM) | Disputed, the skype chat cited by Plaintiff's instructs customer service representatives "[if] they still do not want their products then we will issue a refund" on 4/16/2020 at 11:56 AM |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 232. Danielle Paulo was the Defendants' Chief Marketing Officer "CMO" at least during the period between March and July 2020. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 58:22-59:8 (Paulo helped QYK with customer service, content creation and marketing between March and July 2020); 159:5-10 (Paulo supervised the US customer service reps and quit in July 2020); PX 16, Att. O, 8/18/21 JN Dep. Tr. 30:15-24; PX 16, Att. U, 9/23/21 DP Dep. Tr. 37:18-38:1 (testifying she was chief marketing officer for both DJN and QYK); 41:16-20 (testifying she held the title CMO until she left in August). | Undisputed |

| | | |
|---|---|---|
| 233. Danielle Paulo managed the customer service team for Glowyy and QYK Brands and Dr. J's Natural. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 48: 20-24; 49: 1-15; PX 16, Att. K, 8/16/21 RT Dep. Tr. 159:5-10 (Paulo supervised the US customer service reps and quit in July 2020). | Undisputed |
| 234. Danielle Paulo had daily meetings with RT, BT and Dr. J. about shipments | PX 16, Att. U, 9/23/21 DP Dep. Tr. 54: 4-20. | Undisputed |
| 235. DP passed on information learned in these daily meetings to the customer service team. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 53:16-54:8. | Undisputed |
| 236. DP had daily meetings with Dr. J, RT, and BT in March 2020. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 54:4-13; *see* PX 16, Att. M, 12/7/21 RT Dep. Tr. 215:6-216:2 (discussing meetings); PX 16, Att. Q, 12/9/21 JN Dep. Tr. 205:15-206-11. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 237. DP would inform JN, BT, and RT about the nature of the customer service inquiries they were receiving during the daily meetings. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 57:18-58:22. | Undisputed |
| 238. Danielle Paulo was responsible for responding to customer complaints for both Glowyy and DJN. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 27:1-22; 49:12-51:3. | Undisputed |
| 239. DP, RT, JN, among others handled shipping time disputes and tracked shipments for customers. | PX 16, Att. H, QYK ROG Second Amended Resp. No. 3 | Undisputed |
| 240. DP had authority to give refunds and substitutions but did not do so without confirming with RT or JN first. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 74:7-21; 75:25-76:13. | Undisputed |
| 241. Danielle Paulo communicated with customer service representatives through Skype and Gorgias. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 93:13-20 (Skype); 80:6-82:19 (discussing Gorgias); *see also* PX 16, Att. K, 8/16/21 RT Dep. Tr. 133:7-24 | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 242. Danielle Paulo's Skype ID is Live:.cid.49afd5d54f0d007d. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 95:15-24; *see also* PX 16, Att. K,8/16/21 RT Dep. Tr. 133:7-21. | Undisputed |
| 243. Danielle Paulo sent the following Skype message to the customer service team on or around April 10, 2020:<br><br>Hi, does everyone here also have access to Slack? We have all the updates on there from our estimated shipping dates and also what we are informing customers now. Just in case you don't I will send it here as well:<br><br>•Just wanted to update that our new estimated shipping date is April 23-26th. We understand we told majority of the customers it would be April 13-16th.<br>•Our First option would be to have them wait until the new shipping date (April 23-26th) to get their order. | PX 16, Att. N1 at 247-49, RT-QYK 16. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| •Our second option would be to CONVERT their existing order to what we have available in our warehouse and ship out as early as today If they are interested please include it in the notes on their account.<br><br>•We have 2 types of bottles currently that are ready to ship out today (8oz and 4oz sizes)<br><br>•We will send you a chart that you can use to give customers the correct conversions depending on what they've ordered.<br><br>DO NOT give customers conversions without using the chart we give you please.<br><br>•Again, be sure to include whatever changes are made to these orders in the notes on their account. | | |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 244. Danielle Paulo sent the following message via Skype to the customer service team on or around April 16, 2020:<br><br>Please inform other customer service reps that we are working all weekend to have orders with labels that have been printed or fulfilled, shipped out this weekend. If they are asking for a refund here are the steps before issuing them a full refund<br><br>-Let them know it is already packed and we cannot intercept that package as we have 1,000 orders being picked up daily by USPS<br>-Since it is at the final stages of processing, its awaiting pick up<br>-Since we do not want any customers to feel obligated to keep their orders, upon receiving them, all they have to do is reject their order to be shipped back to us at no charge | PX 16, Att. N1 at 237-238, RT-QYK 16. | Undisputed |

