KATHERINE E. JOHNSON, *admitted pro hac vice*
kjohnson3@ftc.gov
CHRISTOPHER ERICKSON, *admitted pro hac vice*
cerickson@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue NW, CC-9528
Washington, DC  20580
(202) 326-2185 (Johnson); -3671 (Erickson)

Local Counsel
DELILAH VINZON
Cal. Bar No. 222681; dvinzon@ftc.gov
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300; Fax: (310) 824-4380

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 8:20-cv-01431-PSG-KES |
| Plaintiff, | **FTC'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| QYK BRANDS LLC d/b/a Glowyy, et al. | |
| Defendants. | Pretrial Conference: May 13, 2022 at 2:30p.m. Trial Date: May 19, 2022 at 9:00a.m. Courtroom: 6A |

# **Table of Contents**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES ............................................................... iv

INTRODUCTION ...............................................................................1

ARGUMENT ......................................................................................1

I.   THE FTC IS ENTITLED TO SUMMARY JUDGMENT ON ALL COUNTS, AND TO THE EQUITABLE MONETARY RELIEF AND INJUNCTIVE RELIEF IT SEEKS. ..................................................................................1

A.  Defendants Failed to Meet Their Burden to Show a Triable Issue Exists on MITOR, § 435(a) or Section 5 (shipping claim) Violations....................................2

i.   The FTC's Evidence on Shipment Claims is Undisputed. ..................................2

ii.   There is No Genuine Dispute that a 10-day Shipment Time Claim Applies to All other Periods. .........................................................................4

iii.  There is No Genuine Dispute Defendants Lacked a Reasonable Basis for their Shipment Claims. .........................................................................5

1.   Defendants Do Not Challenge the Factual Basis for Finding a Presumptive Violation under MITOR, §435.2(a). .........................................................6

2.   Defendants Do Not Present "More than a Scintilla" of Evidence Showing a Reasonable Basis for Their Shipment Time Claims. ............................................6

3.   Defendants' Pandemic Defense Only Further Supports Their Lack of Reasonable Basis..........................................................................10

B.  Defendants Failed to Meet Their Burden to Show a Triable Issue on MITOR, §§ 435(b) and (c) Violations. ...............................................................10

i.   Defendants Do Not Seriously Contest that Shipments Were Late....................11

ii.   Defendants' Challenges to the USPS Records Lack Supporting Evidence. ......11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii.  It is Undisputed Defendants Failed to Provide More than One Delay Option Notice or Deem Orders Cancelled. ............................................................13

C.   Defendants Offer No Evidence Rebutting the Presumption of DJN's MITOR Violations. ............................................................................................15

D.  Defendants Fail to Rebut the Evidence that their Claims for Basic Immune IGG Claims Were Deceptive. ..................................................................15

E.   There is No Genuine Dispute on the Amount of Liability. ..............................18

F.   There Is No Genuine Dispute of Material Fact that the Court May Award Injunctive Relief the FTC Seeks. ...........................................................23

G.  Defendants' Objections to Consumer Complaints Are Baseless. .....................25

CONCLUSION .........................................................................................26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)......................................1

*Broemer v. Tenet*, No. CV0104340MMMRZX, 2008 WL 11411412, at *8 (C.D. Cal. Apr. 14, 2008)................................................................................. 1, 9, 22

*Carter Prod. v. FTC*, 186 F.2d 821, 824 (7th Cir. 1951) ......................................20

*Eger v. United States*, 405 F. Supp. 3d 850, 856 (N.D. Cal. 2019), *aff'd*, 818 F. App'x 751 (9th Cir. 2020) ........................................................................5

*Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136-1137 (9th Cir. 2001) ................................................................5

*Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003)......................................25

*FTC v. Affordable Media*, 179 F.3d 1228, 1238 (9th Cir. 1999)............................23

*FTC v. Bronson Partners, LLC*, 654 F.3d 359, 369 (2d Cir. 2011) ......................20

*FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1086 (C.D. Cal. 2012), *aff'd in part and vacated in part on other grounds by* 815 F.3d 953 (9th Cir. 2016)..23

*FTC v. Cyberspace.Com, LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) ...................17

*FTC v. DiscountMetalBrokers, Inc.*, 2017 WL 4442998, at *4 (C.D. Cal. Oct. 4, 2017) ................................................................................................6

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993) ..................... 18, 19, 22

*FTC v. Gill*, 71 F.Supp.2d, 1030, 1045–46 (C.D. Cal. 1999)..................................16

*FTC v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006, 1012 (C.D. Cal. 2012), *aff'd sub nom. FTC v. John Beck Amazing Profits, LLC*, 644 F. App'x 709 (9th Cir. 2016)................................................................................23

*FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1066 (C.D. Cal. 2012) ..............................................................................................17

*FTC v. Kuykendall*, 371 F.3d 745, 766-67 (10th Cir. 2004) (en banc) ..................20

iv

*FTC v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010), *as amended* (June 15, 2010), *amended*, No. 09-55093, 2010 WL 2365956 (9th Cir. June 15, 2010)....26

*FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095–96 (9th Cir. 1994) ..........................19

*FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997), *as amended* (Apr. 11, 1997) ...........................................................................2

*FTC v. Sage Seminars, Inc.*, No. C 95-2854 SBA, 1995 WL 798938, at *6 (N.D. Cal. Nov. 2, 1995)..............................................................................23

*Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993)..................................9, 22

*In the Matter of Thompson Med. Co., Inc.*, 104 F.T.C. 648 (1984) .......................16

*Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir.1975) .......... 16, 20

*Sanchez v. Cty. of San Bernardino*, No. CV1009384MMMOPX, 2014 WL 12734756, at *4–5 (C.D. Cal. Mar. 10, 2014) ....................................................13

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ................................................................................................1

*Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979)..................1

*Triton Energy Corp v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995)..............1

*United States v. MyLife.com, Inc.*, No. CV 20-6692-JFW(PDX), 2021 WL 4891776, at *7 (C.D. Cal. Oct. 19, 2021) ........................................... 19, 25

**Statutes**

39 U.S.C. § 3009.....................................................................................22

39 U.S.C. § 3009(b) ...............................................................................21

**Rules**

C.D. Cal. L.R. 56-3 ..................................................................................5

Fed. R. Civ. P. 56(c)(1)(A) ......................................................................5

Fed. R. Civ. P. 56(c)(4)...........................................................................25

Fed. R. Civ. P. 56(e)(2)............................................................................5

MITOR, § 435.2(a) ................................................................................22

MITOR, § 435.2(a)(4)............................................................... 6, 11, 15, 22

MITOR, § 435.2(b) ....................................................................14

MITOR, § 435.2(b)(1) ...............................................................14

MITOR, § 435.2(c) ....................................................................14

MITOR, § 435.2(d) ........................................................... 11, 13, 22

1

**INTRODUCTION**

2      Relying on self-serving affidavits uncorroborated by fact or data, Defendants

3  offer not even a "scintilla" of evidence that creates a triable issue of fact.  Instead,

4  they invoke the Court's equitable jurisdiction while casting themselves as heroes in

5  an epic "against all odds" fictional tale.  Nonetheless, the undisputed facts

6  demonstrate the FTC is unequivocally entitled to judgment as a matter of law on

7  all counts of the First Amended Complaint ("FAC").

