**FILED**
CLERK, U.S. DISTRICT COURT

04/22/22

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ WH _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>QYK BRANDS LLC d/b/a Glowyy, et al.<br><br>Defendants. | Case No. 8:20-cv-01431-PSG-KES<br><br>**JS-6**<br><br>~~[PROPOSED]~~ **FINAL ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT** |

On August 4, 2020, Plaintiff, the Federal Trade Commission ("FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the FTC's Trade Regulation Rule Concerning the Sale of Mail, Internet, or Telephone Order Merchandise ("MITOR" or the "Rule"), 16 C.F.R. Part 435.  Plaintiff filed its First Amended Complaint on May 19, 2021 (ECF No. 73, "FAC").  On February 14, 2022, Plaintiff filed its Motion for Summary Judgment ("Motion"), as well as its Statement of Undisputed Facts, as supported by declarations, stipulation, admissions, interrogatory answers, or other materials submitted in support of the Motion.  Having considered the Motion and supporting materials in the record and any oppositions thereto, the Court finds there is no genuine dispute of material fact, and the FTC is entitled to judgment against all Defendants as a matter of law.  The Court's reasoning and specific findings are detailed in the Minute Order dated April 6, 2022 (ECF No. 212).

**THEREFORE, IT IS ORDERED** as follows:

## FINDINGS

A. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B. The Complaint alleges that Defendants participated in deceptive and unfair acts or practices in violation of Sections 5 and 12 of the FTC Act, 15 U.S.C. § 45 and § 52, and of the Commission's Trade Regulation Rule Concerning the Sale of Mail, Internet or Telephone Order Merchandise, 16 C.F.R. Part 435 ("MITOR"), by representing they would ship goods, including Personal Protective Equipment ("PPE") and hand sanitizer, within certain timeframes but having no reasonable basis to expect to ship the goods within the advertised timeframes; failing to ship goods within the timeframe required by MITOR; failing to offer consumers the opportunity to consent to a delay in shipping or to cancel their order and receive a prompt refund upon becoming aware of their inability to ship goods within the time advertised; and, after receiving cancellation and refund requests, failing to provide consumers with a prompt refund. The Complaint also charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, by misrepresenting that they: (1) would ship orders "Today"; or would ship within 7 days; (2) had certain PPE and hand sanitizer in stock and ready to ship; and (3) would ship the goods consumers ordered; and that they further violated Sections 5 and 12 of the FTC Act by participating in deceptive acts and practices by misrepresenting that their product, Basic Immune IGG, could treat, prevent, or reduce risk of contracting COVID-19, and that it was clinically shown and approved by the FDA to do so.

C. Defendants' activities are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

1    D.    Corporate Defendants violated Section 5 of the FTC Act, <u>15 U.S.C. §</u>
2  <u>45</u>, and MITOR, 16 C.F.R. Part 435, by representing they would ship goods,
3  including hand sanitizer and PPE, within certain timeframes but having no
4  reasonable basis to expect to ship the goods within the advertised timeframes;
5  failing to ship goods within the timeframe required by MITOR; failing to offer
6  consumers the opportunity to consent to a delay in shipping or to cancel their order
7  and receive a prompt refund upon becoming aware of their inability to ship goods
8  within the time advertised; and, after receiving cancellation and refund requests,
9  failing to provide consumers with a prompt refund.  Corporate Defendants further
10 violated Section 5 of the FTC Act, <u>15 U.S.C. § 45</u>, by misrepresenting that they:
11 (1) would ship orders "Today"; or would ship within 7 days; (2) had certain PPE
12 and hand sanitizer in stock and ready to ship; and (3) would ship the goods
13 consumers ordered; and that they further violated Sections 5 and 12 of the FTC Act
14 by participating in deceptive acts and practices by misrepresenting that their
15 product, Basic Immune IGG, could treat, prevent, or reduce risk of contracting
16 COVID-19, and that it was clinically shown and approved by the FDA to do so.

