Scott Wellman, SBN: 82897
Chris Wellman SBN: 304700
**WELLMAN & WARREN LLP**
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
Tel: (949) 580-3737
Fax: (949) 580-3738
swellman@w-wlaw.com
cwellman@w-wlaw.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>QYK BRANDS LLC d/b/a Glowyy; et al,<br><br>Defendants | Case No. 8:20-cv-01431-PSG-KES<br><br>**DEFENDANT'S EX PARTE APPLICATION AND MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR EMERGENCY ORDER TO RECONSIDER THE PERMANENT INJUNCTION ENTERED BY THIS COURT**<br><br>Magistrate: Hon. Karen E. Scott<br>District: Hon. Philip S. Gutierrez<br>Courtroom: 6A<br><br>**OPPOSITIONS DUE NO LATER THAN 3P.M. ON THE FIRST BUSINESS DAY FOLLOWING FACSIMILE SERVICE** |

At approximately 12:40 pm on April 22, 2022, this Court entered the (PROPOSED) Permanent Injunction submitted by the Plaintiff Federal Trade

Commission ("FTC") in this matter without allowing the Defendants to comment on or object to the proposed injunction. It was filed and served on the Defendants less than 48 hours ago, and the Defendants were prepared today to file its objections and response.

This application seeks reconsideration of the Permanent Injunction entered by this Court for the following reasons:

1. It is impermissibly overbroad in that it bans the Defendants from the entire PPE industry even though 99.9% of its business since August of 2020 is business-to-business wholesales and government fulfillment contracts which, by definition, cannot result in violations of the MITOR rule.

2. It is significantly broader than the preliminary injunction that has been in place in this case since it was filed almost two years ago.

This is particularly egregious because prior to the FTC filing the proposed injunction, Defendants counsel contacted the FTC counsel and requested that he be given the opportunity to review the proposed injunction and file objections and comments. The FTC refused to provide this opportunity. This is a denial of basic due process.

This application is brought on an emergency basis because Defendant QYK Brands presently has the following contracts in place which it will be unable from fulfilling unless the injunction is modified. This will force QYK to shut down and result in irreparable harm:

- Veterans Administration: Fish Oil Supplements ($26 million)
- Veterans Administration Antifungal OTC Ointment ($2.2 million)
- NHS United Kingdom: Disinfectant Wipes for UK Hospitals ($33 million contract)
- CMS/Health and Human Services: Disinfectant Wipes ($120,000)
- UC Dept of Energy: COVID Testing Kits Supply & Services BPA ($250,000 per year)
- City of Philadelphia: COVID Test Kits (estimated at $500,000 per year)
- City of Stamford, CT: PPE BPA (estimated at $1.2 million)
- State of Arizona: COVID Test Kits & PPE ($3 million)
- LAUSD: Prime Vendor for Hand Sanitizer (placed as needed- estimated at $1 million per year)
- City of San Diego: Prime Vendor for Test Kits & PPE (placed as needed- estimated at $500,000 per year)
- Dollar Tree Retail Distribution: Cleaning wipes (not disinfectant) ($10 million)
- Home Depot (Bleaches and Disinfectants) (pending)

In addition, QYK Brands is only one of the five companies in the U.S. that has the domestic capability to manufacture face masks and surgical gowns. QYK is in the

final stages of a contract with the U.S. Health and Human Services for these products as well.

This application is filed pursuant to Rule 60 (b) which allows the Court to "relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

…

(5) …applying a judgment prospectively is no longer equitable;

…

(6) any other reason that justifies relief.

As stated in the Declaration of Wellman, defendant attempted contacted both FTC attorneys by telephone to see if they would object to this application. Only voicemail was received, and a message was left so at this time it is not known if the FTC will oppose this application.

## DISCUSSION

The permanent injunction ordered by the Court permanently restrains and enjoins Defendants "from the advertising, marketing, promoting, or offering for sale, or assisting others in the advertising, marketing, promoting, or offering for sale, of any Protective Goods and Services." (DKT. 135-1, P. 9. Lines 20-23). "Protective Goods and Services" is defined as any good or service to "detect, treat, prevent, mitigate or cure COVID-19 *or any other infection or disease,* including, but not limited to,

Personal Protective Equipment, hand sanitizer, and thermometers.*"(Emphasis added*) (DKT. 135-1, P.7, Lines 13-16). "Personal Protective Equipment" is defined as "protective clothing, helmets, gloves, face shields, goggles, face masks, respirator, or other equipment designed, intended or represented to protect the wearer from the spread of infection or illness." (DKT. 135-1, P. 7, Lines 1-4).

This prohibition is significantly broader than the preliminary injunction issued by the Court in this matter, which limited its prohibition to violations of the Mail Internet Telephone Merchandise Order Rule ("MITOR") (DKT. 30, Pg. 10-11). In other words, whereas the preliminary injunction enjoined Defendants from further violations of MITOR, the current permanent injunction seems to prevent Defendants from being involved in the Protective Goods and Services industry altogether. If read literally, this prohibition prevents Defendants from selling Protective Goods and Services on a wholesale basis to retail establishments, or to hospitals, or pursuant to government contracts. None of these types of sales are direct sales to consumers, and none of these are subject to the MITOR requirements.