| | | |
|---|---|---|
| and we will issue a refund immediately<br><br>-If they are still frustrated, for the delay, offer a refund on their shipping cost only<br><br>-ONLY after all of this and they still do not want their products then we will issue a refund (:<br><br>For anything else, please send customer my way to help resolve any issue. Thank you | | |
| 245. Danielle Paulo and Rakesh Tammabattula authorized the instructions for handling refunds for orders in "preshipment." | PX 16, Att. U, 9/23/21 DP Dep. Tr. 99:1-100:1. | Undisputed |
| 246. Defendants informed customers they could not issue a refund once they had created a shipping label, instead instructing customers to intercept the mail carrier, reject the package and return to sender to receive a refund. | *See, e.g.*, PX 1 ¶ 61 ("You will demand a refund but they will say they can't refund your money because it is in 'preshipment' status.'"); ¶ 69 (Glowyy refused | Disputed, This only occurred if the package had been packed and labeled and either delivered or in the bins with thousands of other packages to be picked up by the USPS. In |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | refund, saying they could not refund once a "shipping label was created."); ¶ 55 ("They claim they cannot cancel my order because it's too late in the process."); *see generally* PX 16, Att. Y; PX 16, Att. X at 1, 14 (ticket_ids 2573824, 141970332). | such cases, it was virtually impossible to intercept the package, so we asked the customer to either reject it or confirm returning it, at which time we would issue a refund. Dec. of Tammabattula at ¶ 41 |
| 247. DP also handled customer complaints concerning refunds. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 217:3-9 | Undisputed |
| 248. DP always checked with RT, BT, or Dr J before issuing refunds. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 74:10-21. | Undisputed |
| 249. Defendants did not provide refunds to customers once an order was in "pre-shipment." | PX 16, Att. U, 9/23/21 DP Dep. Tr. 96:13-97:2. | Disputed, This only occurred if the package had been packed and labeled and either delivered or in the bins with thousands of other packages to be picked |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | up by the USPS. In such cases, it was virtually impossible to intercept the package, so we asked the customer to either reject it or confirm returning it, at which time we would issue a refund. Dec. of Tammabattula at ¶ 32-33, 38-40 |
|---|---|---|
| 250. "Pre-shipment" means that [the order] is in the warehouse, being put into their packaging . . . ." | PX 16, Att. U, 9/23/21 DP Dep. Tr. 97:3-10. | Disputed, "Pre-shipment also includes Packaged and Ready for shipping, or Shipment picked up by carrier but not scanned. Dec. of Tammabattula at ¶ 41 |
| 251. Defendants could not issue a refund once an order was in pre-shipment because there were thousands of orders, and there was "no way we could physically go down to the warehouse, get that specific | PX 16, Att. U, 9/23/21 DP Dep. Tr. 97:11-16; 101:1-8. | Disputed, in addition to the volume, many of these orders were waiting to be picked up by UPS or USPS. DP Dep. Tr. 101:4-6 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| order out." | | |
|---|---|---|
| 252. Defendants also couldn't intercept orders for refund once in preshipment because they printed stacks and stack of labels and couldn't find them either even when not on the box. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 101:9-13; PX 1, Att. AD (video at 2:59 min. showing stacks of printed labels); *see also* PX 16, Att. H, QYK ROG Second Amended Resp. No. 16 (discussing that they printed the labels in batches to send to packaging team). | Disputed, in addition to the volume, many of these orders were in fulfillment waiting to be picked up by UPS or USPS. DP Dep. Tr. 101:4-6. |
| 253. Defendants could not intercept individual packages [for refund] due to the volume of orders. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 101:1-8. | Disputed, in addition to the volume, many of these orders were waiting to be picked up by UPS or USPS. DP Dep. Tr. 101:4-6 |
| 254. Customers were incredulous they had to wait for items that had not yet shipped to arrive in the mail, and then return that item back to the company before receiving their money back. | PX 16, Att. Y at 4 (ticket_id 3698767 ["If the package hasn't even been completely fulfilled and packaged then why can't we just | Undisputed as to a few customers being upset, but the vast majority were not and over $266,000 in refunds were issued. Dec. of Tammabattula at ¶¶ 38- |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | cancel."]; PX 16, Att. X at 14-15 (ticket_id 1970332); PX 1, Att. Z at 20 ("The order never left your facility….so how do you want it to be back then….you can truck [sic] the order for yourself, it was never picked up….so in that case how long will I want for the refund?") (elipses in original); *id.* at 46 (":it hasn't even arrived at the post office for processing and shipping.  So my order is in limbo and I have no idea where it is and you can tell me where it is and on top of that you refuse to give me my money back thanks for the horrific | 40 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | service!!!!!!!!"); *id.* at 49-50. | |
| 255. Defendants explained that it was their "policy" that once items were in "preshipment" they could no longer authorize a refund. | PX 16, Att. N1 at 263, RT-QYK 16 (Skype Archive, 3/23/2020, 1:25:53 PM (From DP) "Hi team, just a reminder that if a customer wants to cancel and the order has been processed, pre-shipment, or has a tracking number: we cannot issue a refund anymore. Please let them know we are a little delayed with shipment due to a slower processing time during the circumstances and their tracking will update within 2-3 days. If they still do not want their order, they can reject the shipment and it will | Undisputed as to this policy existing for a limited period of time. This only occurred if the package had been packed and labeled and either delivered or in the bins with thousands of other packages to be picked up by the USPS. In such cases, it was virtually impossible to intercept the package, so we asked the customer to either reject it or confirm returning it, at which time we would issue a refund. Dec. of Tammabattula at ¶¶ 38-40 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | be sent back to us and once we receive the item, we can issue a refund. Let me know if you have any questions. Thanks") | |
| 256. After a label was printed and was in the warehouse, a package was in pre-shipment. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 97:17-21. | Undisputed |
| 257. "Return to sender" resulted in dozens of customer complaints. | *See generally* PX 16, Att. Y; PX 1, Att. Z at 15, 49, 135, 151, 157, 171, 189, 207, 216, 222; PX 1, Att. Y at 50, 53, 72, 85, 87, 108, 109, 110, 113. | Undisputed |
| 258. Other frustrated customers demanded refunds. | *See, e.g.*, PX 1 ¶¶ 55, 58, 59 Att. P; PX 3 ¶ 6; PX 4 ¶ 9; 5 ¶ 6; PX 6 ¶ 10; Att. Y (BBB complaints); PX 16, Att. E, QYK RFA Resp. No. 104 (admitting customers complained to the company about | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | shipping delays). | |
| 259. Defendants sent orders after consumers informed the company they no longer wanted the item. | *See* PX 16, Att. E, QYK RFA Resp. No. 91. | Disputed, orders were not sent before consumers informed the company, they no longer wanted them. Dec. of Tammabattula at ¶¶ 38-40 |
| 260. Defendants realized that some of these customers had been successful in obtaining chargebacks through their credit card companies, Defendants harassed them relentlessly for payment. | PX 16, Att. AC. | Disputed, customers who received refunds after shipments were delivered were requested to pay but not harassed. Dec. of Tammabattula at ¶ 38 |
| 261. Some customers complied and paid for hand sanitizer they clearly had already cancelled and did not want. | PX 16, Att. Y (ticket_id 2642713); *see generally* PX 16, Att. AC; *see also* PX 9 ¶ 17 ("191 unique orders that had a 'Lineitem_name' value of 'Re-charge Refunding Items | Disputed, only those who wanted to keep the product paid. Dec. of Tammabattula at ¶ 38 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | (Fulfiled)'". | |
|---|---|---|
| **D. Defendants' DJN Hand Sanitizer Sales.** | | |
| 262. On or around March 4, when Defendants began selling hand sanitizer through Glowyy, they also started similar campaigns to sell hand sanitizer through DJN. | *See* PX 16, Att. O, 8/18/21 JN Dep. Tr. 69:9-20 (testifying began selling hand sanitizer on DJN website around March and April 2020). | Disputed. Dr. J's did not start selling hand sanitizer until late in March. The amount of sanitizer sold by Dr. J's was only a fraction of that sold by QYK. Declaration of Nguyen at ¶ 7 |
| 263. Defendants disseminated various processing times on the DJN website similar to those claims on the Glowyy website. | PX 16, Att. Q, 12/9/21 JN Dep. Tr. 117:5-121:2; *id.* 120:4-18 (admitting that DJN coordinated with QYK to determine processing times placed on website); *see also* PX 1, Att. B at 12-13. | Undisputed as to certain times when the processing times were similar |
| 264. "Processing time" is the time it takes the company "to receive the order, prepare it, print the label, put it in a box, and then put it in the mail." | PX 16, Att. Q, 12/9/21 JN Dep. Tr. 123:2-8. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| 265. Defendants disseminated various ads through Facebook, Instagram, and Twitter to promote the sale of hand sanitizer through drsjnatural.com. | PX 16, Att. O, 8/18/21 JN Dep Tr. 95:25-96:6; *see also* PX 1, Att. E at 3-6 (Instagram); PX 2, Att. Z and AD (Facebook). | Undisputed |
|---|---|---|
| 266. DJN's advertisements claimed it had hand sanitizer "In Stock." | *See* PX 1, Att. E at 5 ("fully stocked"); PX 2, Att. AC at 1 ("If you're looking for #handsanitizer and its sold out at the store, please visit us online at drjsnatural.com"); *id.* at 2 (Mar. 13 "We now have our #handsanitizer available on our store."); *id.* (Mar 16: "Looking for #handsanitizer? We have our new bottles and our 100ml bottle in-stock today but selling fast."). | Disputed, these ads were only disseminated on a few instances, not always as the Plaintiff's fact implies. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 267. Defendants also stated that hand sanitizer ships "Today" on Twitter ads. | PX 2, Att. AE at 1 (Mar 10: "If ordered today we can ship today!") | Undisputed, even though Twitter only resulted in 6 orders. Dec. of Tammabattula at ¶ 12 |
| 268. Defendants did not engage in a separate Google AdWords campaign for DJN. | PX 16, Att. O, 8/18/21 JN Dep. Tr. 96:21-23. | Undisputed |
| 269. Defendants sold substantially less hand sanitizer through DJN than through Glowyy. | *Compare* PX 9 ¶ 31 ($2.9M for Glowyy) *with* ¶ 56 ($406K for DJN). *See also* PX 16, Att. O, 8/18/21 JN Dep. Tr. 69:21-70:1 (testifying that the obtained hand sanitizer from Glowyy and DJN did not maintain its own inventory because "we didn't sell a significant amount") | Undisputed |
| 270. Defendants admit that they were unable to fulfill orders because there were | PX 16, Att. Q, 12/9/21 JN Dep. Tr. 123:11-124:1; | Undisputed as to certain orders as, at time, the personnel was |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| more orders than they could fulfill at once. | 124:19-125:2 | insufficient to package all orders despite working long hours. Dec. of Tammabattula at ¶ 30 |
| 271. Defendants received numerous complaints from irate customers about delays. | PX 16, Att. AE | Disputed, there was only a limited number of complaints about delays and whether they were "irate" is an opinion. Dec. of Tammabattula at ¶ 35-36 |
| 272. Defendants received numerous complaints from irate customers about broken and leaking bottles of hand sanitizer and other PPE. | PX 16, Att. R6, JN 53. | Disputed, unknown what is meant by "numerous". There were a few complaints but these were all resolved fairly quickly. Dec. of Tammabattula at ¶ 35-36 |
| 273. DJN continues to receive complaints about broken and leaking bottles. | *See, e.g.*, PX 16, Att. R7-R8, JN 54-55. | Disputed, none of the supporting evidence (PX 16 R7-R8) includes any complaints about broken and leaking |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | bottles |
|---|---|---|
| 274. Dr. J admits that a customer receiving a broken or leaking bottle is not receiving what they ordered. | PX 16, 12/9/21 JN Dep. Tr. 186:3-20. | Undisputed |
| 275. Defendants received numerous complaints from irate customers about materially different substitutions. | *See* PX 16, Att. AE. | Disputed, there were only a few complaints, and the customers were not irate. These were resolved. Dec. of Tammabattula at ¶ 35-36 |
| 276. Many customers requested refunds or cancellations, which the company did not honor. | *See* PX 16, Att. AE. | Disputed, the company honored every refund request if the product had not yet shipped. If it had been shipped, then the company would confirm return and then issue the refund. The company is unaware of any consumer who requested a refund that |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | did not receive a refund. Dec. of Tammabattula at ¶¶ 36, 38-40 |
|---|---|---|
| 277. Defendants used a third-party e-platform to manage the DJN website called Big Commerce. | PX 16, Att. O, 8/18/21 JN Dep. Tr. 60:20-24; PX 16, Att. Q, 12/9/21 JN Dep. Tr. 61:2-12. | Undisputed |
| 278. Big Commerce maintains all order data except the detailed tracking information showing shipment date for orders. | PX 16, Att. Q, 12/9/21 JN Dep. Tr. 67:4-16 (shipped order status is based on generating and creating a shipping label); 67:17-21 (shipped date is the date the label is created); 96:3-18 (ship date in Big Commerce is the date when the label is created not when it was put into the mail); 102:6-103:2 (RT testifying as corporate | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

|  |  |  |
|---|---|---|
|  | representative on behalf of DJN, *see* 12/9/20 JN Dep. Tr. 101:14-19). |  |
| 279. Defendants' Big Commerce records show consumers purchased $406,333.30 of hand sanitizer through DJN between March and August 2020. | PX 9 ¶ 56, Table 5. | Undisputed |
| **E. Defendants Sold Basic Immune IGG as a Covid Preventative.** | | |
| 280. Defendants also offered a product called Basic Immune IGG. | PX 16, Att. O, 8/18/21 JN Dep. Tr. 116:15-18 | Disputed, only DrJ's offered this product. Declaration of Nguyen at ¶ 13, 15 |
| 281. Until August 2020, Defendants, primarily through Dr. J's Natural and Dr. J, offered a product called "Basic Immune IGG" through their website drjsnatural.com. | PX 16, Att. D, Ans. to FAC ¶ 51; PX 16, Att. O, 8/18/21 JN Dep. Tr. 119:3-5. | Undisputed |
| 282. Dr. J's Natural also sold Basic Immune IGG via Amazon.com | PX 16, Att. O, 8/18/21 JN Dep. Tr. 119:3-5. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 283. Basic Immune IGG was sold as part of a "COVID Essentials" line of products. | PX 16, Att. D, Ans. to FAC ¶ 51. | Undisputed |
| 284. Dr. J made the decision to sell Basic Immune IGG as a "Covid Essential." | PX 16, Att. O, 8/18/21 JN Dep. Tr. 120:3-9. | Undisputed |
| 285. Defendants sold Basic Immune IGG for $89. | PX 16, Att. D, Ans. to FAC ¶ 51. | Undisputed |
| 286. Basic Immune IGG contains "ImmunoLin®," a serum-derived bovine immunoglobulin ("SBI") protein powder manufactured by Entera Health, Inc. | *See* PX 1 ¶ 19, Att. C; PX 16, Att. D, Ans. to FAC ¶ 53 (Basic Immune IGG/Immunolin is a serum-derived bovine immunoglobulin concentrate). | Undisputed |
| 287. Entera Health promotes the product primarily for healthy digestion and immune function. | *See* PX 16, Att. O, 8/18/21 JN Dep. Tr. 116:19-24 (Entera antibody powder); PX 1, Att. C. | Undisputed |
| 288. Entera Health authorizes the sale of ImmunoLin through doctors' offices and does not appear to sell the product | PX 1, Att. H (Covid-19 Insight from a Doctor Tr. 10:23-25); *see also* PX 1, Att. C. | Undisputed |