8

**ARGUMENT**

9  **I.  THE FTC IS ENTITLED TO SUMMARY JUDGMENT ON ALL**

10     **COUNTS, AND TO THE EQUITABLE MONETARY RELIEF AND**

11     **INJUNCTIVE RELIEF IT SEEKS.**

12     Defendants do not meaningfully challenge any of the evidence presented by

13  the FTC, and thus, fail to meet their burden to put forth specific, admissible, and

14  significantly probative evidence that disputes the FTC's Uncontroverted Statement

15  of Facts.  To defeat summary judgment once the moving party has met its burden,

16  the nonmoving party may not simply rely on the pleadings, but must produce

17  significant probative evidence supporting the claim that a genuine issue of material

18  fact exists.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

19  630 (9th Cir. 1987).  In other words, there must exist more than "a scintilla of

20  evidence" to support the non-moving party's claims, *Anderson v. Liberty Lobby,*

21  *Inc.*, 477 U.S. 242, 252 (1986); conclusory assertions will not suffice.  *See*

22  *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979); *Triton*

23  *Energy Corp v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Moreover,

24  when the nonmoving party relies only on its own affidavits to oppose summary

25  judgment, it cannot rely on conclusory allegations unsupported by factual data to

26  create an issue of material fact.  *Broemer v. Tenet*, No. CV0104340MMMRZX,

27  2008 WL 11411412, at *8 (C.D. Cal. Apr. 14, 2008) ("As with his other

28

1

declarations, plaintiff does not attach the documents on which he relies nor provide objective facts substantiating his claims. Without more, these conclusory statements, whether offered in plaintiff's capacity as an 'expert' or as a layperson, are not sufficient to defeat summary judgment.") (citing cases); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Defendants' opposition relies solely on conclusory assertions devoid of support and fails to introduce any evidence, and therefore cannot defeat the FTC's motion.

**A.     Defendants Failed to Meet Their Burden to Show a Triable Issue Exists on MITOR, § 435(a) or Section 5 (shipping claim) Violations.**

The FTC introduced evidence proving Defendants (1) disseminated shipment time claims, and (2) lacked a reasonable basis at the time of the solicitation that they could ship within the stated times.  ECF No. 168, Amended Notice of Motion and Motion for Summary Judgment ("FTC SJ Mot.") at 6-17, 25-30.[1]  Therefore, the burden shifts to Defendants to produce "significant probative evidence" to create a triable issue on those facts.  Defendants have offered no such evidence.

**i.   The FTC's Evidence on Shipment Claims is Undisputed.**

Defendants either do not understand, or ignore, the FTC's presentation of evidence regarding the shipment time claims.  Instead, they bizarrely argue the FTC "assumes" that all of Defendants' orders were generated from the Google Ads.  ECF No. 198, Defendants' Opposition to the FTC's Motion for Summary Judgment ("Opp.") at 16-17.  The FTC assumes no such thing.  The FTC presented undisputed evidence that Defendants disseminated two "Ships Today" claims

---

[1] Amended as to hearing date only.  ECF No. 168.

2

through Google AdWords, one from March 4 to at least March 18, 2020,[2] and a second from April 1 to approximately May 19, 2020.  *See, e.g.*, ECF No. 136, Plaintiff's Statement of Undisputed Material Facts in Support of Summary Judgment ("SUF") ¶¶ 59; 77; 191; 192.  The FTC also presented Defendants' admissions that they disseminated various processing time claims on their website (which are also clear and conspicuous shipment time claims), SUF ¶¶ 168-177, 185-186, and admitted none of their processing times was ever longer than 10 days to ship, SUF ¶ 178; *see also* SUF ¶ 180 (Defendants' answer to the FAC admits they claimed one day or seven days to ship, and admits they did not ship within one day or seven days).  Thus, the undisputed evidence shows Defendants disseminated various specific shipment time claims through Google Ads and on their website during the entire relevant period.  *See also* SUF ¶ 390 (explaining the assumptions pertaining to the shipment time claims).

Moreover, Defendants concede they disseminated the "In Stock & Ships Today" claim until March 18, 2022.  ECF No. 202, Defendant's [sic] Response to Plaintiff FTC's Statement of Uncontroverted Facts and Conclusions of Law and [Proposed] Judgment ("Def. Resp. SUF") ¶ 77 (undisputed that "Defendants ran the March 4 Google AdWords' campaign until at least March 18, 2020);[3] and

---

[2] Defendants also admit that the "In Stock & Ships Today" claim appeared on the website.  ECF No. 152-1, PX 16 at 1925, Att. E Page 12, Resp. RFA No. 22 ("Admit that on or around March 3 through March 10, 2020, the Company advertised hand sanitizer on its website www.glowyy.com with the representation that hand sanitizer Ships the day of purchase. . . . Admit only that Company stated 'In Stock & Ships Today.'").

[3] Defendants "dispute" that the "In Stock & Ships Today" ad extension language appeared in every ad served by Google under that campaign.  Even so, Google metrics shows that the "In Stock & Ships Today" ad extension was viewed at least 395,865 times during the campaign.  SUF ¶ 78.  And Defendants also admit the "In Stock & Ships Today" language appeared on their website between at least March 3 and March 10, 2020.  *Supra* n.2.

"Ships Fast from CA Today" claims from April 1 through approximately mid-May.  Def. Resp. SUF ¶¶ 191-192 (undisputed).  Defendants also do not dispute they disseminated various shipment time claims on the Glowyy website:

- Hand sanitizer ships within 3 to 5 days from 3/11/20 to 3/18/20.
- Hand sanitizer ships within 7 to 10 days from 3/19/20 to 3/30/20.
- Hand sanitizer ships within 3 to 5 days on 4/1/20.
- Hand sanitizer ships within 5 to 7 days on 4/13/20.
- Hand sanitizer ships within 3 days on 4/19/20.
- Hand sanitizer ships within 3 to 5 days from 5/1/20 to 5/7/20.
- Hand sanitizer ships within 3 to 7 days on 5/15/20.
-  "ALL ORDERS SHIP WITHIN 1-2 DAYS!!!!" on May 18, 2020.
- "ALL ORDERS SHIP WITHIN 1-2 DAYS!!!!" on June 8, 2020.

Def. Resp. SUF ¶¶ 168-177, 185-186; *see also* Opp. at 12 ("It is true that QYK would . . . modify its processing times."); ECF No. 199, Declaration of Rakesh Tammabattula ("RT Decl.") ¶ 45 ("The only ads containing shipping time claims were the Google ad campaign, the Twitter post, and the Glowyy.com website claims.").

## ii.  There is No Genuine Dispute that a 10-day Shipment Time Claim Applies to All other Periods.

Defendants admitted in their RFA responses they **never** told consumers it would take more than 10 days to ship.  SUF ¶ 178; *see also* Def. Resp. SUF ¶ 180 (undisputed that "Defendants' answer to the FAC admits that they claimed one day or seven days to ship, and admits they did not ship within one day or seven days."). Now, Defendants attempt to "dispute" their own admission by arguing for the first time (rather than presenting evidence) that there were times when no shipment time appeared on the website.  Therefore, they argue the default MITOR claim of

4

30-days should apply.  Def. Resp. SUF ¶ 178.[4]  In order to place a fact in genuine dispute, however, Defendants must introduce significant, probative evidence.  Fed. R. Civ. P. 56(c)(1)(A).  Determinatively, Defendants cite to none.