17    E.    Individual Defendants Rakesh Tammabattula and Jacqueline Thao
18 Nguyen participated in and had authority to control the Corporate Defendants'
19 deceptive marketing and sale of hand sanitizer, PPE products, and Basic Immune
20 IGG.

21    F.    In light of Defendants' conduct, there is a cognizable danger that they
22 will continue to engage in activities that violate the FTC Act unless enjoined from
23 such acts and practices.

## **<u>DEFINITIONS</u>**

For the purpose of this Order, the following definitions apply:

A.  "**Applicable Time Period**" means the time stated in Defendants'
solicitation or within 30 days of Receipt of a Properly Completed Order if no time
is stated in the solicitation.

B.  "**Clearly and Conspicuously**" means that a required disclosure is
difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary
consumers, including in all of the following ways:

1.  In any communication that is solely visual or solely audible, the
disclosure must be made through the same means through which the
communication is presented.  In any communication made through both
visual and audible means, such as a television advertisement, the disclosure
must be presented simultaneously in both the visual and audible portions of
the communication even if the representation requiring the disclosure is
made in only one means.

2.  A visual disclosure, by its size, contrast, location, the length of
time it appears, and other characteristics, must stand out from any
accompanying text or other visual elements so that it is easily noticed, read,
and understood.

3.  An audible disclosure, including by telephone or streaming
video, must be delivered in a volume, speed, and cadence sufficient for
ordinary consumers to easily hear and understand it.

4.  In any communication using an interactive electronic medium,
such as the Internet or software, the disclosure must be unavoidable.

5.  The disclosure must use diction and syntax understandable to
ordinary consumers and must appear in each language in which the
representation that requires the disclosure appears.

6.  The disclosure must comply with these requirements in each
medium through which it is received, including all electronic devices and
face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

C. "**Corporate Defendant(s)**" means QYK Brands LLC d/b/a Glowyy, DrJsNatural LLC, Theo Pharmaceuticals, Inc., and EASII, Inc., and each of their subsidiaries, affiliates, successors, and assigns.

D. "**Covered Dietary Supplement**" means any Dietary Supplement, Food, or Drug, including Basic Immune IGG.

E. "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

F. "**Dietary Supplement**" means: (1) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (2) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

G. "**Document**" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs,

Case 8:20-cv-01431-PSG-KES Document 14 Filed 04/22/20 Page 6 of 26 Page ID #:8541

telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate Document within the meaning of the term.

H.     "**Drug**" means: (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

I.     "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients) in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the Covered Dietary Supplement; provided that the Covered Dietary Supplement may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

J.     "**Food**" means: (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

K.     "**Individual Defendants**" means Rakesh Tammabattula and Jacqueline Thao Nguyen.

L.     "**Option**" means an offer made Clearly and Conspicuously and without prior demand.

M.     "**Personal Protective Equipment**" means protective clothing, helmets, gloves, face shields, goggles, facemasks, respirators, or other equipment designed, intended or represented to protect the wearer from the spread of infection or illness.

N.     "**Prompt**," in the context of a Refund, means a Refund sent by any means at least as fast and reliable as first-class mail within 7 days of the date on which the buyer's right to Refund vests under the provisions of this Court Order. Provided, however, that where a Defendant cannot provide a Refund by the same method payment was tendered, Prompt Refund means a Refund sent in the form of cash, check, or money order, by any means at least as fast and reliable as first class mail, within 7 days of the date on which the Defendant discovers it cannot provide a Refund by the same method as payment was tendered.

O.     "**Protective Goods and Services**" means any good or service designed, intended, or represented to detect, treat, prevent, mitigate, or cure COVID-19 or any other infection or disease, including, but not limited to, Personal Protective Equipment, hand sanitizer, and thermometers.