Indeed, the FTC has confirmed its position that the permanent injunction would prohibit the Defendants from business-to-business wholesales as well as fulfillment of government contracts, even though these have nothing to do with direct sales to consumers through the internet, mail or telephone and therefore are not subject to MITOR. As state by the FTC attorney in its email to Defendants' counsel dated April 14, 2020:

"Yes, our position is the injunction applies to business to business sales and government contracts." (Dec. of Wellman, Ex. A)

This is important because since August of 2020, Defendants fundamentally changed their business model from direct sales to the consumer through the internet to wholesale, business-to-business sales, and fulfillment of government contracts. Indeed, since August of 2020 to the present, there have only been about $3,000 of direct consumer sales. All the other sales (that is 99.9% of all other sales) have been business-to-business wholesales.(Dec. of Tammabattula) For example, in one contract with the Veterans Administration, QYK provides an OTC product consisting of a 1% Clotrimazole ointment that is used for nail fungal infections. (Dec. of Tammabattula). In another government contract with the United Kingdom, QYK provides cleansing wipes to UK National Health Service. In a contract with the Dollar Tree retail stores, QYK provides needed cleansing wipes. (Dec. of Tammabattula). These are all wholesale contracts where the purchaser makes payments only upon, or after, receipt of the products. Since under MITOR the shipping time starts *only after* the customer tenders its purchase price (16 CFR §435.1(c)), it is impossible for there to be a violation of MITOR.

However, the permanent injunction, if left unmodified and read literally, would prohibit any of these business-to-business or government sales. Not only would this have the effect of putting QYK out of business – that is, irreparably harming QYK – but it also would harm the public interest as the constituent agencies, such as the

Veterans Administration or patients and workers in the hospitals that use and need these products, will be harmed.

In its order, this Court noted that Defendants "changed their business model to sell directly to wholesale retailers instead of individual consumers." (DKT. 212, P.15) However, because the Court found Defendants still "retain the ability to commit future violations" *Ibid.,* it felt that the permanent injunction was appropriate. Given this, it is unclear whether the Court was aware the permanent injunction submitted by the FTC was significantly different from the preliminary injunction. In this regard, it is submitted that the Court may now be surprised by the fact that the FTC substituted a significantly more onerous and broad injunction that the preliminary injunction. Unlike the preliminary injunction, the permanent injunction was not limited to preventing violations of MITOR but sought to exclude Defendants from the entire PPE industry even though, with respect to 99.9% of Defendants' sales, there is no possible likelihood of a MITOR violation.

It is well settled that "[a]n injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled." *Fed. Trade Commn. v. John Beck Amazing Profits LLC,* 888 F. Supp. 2d 1006, 1011 (C.D. Cal. 2012), aff'd sub nom. *F.T.C. v. John Beck Amazing Profits, LLC,* 644 Fed. Appx. 709 (9th Cir. 2016) (unpublished); See also *Lamb-eston, Inc. v. McCain Foods, Ltdl,* 941 F.2d 970, 974 (9th Cir. 1991) ("injunctive relief …must be tailored to remedy the specific harm alleged.") Indeed,

the Court acknowledged that the scope of the injunction must bear "a reasonable relationship to the violation." (DKT. 212, p. 14).

However, after acknowledging these limitations, the scope of the Court's injunction is so broad that it excises the Defendants from an entire industry. Given that the FTC's complaint concerned shipping times and given that virtually all of the Defendants' sales since August of 2020 cannot, by definition, involve shipping time issues under MITOR, an injunction that excludes them from an entire industry is overbroad. In short, the present injunction, if allowed to stand, will force the Defendants to close its doors causing irreparable harm.

Based on the foregoing, request is made that the Court either modify the permanent injunction to tailor it to the proper relief requested or stay enforcement of the injunction until the appeal to the Ninth Circuit is resolved. If the Court decides to modify the injunction, then it is suggested that it mirror the preliminary injunction so that it applies to prospective violations of MITOR but does not exclude the Defendants from the entire PPE industry.

DATED: April 22, 2022                **WELLMAN & WARREN**

                                     By:  */s/ Scott Wellman*
                                          SCOTT WELLMAN
                                          Attorneys for Defendants

# CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, under the laws of the United States of America that on this date, I caused to be electronically filed the foregoing document, and this Certificate of ECF Filing & Service, with the Clerk of the Court using the CM/ECF system, who will send notification of such filing to the following party:

**Attorneys for Plaintiff and Defendants**

KATHERINE E. JOHNSON kjohnson3@ftc.gov;
CHRISTOPHER ERICKSON cerickson@ftc.gov
DELILAH VINZON dvinzon@ftc.gov

    Attorneys for Federal Trade Commission

DATED this 22nd day of April 2022, at Laguna Hills, California.

*/s/ Scott Wellman*
Scott Wellman