| | | |
|---|---|---|
| directly to consumers. | | |
| 289. Consistent with Entera's advertising, Defendants stuck to these soft claims in their online advertising on social media and its website product pages. | *See* PX 16, Att. D, Ans. to FAC ¶ 54 | Undisputed |
| 290. For example, on the website, drjsnatural.com, Defendants marketed Basic Immune IGG as a "supplement" that "will help support your immune system" and "helps support healthy digestion." | *See, e.g.*, PX 2, Att. R; PX 16, Att. D, Ans. to FAC ¶ 54. | Undisputed |
| 291. In online videos, Defendants claimed Basic Immune IGG can prevent transmission of COVID-19; and Basic Immune IGG has been clinically tested and is FDA-approved for prevention of COVID-19 transmission. | PX 16, Att. F, RT RFA Resp. No. 87 (admitting he knew Dr. J appeared on the DJN YouTube channel in videos claiming that Basic Immune IGG is FDA-approved to treat, | Disputed, the video was an interview in which Jacqueline Nguyen (a dr. of pharmacy) discussed the need of the body to boost antibodies to resist viruses. She never said that the Basis Immune |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | prevent, or reduce the risk of COVID-19); PX 1, Att. F-2, H, F-3, I) | IGG prevented, treated, or cured Covid-19 or its transmission. She, in fact, told the audience that there is presently no medicines that can be used to kill the Covid-19 virus. Declaration of Nguyen at ¶¶ 16-18 |
|---|---|---|
| 292. On or about April 2, 2020, Dr. J appeared on a newscast on Saigon Entertainment Television (SET) and stated that Basic Immune IGG could "prevent" COVID-19 by boosting the immune system. | PX 1, Att. K; PX 8, Att. A; PX 16, Att. D, Ans. to FAC ¶ 57. | Disputed, The video was an interview in which Jacqueline Nguyen (a doctor of pharmacy) discussed the need for the body to boost antibodies to resist viruses. She never said Basic Immune IGG prevented, treated, or cured Covid-19 or its transmission. She, in fact, told the audience there is presently no medicines that can be used to kill the Covid- |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | 19 virus. Declaration of Nguyen at ¶¶ 16-18 |
|---|---|---|
| 293. Dr. J admits she appeared on Vietnamese television broadcasts and recommended Basic Immune IGG "in connection with boosting up your immune system and prevention of all corona—all bacteria and viruses, including Covid-19." | PX 16, Att. O, 8/18/21 JN Dep. Tr. 133:2-134:2. | Disputed, the deposition transcript shows that she mainly recommended Basic Immune IGG "in connection with boosting up your immune system". JN Dep. Tr. 133:20-23 |
| 294. Dr. J made the following statement during the April 2, 2020 video:<br>the immunoglobulin antibody therapy that I take with this powder, like how I drank and showed you earlier, is to increase my existing antibodies and make them stronger. The product helps strengthen the army of soldiers already present in my body. **Then, let's say if one coronavirus happens to infiltrate my body, I already** | PX 8 at 19 (emphasis added). | Undisputed |

| | | |
|---|---|---|
| **have about five hundred thousand antibodies, thanks to this powder. They would cling to and bite that coronavirus, push it out and kill it. . . .** And now if Mr. Do Dung or our dearest audience haven't taken this antibody powder yet, it means that if the coronavirus enters your body, Mr. Do Dung and you only have 5,000 antibodies while I have 500,000 of them, because I have been taking this antibody powder. | | |
| 295. She further claimed mixing Basic Immune IGG with drinking water could ward off COVID-19 infections, even if sitting next to an infected person through the following statement: [L]et's say if I sit next to Mr. Do Dung or someone else or happen to touch something and get infected with Covid-19, at least I have already had more | PX 8, Att. A at 11. | Disputed, Defendant's basic explanation of how immune systems work does not mean she is claiming that Basic Immune IGG could ward off, prevent, or treat COVID-19. She was generally talking about the need and benefit to boost the bodies antibodies. |

-104-

| | | |
|---|---|---|
| antibodies that can detect the invasion and cling to and attack the coronavirus.  It's like, the antibodies will say, "hey, bacteria are penetrating the body, let's come and fight it off | | Declaration of Nguyen at ¶¶ 16-18 |
| 296. During this same "newscast," Dr. J also claimed Basic Immune IGG has been FDA-approved and has undergone clinical trials proving the efficacy of Basic Immune IGG for treatment, prevention, and reducing the risk of COVID-19 infection | PX 8, Att. A at 17-18 (in response to the question "Is it guaranteed that we will stay safe [from COVID-19]?" Dr. J responds, "It's guaranteed, because there is FDA's verification and approval."); *see also* PX 8, Att. A at 10. | Disputed. A review of the interview shows the translation is incorrect, as she never said it is guaranteed to keep people safe from Covid. She stated that the formula is safe for humans as it is made in an FDA approved facility. Declaration of Nguyen at ¶¶ 16-18 |
| 297. Immediately after discussing the successful treatment of COVID-19 patients with plasma therapy—in which antibodies harvested from those recovering from COVID-19 are used to treat patients "at risk of death"—Dr. J went on to explain she was | PX 8, Att. A at 10. | Disputed, nowhere does she state the product prevents, treats, or cures Covid-19. She only states the product boosts the bodies' antibodies. The fact that only a small amount of the product |

| | | |
|---|---|---|
| "very happy, that at the same time, my company has released a product called Immune IgG. Our parent company is the only company obtaining the registered trademark for this antibody product from the FDA []. We have conducted clinical studies, involving the extraction and cultivation of antibodies taken from cow blood, which is then made into this antibody powder." | | was sold (at a lost to the company) is a good indication of how her message was understood. Declaration of Nguyen at ¶ 18 |
| 298. Two English-language videos on YouTube also touted Basic Immune IGG as a preventative and treatment for COVID-19 with similar claims | PX 1 ¶¶ 39-42, Att.s F-2, F-3, H-I. | Disputed. Nowhere does she state the product prevents, treats or cures Covid-19. She only states the product boosts the bodies' antibodies. The fact that only a small amount of the product was sold (at a loss to the company) is a good indication of how her message was understood. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | | Declaration of Nguyen at ¶¶ 16-18 |
| 299. On or around June 8, 2020, Nguyen posted, or caused to be posted, a video on the Dr. J's Natural YouTube channel entitled "Covid-19 Insight from a Doctor Q&A with Dr. J." ("COVID Insights Video"). | PX 16, Att. G, Relevant Portions of Jacqueline Nguyen's Responses to the FTC's RFAs ("JN RFA Resp.") No. 88. | Undisputed |
| 300. Nguyen appeared in the COVID Insights Video on the Dr. J's Natural YouTube channel responding to questions from her viewing audience and customers about COVID-19. | PX 16, Att. G, JN RFA Resp. No. 89. | Undisputed |
| 301. On or about June 11, 2020, Nguyen appeared in a video posted to the Dr. J's Natural YouTube channel. | PX 16, Att. G, JN RFA Resp. No. 92. | Undisputed |
| 302. The video posted on or around June 11, 2020 was entitled "How does Immune IGG Work; Dr J's Natural | PX 16, Att. G, JN RFA Resp. No. 93. | Undisputed |

| | | |
|---|---|---|
| Educational" ("How does Immune IGG Work Video"). | | |
| 303. Nguyen posted, or caused to be posted, the How Does Immune IGG Work Video. | PX 16, Att. G, JN RFA Resp. No. 94. | Undisputed |
| 304. In the June 8, 2020 COVID Insights Video Dr. J responds to questions regarding COVID-19 from consumers, and she addresses the question, "What is the best preventative measure to take now?" | PX 1 ¶ 40, Att. H (Covid 19- Insight from a Doctor Tr. 9:17-19). | Undisputed |
| 305. Her response—use Dr. J's hand sanitizer and take Basic Immune IGG. Basic Immune IGG will boost the immune system, "*so just in case you get infected with the virus, then your body will be able to fight back and destroy all the Coronavirus that is entering your body.*" | PX 1 ¶ 40, Att. H (Covid 19- Insight from a Doctor Tr. 10:10-11:9) (emphasis added). | Disputed, this quote is taken out of context by omitting her general discussion of hygiene. She was explaining her personal experience with Basic Immune IGG. Nowhere does she state the product prevents, treats or cures Covid-19. She only states the product |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | boosts the bodies' antibodies. The fact that only a small amount of the product was sold (at a loss to the company) is a good indication of how her message was understood. Declaration of Nguyen at ¶¶ 16-18 |
|---|---|---|
| 306. In a June 11, 2020 English-language YouTube video titled "How Does Immune Igg Work," Dr. J claimed Basic Immune IGG was a "prevention" for COVID-19, and suggests it had been clinically tested and had a "patent" from the FDA for COVID-19 prevention and treatment. | PX 1 ¶¶ 40-42, Att.s F-3, I. *See also* PX 2, Att. AD at 2 (Immune IGG "helps strengthen the body's natural defense system to lower the risk of infection in persons with a weakened immune system, which is important during this #COVID pandemic."). | Disputed. nowhere does she state the product prevents, treats or cures Covid-19. She only states the product boosts the bodies' antibodies. The fact that only a small amount of the product was sold (at a lost to the company) is a good indication of how her message was understood. Declaration of Nguyen at ¶¶ 16-18 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 307. In that video, Dr. J further claimed Basic Immune IGG is specifically formulated to target COVID-19: "out of all of the product on the market right now, whether it's Echinacea, zinc, vitamin C, probiotic, those are just a small part of the equation that will boost up your immune system. But to be specific and to be laser-target [sic], immune IgG will boost up your antibody and your immunoglobulin for your body to help recognize viruses and bacteria, especially coronavirus." | PX 1, Att. I (How Does Immune Igg Work Tr. at 7:1-8; *see also id.* at 5:3-21 (comparing Basic Immune IGG to plasma therapy)). | Disputed Nowhere does the statement claim or state that Basic IGG "targets" COVID-19. Declaration of Nguyen at ¶¶ 16-18 |
| 308. Dr. J confirmed social media content before it was posted. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 45: 9-11. | Undisputed |
| 309. Basic Immune IGG/Immunolin is not an FDA-approved treatment or preventative for COVID-19. | PX 16, Att. D, Ans. to FAC ¶ 64. | Undisputed |

| | | |
|---|---|---|
| 310. The materials provided by the sales representative who sold Basic Immune IGG to Dr. J did not mention Covid-19. | PX 16, Att. O, 8/18/21 JN Tr. 118:8-20. | Undisputed |
| 311. The clinical data from Entera Health [about Basic Immune IGG] did not mention Covid-19. | PX 16, Att. O, 8/18/21 JN Tr. 126:1-3. | Undisputed |
| 312. Tammabattula knew that Dr. J's Natural had no competent and reliable scientific evidence for the claim that Basic Immune IGG could treat, prevent, or reduce the risk of contracting COVID-19. | PX 16, Att. F, RT RFA Resp. No. 88. | Undisputed. But no claim was ever made. Declaration of Nguyen at ¶¶ 16-18 |
| 313. Tammabattula knew that Dr. J's Natural had no competent and reliable scientific evidence for the claim that Basic Immune IGG was FDA-approved to treat, prevent, or reduce the risk of contracting COVID-19. | PX 16, Att. F, RT RFA Resp. RFA No. 89. | Undisputed. But no claim was ever made. Declaration of Nguyen at ¶ 16-18 |