Indeed, Defendants admit they have no records of the processing times that appeared on the website.  Def. Resp. SUF ¶ 182.  Without contradictory evidence, the supported facts asserted by the FTC must be taken as true.  *See Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136-1137 (9th Cir. 2001) (stating the court "has no obligation to search the entire case file for evidence that establishes a genuine issue of fact when the nonmovant presents inadequate opposition to a motion for summary judgment"); Fed. R. Civ. P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion"); *see also* C.D. Cal. L.R. 56-3.  Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion.  *Eger v. United States*, 405 F. Supp. 3d 850, 856 (N.D. Cal. 2019), *aff'd*, 818 F. App'x 751 (9th Cir. 2020).[5]

### iii.  There is No Genuine Dispute Defendants Lacked a Reasonable Basis for their Shipment Claims.

The FTC demonstrated, and the Defendants fail to dispute, that Defendants lacked a reasonable basis, both by presumption of law, and based on the facts.  Therefore, no triable issue exists on either basis.

---

[4] Indicative of their lack of evidence, Defendants do not try to explain which periods of time the 30-day default supposedly applies to.
[5] Even if the 30-day default shipping time applied, the FTC has introduced evidence demonstrating Defendants still shipped thousands of orders late.  SUF ¶ 394 (10,560 orders shipped 30 days or more after their "paid_at" date).

1

     **1.  Defendants Do Not Challenge the Factual Basis for Finding**

2

     **a Presumptive Violation under MITOR, §435.2(a).**

3

     MITOR presumes Defendants lacked a reasonable basis for all shipment

4

time claims where Defendants lack documentary proof of systems and procedures

5

in place to ensure timely shipment.  MITOR, § 435.2(a)(4); *see also FTC v.*

6

*DiscountMetalBrokers, Inc.*, 2017 WL 4442998, at *4 (C.D. Cal. Oct. 4, 2017);

7

FTC SJ Mot. at 27-28.  All the material facts establishing the existence of the

8

presumption are undisputed.  Def. Resp. SUF ¶ 405 (undisputed that no written

9

procedures to ensure timely shipment); ¶ 407 (undisputed that they do not know

10

the shipping date for orders); ¶ 408 (undisputed that Shopify does not maintain a

11

shipping date in its database); and ¶ 409 (undisputed that they do not have records

12

documenting the shipping date for orders).  Although the presumption under

13

MITOR, § 435.2(a)(4) is rebuttable, as explained in the following section, *infra* at

14

6-10, Defendants fail to introduce sufficient evidence to create a triable issue on

15

their reasonable basis.  Therefore, they also fail to rebut the presumption.

16

     **2.  Defendants Do Not Present "More than a Scintilla" of**

17

     **Evidence Showing a Reasonable Basis for Their Shipment**

18

     **Time Claims.**

19

     Even if the presumption did not apply, which it clearly does, there is no

20

genuine issue Defendants lacked a reasonable basis for their shipment time claims.

21

On March 4, when Defendants began their marketing campaign, they knew

22

expected stocks of hand sanitizer were already delayed, so they could not ship

23

"Today" as they promised.[6]  Def. Resp. SUF ¶ 125 (undisputed that "Defendants

24

 

25

[6] Defendant Tammabattula's most-recent declaration states that hand sanitizer was

26

expected on March 3, but that is directly contradicted by the evidence he cites,
which states expected delivery of March 4.  *See* ECF No. 199-2, Ex. B at 1

27

("Scheduled Delivery Wed, Mar 4 by 4:30 PM").  Indeed, the package that he

28

highlighted as expected March 4 is the package that was detained and never

knew on or around March 4, 2020 that obtaining additional hand sanitizer would
be difficult"); ¶ 316 (undisputed that "Defendant Tammabattula learned on March
3 or 4 that the first shipment of hand sanitizer expected from India would be
delayed and he did not know when it would arrive."). Moreover, for Defendants'
subsequent shipment time claims—the second "Ships Today" Google AdWords
campaign and the processing times on the Glowyy and DJN websites—they knew
hand sanitizer was in high demand,[7] knew raw materials and supplies were
difficult to find,[8] knew of unpredictable delays and detainments of stocks arriving

---

delivered. ECF No. 146, PX 10, Att. A (identifying FedEx AWB 777875238320
as being detained and unreleased). The hand sanitizer that was delivered on March
9, FedEx AWB 777901037888, had a scheduled delivery date of March 9.
*Compare* ECF No. 199-2, Ex. B at 1 *with* PX 10, Att. A. Importantly,
Tammabattula states that he could have shipped hand sanitizer the next day had it
arrived on time, *i.e.*, he could have shipped hand sanitizer to consumers on March
4 had it arrived March 3. However, given the package was not confirmed to arrive
until March 4th, Defendants could not reasonably have expected to ship until
March 5th.

[7] Def. Resp. SUF ¶ 330 (undisputed that "Defendant Tammabattula knew in early
March 2020 that there was increased consumer demand for hand sanitizer."); *id.*
¶ 331 (undisputed that Defendant Tammabattula became aware of the 'full gravity
of the situation' by March 12th or 13th regarding delays in shipping."); *id.* ¶ 332
(undisputed that "Defendant Tammabattula made numerous public statements
acknowledging consumer demand for hand sanitizer.").

[8] Def. Resp. SUF ¶ 333 (undisputed that "Defendant Tammabattula made several
public statements acknowledging his company lacked product ingredients and
packaging."); *id.* ¶¶ 334-336 (acknowledge shortages of raw materials); *id.* ¶ 337
(undisputed that "Defendant Tammabattula knew at least by April 3, 2020 that
there were shortages of raw materials for hand sanitizer and plastic bottles."); *id.* ¶
339 (undisputed that "On or around April 9, 2020, Tammabattula knew that there
were not enough raw ingredients for hand sanitizer [for the increased demand].");
*id.* ¶ 340-342, 344 (same); *id.* ¶ 343 (undisputed that "On or around April 21, 2020,
Tammabattula knew that QYK was close to not having enough alcohol to continue
production of hand sanitizer."); *id.* ¶ 345 (undisputed that there were shortages of
raw materials for PPE); *id.* ¶ 346 (undisputed that Tammabattula stated there was
insufficient supply chain to produce PPE in U.S.); ¶¶ 348-350 (undisputed that

7

from overseas,[9] and worked with vendors and suppliers to provide domestically sourced hand sanitizer they had never worked with before (and who ultimately were unable to deliver on the promised quantities of hand sanitizer).[10]

Faced with these irrefutable facts, Defendants attempt to create a triable issue by arguing they had a reasonable basis for the initial "In Stock & Ships Today" claim because they had 2,000 bottles of inventory on hand, and they had additional stock on the way.[11]   Importantly, Defendants' inventory claim is both contrary to the evidence in the case and thus, not surprisingly, also unsupported. Contrary to Tammabattula's bald assertions, customs documents for the shipment Defendants claim contained their first stocks of hand sanitizer clearly show Syndy Pharma (their supplier) shipped only 6 bottles of hand sanitizer (among a variety of other beauty products) to Defendants.  ECF No. 149, PX13 at 1792-93, Declaration of Melissa Gormly ("Gormly Decl."), Att. A Pages 2-3 (items 29 and 30, ordered quantity 3 each); *id.* at 1799, Att. A Page 9 (qty 3 each Bello Hand Sanitizer (Herbal) 50ml and 100ml).[12]  Defendants do not challenge the authenticity or

---

there were shortages in plastic bottles needed for packaging hand sanitizer); *id.* ¶ 134 (undisputed that "Defendants had difficulty sourcing bottles, pumps, and raw ingredients.").