P.     "**Refund**" means:

      1.     Where the buyer tendered full payment for the unshipped merchandise in the form of cash, check, or money order, a return of the amount tendered in the form of cash, check, or money order sent to the buyer;

      2.     Where there is a credit sale:

          (i)     And Defendant is a creditor, a copy of a credit memorandum or the like or an account statement sent to the buyer reflecting the removal or absence

of any remaining charge incurred as a result of the sale from the buyer's account;

(ii)   And a third party is the creditor, an appropriate credit memorandum or the like sent to the third party creditor which will remove the charge from the buyer's account and a copy of the credit memorandum or the like sent to the buyer that includes the date that Defendant sent the credit memorandum or the like to the third party creditor and the amount of the charge to be removed, or a statement from Defendant acknowledging the cancellation of the order and representing that it has not taken any action regarding the order which will result in a charge to the buyer's account with the third party;

(iii)  And the buyer tendered partial payment for the unshipped merchandise in the form of cash, check, or money order, a return of the amount tendered in the form of cash, check, or money order sent to the buyer.

3.   Where the buyer tendered payment for the unshipped merchandise by any means other than those enumerated in (1) or (2) of this definition:

(i)    Instructions sent to the entity that transferred payment to Defendant instructing that entity to return to the buyer the amount tendered in the form tendered and a statement sent to the buyer setting forth the instructions sent to the entity including

the date of the instructions and the amount to be
returned to the buyer;

(ii)    A return of the amount tendered in the form of
cash, check or money order sent to the buyer; or

(iii)   A statement from Defendant sent to the buyer
acknowledging the cancellation of the order and
representing that Defendant has not taken any
action regarding the order which will access any of
the buyer's funds.

Q.    "**Receipt of a Properly Completed Order**" means, where the buyer
tenders full or partial payment in the proper amount in the form of cash, check or
money order; authorization from the buyer to charge an existing charge account; or
other payment methods, the time at which Defendant receives both said payment
and an order from the buyer containing all of the information needed by Defendant
to process and Ship the order.

R.    "**Ship**," or any variation thereof, including Shipment or Shipping,
means the act by which the merchandise is physically placed in the possession of
the carrier.

## ORDER

### CONDUCT RELIEF

### I.

**IT IS ORDERED** that Defendants are permanently restrained and enjoined
from the advertising, marketing, promoting, or offering for sale, or assisting others
in the advertising, marketing, promoting, or offering for sale, of any Protective
Goods and Services.

### II.

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good ordered by mail, via the internet, or by telephone are permanently restrained and enjoined from:

A.    Representing, without a reasonable basis, that Defendants will: (1) Ship ordered goods within the time stated in their solicitation; or (2) Ship ordered goods by any revised Shipping date provided to buyers.

B.    Where the order solicitation does not Clearly and Conspicuously state a Shipping time, soliciting any order for the sale of merchandise without having a reasonable basis that the goods will Ship 30 days after Receipt of a Properly Completed Order.

C.    Informing buyers that Defendants are unable to make any representation regarding the length of any Shipping delay unless Defendants have a reasonable basis for so informing buyers.

D.    Failing to provide buyers with the Option either to consent to the delay in Shipping or to cancel the order and receive a Prompt Refund where Defendants cannot Ship the ordered goods within the Applicable Time Period. Said Option must be provided within a reasonable time after the Defendants have become aware of their inability to Ship within the Applicable Time Period, but in no event later than the Applicable Time Period.

     1.    Provided however, that any such Option must either:

        a.    provide a definite revised Shipping date; or

        b.    where Defendants lack a reasonable basis for providing a definite revised Shipping date, inform the buyer that:

      i. the seller is unable to make any representation regarding the length of the delay; and

      ii. the reason(s) for the delay.

  2. Where Defendants have provided a definite revised Shipping date, pursuant to II.D.1.a, that is more than 30 days later than the Applicable Time Period, Defendants must also Clearly and Conspicuously inform the buyer that the buyer's order will automatically be deemed to have been cancelled unless:

    a. Defendants have Shipped the merchandise within the Applicable Time Period, and Defendants have received no cancellation request prior to Shipment; or

    b. the buyer has specifically consented to said Shipping delay within the Applicable Time Period.