| IV. INDIVIDUAL PARTICIPATION AND KNOWLEDGE OF CONTROL PERSONS. | | |
|---|---|---|
| 314. Defendant Tammabattula admits that "[a]t all times material to the FAC, acting alone or in concert with others, RT has formulated, directed, or controlled, had the authority to control, or participated in the acts and practices of QYK, EASII, and Theo Pharmacy." | PX 16, Att. D, Ans. to FAC. ¶ 10. | Undisputed |
| 315. Defendant Tammabattula solely managed the advertising and the QYK website. | PX 16, Att. F, RT RFA Resp. Nos. 14-17. | Undisputed |
| 316. Defendant Tammabattula learned on March 3 or 4 that the first shipment of hand sanitizer expected from India would be delayed and he did not know when it would arrive. | PX 16, Att. K, 8/16/21 Dep. Tr. 168:2-13 (discussing that the original shipment from Syndy Pharma was supposed to be delivered March 3rd, but "then got pushed back to March 4th"); 168:19-169:5 (pushed back but | Undisputed as to the fact that shipment was expected by March 4 before being delayed. Dec. of Tammabattula at ¶¶ 14-15 |

| | | |
|---|---|---|
| | ultimately delivered on March 9); Att. L, 8/17/21 RT Dep. Tr. 133:10-14) ("Q: So March 4th was the first time you were aware of any delays in the shipment of the hand sanitizer that you were going to be selling to the public. A: Right."); 39:6-11; *see also* PX 16, Att. S, 8/20/21 BT Dep. Tr. 48:7-12) ("shipments were scheduled to arrive, I believe, on the 3rd or 4th of March. I'm not sure. And it did not happen. There were delays."). | |
| 317. Defendant Tammabattula never voluntarily stopped or paused his advertising campaigns. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 59:19-20 (did not pause the March 4 Google AdWords campaign | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | when he learned of delays); 54:1-10 (Google disabled March 4 Google AdWords campaign, not his decision to stop running ads); PX 16, Att. M, 12/7/21 RT Dep. Tr. 126:7-127:25 (Facebook disabled ads); 138:23-139:9 (Microsoft Bing account disabled in March 2020) | |
| 318. Defendant Tammabattula had the authority to control QYK's website www.glowyy.com. | PX 16, Att. F, RT RFA Resp. No. 14. | Undisputed |
| 319. Defendant Tammabattula had the authority to control QYK's advertising since at least November 2017. | PX 16, Att. E, QYK RFA Resp. No. 28; PX 16, Att. F, RT RFA Resp. No. 16. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 320. Defendant Tammabattula authorized QYK to represent in the March 4 Google AdWords Campaign that the company had hand sanitizer "in stock." | PX 16, Att. F, RT RFA Resp. No. 4. | Undisputed |
| 321. Defendant Tammabattula authorized QYK to represent in the March 4, 2020 Google AdWords campaign that the company ships hand sanitizer "today." | PX 16, Att. F, RT RFA Resp. No. 5. | Undisputed |
| 322. Defendant Tammabattula authorized QYK to represent in the March 4 Google AdWords campaign that shipping time for hand sanitizer is the same day. | PX 16, Att. F, RT RFA Resp. No. 6; No. 12 ("ships hand sanitizer the same day it is ordered.") | Undisputed |
| 323. Defendant Tammabattula authorized QYK to run the March 4 Google AdWords campaign through at least March 18, 2020. | PX 16, Att. F, RT RFA Resp. No. 7. | Undisputed |
| 324. Defendant Tammabattula authorized the March 4 Google Ad campaign. | PX 16, Att. E, QYK RFA Resp. No.19; PX 16, Att. F, RT RFA Resp. No. 9. | Undisputed |

| 325. Defendant Tammabattula had the authority to control QYK's advertisements. | PX 16, Att. F, RT RFA Resp. No. 15. | Undisputed |
| 326. Defendant Tammabattula had the authority to control QYK's March 4 Google AdWords campaign. | PX 16, Att. E, QYK RFA Resp. No. 20; PX 16, Att. F, RT RFA Resp. No. 10. | Undisputed |
| 327. Defendant Tammabattula had the authority to control the advertisements disseminated through the March 4 Google Ad campaign. | PX 16, Att. E, QYK RFA Resp. No. 21; PX 16, Att. F, RT RFA Resp. No. 11. | Undisputed |
| 328. Defendant Tammabattula asked his brother Balaji to help secure additional hand sanitizer | PX 16, Att. K, 8/16/21 RT Dep. Tr. 161:10-162:11. | Undisputed |
| 329. Balaji Tammabattual did not begin to try to secure additional hand sanitizer until March 6, 2020. | PX 16, Att. S, 8/20/21 BT Dep. Tr. 48:1-6. | Disputed, Balaji has been securing Hand Sanitizer since February 2020 Dec. of Tammabattula at ¶ 14 |
| 330. Defendant Tammabattula knew in early March 2020 that there was increased consumer demand for hand sanitizer. | PX 16, Att. E, QYK RFA Resp. No. 98; PX 16, Att. F, RT RFA Resp. No. 37; *see also* PX 16, Att. N1, RT-QYK 16 at | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | 315 (RT instructing Philippines customer service reps that "90%" of the people will want to know "if product is available."); PX 16, Att. H, QYK ROG Amended Resp. No. 10 (QYK began "in house" production the second week of March due to increased demand). | |
| 331. Defendant Tammabattula became aware of the "full gravity of the situation" by March 12th or 13th regarding delays in shipping. | 8/17/21 RT Dep. Tr. 117:21-118:16. | Undisputed |
| 332. Defendant Tammabattula made numerous public statements acknowledging consumer demand for hand sanitizer. | PX 1, Att. T at 68-134; PX 16, Att. N10 at 28, RT-QYK 55 (EverybodyWiki page: "The company had a shortage of supplies and alcohol used for hand | Undisputed |

| | | |
|---|---|---|
| | sanitizers due to COVID-19 and could not keep up with demand."). | |
| 333. Defendant Tammabattula made several public statements acknowledging his company lacked product ingredients and packaging. | PX 1, Att. T at 70-134; PX 16, Att. N10 at 28, RT-QYK 55 (EverybodyWiki page: "The company had a shortage of supplies and alcohol used for hand sanitizers due to COVID-19 and could not keep up with demand."). | Undisputed |
| 334. Defendant Tammabattula said in a March 26, 2020 article published online Defendants "saw the surge in searches for hand sanitizer [in early March]. That's when we started ramping up our production." | PX 1 ¶ 46, Att. L. | Undisputed |

| | | |
|---|---|---|
| 335. Defendants published this article on the website www.qyk.us. | PX 1, Att. T at 133. | Undisputed |
| 336. Yet, just a few days later, he announced the company only had enough raw ingredients for about two weeks' worth of hand sanitizer, and "timelines for production have been extended six to eight weeks" compared to the typical two or three weeks. | PX 1 ¶ 47, Att. M. | Undisputed |
| 337. Defendant Tammabattula knew at least by April 3, 2020 that there were shortages of raw materials for hand sanitizer and plastic bottles. | PX 16, Att. F, RT RFA Resp. No.57-58. | Undisputed |
| 338. In an April 7, 2020 article, Mr. Tammabattula reiterated there were not enough raw ingredients for hand sanitizer: "Raw materials from alcohol and polymer compounds to plastic bottles and dispensing pumps. They are sold out and back-ordered | PX 1, Att. T at 382 (April 7); *see also id.* at 373 (April 21: "The challenge with the supply chain for hand sanitizers that we are currently facing is . . . the shortage in sourcing any raw | Disputed, this statement is misleading when taken out of context like this because he was referring to the industry in general. Dec. of Tammabattula at ¶ 48 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| for about 8 weeks from all traditional sources." | material from alcohol to necessary chemical compounds and plastic bottles and pumps.") | |
| 339. On or around April 9, 2020, Tammabattula knew that there were not enough raw ingredients for hand sanitizer. | PX 16, Att. F, RT RFA Resp. No. 59. | Undisputed as to there not being enough for the increased demand |
| 340. On or around April 9, 2020, Tammabattula knew that there was not enough of the chemical compounds to make gel for hand sanitizer. | PX 16, Att. F, RT RFA Resp. No. 60. | Undisputed as to there not being enough for the increased demand |
| 341. On or around April 9, 2020, Tammabattula knew that chemical manufacturers that provided thickeners for hand sanitizer were providing those chemicals to bigger companies, like GOJO Industries, Inc., rather than to QYK. | PX 16, Att. F, RT RFA Resp. No. 62. | Undisputed |
| 342. On or around April 17, 2020, Tammabattula stated "most manufacturers are just worried about how to continue | PX 16, Att. F, RT RFA Resp. No. 63. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| producing [hand sanitizer.]" | | |
| 343. On or around April 21, 2020, Tammabattula knew that QYK was close to not having enough alcohol to continue production of hand sanitizer. | PX 16, Att. F, RT RFA Resp. No. 64. | Undisputed |
| 344. On or around April 21, 2020, Tammabattula knew that there were shortages in sourcing raw materials, from alcohol to necessary chemical compounds and plastic bottles and pumps. | PX 16, Att. F, RT RFA Resp. No. 65. | Undisputed |
| 345. On or around April 23, 2020, Tammabattula stated that there were shortages of raw materials for PPE. | PX 16, Att. F, RT RFA Resp. No. 66. | Undisputed |
| 346. On or around April 23, 20202, Tammabattula stated that there was insufficient supply chain to produce PPE in the United States. | PX 16, Att. F, RT RFA Resp. No. 67. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 347. On or around April 23, 2020, Tammabattula stated that QYK was ramping up production of hand sanitizer, but there were "major issues" in the supply chain. | PX 16, Att. F, RT RFA Resp. No. 68. | Undisputed |
| 348. On or around April 23, 2020, on the program "Daily Caller," Tammabattula stated that a major component that QYK needed for hand sanitizer production was the plastic bottles. | PX 16, Att. F, RT RFA Resp. No. 69. | Undisputed |
| 349. On or around April 23, 2020, on the program "Daily Caller," Tammabattula stated that plastic bottles for hand sanitizer had to be imported, and there was no way around this. | PX 16, Att. F, RT RFA Resp. No. 70. | Undisputed |
| 350. On or around April 23, 2020, on the program "Daily Caller" Tammabattula stated that there were continuing logistical challenges for importing plastic bottles from China. | PX 16, Att. F, RT RFA Resp. No. 72. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 351. Defendant Tammabattula knew of the difficulties in getting hand sanitizer through customs, with multiple shipments detained or not released at all. | PX 16, Att. H at 22-23, 34-35, QYK ROG Amended Resp. No. 14 ("There were multiple past due shipments and other shipments that were delivered past the date the vendors said they would be."); PX 16, Att. H at 30-31, QYK ROG Second Amended Resp. No. 1 ("Some of these shipments were withheld due to new, temporarily implemented emergency regulations preventing shipments from India."); PX 16, Att. L, 8/17/21 RT Dep. Tr. at 105:15-21 (admitting "many" shipments were delayed); PX 16, Att. | Undisputed |