[9] Def. Resp. SUF ¶ 351 (undisputed that "Defendant Tammabattula knew of the difficulties in getting hand sanitizer through customs, with multiple shipments detained or not released at all.").

[10] *See* Def. Resp. SUF ¶ 163 (undisputed that Defendants had never worked with Sainnocare, IRIS Labs, or Medison Pharma); *id.* ¶ 142 (undisputed that they claim they were supposed to receive a million bottles from Sainnocare but received less than 10,000).

[11] Defendants also claim that this was reasonable expectation based on "past order experience" and suggest that they sold hand sanitizer through QYK much earlier. *See* RT Decl. ¶¶ 5-6.  However, Defendants do not dispute they never sold hand sanitizer prior to March 3, 2020.  Def. Resp. Suf. ¶ 53.

[12] Tellingly, Defendants offer no justification for why, if they had 2,000 bottles already in their possession, they did not ship a single bottle before March 10, 2020.

admissibility of this evidence.  Thus, tellingly, Defendants cite only Tammabattula's unsupported affidavit.  His self-serving statements, however, are insufficient to create an issue of fact.  Specifically, when the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.  *See Broemer*, No. CV0104340MMMRZX, 2008 WL 11411412, at *8 (C.D. Cal. Apr. 14, 2008); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

Even if Defendants' assertion that they had 2,000 bottles were true and supported by evidence (which they are not), there is still no triable issue.  Balaji Tammabattula (who supposedly placed the order) testified at his deposition the 2,000 bottles were just one size—4oz bottles[13]—yet they advertised—and sold— bottles in 2.7oz, 3.3oz, 8oz, and 10oz bottle sizes beginning on March 4.[14]  Further, Defendants admit the other hand sanitizer they ordered (from China) beginning March 2, 2020 was "expected to arrive in 3-4 days", and therefore would not have

[13] ECF No. 159, PX 16 at 3068, 8/20/21 BT Dep. Tr. 46:14-17 (confirming the order was for 120mls); *see generally id.* at 3064-3068, 8/20/21 BT Dep. Tr. 32:7-47:11 (discussing ordering hand sanitizer on February 5, and February 22, 2020 on behalf of Jacqueline Nguyen); ECF No. 152, PX 16 at 2110, 8/16/21 RT Dep. Tr. 39:16-20 (Q. So you said you had some samples available, and those were the samples we discussed yesterday, the 4-ounce bottles that were – you brought back from the trade show.  A. Correct.").

[14] *See* Def. Resp. SUF ¶ 81 (Defendants do not dispute that "Defendants sold, and consumers purchased at least 58,309 bottles between March 4 and March 11, 2020" consisting of "410 2.7oz bottles; 8,701 3.3oz bottles; 6,415 8oz bottles; and 42,783, 10 oz bottles."); Def. Resp. SUF ¶ 89 (undisputed that "Defendants sold kids' hand sanitizer beginning on March 4, but none arrived until at least March 11); Def. Resp. SUF ¶ 113 (undisputed that "Between March 4 and March 9, Defendants sold 18,337 bottles of hand sanitizer," citing PX 9, Att. B at 39, which shows those sales consisted of 2.7oz, 3.3oz, 8oz, and 10oz bottle sizes); Def. Resp. SUF ¶¶ 118-19 (undisputed that between March 4 and March 19, 2020, Defendants sold, and consumers purchased 9,343 bottles of 8oz hand sanitizer, but Defendants did not receive any 8oz hand sanitizer until at least March 19, 2020).

9

been in Defendants' possession before the March 4 Google AdWords' Campaign began.  RT Decl. ¶¶ 14-15.[15]  There is no question of fact to resolve here—Defendants could not have had a reasonable basis to claim they could ship these items "Today" as promised.

### 3. Defendants' Pandemic Defense Only Further Supports Their Lack of Reasonable Basis.

Again, faced with undeniable facts, Defendants seek to shift blame for their late shipments onto FedEx, USPS, UPS.  Opp. at 18.  However, once again, there is no evidence to support their argument, other Defendants' own self-serving statements.[16]  The fact that Defendants continued to claim they could ship in under 10 days and started a second "Ships Today" campaign through Google AdWords on April 1, 2020, despite their professed awareness of these delays, only further strengthens that Defendants had no objectively reasonable basis for those claims.

### B.  Defendants Failed to Meet Their Burden to Show a Triable Issue on MITOR, §§ 435(b) and (c) Violations.

The FTC introduced definitive evidence proving Defendants failed to timely ship thousands of orders, thus demonstrating Defendants were obligated (without prior demand) to timely notify customers they had the option to either consent to a later shipping date or obtain an immediate refund.  FTC SJ Mot. at 30-34. Defendants' affidavits do not disturb the undisputed facts that (1) shipments were late; (2) Defendants provided only one untimely Delay Option Notice[17]; and (3) Defendants failed to provide consumers refunds.

---

[15] None of the inventory from China arrived until at least March 13, 2020 by their own admission.  RT Decl. ¶ 16.

[16] The FTC introduced evidence from the Garden Grove post office that they did not have any delays during this time.  ECF No. 196-3; ECF No. 196-5.

[17] Further, this single notice did not satisfy the Defendants' obligations under MITOR, *see infra* at 13-14.

10

### i. Defendants Do Not Seriously Contest that Shipments Were Late.

There is no genuine dispute Defendants did not ship within their promised shipment times.  Indeed, Defendants admit at least some shipments were late.  Def. Resp. SUF ¶ 152 ("this implies that all shipments went out late, when only some did."); Def. Resp. SUF ¶ 115 (undisputed that "Defendants did not ship a single bottle of hand sanitizer before March 10, 2020."); *see also* PX 16, Att. E, QYK RFA Resp. No. 49 (admitting no orders for hand sanitizer were shipped between March 6-10).

Additionally, there is no dispute that Defendants lack the necessary records to determine whether they shipped within their advertised shipment times.  *See* Def. Resp. SUF ¶¶ 405, 407-409.  This lack of records alone creates a legal presumption of Defendants' violations.  *See* MITOR, § 435.2(a)(4) and (d).  Although no more is required to prove violations once presumptively established, the FTC obtained manifest and shipment data for customer orders through the USPS and UPS.  These records show that Defendants did not ship thousands of packages on time; that is, they were not scanned into the USPS or UPS mail carrier's system until days or weeks (sometimes months) after consumers paid for them, and well after the times Defendants claimed in Google AdWords campaigns or on the website.[18]

### ii. Defendants' Challenges to the USPS Records Lack Supporting Evidence.

Defendants challenge USPS' business records with bald, unsupported statements these records are unreliable.  For instance, Rakesh Tammabattula states, "we were told that they [the USPS] were too understaffed and too busy to do these 'first scans'" and then suggests that scans may have been done significantly after USPS picked up the packages from Defendants.  *See* RT Decl. ¶ 34.  Defendants

---

[18] *See, e.g.*, SUF ¶ 390.