  3. Where Defendants have informed the buyer that they cannot make any representation regarding the length of the delay pursuant to Section II.D.1.b, Defendants must also Clearly and Conspicuously inform the buyer that the buyer's order will automatically be deemed to have been cancelled unless:

    a. Defendants have Shipped the merchandise within 30 days of the Applicable Time Period, and the Defendants have received no cancellation request prior to Shipment; or

    b. the buyer has specifically consented to said Shipping delay within 30 days of the Applicable Time Period. Provided however, Defendants must also expressly inform the buyer that the buyer will have a continuing right to cancel the order at any time after the Applicable Time Period.

 E. Where the buyer has consented to a definite revised Shipping date pursuant to Section II.D, and Defendants become aware they are unable to Ship

11

ordered goods by that date, failing to provide a renewed Option either to consent to a further delay or to cancel the order and receive a Prompt Refund.  Said Option must be made within a reasonable time after the Defendants first become aware of their inability to Ship before the said definite revised Shipping date, but in no event later than the expiration of the definite revised Shipping date.  Provided however, that any such Option must provide a new definite revised Shipping date, unless Defendants lack a reasonable basis for doing so.  In such event, Defendants must also provide the notices required by Section II.D.1.b and Section II.D.3 of this Order.

       F.     Failing to cancel any order and provide the buyer with a Prompt Refund:

       1.     When Defendants have received a cancellation and Refund request from the buyer pursuant to Section II of this Order;

       2.     Under the circumstances prescribed in Section II.D.2 and II.D.3;

       3.     When Defendants fail to provide the Option required by Section II.D. and have not shipped the merchandise within the Applicable Time Period; or

       4.     When Defendants notify the buyer that they have decided not to Ship the merchandise.

### III.

In any action brought by the Commission alleging a violation of Section II of this Order, the failure to create and maintain records establishing compliance with Section II creates a rebuttable presumption that Defendants violated the provisions of that Section.

12

**IV.**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service ordered by mail, via the internet, or by telephone are permanently restrained and enjoined from, or assisting others in, expressly or by implication, misrepresenting:

  A. The time within which the good will ship;

  B. The time within which the buyer will receive the ordered good;

  C. That any costs will be refunded if the order does not arrive on time, or any material aspect of a Refund policy; or

  D. Any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

**V.**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Dietary Supplement, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation that such product:

A.      is FDA-approved to effectively treat, prevent transmission of, or reduce the risk of contracting COVID-19 unless the representation is true and non-misleading;

B.      can effectively treat, prevent transmission of, or reduce risk of contracting COVID-19; or

C.      cures, mitigates, or treats any disease, unless the representation in B or C is true and non-misleading, and, at the time such representation is made, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence must consist of human clinical testing of the Covered Dietary Supplement, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and Documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

**VI.**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Dietary Supplement, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation, other than representations covered under the Section IV of this Order, about the health benefits, performance, efficacy, safety, or side effects of any Covered Dietary Supplement, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true. In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled

Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission. Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## VII.

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Dietary Supplement are permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

A. That any Covered Dietary Supplement is clinically proven to treat, prevent the transmission of, or reduce the risk of contracting COVID-19;

B. That the performance or benefits of any product are scientifically or clinically proven or otherwise established; or

C. The existence, contents, validity, results, conclusion, or interpretations of any test, study, or other research.

## VIII.

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Defendants, Defendants' officers, agents, employees, and attorneys, or all other persons in active concert or participation with any of them from:

A. For any Drug product, making a representation that is approved for inclusion in labeling for such Drug product under a new drug application or biologics license application approved by the Food and Drug Administration, or,

for any nonprescription Drug product authorized by Section 505G of the Food, Drug, and Cosmetics Act, 21 U.S.C. § 355h, ("FDCA") to be marketed without an approved new drug application, making a representation that is permitted or required to appear in its labeling in accordance with Section 505G(a)(1)-(3) of the FDCA, 21 U.S.C. § 355h(a)(1)-(3), or a final administrative order under Section 505G(b) of the FDCA, 21 U.S.C. § 355h(b); and

B.     For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## IX.

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants must secure and preserve all underlying or supporting data and Documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A.     All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.     All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.     Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.     All documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.     All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.