| | | |
|---|---|---|
| | AB (FDA Detention); PX 16, Att. K, 8/16/21 RT Dep. Tr. 152:9-24 (discussing detained shipments from India); PX 16, Att. L, 8/17/21 RT Dep. Tr. 117:21-118:7 (he came to understand the "full gravity" of the delays by March 12th or March 13th). | |
| 352. Defendant Tammabattula also knew that the Defendants allowed customers to purchase hand sanitizer based only on hopeful expectation of receiving shipments, not actual inventory | PX 16, Att. L, 8/17/21 RT Dep. Tr. 39:1-11; 42:4-11; 57:22-24 (stating that "the anticipation was that by the time the ad would be approved, we would have the product available and ready to ship"); 58:3-19; 69:24-71:18 (admitting they placed an approximate quantity | Disputed. These were confirmed orders with confirmed delivery dates. Dec. of Tammabattula at ¶¶ 6-9, 14-25 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | of a particular product into Shopify based on expected shipments); PX 16, Att. H at 33-34, QYK Second Amended ROG Resp. No. 10 (admitting based shipping times based on anticipated shipments, not actual deliveries). | |
| 353. Defendant Tammabattula was aware of hundreds of complaints pouring in every day about late and delayed hand sanitizer orders. | PX 16, Att. F, RT RFA Resp. No. 43 (admitting aware of complaints re shipping delays); *see* PX 16, Att. U, 9/23/21 DP Dep. Tr. 83:5-25 (discussing the call volume); 85:4-7 (DP asked RT for help with responding to customer service calls); 49:21-50:3 (DP hired approximately 20 | Disputed, there was a high volume of customer inquiries, however, not every inquiry was a complaint. Dec. of Tammabattula at ¶ 35-36 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | people because of the high volume of customer calls every day); *see also* PX 16, Att. AD at 3 (admitting to Shopify that orders had not been fulfilled); PX 16, Att. AF (email from RT "Apologies for the delays on our side. Our warehouse is extremely backed up"); *see generally* PX 16, Att. N1 (Skype communications between RT and customer service representatives). | |
| 354. And he knew that Shopify was concerned about the mounting number of unfulfilled orders piling up in the system, telling Shopify on March 16 that they "will be able to fulfill 90% of the orders | PX 16, Att. AD at 3. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| this week." | | |
| 355. Defendant Tammabattula's statement to Shopify was completely baseless and proved wholly untrue. | PX 9, Geiran Decl., Att. B at 63 (showing shipment delays continuing through April). | Disputed, the statement was based on shipments of product already in transit to QYK and arrived in the US at that point. Dec. of Tammabattula at ¶¶ 6-9, 14-25 |
| 356. Shopify placed multiple holds on the Glowyy account beginning in March. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 180:3-181:12 | Disputed, Shopify placed only 1 hold in March. 8/16/21 RT Dep. Tr. 180:8-18 |
| 357. The hold placed by Shopify in March "was to verify that [Defendants] were actually shipping the product and to verify the authenticity of the company." | PX 16, Att. K, 8/16/21 RT Dep. Tr. 181:6-10 | Undisputed |
| 358. The second hold placed by Shopify on the Glowyy account was "because of the charge backs being larger than the threshold that they | PX 16, Att. K, 8/16/21 RT Dep. Tr. 181:10-12 | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| normally allowed." | | |
| 359. PayPal also placed a hold on releasing funds to Defendants for purchases made through Glowyy. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 178:9-179:1 | Undisputed |
| 360. PayPal placed the hold on the Glowyy account approximately in mid-March 2020. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 179:13-17 | Undisputed |
| 361. PayPal released some funds toward the end of March, but they continued to hold approximately 90% until October 2020. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 179:18-180:2. | Undisputed |
| 362. The hold on the Glowyy account was for reasons similar to Shopify's hold, "making sure that we had product available and we were sending shipments" for the orders they were taking. | PX 16, Att. K, 8/16/21 RT Dep. Tr. 178:21-25. | Undisputed |
| 363. Tammabattula knew that QYK received complaints from some customers about | PX 16, Att. F, RT RFA Resp. No.44. | Undisputed |

| | | |
|---|---|---|
| not receiving the correct merchandise. | | |
| 364. Dr. J admits that "[a]t all times material to the FAC, acting alone or in concert with others, Dr. J. has formulated, directed, had the authority to control, or participated in the acts and practices of Dr. J's Natural and Theo Pharmacy." | PX 16, Att. D, Ans. to FAC. ¶ 11. | Undisputed |
| 365. Dr. J knew in early March 2020 that there was increased consumer demand for hand sanitizer. | PX 16, JN RFA Resp. No. 16. | Undisputed |
| 366. Dr. J knew consumers were having difficulty finding hand sanitizer to purchase in March through May 2020. | PX 16, JN RFA Resp. No. 17 | Undisputed |
| 367. Dr. J was directly involved in printing labels and labeling shipments. | PX 16, Att. O, 8/18/21 JN Dep. Tr. 40:23-41:3; PX 16, Att. Q, 12/9/21 JN Dep. Tr. 200:17-201:5; 202:10-203:25. | Undisputed |

| | | |
|---|---|---|
| 368. Dr. J knew that a lot of customers were complaining. | PX 16, Att. O, 8/18/21 JN Dep. Tr. 111:10-12. | Undisputed |
| 369. In a video appearing on YouTube April 2, 2020, she publicly addressed the numerous complaints and concerns about the shipping delays, acknowledging Defendants were experiencing delays and imploring consumers to "be patient . . . I know that I will have over 100,000 bottles of hand sanitizer, the 300ml, that we can be able to send out." | PX 16, Att. D, Ans. to FAC ¶ 45; PX 16, JN RFA Resp. No. 64; PX 1 ¶ 44, Att. J (Your Order Updates for Dr. J's Natural Hand Sanitizers Tr. 5:3-5). | Undisputed |
| 370. The April 2, 2020 video referenced in Undisputed Fact No. 369 that was posted on the Dr. J's Natural YouTube channel on or around April 2, 2020 was entitled, "Your Order Updates for Dr. J's Natural Hand Sanitizers Is Glowyy Legit?" ("Order Updates Video"). | PX 16, JN RFA Resp. No. 65. | Undisputed |

| | | |
|---|---|---|
| 371. Dr. J admits that at least some consumers have been waiting more than 7 days due to "uncertainty on the manufacturing side," and that it has been "difficult to source the bottle or the pump." | PX 16, JN RFA Resp. Nos. 66-68; PX 1 ¶ 44, Att. J (Your Order Updates for Dr. J's Natural Hand Sanitizers Tr. 5:3-5). *Id.*, Att. J (Your Order Updates for Dr. J's Natural Hand Sanitizers Tr. 5:6). *Id.*, Att. J (Your Order Updates for Dr. J's Natural Hand Sanitizers Tr. 5:17-18); *Id.*, Att. J (Your Order Updates for Dr. J's Natural Hand Sanitizers Tr. 6:9-10). | Undisputed |
| 372. On or around May 25, 2020, Nguyen posted or caused to be posted, a video on the Dr. J's Natural YouTube channel entitled "We Finally Caught Up! DrJsNatural Shipment Update" ("Caught Up Video"). | PX 16, JN RFA Resp. No. 73; PX 16, Att. O, 8/18/21 JN Dep. Tr. 114:1-7 (admitting she appeared in the video). | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 373. Nguyen acknowledged in the Caught Up Video that customers have waited "three weeks" for shipments of Dr. J's Natural brand hand sanitizer orders. | PX 16, JN RFA Resp. No. 75; PX 16, Att. O, 8/18/21 JN Dep. Tr. 116:3-9. | Undisputed |
| 374. Dr. J's Natural was unprepared for the large influx of orders [of hand sanitizer]. | PX 16, Att. O, 8/18/21 JN Dep. Tr. 114:15-19. | Undisputed |
| 375. Notably, the numerous advertisements and statements by Tammabattula and Dr. J conveyed another lie—that they were manufacturing the hand sanitizer in-house. | *See, e.g.*, PX 1, Att. E at 4 ("formulated in house"); PX 1, Att. T at 128 (news article discussing "Garden Grove-based hand sanitizer manufacturer"); PX 2, Rottner Decl. Att. AB ("MADE IN USA IN FDA & CGMP CERTIFIED FACILITY) | Disputed, Defendants were down packing in-house by this time and all the facilities where the hand sanitizer was manufactured were FDA and CGMP certified. Dec. of Tammabattula at ¶ 49. |
| 376. In reality, they contracted with third parties to manufacture a generic formula of hand sanitizer approved by | PX 16, Att. L, 8/17/21 RT Dep. Tr. 125:24-126:11;   127:8-13; 128:12-24. | Disputed, these bottles were manufactured based on a formula that was provided to them |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| the FDA, or used hand sanitizer that was already being manufactured for distribution under "white labels," that is, for any company that will pay. | | from Defendants. Dec. of Tammabattula at ¶ 49 |
| 377. Defendant Tammabattula admits that he knew there was no scientific evidence to support the claims that Basic Immune IGG could treat, prevent, or reduce risk of contracting COVID-19 and he knew there was no scientific evidence that it was FDA-approved for those purposes. | PX 16, Att. F, RT RFA Resp. Nos. 86-89. | Undisputed |
| 378. Defendant Tammabattula admits that he knew there was no scientific evidence to support these claims, and Defendants admit that Basic Immune IGG is not FDA approved as a COVID-19 preventative. | PX 16, Att. B, Ans. To Compl ¶ 55 ("Admit that Basic Immune IGG/Immunolin is not an FDA-approved treatment or preventative for COVID-19 as alleged in paragraph 55 of the Complaint"); PX 16, | Undisputed |