11

provide no foundation for this double hearsay.  However, even if these hearsay statements were admissible, which they are not, they at best establish USPS did not always scan at the hour of pickup, a fact not relevant here.  ECF No. 196-5, Plaintiff's Addt'l Statement of Undisputed Material Facts in Support of Opp. to Def. Mot. for Summ. J. ("Addt'l SUF") ¶¶ 452-453.  Instead, USPS picked up packages and scanned them the same day, either at the Garden Grove Post Office or at the Anaheim Processing & Distribution Center.  *Id.* ¶¶ 454, 455.

Defendants also assert that in some "instances the first scan was not done until the package was in a different state."  RT Decl. ¶ 34.  However, Tammabattula again fails to identify any records to support this assertion, how many instances he asserts, or which packages were affected.  If it were not hearsay (which it most assuredly is), this assertion still could not raise a genuine issue about the timeliness of those packages.

While Defendants never cite to the authenticated and otherwise admissible USPS business records introduced by the FTC (summarized in ECF No. 145, PX 9 to determine shipment dates for orders), these records confirm a small fraction of shipments were scanned in other cities.  Second Supplemental Declaration of Connor Geiran ("Second Supp. Geiran Decl.") ¶ 10.  Specifically, the records show 2,631 out of 43,379 orders[19] were scanned at a location other than Anaheim or Garden Grove.  *Id.*

Importantly, there is still no dispute that at least 2,404 of the 2,631 packages were shipped late.  *Id.* ¶ 12.  The undisputed evidence proves Defendants *did not*

---

[19] Although there were 45,800 unique orders between March and December 2020, several were removed and not included in the FTC's analysis of late shipments, *i.e.*, those with no "Paid_at" date, those that were re-charges for refunded items, and those that had no PPE or hand sanitizer.  ECF No. 145, PX 9 at 1670, Geiran Decl. ¶ 17.

12

1  *even print the shipping label* (designated by the "Fulfilled_at" date in Shopify and
2  a necessary prerequisite to shipment) until *after* the promised ship date. *Id.*[20]

3        Defendants ignore the fact that it is their burden to prove they complied with
4  the law and shipped orders timely, not the FTC's. *See* MITOR, § 435.2(d). This
5  burden is important because Defendants must prove that the remaining 227
6  packages (2,631 minus 2,404) were shipped on time. Which, of course, is
7  impossible for Defendants to do because they admit they do not have the records to
8  do so. Def. Resp. SUF ¶¶ 405, 407-409 (admitting lack records to determine
9  shipment dates). Moreover, Defendants do not challenge the other shipments
10  (including any UPS records), and therefore, these violations are uncontested.

11        ### iii.  It is Undisputed Defendants Failed to Provide More than One
12        ### Delay Option Notice or Deem Orders Cancelled.

13        There is no dispute Defendants sent only one notice, on March 11, 2020, to
14  customers without prior demand. Def. Resp. SUF ¶ 210; *see also id.* ¶ 214
15  (admitting they also notified customers who "contacted customer service"); ¶ 215
16  (admitting they also sent emails to "customers who reached out [to the
17  company]"). Defendants provide a declaration stating they sent the March 11
18  Delay Option Notice to customers who had purchased between March 4 and March
19  8, 2020 (still not identifying the actual customers who received the notice), RT
20  Decl. ¶ 38, during which time it is undisputed they widely disseminated the "In
21  Stock & Ships Today" claim[21] and failed to ship today. Therefore, there is no
22  dispute this Notice was untimely for all those purchasers (*i.e.*, the March 4 through

23
24  _____
    [20] The Court may properly consider this rebuttal evidence because it is limited to
25  addressing facts raised for the first time in Defendants' opposition. *Sanchez v. Cty.*
26  *of San Bernardino*, No. CV1009384MMMOPX, 2014 WL 12734756, at *4–5
    (C.D. Cal. Mar. 10, 2014) (citing cases).
27  [21] Defendants also admit that the "In Stock & Ships Today" claim appeared on the
28  website. *Supra* n.2

                                    13

8 dates are all more than 1 day before March 11).  MITOR, § 435.2(b)(1) ("Said offer shall be made within a reasonable time after the seller first becomes aware of its inability to ship within the applicable time set forth in paragraph (a)(1) of this section, *but in no event later than said applicable time*.") (emphasis added).

Moreover, Defendants do not dispute the contents of the Delay Option Notice, Def. Resp. SUF 211, which facially fails to satisfy the requirements of MITOR.  FTC SJ Mot. at 32-33 (discussing infirmities of Delay Option Notice, including fact that the Notice lies about the Defendants' ability to fulfill current orders).  Since it is beyond dispute Defendants failed to provide legally sufficient delay option notices, Defendants were required to cancel orders and provide ***prompt*** refunds ***without prior demand***.  MITOR, § 435.2(b) and (c).  Defendants admit they only provided refunds to customers who requested them, and only after their products were returned (if in transit or pre-shipment).[22]  Thus, these refunds were neither "prompt"[23] nor "without prior demand."  Accordingly, as a matter of law, Defendants failed to comply with MITOR, §§ 435(b) and (c).

---

[22] *See, e.g.*,  Def. Resp. SUF ¶ 414 (undisputed when "consumers asked for refunds or cancellations, Defendants repeatedly stated that items had to be rejected, refused, or returned to sender, because they had no way of knowing whether the item was still in the warehouse, or whether it had actually been placed into the hands of a mail carrier"); ¶ 249 ("we asked the customer to either reject it or confirm returning, at which time we would issue a refund"); ¶ 276 (the company "honored every refund request if the product had not yet shipped.  If it had been shipped, then the company would confirm return and then issue the refund."); ¶ 221 ("The only time a refund was held up is when the product was already in transit"); RT Decl. ¶ 39 (consumer would need to confirm that the product had been rejected or sent back before a refund issued).
[23] MITOR, § 435.1, defining both prompt refund and refund.

14

**C.    Defendants Offer No Evidence Rebutting the Presumption of DJN's MITOR Violations.**

Defendants argue the FTC failed to introduce evidence that DJN disseminated shipment time claims by claiming "all sales" came from Facebook ads.  Even if this were true it is irrelevant because they do not dispute they disseminated various processing times on the DJN website "similar to those claims on the Glowyy website."  Def. Resp. SUF ¶ 263.  They also ignore the evidence showing drjsnatural.com represented shipment time claims.  *See, e.g.*, PX 1 at 45, Att. B Page 12-13: "Hand Sanitizer Orders Placed Today Will ship in 3-5 days starting 17th April").  Thus, the FTC has introduced evidence of DJN's shipment time claims.  Further, it is undisputed that even if DJN had no processing time claims, MITOR's default 30-day period would apply.  Opp. at 21-22.  Defendants further do not dispute DJN did not maintain tracking information showing shipment dates for orders.  Def. Resp. SUF ¶ 278.  Thus, the FTC has presumptively established Defendants failed to comply with the law.  MITOR, § 435.2(a)(4).  Defendants' mere unsupported assertion they complied with the 30-day period, without citation to evidence, and in the face of their admission that they lacked shipment records to determine a shipping date, fails to rebut the presumption and does not create a triable issue of fact.

**D.    Defendants Fail to Rebut the Evidence that their Claims for Basic Immune IGG Claims Were Deceptive.**

Again, relying solely on Defendant Nguyen's self-serving translation of a few paragraphs of the transcript of her interview on SETTV, Defendants argue she never expressly stated Basic Immune IGG "diagnosis [sic], treats, prevents, or cures" COVID-19.  However, the claims at issue are whether Defendants "represented, directly or indirectly, expressly or by implication, that Basic Immune IGG can effectively treat, prevent transmission of, ***or reduce the risk of***

*contracting COVID-19.*"  PX 16, ECF No. 73 (FAC) ¶ 83 (emphasis added).