Provided, however, the preceding preservation requirement does not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.  These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Corporate Defendants' size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## X.     MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A. Judgment in the amount of Three Million, Eighty-Six Thousand, Two Hundred Thirty-Nine Dollars and Ninety-Nine Cents ($3,086,239.99) is entered in favor of the Commission against Defendants jointly and severally, as monetary relief pursuant to Section 19 of the FTC Act.

B. Defendants are ordered to turn over the sum of Three Million, Eighty-Six Thousand, Two Hundred Thirty-Nine Dollars and Ninety-Nine Cents ($3,086,239.99) to the Commission within seven (7) days of entry of this Order.

1. The money transfer identified above shall be made by wire transfer in accordance with wire transfer instructions provided by a representative of the Commission to Defendants.

2. After receipt of such funds by wire transfer, all money paid to the Plaintiff or Commission pursuant to this Order as equitable monetary relief shall be held in a non-interest bearing escrow account administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund ("Redress Fund"). Defendants have no right to challenge any actions the Commission or its representatives may take with regard to the conduct or administration of redress pursuant to this Section.

C. The FTC shall use the Redress Fund to redress consumers who purchased from Defendants from March through August 2020, and for the administration of that redress. The FTC shall have sole discretion on how to administer the redress program, provided however,

1. Such redress plan shall require consumers to request a refund to be reimbursed.

2. If Defendants have paid the Judgment in full on or before the date the FTC gives notice to consumers of their right to a refund:

    a)    All consumers notified shall have 120 days from the date of notification to request a refund after receiving notice ("120 Day Notice Period").

    b)    Any consumer that fails to submit a request for a refund within the 120 Day Notice Period shall have no right to a refund for redress from the FTC.

    c)    After the conclusion of the 120 Day Notice Period, the FTC shall have a reasonable time to determine the amount of unclaimed funds and costs of administering the Redress Fund ("Post-Notice Administration Period").

    d)    The FTC shall return to Defendants any amount of money in the Redress Fund (less costs of administering the Redress Fund) that remains at the conclusion of Post-Notice Administration Period.

3.    If Defendants have not paid the Judgment in full on or before the date the FTC gives notice to consumers of their right to a refund:

    a)    The FTC, at any time, may give notice to consumers of their right to a refund, and may make partial distributions if the FTC determines in its sole discretion that doing so is practical. Any notice given under this provision shall not trigger the 120 Day Notice Period.

    b)    The Commission may continue to collect the remainder of the Judgment plus interest and distribute those funds until the Judgment is paid in full.

    c)    After payment in full, the FTC shall make a last distribution, and return any remaining funds (less costs of administering the Redress Fund) within a reasonable period thereafter.

## XI.   ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.    Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.    Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

## XII.   CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, attorneys and all other persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly:

A.    If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days;

B.    Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the sale of Protective Goods and Services; and

C.    Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XIII. ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 20 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of this Order and all agents and representatives who participate in conduct related to the subject matter of this Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for personnel currently working for Defendants.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIV.  COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.     One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury.

1.     Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and whether these businesses involve mail, internet or telephone order sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.     Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.     Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious names or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin:  *FTC v. QYK Brands, LLC, et al.*, Matter No. 2023147.

## XV.   RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 20 years after entry of this Order, and retain each such record for 5 years. Specifically, Corporate Defendant and each Individual Defendant, for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, he must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      A copy of each unique advertisement or other marketing material making any representation concerning the shipping, refunds, or returns of any good ordered by mail, via the internet, or by telephone.

## XVI.  COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The

Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Defendant must permit representatives of the Commission to interview any employee or other person affiliated with Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XVII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.


SO ORDERED, this   22   day of  April                ,2022

_____

HON. PHILIP S. GUTIERREZ

UNITED STATES DISTRICT JUDGE