| | | |
|---|---|---|
| | Att. D, Ans. to FAC ¶ 6 (admitting all allegations that "In fact, Basic Immune IGG/Immunolin is not an FDA-approved treatment or preventative for COVID-19). | |
| **V.   CONSUMER INJURY.** | | |
| 379. During the early weeks of the pandemic quarantine in the United States, obtaining hand sanitizer as quickly as possible was paramount for many consumers. | PX 16, Att. D, Ans. to FAC ¶ 22; *see also* PX 16, Att. U, 9/23/21 DP Dep. Tr. 87: 3-5 (customers called and asked "It's been two days, three days.  Why am I not getting my order?"). | Undisputed |
| 380. This high demand made products difficult to find. | PX 16, Att. D, Ans. to FAC ¶ 22. | Undisputed |
| 381. FTC's investigator documented more than 250 consumer complaints over the span of just a few months. | *See generally* PX 1 ¶¶ 53-79 (discussing consumer complaints), Atts. P, | Undisputed.   250 complaints out of over 45,000 filed orders is only 0.4%. All of these |

| | | |
|---|---|---|
| | Y, Z; PX 16, Atts. X, Y, Z. | were resolved. Dec. of Tammabattula at ¶¶ 35-36 |
| 382. Consumers ordered these products solely because they believed these products were in stock and would arrive within days. | PX1 ¶¶ 56, 62, 71, 77; Ex. 3 ¶¶ 2, 9; Ex. 4 ¶ 2; Ex. 5 ¶ 2; Ex. 6 ¶¶ 2-4; PX 16, Att. U, 9/23/21 DP Dep. Tr. 88; 9-13 ("People were very hesitant on placing the order, like I said, we were the only company out there that provided them or had them in stock."). | Disputed, there is no admissible evidence that consumers ordered because they believed the products would arrive within days. Indeed, most of the solicitations did not contain shipping claims and therefore up to 30 days for delivery is permitted. Dec. of Tammabattula at ¶¶ 10-12 |
| 383. Consumers were forced to chase down Defendants to find out when their products would arrive. | *See generally* PX 1 ¶¶ 53-79, Att. P, Y, Z; PX 16, Att. X, Y, Z; *see also* PX 16, Att. AE (DJN complaints). | Disputed, out of 45,000 orders, there were only 200 complaints. The customer service issues were all resolved and all consumers received their product or a refund. Dec. of Tammabattula at ¶¶ 35- |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | 37 |
|---|---|---|
| 384. Defendants illegally refused to cancel consumers' orders or refund their money. | PX 1 ¶ 58 (22 Sentinel complaints for consumers requesting a refund; only two reported receiving a refund through their credit card company or Pay Pal); *id.* ¶ 65-66 (two out of 27 Trustpilot reviews reported receiving requested refunds); *see also* PX 1 ¶ 61 ("You will demand a refund but they will say they can't refund your money because it is in 'preshipment' status.'"); ¶ 69 (Glowyy refused refund, saying they could not refund once | Disputed, Refunds were immediately made if the product had not shipped. If a consumers ordered had already shipped, Defendants would issue any requested refunds if the products were returned. Dec. of Tammabattula at ¶¶ 39-40 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | a "shipping label was created."); ¶ 55 ("They claim they cannot cancel my order because it's too late in the process."); PX 16, Att. Y, PX 16, Att. X (ticket_ids 2573824, 1970332). | |
| 385. Some consumers were forced to order the products from other merchants, to obtain refunds through their credit card companies, or simply wait at the mercy of Defendants. | *See generally* PX 3-6; PX 1 ¶¶ 53-79, Att. P, Y, Z; PX 16, Att. X, Y, Z, and AE. | Disputed, While some consumers chose to order from other merchants, obtain refunds through their credit card companies, or wait, Defendants did not force them to do any of these things. Further, out of 45,000 orders, there were only 200 complaints. The customer service issues were all resolved and all consumers received their product or a refund. Dec. of Tammabattula at ¶¶ 35- |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | | 36, 39-40 |
| 386. Numerous consumers reported either not receiving the products at all, or receiving unauthorized, materially different substitutions. | PX 1 ¶ 57 (19 complaints on Sentinel reported never receiving ordered products); ¶ 61 (39 Trustpilot reviews about not receiving ordered products); ¶ 64 (three Trustpilot reviews about receiving unauthorized substitutions); *see also* PX 6 ¶ 12 (substitution); *see also* PX 16, Att. U, 9/23/21 DP Dep. 88: 25 (consumers called to complain about receiving different products than what they ordered). | Disputed, no consumer received a materially different substitution. all substitutions were for the same amount or more hand sanitizer. Defendants are unaware of anyone who did not receive either their product or a refund. Tamabattulla Dec. ¶ 40 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| 387. Customers complained about receiving damaged bottles. | PX 16, Att. U, 9/23/21 DP Dep. Tr. 92:11-14. | Undisputed |
|---|---|---|
| 388. Defendants processed at least 43,749 orders through Glowyy for hand sanitizer and PPE. | PX 9, Geiran ¶ 17 | Undisputed |
| 389. Consumers placed 43,633 orders for hand sanitizer or PPE between March and August 2020. | PX 9, Geiran ¶ 27, Table 2. | Undisputed |
| 390. Of the 43,633 orders for hand sanitizer or PPE between March and August 2020, 39,724 were shipped late under Scenario 5, which assumes the following shipment time claims: <br> • 3/4/20-3/18/20, 1 day <br> • 3/19/20-3/31/20, 10 days <br> • 4/1/20-5/18/20, 1 day <br> • 5/19/20-12/29/20 10 days. | PX 9 ¶¶ 25-27, and Table 2. | Disputed, This data assumes that all the sales during this period originated from the Google ad or other solicitation that contained a shipping claim, which is not the case. Apart from a few ads/solicitations, none of them contained any shipping claims, and, therefore, Defendants had 30 days to ship. Moreover, the FTC is |