More importantly, Defendant Nguyen admitted during her deposition she not only appeared on SET but on a different Vietnamese channel called VBS to promote Basic Immune IGG.  When asked about these appearances she admits she recommended Basic Immune IGG "[i]n connection with boosting up your immune system and prevention of all corona—all bacteria and viruses, including COVID-19 is a virus, yes."  ECF No. 154, PX 16 at 2812-2813, 8/18/21 JN Dep. Tr 132:12-134:2.

Defendants also concede Dr. J intended to convey Basic Immune IGG could increase "the body's antibodies through Immunoglobulin to **resist** viruses including COVID."  Opp. at 24 (emphasis in original).  Her expressed intent to convey that taking Basic Immune IGG could increase "the body's antibodies through Immunoglobulin to **resist** viruses including COVID," conclusively proves that she made the claim.  *In the Matter of Thompson Med. Co., Inc.*, 104 F.T.C. 648 (1984) ("Because Thompson has acknowledged making the above-listed representations, we may state without reviewing the ads that Thompson intended to make these claims.  Therefore, it is reasonable to interpret the ads as making them.").

Defendants also challenge that they conveyed Basic Immune IGG was FDA approved or clinically tested because they have provided an alternate interpretation of the claims, *e.g.*, they only conveyed that Basic Immune IGG was produced in an FDA facility and that it had been clinically tested to show increased antibodies. However, where a claim is capable of more than one interpretation, it should be construed against the advertiser.  *FTC v. Gill*, 71 F.Supp.2d, 1030, 1045–46 (C.D. Cal. 1999) (advertisements that are "capable of being interpreted in a misleading way should be construed against the advertiser.") (*quoting Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir.1975)).

16

1   "In assessing whether a representation or practice is likely to mislead
2   consumers, a court may consider the overall net impression conveyed by the
3   representation." *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052,
4   1066 (C.D. Cal. 2012) (*citing FTC v. Cyberspace.Com, LLC*, 453 F.3d 1196, 1200
5   (9th Cir. 2006)).  Further, "[t]he failure to disclose material information may cause
6   an advertisement to be deceptive, even if it does not state false facts." *Id.* at 1067.
7   Defendants do not dispute that Ms. Nguyen appeared in several videos (including
8   English-language videos) to promote the product,[24] nor that in these videos she
9   specifically states that the product can help increase immune response to fight
10  COVID-19[25] (which they admit is a claim that has no scientific support, *see* Def.
11  Resp. SUF ¶¶ 309, 312, 313, 378).

12          By conveying in the same promotional piece the product was clinically-
13  tested and FDA-approved, without disclosing that such testing or approvals have
14  nothing to do with COVID-19, Defendants conveyed to reasonable consumers that
15  the product had been approved for the purpose for which they were promoting it—
16  to help the body "resist" COVID-19.  *See, e.g.*, ECF 181-1, Exhibit 304-71
17  (Consumer Sentinel Complaint: "Dept of Justice please look into this site, Dr.
18  JsNatural is claiming that this is an FDA approved therapy to fight COVID-19 []
19  specifically [] appeared in the local news segment and touted again how it is the
20  only FDA approved product for this, my elder parents asked me to buy these
21  products, truly believe that it will help them stave off covid-19, my investigation to

23  [24] Def. Resp. SUF ¶¶ 292-293 (disputing only the claim, not that she appeared or
24  promoted the production SETTV); ¶ 298 (disputing only the claim, but not that she
    appeared in the video); ¶¶ 305-306 (only disputing the nature of the claim, not that
25  she appeared and discussed Basic Immune IGG).
26  [25] Def. Resp. SUF ¶ 292 (she "discussed the need for the body to boost antibodies
    to resist viruses"); ¶ 293 ("she mainly recommended Basic Immune IGG 'in
27  connection with boosting up your immune system'); ¶ 305 ("She only states the
28  product boosts the bodies antibodies").

17

the original manufacturer, Entera Health, indicates that it only talks only [sic]
about helping digestive system.").  Accordingly, there is no dispute that
Defendants conveyed the claims alleged.

Defendants do not dispute the lack of scientific support for these claims.
Def. Resp. SUF ¶¶ 309, 312, 313, 378.  Therefore, the Court should grant summary
judgment in the FTC's favor on Counts III and IV of the FAC.

### E.    There is No Genuine Dispute on the Amount of Liability.

The FTC establishes a presumption of injury for all purchasing consumers
by demonstrating that Defendants' claims were material, widely-disseminated, and
consumers purchased the product.  *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th
Cir. 1993). Defendants challenge this presumption by asserting the FTC failed to
introduce evidence of materiality because they can find no consumer declarations
stating they would not have purchased but for the shipment time claims.  Opp. at
37.  This contention, however, is simply false.[26]  The FTC also identified dozens of
complaints in its Addt'l SUF ¶ 448 and ECF 196-5, Ex. 326-A in which consumers
state they would not have purchased absent the Defendants' promises.[27]  Moreover,

---

[26] For instance, ECF No. 142, PX 6 at 1474, Askins Decl. ¶¶ 2, 4 ("On March 12,
2020, I search Google for hand sanitizer and clicked an ad from Glowyy that said it
had "Hand Sanitizers in Stock," which would ship that same day. . . . Because hand
sanitizer was hard to find at that time and because I still needed to go into work, I
placed an order on Glowyy's website . . . "); *see also* ECF No. 139, PX 3 at 1426,
Brier Decl. ¶ 9 she states:  "On May 1, 2020, I sent Glowyy an email informing
them that their advertising was unethical, as it gave me the impression that hand
sanitizer was immediately available."; PX 3 at 1446, Attachment E Page 1 ("My
father is 84 years old and had no hand sanitizer and your advertising made it seem
like it was available immediately."); ECF No. 141, PX 5 at 1460, Kalmeta Decl.
¶¶2-3 ("I searched for hand sanitizer online and came across Glowyy's website,
which state it had hand sanitizer available and in stock.  Based on Glowyy.com's
statements that it had hand sanitizer in stock, I ordered five (5) bottles….").
[27] Defendants also complain that we only identified 11 consumers who stated they
would not have purchased Defendants' products but for the shipping time claims.

18

materiality is presumed for express claims.  *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095–96 (9th Cir. 1994).  Here, Defendants made clear and conspicuous shipping time claims through the Google Ads and through the website.  In fact, Defendant Tammabattula acknowledged the materiality of these claims, explaining:  "People are canceling orders because of wait and it might be better to pay little higher to get it sooner than wait so long."  ECF No. 162, PX 16 at 3555, Att. AA Page 156 (RT at 5:52PM).[28]  Thus, there is no genuine dispute that the shipment time claims were material to consumers.