| | | |
|---|---|---|
| | | relying on "first scan" dates by the USPS when many of the first scan dates occurred days or weeks after the product was actually picked up, so is not reliable. When the true facts are considered, the number of late shipped products that were not the subject the subject of a refund notice or an actual refund is only is significantly less than that claimed by the FTC and is estimated to be about 10-15%. Dec. of Tammabattula at ¶¶ 10-12, 34 |
| 391. In total, there were 43,749 orders paid for between March and December 2020, totaling $2,944,899.89. From March 1, 2020 through August 31, 2020, there were 43,633 orders, gross | PX 9 ¶ 31 | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| amount $2,933,692.11. | | |
| 392. Of the 43,749 orders, 3,837 order did not have a shipment date; 1,335 did have a "Fulfilled_at" date; 2,502 have neither a "Fulfilled_at" date nor a shipment date, but do have a "paid at" date. | PX 9 ¶¶ 18, 32. | Undisputed |
| 393. The total amount attributable to unshipped goods less refunds is $62,850.94. | PX 9 ¶ 32. | Disputed, relying on FirstScanTimestamp data is not reliable. Dec. of Tammabattula at ¶¶ 34 |
| 394. Between March 4, and December 29, 2020, there were 10,560 orders were mailed more than 30 days after their "paid_at" date, totaling $910,428.45. | PX 9 ¶ 28, and Table 4. | Disputed, relying on FirstScanTimestamp data is not reliable so it is not clear when these orders actually were mailed. Dec. of Tammabattula at ¶ 34 |
| 395. Defendants also failed to ship significant numbers of shipments within the "processing times" claimed on | PX 9, Att. A (Violation Summary, Scenario 1, Requests 1-13, evaluating | Disputed, significant is ambiguous and is an opinion. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| the website. | known processing times and assuming default of 10 days shipment claim for all other periods); PX 9, Att. A (Violation Summary, Scenario 4, Requests 15-19, evaluating known processing times and assuming default MITOR 30-day shipment claim for all other periods). | |
| 396. Only 1,494 orders out of the 43,749 were shipped within the represented shipment times. | *See* PX 9, Att. A (Violation Summary, Total Orders under Scenario 5 is 43,749; Complete Order Violations 39,729; 2,502 no shipment data; Partial Violations 7; Orders with Negative Times, 17; 1,494 on time). | Disputed, The data relied upon by the FTC assumes that all the sales during this period were based on solicitations that contained shipping claims when this is not the case. Indeed, most of the ads contained no shipping claims, and, therefore, Defendants had 30 days to ship. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | | Moreover, the FTC is relying on "first scan" dates by the USPS when many of the first scan dates occurred days or weeks after the product was actually picked up, so is not reliable. When the true facts are considered, the number of late shipped products that were not the subject the subject of a refund notice or an actual refund is about ▮▮▮▮. Dec. of Tammabattula at ¶¶ 10-12, 34 |
| 397. Defendants refunded orders totaling $253,786.42. | *See* PX 9 ¶ 31 ($2,933,692.11 in total sales from March 1 through August 31, 2020) and ¶ 57 ($2,679,905.69 is the total amount less refunds). | Disputed, There was actually $266,357 refunds issued. Dec. of Tammabattula at ¶¶ 33, 36-37 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 398. Thus, the total amount of gross revenues less refunds is at least $2,679,905.69 | PX 9 ¶ 57 (gross amount less refunds). | Disputed, The actual gross revenue less refunds is $2,720,695 Dec. of Tammabattula at ¶ 37 |
| 399. The total amount of late, unrefunded shipments of hand sanitizer and PPE is $2,449,881.92. | PX 9 ¶ 33. | Disputed, This data ignores customers who did not purchase based on ad because they did not see one, thus, only purchases made from a Google Ad or on a day when the website included a shipping time claim should be included. Dec. of Tammabattula at ¶¶ 10-12 |
| 400. DJN sold $439,657.95 in hand sanitizer between March and August 2020. | *See* PX 9 ¶ 55 (sanitizer paid amount and tax and shipping cost). | Disputed, This data ignores customers who did not purchase based on ad because they did not see one, thus, only purchases made from a Google Ad or on a day when the website included a shipping |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | | time claim should be included. Dec. of Tammabattula at ¶¶ 10-12, 45 |
| 401. The total refunds and discounts for DJN sales was $33,324.65, thus the net revenue was $406,333.30 between March and August 2020. | PX 9 ¶ 55. | Disputed, This data ignores customers who did not purchase based on ad because they did not see one, thus, only purchases made from a Google Ad or on a day when the website included a shipping time claim should be included. Dec. of Tammabattula at ¶¶ 10-12, 45 |
| 402. Defendants did not produce records sufficient to determine the date for each DJN hand sanitizer order shipments, as defined in MITOR, §435.1(d), because their records only reflect the date a label was created, and they did not always ship the date the label was generated. | PX 16, Att. Q, 12/9/21 JN Dep. Tr. 67:4-16 (shipped order status is based on generating and creating a shipping label); 67:17-21 (shipped date is the date the label is created); 96:3-22 | Disputed. DJN used a separate third party sales platform called BigCommerce. BigCommerce contained fulfillment time records which were provided to the FTC. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | (ship date in Big Commerce is the date when the label is created not when it was put into the mail); 102:6-103:2 (RT testifying as corporate representative on behalf of DJN, *see* PX 16, Att. Q, 12/9/20 JN Dep. Tr. 101:14-19). | |
| **ADDITIONAL FACTS CITED IN BRIEF** | | |
| 403. Clicking the links displayed with the Google AdWords ads would bring consumers to the Glowyy website. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 60:21-61:5; *see also id.*, Att. N2 at 3-4, RT-QYK 21 and Att. N14 at 1, RT-QYK 61 (showing the landing page address associated with the Google ads). | Undisputed |
| 404. Clicking the links displayed with the Google AdWords ads brought customers to the webpage | PX 16, Att. N2, RT-QYK 21 at 4. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| where Defendants offered hand sanitizer and other PPE for sale. | | |
| 405. Defendants did not produce records showing systems or procedures in place to ensure the timely shipment of orders. | *See* PX 16, Att. H at 8, QYK ROG Resp. No. 1, 3, and 9 (admitting there were no written policies); PX 16, Att. H, QYK ROG Resp. No. 3 ("QYK's employees were instructed by Rakesh Tammabattula to handle any shipping time disputes on a case by case basis"). | Undisputed as to there not being written procedures, however, QYK ROG Resp. No. 3 clearly identifies a procedure articulated by Tammabattula. |
| 406. Defendants admit they did not maintain shipping records sufficient to track shipping for any hand sanitizer between March 3, 2020 and when the complaint was filed. | PX 16, Att. E, QYK RFA Resp. No. 81; PX 16, Att. E, QYK RFA Resp. No. 82 (Defendants do not have records documenting the shipping date for orders placed | Disputed. Shopify maintained records of fulfillment. Once the label was printed, the packages were prepared and placed in bins for pick-up by the USPS. Sometimes the USPS would not show |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | between March 3, 2020 and August 4, 2020); PX 16, Att. E, QYK RFA Resp. No. 83 (Shopify does not maintain a shipping date in its database); PX 16, Att. E, QYK RFA Resp. No. 84 (admit that it did not maintain records sufficient to track shipping times during the relevant period). | up. However, thousands of packages were available on a daily basis ready for pickup. Dec. of Tammabattula at ¶¶ 13, 27-28, 32 |
| 407. Defendants further admit that they do not know the shipping date for orders because Defendants rely on mail carrier records which lapse after 90 days. | PX 16, Att. E, QYK RFA Resp. No. 81 ("QYK relies on mail carrier records and that because certain records lapse after 90 days it does not know for certain the Shipping date of certain orders"). | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| 408. Shopify does not maintain a shipping date in its database. | PX 16, Att. E, QYK RFA Resp. No. 83. | Undisputed |
|---|---|---|
| 409. Defendants also admit that they do not have any records documenting the shipping date for orders placed between March 3, 2020 and when the complaint was filed. | PX 16, Att. E, QYK RFA Resp. No. 82 | Undisputed |
| 410. Defendants did not know whether any particular order had shipped once the shipping labels had been created. | *See* PX 16, Att. E, QYK RFA Resp. Nos. 86-87 (could not intercept orders whose shipping label generated for empty boxes); | Disputed, FTC cites insufficient supporting evidence for this notion, being unable to intercept an order is different from knowing if the order had shipped. |
| 411. In numerous instances, Defendants printed shipping labels to place in stacks or empty boxes awaiting shipment and did not immediately ship the ordered items. | PX 16, Att. E, QYK RFA Resp. No. 86; PX 16, Att. F, RT RFA Resp. No. 30. | Disputed, FTC cites to RFAs that are not admitted as to the fact they are claiming. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 412. QYK informed customers who canceled orders but whose orders the company could not intercept prior to shipping that the customer could only get a refund once the customer returned the items. | PX 16, Att. E, QYK RFA Resp. No. No. 90. | Undisputed |
| 413. Tammabattula knew that QYK informed customers who canceled orders but whose orders QYK could not intercept prior to shipping that the customer could only get a refund once the customer returned the items. | PX 16, Att. F, RT RFA Resp. No. 34. | Undisputed |
| 414. When consumers asked for refunds or cancellations, Defendants repeatedly stated that items had to be rejected, refused, or returned to sender, because they had no way of knowing whether the item was still in the warehouse, or whether it had actually been placed into the hands of a mail carrier. | PX 1, Att. Z at 15, 17, 49, 135, 151, 157, 171, 189, 207, 216, 222; PX 1, Att. Y at 50, 53, 72, 85, 87, 108, 109, 110, 113; PX 16, Att. Y. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| 415. Defendants admit they shipped items consumers had cancelled and did not want because they could not intercept these orders before they were mailed. | PX 16, Att. E, QYK RFA Resp. No. 88; PX 16, Att. F, RT RFA Resp. No. 2 (admit shipped hand sanitizer who had canceled their orders); PX 16, Att. E, QYK RFA Resp. No. 87; PX 16, Att. F, RT RFA Resp. No. 31 (admit could not intercept). | Undisputed as to only some consumers |
| 416. Tammabattula knew that QYK did not issue refunds for some customers' hand sanitizer orders that it could not intercept. | PX 16, Att. F, RT RFA Resp. No. 33. | Undisputed as to certain orders where the customer refused to return the products |
| 417. QYK asked customers to pay for merchandise it delivered after the customer canceled the order. | PX 16, Att. E, QYK RFA Resp. No. 91. | Undisputed as to certain orders where the customer refused to return the products |
| 418. Defendants admit they knew consumers were having difficulty finding hand sanitizer and that anticipated demand was volatile and | PX 16, Att. E, QYK RFA Resp. No. 99; PX 16, Att. F, RT RFA Resp. No. No. 38; *see also* PX 16, | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| unpredictable | Att. H, QYK ROG Amended Resp. No. 1 (admitting that order volume was volatile, which affected shipment times); PX 16, Att. H, QYK ROG Amended Resp. No. 3 ("Due to Covid-19 and the uncertainties surrounding the pandemic, the anticipated demand for hand sanitizer was extremely volatile and difficult to anticipate."). | |
| 419. Defendants admit they could not reliably tell when orders would be fulfilled. | PX 16, Att. E, QYK RFA Resp. No. 109; *see also* PX 16, Att. H, QYK ROG Resp. No. 1 ("A litany of factors and unforeseeable scenarios affected Responding Party's | Disputed, "a litany of factors and unforeseeable scenarios affected [Defendants] ability to ship products." This does not mean they could not tell when orders would be |

| | | |
|---|---|---|
| | ability to ship its products."). | fulfilled at all. |
| 420. Defendants admit they had no prior experience selling hand sanitizer | PX 16, Att. E, QYK RFA Resp. No. 6 (admitting QYK had not sold hand sanitizer prior to March 3, 2020); *see* PX 16, Att. K, 8/16/21 RT Dep. Tr. 149:17-150:10 (discussing how Defendants began the hand sanitizer business through Glowyy). | Undisputed |
| 421. Defendants admit their fulfillment system was woefully (and admittedly) unprepared for the volume of orders | PX 1, Att. Z at 5, 15, 33, 36, 49, 160, 161, 168, 167, 175, 176, 180, 210; PX 16, Att. K, 8/16/21 RT Dep. Tr. 161:19-25) ("when we started selling the hand sanitizer around the | Disputed, it is unknown what is meant by "woefully." Defendants do admit that the unprecedented demand caused by the pandemic was not anticipated and to some extent overwhelmed its |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | Glowyy e-commerce platform, and we saw the orders come in, and we needed a lot more help than what I had originally anticipated"); PX 16, Att. X (ticket id 2592731 ["just due to the delay of previous orders that's why it's still sitting in the warehouse waiting for the older order to be shipped out"], 1487100 ["Due to an overwhelming number of orders, we are a little behind on our fulfillment"]); PX 16, Att. AF ("warehouse is extremely backed on some orders"). | fulfillment process that was in place based on historical ordering trends for all of its products. Dec. of Tammabattula at ¶¶ 14, 26, 29-31 |

| | | |
|---|---|---|
| 422. Defendants did not pack hand sanitizer appropriately, leading to broken and leaking bottles, a problem they quickly became aware of and one that continues to present. | PX 16, Att. AE; PX 16, Att. R6-7, JN 53, 54; Att. Q, 12/9/21 JN Dep. Tr. 175:8-186:20 (discussing leaking and broken bottles). | Disputed. Only a few bottles had problems of leaking or being broken. These issues were addressed and resolved. Dec. of Tammabattula at ¶ 35-36 |
| 423. Innovity is a company owned by Rakesh Tammabattula. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 119:19-25. | Undisputed |
| 424. Defendant Tammabattula used Innovity to ship hand sanitizer to the U.S. from China. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 119:19-25. | Undisputed |
| 425. Defendant Tammabattula used Innovity to ship empty hand sanitizer bottles to Sainnocare to be labeled for sale by Glowyy. | PX 16, Att. L, 8/17/21 RT Dep. Tr. 106:10-24. | Undisputed |
| | | |
| **NEED FOR INJUNCTIVE RELIEF** | | |
| 426. Defendants did little to put into place systems and procedures to prevent a reoccurrence of similar harms. | *See* PX 16, Att. R3, JN 45 (recent complaints of not being notified of | Disputed, roughly 10 individual instances of consumer complaints over the course of a |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | backordered items; customers contacted company to complain of delays); Att. R6, JN 53 at 2 (August 2021 complaint about leaking bottles, company writes "We still have issues with leaking bottles in transit."); *id.* at 3 (9/6/21 email "We still have a challenge over shipping packaging. I'm not sure if we are using padded envelopes but if we are they do not work for bottles with liquid or gel as they are getting squashed en-route and contents pouring out. I suggest a box of some sort."); Att. R8 at 3, JN 55 (9/2021 email addressing consumer | year and a half does not demonstrate that Defendants did not put in place systems and procedures to prevent a reoccurrence of similar harms. The fact is that there has been 100% shipping time compliance since mid-May, 2020. Moreover, QYK has changed its business model from selling to consumers from the internet to selling on a wholesale basis to retailers. Dec. of Tammabattula at ¶¶ 35-36, 42, 46 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | complaint of wrong items). | |
|---|---|---|
| 427. Defendants continue to sell hand sanitizer and PPE through DJN, as well as dietary supplements. | PX 1, Freeman Decl., Att. U; *see also* PX 16, Att. Q, 12/9/21 JN Dep. Tr. 212:22-213:13 (discussing PCA wipes products available on the drjnatural.com website); *see also* 213:14-215:9 (denying making claims about the product on the website). | Undisputed |
| 428. Defendants continue to sell backordered items without notifying consumers that the items are not in stock, and still seemingly take more than 30 days to ship items. | PX 16, Att. R3, JN 45 (recent complaints of not being notified of backordered items; customers contacted company to complain of delays). | Disputed, no shipping time claims have been made since the end of June 2020. QYK has achieved 100% shipping time compliance since Mid-May 2020. Dr. J's has sold only about $3,000 of hand sanitizer since summer 2020. The |