Further, Defendants do not dispute their claims were widely-disseminated, or consumers purchased their products.  For instance, Defendants admit they sold 45,105 orders through the Glowyy website between March and May 31, 2020. Opp. at 10.  They also do not dispute the Google AdWords' campaigns were viewed hundreds of thousands of times, although they dispute the language that consumers may have seen—nevertheless, these claims drove consumers to the website, Def. Resp. SUF ¶ 403, where other deceptive shipment claims appeared.[29]

---

This misrepresents the scope of consumer evidence showing that shipment times were material.  See, e.g., [insert discussion of summaries].  Moreover, Defendants themselves admit there were at least 10,000 customer tickets generated through the Gorgias CRM database (Def. Resp. SUF ¶ 217).  Of course, "it would be impractical to force the Government to obtain affidavits from hundreds or thousands of people to demonstrate the scope of Defendants' misconduct." *Figgie Int'l, Inc.*, 994 F.2d at 608; *United States v. MyLife.com, Inc.*, No. CV 20-6692-JFW(PDX), 2021 WL 4891776, at *7 (C.D. Cal. Oct. 19, 2021).

[28] *See also* Def. Resp. SUF ¶ 379 (undisputed that "During the early weeks of the pandemic quarantine in the United States, obtaining hand sanitizer as quickly as possible was paramount for many consumers."); ECF No. 166, PX 16 at 3268, DP Dep. Tr. 86:19-87:5 (DP explains that consumers reached out to the company saying "It's been two days, three days.  Why am I not getting my order?"); *id.*, DP Dep. Tr.  88:9-19 (customers called when not shipped next day).

[29] Defendants argue that not all Google Ads contained the "Ships Today" language. Def. Resp. SUF ¶¶ 59, 62.  Plaintiff's SUF identified only those impressions for the specific extension "In Stock & Ships Today" and "Ships Fast From CA

Thus, the presumption has been established.  Therefore, Defendants must come forward with specific evidence establishing individual consumers did not rely, were satisfied, or already received a refund.  ECF No. 196, FTC's Opp. to Def. Motion for Partial Summary Judgment ("FTC Opp.") at 9-10(*citing FTC v. Bronson Partners, LLC*, 654 F.3d 359, 369 (2d Cir. 2011) and *FTC v. Kuykendall*, 371 F.3d 745, 766-67 (10th Cir. 2004) (en banc)).  They have provided no such evidence.

Even if the presumption of injury did not apply to all sales affected by Defendants' misleading shipment time claims, the uncontroverted evidence demonstrates which shipments were late based on the shipment times Defendants did admit to.  *See* SUF ¶ 197; SUF ¶ 198; SUF ¶ 390.[30]  This evidence

_____

Today."  *See* Pl. Reply to Def. Resp. SUF ¶¶ 78; 195.  Nevertheless, even if not every claim contained the "Ships Today" language, the base ads distributed in those campaigns contained the express language "In Stock."  ECF No. 153, PX 16 at 2638, Att. N2 Page 3 (base ad stated "Hand Sanitizers in Stock | Disinfect & Stay Safe | Recommended by Doctors"); *id.* at 2762, Att. N14 Page 2 (base ad stated: "Hand Sanitizer Gel In Stock | 75% alcohol based Formula | Ships Fast From CA Today").  It is well-established that a marketer may be held liable for deceptive "door-opener" representations.  *See, e.g.*, *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975) (party under no duty to make reasonable inquiry into truth of advertising; the FTC Act is violated "if it induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract"); *Carter Prod. v. FTC*, 186 F.2d 821, 824 (7th Cir. 1951) (the law is violated if the first contact or interview is secured by deception, even though the true facts are made known to the buyer before he enters into the contract for purchase).  Moreover, the shipment time claims contained on the website were also deceptive.

[30] Again, Defendants "dispute" SUF ¶ 390 because it purportedly assumes all ads were generated from the March 4 Google AdWords campaign, but obviously this is untrue.  *See* Pl. Reply to Def. Resp. SUF ¶ 390; *supra* at 2-5.  Defendants also dispute the FTC's assertion these shipments are late based on unsupported accusations that the USPS records are unreliable.  As explained *supra*, it is Defendants' obligation to prove they shipped timely; nevertheless, their baseless,

conclusively shows Defendants generated $2,339,881.92 in revenue from these late shipments that was not refunded. ECF No. 145, PX 9 at 1677, Geiran Decl. ¶ 30, Table 4 (Scenario 5). These consumers were legally entitled to refunds under MITOR because Defendants did not (under their admitted shipping time claims) provide a timely Delay Option Notice. *See supra* at 10-14 (discussing Delay Option Notice).

Defendants argue there is an issue of fact to be resolved because some consumers also received hand sanitizer, and therefore, are not entitled to the full amount of refunds (or any refund at all). As the FTC explained in its Opposition, this argument is no more than an attempt to replace the remedy provided by law with Defendants own preferred remedy. FTC Opp. at 11-12 and n.17. Specifically, the argument ignores the undeniable fact that once canceled by operation of law, the products shipped to consumer were legally a gift. 39 U.S.C. § 3009(b); *see also* FTC Opp. at 15-16 and n.23.

Having established Defendants violated MITOR and consumers were legally entitled to refunds, the burden shifts to Defendants to present evidence to offset the amount. FTC Opp. at 15. Here, Defendants essentially argue the value of the hand sanitizer should be accounted for without any evidence the hand sanitizer had value to consumers.[31] In light of the evidence presented by the FTC that there was no windfall because the shipment of hand sanitizer to consumers was a gift, 39 U.S.C. § 3009(b), and consumers did not consider late-shipped hand sanitizer to have value, ECF No. 196, FTC Opp. at 15-19, Defendants have not demonstrated

---

hearsay objections would affect only 227 shipments totaling $10,927.07 in sales. Second Supp. Geiran Decl. ¶ 13.

[31] For instance, Defendants state consumers receive a windfall "by having a valuable product" but offer no evidence that consumers considered the late-delivered hand sanitizer purchased in the pre-vaccine pandemic to have any value at all.

that there is any triable issue.[32]  In any event it is the Defendants' burden to show

that consumers wanted the late-shipped product, and they have put forward no

evidence to demonstrate this fact.  *Figgie*, 994 F.2d at 605-06; *see also* FTC Opp.

at 9-10 (discussing burden shifting); FTC SJ Mot. at 42 n.206.

Defendants also argue there is an issue of fact regarding the amount of

liability because 90% of the sales were supposedly generated from advertisements

that did not have shipment claims.[33]  Opp. at 38.  Setting aside that Defendants

have no evidence to support this claim, the argument simply ignores that once

widely-disseminated misrepresentations are established, all sales during that time

are presumed to have caused injury.  *Figgie*, 994 F.2d at 605-06.  Thus, the FTC

was not required to show late shipments to obtain recovery.  Further, Defendants'

failure to maintain proper records means all sales are presumed violative under

MITOR, §§ 435.2(a)(4) and (d); Defendants' say-so does not rebut that

presumption.  *Cf. Broemer*, No. CV0104340MMMRZX, 2008 WL 11411412, at

*8 (C.D. Cal. Apr. 14, 2008); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir.

1993).

---

[32] Defendants also argue that allowing customers to keep the hand sanitizer and the
money is "punitive," but this ignores that any hand sanitizer sent to customers after
the customer lawfully canceled the order (or was legally deemed to have canceled)
was a gift.  39 U.S.C. § 3009.