| | | |
|---|---|---|
| 1 | | cited emails concern |
| 2 | | only four orders out of |
| 3 | | the 1100 orders made n |
| 4 | | ot to QYK but to Dr. Js. |
| 5 | | These customer service |
| 6 | | issues were readily |
| 7 | | resolved. Only one of |
| 8 | | them concerns an order |
| 9 | | that was delayed more |
| 10 | | than 30 days. This had |
| 11 | | nothing to do with it |
| 12 | | being backordered, but |
| 13 | | was a result of the order |
| 14 | | being lost. When Dr. |
| 15 | | J's realized this, it |
| 16 | | offered the consumer |
| 17 | | the choice of a refund |
| 18 | | or to receive either |
| 19 | | additional product free |
| 20 | | as a result of the |
| 21 | | inconvenience: "I am |
| 22 | | preparing to ship out |
| 23 | | your order TODAY |
| 24 | | along with a few gifts |
| 25 | | such as 1 face cloth |
| 26 | | mask, 1 Hand Sanitizer |
| 27 | | 4 oz, and 1 Hat with |
| 28 | | |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | Face Shield so that you can feel a little better BUT I need your APROVAL first that you are still OK with me sending this order. The second option will be to refund you since by now you would be so mad at us." Dec. of Tammabattula at ¶ 35-36, 42 |
|---|---|---|
| 429. Defendants still do not send the goods consumers ordered by sending leaking and poorly packaged materials. | PX 16, Att. R6, JN 53 at 2 (August 2021 complaint about leaking bottles, company writes "We still have issues with leaking bottles in transit."); *id.* at 3 (9/6/21 email "We still have a challenge over shipping packaging. I'm not sure if we are using padded envelopes but | Disputed, Plaintiff's supporting evidence is insufficient because a few leaking bottles in one order does not demonstrate a widespread issue. |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | if we are they do not work for bottles with liquid or gel as they are getting squashed en-route and contents pouring out. I suggest a box of some sort."); Att. R8 at 3, JN 55 (9/2021 email addressing consumer complaint of wrong items). | |
| 430. FTC staff received multiple complaints from small business customers regarding materially deceptive claims about Defendants' newest product—disinfecting wipes. | PX 15, Guo Declaration; PX 16, Johnson Decl. ¶ 45. | Disputed, FTC has failed to show "multiple complaints from small business customers." Instead, they only show one wholesale customer, Mr. Guo, whose declaration concerns empty cannisters, not disinfecting wipes. These were purchased to be provided to Mr. Guo's manufacturing clients-- these were not |

-160-

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | | consumer purchases from the internet. Mr. Go never complained to the QYK about the product and even ordered additional product which makes no sense if he really was dissatisfied with the order. QYK was unaware of any problems with the more than 130,000 empty cannisters that were purchased. Moreover, Mr. Go was convicted and imprisoned from embezzling more than $5 million, so that his declaration, which defendants deny, should be given little, if any, weight. Dec. of Tammabattula at ¶ 47 |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| 431. Defendants previously marketed dietary supplements with deceptive claims like "Many late-stage cancer patients look to Dr. J's Natural supplements and cold pressed juice to help fight cancer the all natural way" and "Our CBD collection is clinically proven to reduce pain, anxiety, and over 200 other medical problems." | PX 2, Rottner Decl., Att. O at 1; *see also* PX 2, Att. AA (Dr. J "SimpleSlim" ads making claims such as "You could lose 5-10 pounds in a Month!!!" for a dietary supplement). | Disputed. No deceptive claims were made, as many cancer patients approached Ms. Nguyen for the Dr. J's cold pressed juice. Dec. of Nguyen at ¶ 19 |
|---|---|---|
| 432. Defendants also heavily marketed hand sanitizer as "Made in the USA" | PX 1, Freeman Decl., Att. B at 7, 11. | Disputed. It is unknown what the FTC means by saying "heavily." Any marketing that stated "Made in America" were fulfilled with product that was made in America. Dec. of Tammabattula at ¶50 |
| 433. Consumers relied on the Made in the USA claim when purchasing hand sanitizer from Defendants. | PX 16, Att. R8 (emails from customers seeking "Made in the USA" hand sanitizer). | Disputed. It depends on the consumer. Any product that was fulfilled pursuant a "Made in America" |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | representation were in fact fulfilled with a product that was Made in America. Dec. of Tammabattula at ¶50 |
|---|---|---|
| 434. Defendants' records show they had very little hand sanitizer that was domestically produced | Decl. Molly Smith; PX 1, Freeman Decl. ¶¶ 95-101. | Disputed, this is inaccurate and misleading. While some hand sanitizer was purchased internationally, there was still plenty produced domestically. Dec. of Tammabattula at ¶¶ 17-19 |
| 435. Defendants had no way to identify which hand sanitizer was domestically sourced to ensure that customers who purchased Made in the USA items received them. | PX 16, Att. Q, 12/9/21 JN Dep. Tr. 187:15-24 (stating that bottles either state "Made in the USA" or "globally sourced"), *but see, e.g.,* PX 16, Att. T1 at 13-14, 39, 41 (photo of label for hand sanitizer produced in India only showing | Disputed, This fact has no basis and the FTC cites only to some bottles that say Made in the USA. Dec. of Tammabattula at ¶50 |

| | | |
|---|---|---|
| | "Distributed Exclusively By: DrJsNatural 10517 W. Garden Grove Blvd, Garden, CA"); PX 2, Att. Y at 11-13 (photos from undercover buy showing "Distributed By: QYK Brands, LLC, no markings indicating origin); PX 2, Att. M at 7-17 (hand sanitizer has no marking showing either Made in USA or globally sourced). | |
| 436. On March 13, 2020, Facebook disabled the hand sanitizer ad campaign for violating the "Unacceptable Busines Practices Policy". | PX 16, Att. M, 12/7/21 RT Dep. Tr. 111:7-23; *id.* Att. N13, RT-QYK 58; *see also* PX 1, Att. W (Facebook Unacceptable Business Practices Policy states: "Ads must not promote | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| | | |
|---|---|---|
| | products, services, schemes or offers using deceptive or misleading practices, including those meant to scam people out of money or personal information."). | |
| 437. The Facebook Ad Account that was running the Glowyy ads was suspended from approximately March 14, 2020 and continues to be suspended. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 136:9-16; *id.* Att. N13, RT-QYK 61. | Undisputed |
| 438. Immediately after the Facebook Ad Account was suspended, Tammabattula attempted to hire a freelancer who had an established Facebook Ad Account. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 136:17-137:7; *id.* Att. N8, RT-QYK 51; PX 1, Att. AA at 5. | Undisputed |
| 439. Defendants hired freelancers to use their own established accounts to continue advertising and used a different Google AdWords account to circumvent Google's suspension. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 79:3-20. | Disputed, the FTC's cited portion of the Deposition transcript does not discuss Google at all. |

-165-

| | | |
|---|---|---|
| 440. Defendants also show little regard for the law. Defendants purposefully concealed the true nature of the goods they were importing into the U.S. (hand sanitizer) to circumvent export and safety restrictions for hazardous materials. | PX 16, Att. M, 12/7/21 RT Dep. Tr. 182:18-183:21 (admitting declared as something different to bypass restrictions on Hazmat goods); 186:7-11 (changed the description). | Disputed. The FTC misstates the deposition testimony as Defendant was only discussing restrictions imposed by private carriers, not any laws. This has nothing to do with MITOR or the FTC Act. |
| 441. Defendants' total gross investment for domestic hand sanitizer was approximately $184,000, compared to over $1.5 Million dollars for hand sanitizer sourced through China. | PX 1 ¶¶ 93-99, Att. AC. | Disputed, More than $400,000 investment for domestic hand sanitizer was made. Dec. of Tammabattula at ¶¶ 17-19 |
| 442. Defendants stated "We make all our supplements and hand sanitizer here in the US" on the DrJ Facebook page on March 18 2020; and "MADE IN USA" on the Glowyy Twitter page on March 9, 2020. | PX 2, Att. AD at 34; Att. AB at 1. | Undisputed |

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

| 443. Defendants did not automatically cancel orders and provide a refund as required under MITOR, § 435.2(c)(5). | PX 16, Att. H at 7, QYK ROG Resp. No. 8 (when asked to identify all automatic cancellations and identify such orders, Defendants responded that many customers were granted refunds when asked, or through Shopify, or they cancelled orders when they anticipated they would no longer stock the product, but they did not identify any orders they automatically canceled in response to shipment delays). | Disputed, Defendants responded that they "automatically cancelled all orders of products that they anticipated that they would no longer stock." Thus, they did identify automatically cancelled orders. QYK ROG Resp. No. 8. |

DATED: March 18, 2022          **WELLMAN & WARREN**


                               By:    _/s/ Scott Wellman_____
                                      SCOTT WELLMAN
                                      Attorneys for Defendants

**DEFENDANT'S RESPONSE TO PLAINTIFF FTC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW AND [PROPOSED] JUDGMENT**

# CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, under the laws of the United States of America that on this date, I caused to be electronically filed the foregoing document, and this Certificate of ECF Filing & Service, with the Clerk of the Court using the CM/ECF system, who will send notification of such filing to the following party:

**Attorneys for Plaintiff and Defendants**

KATHERINE E. JOHNSON kjohnson3@ftc.gov;
CHRISTOPHER ERICKSON cerickson@ftc.gov
DELILAH VINZON dvinzon@ftc.gov

Attorneys for Federal Trade Commission

DATED this 18th day of March 2022, at  Laguna Hills, California.

*/s/ Scott Wellman*___
Scott Wellman