[33] Defendants state that only approximately 11% of sales were generated through
the initial Google AdWords campaign, but cite to no evidence.  *See* RT Decl. ¶ 11.
They also fail to account for sales generated through the second Google AdWords'
campaign.  Their figure also ignores the shipment claims that appeared on the
website.  There is no doubt that shipment times that appear on a website are within
the purview of MITOR.  *See, e.g.*, MITOR, § 435.2(a) (it is a "deceptive act or
practice for a seller . . . to solicit any order for the sale of merchandise through . . .
the Internet. . .  unless, at the time of the solicitation, the seller has a reasonable
basis to expect that it will be able to ship any ordered merchandise to the byer
within that time clearly and conspicuously stated in any such solicitation.").

**F.      There Is No Genuine Dispute of Material Fact that the Court May Award Injunctive Relief the FTC Seeks.**

The FTC is entitled to injunctive relief because Defendants acted egregiously and knowingly, causing substantial harm, have shown little remorse, and have a high risk of reoccurrence.  FTC SJ Mot. at 43-46.  Defendants dispute there is a cognizable danger of reoccurrence because they say they are unlikely to violate MITOR again.  Opp. at 40.  However, this is not the standard.  Indeed, courts consider a variety of factors, such as the "degree of scienter [and] whether the current occupation positions him to commit future violations." *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1086 (C.D. Cal. 2012), *aff'd in part and vacated in part on other grounds by* 815 F.3d 953 (9th Cir. 2016).  There is nothing in the caselaw to suggest that the Court is bound to only consider whether there is a high likelihood Defendants may violate the specific law alleged, as opposed to, *e.g.*, the FTC Act generally, and such a limited interpretation is at odds with the goals of the relief sought.

In fact, even abandonment of the conduct, as Defendants' claim they have done here, does not preclude injunctive relief.  *See, e.g.*, *FTC v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006, 1012 (C.D. Cal. 2012), *aff'd sub nom. FTC v. John Beck Amazing Profits, LLC*, 644 F. App'x 709 (9th Cir. 2016) ("it is well-established that the court's power to grant such relief survives discontinuance of the illegal conduct"); *FTC v. Sage Seminars, Inc.*, No. C 95-2854 SBA, 1995 WL 798938, at *6 (N.D. Cal. Nov. 2, 1995) ("the voluntary cessation of violative conduct does not vitiate the need for injunctive relief if there is a possibility that the defendant is 'free to return to his old ways'."); *see also FTC v. Affordable Media*, 179 F.3d 1228, 1238 (9th Cir. 1999).  Defendants' argument that they no longer sell to consumers is both inapposite and untrue because DJN continues to sell various PPE-related products, as well as supplements, to individual consumers.

23

Def. Resp. SUF ¶ 427 (undisputed that "Defendants continue to sell hand sanitizer and PPE through DJN, as well as dietary supplements."). Moreover, the factual predicate for the relief remains largely undisturbed. Defendants do not dispute that they lied on the importer forms to bring hand sanitizer into the country, instead asserting (again without any factual support) this was a local shipper requirement. Opp. at 42; *see also* Def. Resp. SUF ¶ 440. Defendants cite to no supporting evidence, but they miss the point. Defendants have a propensity to lie in their money-making efforts. To find this true, the Court need look no further than the remaining undisputed facts:

- it is undisputed that Defendants were suspended from two Google AdWords campaigns and the Facebook campaign because their ads violated marketing policies related to deception, Def. Resp. SUF ¶ 189 (undisputed Google suspended rt@qyk.us account for violating advertising policies re sensitive events); ¶¶ 193-194 (undisputed Google suspended rt@easii.com account for violating advertising policies re unacceptable business practices including scamming users); ¶ 436 (undisputed Facebook account suspended for violating advertising policies for using misleading practices).

- it is undisputed that Defendants tried to circumvent these restrictions by using different accounts. Def. Resp. SUF ¶ 438 (undisputed that "Immediately after the Facebook Ad Account was suspended, Tammabattula attempted to hire a freelancer who had an establish Facebook Ad Account."); *see also* Def. Resp. SUF ¶ 190 (undisputed that Defendants used a different company email address to set up a new account for a second Google AdWords' campaign).

- it is undisputed that Defendants marketed hand sanitizer as MADE IN USA on March 9 (Def. Resp. SUF ¶ 442) despite that they had no domestically produced hand sanitizer until the end of March (Def. Resp. SUF ¶140).

24

1   Further, it is undisputed that Defendants knew on or around March 4 that obtaining

2   additional hand sanitizer would be difficult, Def. Resp. SUF ¶ 125, knew that the

3   first stocks arriving from India were unexpectedly delayed, Def. Resp. SUF ¶ 316,

4   as were subsequent shipments from China around the same time, RT Decl. ¶¶ 15-

5   16, but started a same-day shipping campaign anyway.  Defendants should be

6   enjoined due to likelihood of future reoccurrence of law violation.

7        **G.      Defendants' Objections to Consumer Complaints Are Baseless.**

8        Defendants urge the Court to refuse to consider the four consumer

9   declarations, and consumer complaints lodged with the company and with third

10  parties because they are hearsay.  However, courts may rely upon declarations in

11  deciding motions for summary judgment where the declarations are "made on

12  personal knowledge, set out facts that would be admissible in evidence, and show

13  that the affiant or declarant is competent to testify on the matters stated."  Fed. R.

14  Civ. P. 56(c)(4).  Further, the consumer complaints are not hearsay (most come

15  from Defendants' own business records, such as the Gorgias and Shopify CRM

16  database, which also contain party admissions and present sense impressions,

17  others are subject to the residual hearsay exception, *see* ECF No. 181) and thus

18  admissible, and even so, the contents of the complaints could be presented in

19  admissible form, and therefore properly considered by the court in ruling on

20  summary judgment.  *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003)

21  (holding that hearsay statements could be considered on summary judgment

22  because the declarant could be called to testify to the contents of the statements at

23  trial).[34]  Indeed, courts routinely consider consumer complaints on summary

24  judgment.  *See, e.g.*, *United States v. MyLife.com, Inc.*, No. CV 20-6692-

25  JFW(PDX), 2021 WL 4891776, at *7 (C.D. Cal. Oct. 19, 2021); *FTC v. Neovi,*

26

27  [34] Also, as laid out in the FTC MIL, ECF No. 181, the consumer complaints are

28  admissible in their current form under the residual hearsay exception.

*Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010), *as amended* (June 15, 2010), *amended*, No. 09-55093, 2010 WL 2365956 (9th Cir. June 15, 2010).

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, the FTC respectfully requests entry of summary judgment against all Defendants on all Counts of the FAC, including entry of monetary judgment in the amount of $3,086,239.99, and an injunction as included with the Motion.

Respectfully submitted,

Dated:  March 25, 2022

/s/ Katherine Johnson

KATHERINE E. JOHNSON, *admitted pro hac vice*
CHRISTOPHER ERICKSON, *admitted phv*
Federal Trade Commission
600 Pennsylvania Avenue NW, CC-9528
Washington, DC  20580
(202) 326-2185; (Johnson)
kjohnson3@ftc.gov
(202) 326-3671 (Erickson)
cerickson@ftc.gov
**Attorneys for Plaintiff**
FEDERAL TRADE COMMISSION

**<u>Certificate of Service</u>**

I certify that on March 25, 2022, I caused a true copy of the foregoing to be served by the following means on the following persons:

By Notice of Electronic Filing via the Court's CM/ECF System, pursuant to Local Rule 5-3.2:

**Scott Wellman**
**SWellman@w-wlaw.com**
Attorney for Defendants

/s/ Katherine Johnson

Katherine Johnson

27